FILED
Terry Deinlein, Acting Clerk
Cincinnati, Ohio

03 NOV 28  AM II: 23

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| VIVIAN BERT, *et al.*, | ) | Case No. C-1-02-467 |
| | ) | |
| Plaintiffs, | ) | Judge Beckwith |
| | ) | Magistrate Judge Hogan |
| v. | ) | |
| | ) | AMENDED COMPLAINT |
| AK STEEL CORPORATION, | ) | |
| | ) | CLASS ACTION |
| Defendant. | ) | |
| | ) | <u>JURY DEMAND</u> |

Come the Plaintiffs, Vivian Bert, Thaddeus Freeman, Darrell Carter, Edward James Lewis, Timothy Oliphant, Mary Harris, Roderique Russell, Kay Jackson, Marnie Carter, Darlene Denise Carter, Dwight Lewis, Michael Miller, Ronald Sloan, Donald Edwards, Shawn Pryor, Tiffany Jackson, and Allen Roberts, individually and on behalf of all other similarly situated persons, and for their cause of action state as follows:

## I.     **NATURE OF THIS ACTION**

1.     This action is brought on behalf of sixteen African-American applicants for employment with AK Steel and one African-American AK Steel employee (hereafter "Plaintiffs") against AK Steel Corporation (hereafter "Defendant" or "AK Steel"). Plaintiffs join individual claims to redress the Defendant's continuing systemic racial discrimination in hiring and, in addition, seek to represent a class of African-American persons similarly situated to redress the Defendant's continuing systemic racial discrimination in hiring.

2.     Defendant has discriminated, and continues to discriminate, against African-American Plaintiffs Vivian Bert, Thaddeus Freeman, Darrell Carter, Edward James Lewis, Timothy

1

Oliphant, Mary Harris, Roderique Russell, Kay Jackson, Marnie Carter, Darlene Denise Carter, Dwight Lewis, Michael Miller, Ronald Sloan, Donald Edwards, Shawn Pryor, and Tiffany Jackson, and against similarly-situated African-American persons on a class-wide basis, in hiring practices. By employing discriminatory hiring selection policies, practices and procedures, and perpetuating the existence of a racially hostile employment application process, Defendant intentionally discriminates against African-American applicants and arbitrarily denies them employment in positions for which they are qualified.

3.      This action seeks equitable and declaratory relief for all individual Plaintiffs and for the proposed hiring class, as well as nominal and punitive damages at law and other incidental monetary and non-monetary remedies necessary to make them whole for the sixteen individual applicant Plaintiffs.

4.      In Count Two, employee plaintiff Allen Roberts files a third party charge against Defendant for its discrimination in hiring. Defendant discriminates against all of its employees by preventing its employees from working in a racially integrated environment free from racial discrimination.

5.      Employee plaintiff Roberts seeks nominal and punitive damages at law and other incidental monetary and non-monetary remedies necessary to make him whole.

## II.      <u>JURISDICTION AND VENUE</u>

6.      This Court has jurisdiction pursuant to the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000(e)-5(f), *et seq.*, as amended, to redress and enjoin employment practices of defendant AK Steel in violation of these statutes.

7.    Venue is proper in this Court in the Southern District of Ohio because Defendant AK Steel Corporation does business in the State of Ohio, the business records of the Defendant are maintained in the State of Ohio, many of the unlawful practices described herein occurred in the State of Ohio, and because many of the Plaintiffs reside in Ohio and worked for the Defendant in the State of Ohio or would have worked for the Defendant in the State of Ohio absent the discrimination complained of herein.

## III.    CONDITIONS PRECEDENT TO SUIT

8.    The Plaintiffs' claims arising under 42 U.S.C. § 1981 do not require administrative exhaustion. Plaintiff Allen Roberts, an AK Steel employee, has filed a third-party charge of class-wide racial discrimination in hiring with the United States Equal Employment Opportunity Commission ("EEOC") in Ohio. Plaintiffs Vivian Bert, Thaddeus Freeman, Darrell Carter, Edward James Lewis, Timothy Oliphant, Mary Harris, Roderique Russell, Kay Jackson, Marnie Carter, Darlene Denise Carter, Dwight Lewis, Michael Miller, Ronald Sloan, Donald Edwards, Shawn Pryor, and Tiffany Jackson, proposed representatives of the hiring class, have filed charges of class-wide racial discrimination in hiring with the EEOC in Ohio and Kentucky.

## IV.    PARTIES

### A.    PLAINTIFFS

9.    **Plaintiff Vivian Bert** is an African-American resident of Middletown, Ohio. Bert applied for employment at AK Steel in Middletown, Ohio in April 2002, was qualified, and was rejected. She is a representative of the proposed hiring class.

10.     **Thaddeus Freeman** is an African-American resident of Middletown, Ohio. Freeman applied for employment at AK Steel in Middletown, Ohio in April 2002, was qualified, and was rejected. He is a representative of the proposed hiring class.

11.     **Plaintiff Darrell Carter** ("D. Carter") is an African-American resident of Ironton, Ohio. D. Carter applied for employment at AK Steel in Ashland, Kentucky in April 2002, was qualified, and was rejected. He is a representative of the proposed hiring class.

12.     **Plaintiff Edward James Lewis** ("E. J. Lewis") is an African-American resident of Middletown, Ohio. E. J. Lewis applied for employment at AK Steel in Middletown, Ohio in November 2001, was qualified, and was rejected. He is a representative of the proposed hiring class.

13.     **Plaintiff Timothy Oliphant** is an African-American resident of Portsmouth, Ohio. Oliphant applied for employment at AK Steel in Ashland, Kentucky in April 2002, was qualified, and was rejected. He is a representative of the proposed hiring class.

14.     **Plaintiff Mary Harris** is an African-American resident of Cincinnati, Ohio. Harris applied for employment at AK Steel in Middletown, Ohio in April 2002, was qualified, and was rejected. She is a representative of the proposed hiring class.

15.     **Plaintiff Roderique Russell** is an African-American resident of Middletown, Ohio. Russell applied for employment at AK Steel in Middletown, Ohio in September 2001, was qualified, and was rejected. He is a representative of the proposed hiring class.

16.     **Plaintiff Kay Jackson** is an African-American resident of Greenup, Kentucky. Jackson applied for employment at AK Steel in Ashland, Kentucky in May 2002, was qualified, and was rejected. She is a representative of the proposed hiring class.

4

17.    **Plaintiff Marnie Carter** ("M. Carter") is an African-American resident of Ironton, Ohio. M. Carter applied for employment at AK Steel in Ashland, Kentucky in January 2002, was qualified, and was rejected. She is a representative of the proposed hiring class.

18.    **Plaintiff Darlene Denise Carter** ("D. D. Carter") is an African-American resident of Ironton, Ohio. D. D. Carter applied for employment at AK Steel in Ashland, Kentucky in January 2002, was qualified, and was rejected. She is a representative of the proposed hiring class.

19.    **Plaintiff Dwight Lewis** ("D. Lewis") is an African-American resident of Portsmouth, Ohio. D. Lewis applied for employment at AK Steel in Ashland, Kentucky in May 2002, was qualified, and was rejected. He is a representative of the proposed hiring class.

20.    **Plaintiff Michael Miller** is an African-American resident of Dayton, Ohio. Miller applied for employment at AK Steel in Middletown, Ohio in January 2002, was qualified, and was rejected. He is a representative of the proposed hiring class.

21.    **Plaintiff Ronald Sloan** is an African-American resident of Middletown, Ohio. Sloan applied for employment at AK Steel in Middletown, Ohio in September 2001, was qualified, and was rejected. He is a representative of the proposed hiring class.

22.    **Plaintiff Donald Edwards** is an African-American resident of Middletown, Ohio. Edwards applied for employment at AK Steel in Middletown, Ohio in January 2002, was qualified, and was rejected. He is a representative of the proposed hiring class.

23.    **Plaintiff Shawn Pryor** is an African-American resident of Middletown, Ohio. Edwards applied for employment at AK Steel in Middletown, Ohio in October 2001, was qualified, and was rejected. He is a representative of the proposed hiring class.

24.    **Plaintiff Tiffany Jackson** is an African-American resident of Greenup, Kentucky. Jackson applied for employment at AK Steel in Ashland, Kentucky in May 2002, was qualified, and was rejected. She is a representative of the proposed hiring class.

25.    **Plaintiff Allen Roberts** is an African-American resident of Middletown, Ohio. Roberts has been employed by AK Steel in Middletown, Ohio since approximately April 25, 1988 in the capacity of a maintenance repairman. He filed a third party charge on behalf of African-Americans.

**B.    DEFENDANT**

26.    **Defendant AK Steel Corporation** is a corporation whose corporate office is located in Middletown, Ohio. It maintains major plant and office locations in Middletown, Coshocton, Mansfield, Walbridge and Zanesville, Ohio; Ashland, Kentucky; Rockport, Indiana; and Butler, Pennsylvania, employing approximately 10,700 people. AK Steel Corporation is also an individual subject to suit under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000(e)-5(f), *et seq.*, as amended, 42 U.S.C. §§ 1981 and 1981(A). Defendant AK Steel produces flat-rolled carbon, stainless and electrical steel products for use in automotive, appliance, construction and manufacturing markets. Its stainless steels are also used in, among other things, food processing equipment, chemical and petrochemical equipment and industrial equipment. AK Steel is the only full-line domestic producer of energy efficient electrical steels for power generation, power and distribution transformers, lighting systems and electric motors. The acts set forth in this Complaint were authorized, ordered, and/or done by Defendant AK Steel Corporation, and its officers, agents, employees, and/or representatives while actively engaged in the management of Defendant AK Steel Corporation's business.

## B.    COMMON QUESTIONS OF LAW AND FACT

27.    The prosecution of the claims of the individual Plaintiffs requires adjudication of numerous questions of law and fact common to their individual claims. The common questions of law would include, *inter alia:* whether Defendant has engaged in intentional race discrimination in its hiring policies, practices and procedures and in the creation of a racially hostile application process in a manner made unlawful under the statutes under which this action is brought. The common questions of fact would include, *inter alia:* whether Defendant has, through its policies, practices and procedures, (a) prevented the African-American applicant Plaintiffs from being selected for job opportunities; (b) subjected the applicant Plaintiffs to a racially hostile application process; and (c) denied its employees the right to work in a racially integrated environment free from racial discrimination. Further common questions of fact include whether AK Steel engaged in intentional racial discrimination and retaliation by failing and refusing to address adequately complaints of racial discrimination and harassment in hiring brought by African-American and white employees.

28.    Inquiry into the Defendant's hiring practices, procedures, and data will be required to resolve these and other common questions and to fashion appropriate relief for the individual Plaintiffs.

7

## VI.    CLASS ACTION ALLEGATIONS

### A.    Definition of the Hiring Class

29.    The proposed hiring class consists of all African-American persons who applied and were rejected for employment, or were deterred or discouraged from applying for employment, with AK Steel at any time since June 26, 1998, four years prior to the filing of this Complaint, pursuant to 28 U.S.C. §1658.

### B.    Efficiency of Class Prosecution of Common Claims

30.    The individual claims of the Plaintiffs require resolution of the common question of whether AK Steel has engaged in a systemic pattern and/or practice of racial discrimination against African-American applicants in hiring policies, practices, and procedures.

31.    The applicant Plaintiffs and employee Plaintiff seek remedies to eliminate the adverse effects of such discrimination in their own lives and careers, and in the lives and careers of the proposed class members, and to prevent such continued racial discrimination in the future.

32.    Plaintiffs have standing to seek such relief because of the deleterious way in which such discrimination has affected them individually, and African-Americans generally, including those who applied and were rejected, those who were deterred from applying, and those employees who were prevented from working in a racially integrated environment free from racial discrimination.

33.    As a basis for the relief Plaintiffs seek both for themselves and for the putative class members, Plaintiffs will establish the existence of systemic racial discrimination at AK Steel. Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with the attendant risk of inconsistent adjudications and conflicting

8

obligations.

34.     Certification of a class of African-American applicants similarly situated to the applicant Plaintiffs is the most efficient, economical, and judicious means of presenting the evidence and arguments necessary to resolve, for the named Plaintiffs, the proposed class, and AK Steel, the questions of law and fact which are common to the claim of the named Plaintiffs and the proposed class.

35.     The named Plaintiffs' individual and class claims are premised upon the traditional bifurcated method of proof and trial for disparate impact and systemic disparate treatment claims of the type at issue in this case.  Such a bifurcated method of proof and trial is the most efficient method of resolving such common issues.

**C.     Numerosity and Impracticability of Joinder**

36.     The size of the proposed class which the named Plaintiffs seek to represent is at present unknown but is expected to number in the hundreds and is too numerous to make joinder practicable.  The proposed class consist of all past, present, and future African-American applicants for employment at AK Steel Plants, including those in Middletown, Ohio and Ashland, Kentucky, during the liability period.

**D.     Common Questions of Law and Fact**

37.     The prosecution of the claims of the applicant Plaintiffs will require the adjudication of numerous questions of law and fact common to both their individual claims and those of the putative class they seek to represent.   The common questions of law would include, *inter alia*, whether AK Steel has engaged in unlawful, intentional race discrimination in its hiring policies, practices, and procedures; whether AK Steel is liable for a continuing systemic violation of §1981;

9

and what are the proper standards for proving a pattern or practice of discrimination by AK Steel against its African-American applicants.   The common questions of fact would include, *inter alia*: whether AK Steel has, through its policies, practices and procedures, (a) precluded or delayed the hiring of African-Americans; (b) deterred or discouraged African-Americans from applying for employment; and (c) denied African-American employees the right to work in a racially integrated environment free from racial discrimination.

### E.     Typicality of Claims and Relief Sought

38.     The claims of the applicant Plaintiffs are typical of the claims of the proposed class. The relief sought by the named Plaintiffs is also typical of the relief which is sought on behalf of the proposed class.

39.     The relief necessary to remedy the claims of the named Plaintiffs is exactly the same as that necessary to remedy the claims of the proposed class members in this case.   The named Plaintiffs seek relief for their individual claims and those of the members of the proposed class including, but not limited to: (a) a declaratory judgment that AK Steel has engaged in systemic racial discrimination against African-American applicants; (b) a permanent injunction against such continuing discriminatory conduct; (c) injunctive relief which effects a restructuring of AK Steel's hiring policies, practices and procedures so that African-Americans will be able to compete fairly for hiring opportunities in the future; (d) back pay, front pay, nominal and punitive damages, and other equitable remedies necessary to make whole the African-American applicants from AK Steel's past discrimination; and (e) attorneys' fees, costs, and expenses.

### F.     Adequacy of Representation

40.     The applicant Plaintiffs/Class Representatives' interests are co-extensive with those of the members of the proposed class in this case. Each seeks to remedy AK Steel's discriminatory hiring policies, practices and procedures so that African-Americans will no longer be prevented from obtaining jobs with AK Steel. Plaintiffs are willing and able to represent the proposed class as they pursue their individual claims in this action. They have retained counsel who are qualified, experienced, and competent both to conduct this litigation and to meet the time and fiscal demands required to litigate an employment discrimination class action of this size and complexity. The combined interests, experience and resources of the Plaintiffs and their counsel to litigate the individual and class claims at issue in this case clearly satisfy the adequacy of representation requirement of Fed.R.Civ.P. 23(a)(4).

### G.     Requirements of Rule 23(b)(2)

41.     By adopting and following hiring policies, practices, and procedures which are both racially discriminatory and systemic, AK Steel has acted on grounds generally applicable to the Plaintiffs and proposed class. Racial discrimination is AK Steel's standard operating procedure rather than a sporadic occurrence. AK Steel has, *inter alia*, failed to adopt and apply hiring policies, practices, and procedures which do not systemically discriminate against African-Americans. AK Steel's systemic discrimination and refusal to act on grounds that are not racially discriminatory has made appropriate final injunctive and declaratory relief with respect to the class as a whole.

42.     Injunctive and declaratory relief are the predominant relief sought in this case because they are the culmination of the proof of AK Steel's individual and class-wide liability at the end of Stage I of a bifurcated trial and the essential predicate for the named Plaintiffs' and class

members' entitlement to monetary and non-monetary remedies at Stage II of such trial. Declaratory and injunctive relief issue directly and automatically from proof of the common questions of law and fact regarding the existence of systemic racial discrimination against African-American applicants at AK Steel. Such relief is the factual and legal predicate for the named Plaintiffs' and the class members' entitlement to monetary and non-monetary remedies for individual losses caused by, and for exemplary purposes necessitated by, such systematic discrimination.

> **H.     Requirements of Rule 23(b)(3)**

43.     The common issues of fact and law affecting the claims of the applicant Plaintiffs and proposed class members, including, but not limited to, the common issues identified in ¶¶ 24-36 above, predominate over any issues affecting only individual claims.

44.     A class action is superior to other available means for the fair and efficient adjudication of the claims of the applicant Plaintiffs and members of the proposed class.

45.     The cost of proving e cost of proving AK Steel's pattern or practice of discrimination makes it impractical for the applicant Plaintiffs and members of the proposed class to control the prosecution of their claims individually.

## VII.     CLASS CLAIMS

46.     The Plaintiffs and the putative class they seek to represent have been subjected to a systemic pattern and practice of racial discrimination involving AK Steel's hiring policies, practices and procedures.

47.     AK Steel's hiring policies, practices and procedures incorporate the following racially discriminatory practices: (a) disparate treatment based on race; (b) reliance upon subjective judgments, procedures and criteria which permit and encourage the incorporation of racial

12

stereotypes and bias by Defendants' predominately white managerial staff in making hiring decisions; and (c) failure to establish and/or follow policies, practices, procedures or criteria that reduce or eliminate disparate impact and/or intentional racial bias or stereotypes.

48.     In its hiring policies, practices and procedures, AK Steel treats African-American applicants differently from whites, and AK Steel deters and discourages African-Americans from applying.  AK Steel has a reputation in the communities surrounding its facilities of not hiring qualified African-American applicants.  AK Steel's hiring policies, practices, and procedures have had a disparate impact on African-Americans and such policies, practices, and procedures are not valid, job related, or justified by business necessity.  There are alternative objective, structured and more valid selection procedures available to AK Steel, which are more closely related to the actual responsibilities of the positions, which would have less of a disparate impact on African-Americans.

49.     Because of AK Steel's systemic pattern and/or practice of racial discrimination,  the Plaintiffs and the class they seek to represent have been adversely affected and have experienced harm, including the loss of compensation, wages, back pay, front pay, other employment benefits, embarrassment, emotional distress, humiliation, indignity and resulting injury and loss.  This pattern and/or practice of racial discrimination includes not being considered for employment and being prevented from working in a racially integrated environment free from racial discrimination.

50.     The Plaintiffs have no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and this suit is their only means of securing adequate relief.  The  Plaintiffs are now suffering and will continue to suffer irreparable injury from AK Steel's unlawful policies, practices and procedures as set forth herein unless those policies, practices and procedures are enjoined by this Court.

## VIII.   **INDIVIDUAL FACTUAL ALLEGATIONS**

51.      **Plaintiff Vivian Bert** applied for employment with AK Steel in Middletown, Ohio in April 2002.

52.      Defendant discriminated against Bert by denying her employment at AK Steel.  In about April 2002, Bert saw a job posting in the newspaper and on TV that AK Steel was hiring and filled out an application at a Middletown job center in a local shopping mall.

53.      Bert applied for a clerical position.  Bert possessed all the requisite skills, including ability to type sixty words per minute, use a clerical machine, operate word processing programs on a computer, and perform routine clerical tasks such as filing.  In addition, Bert had worked at AK Steel in a clerical position from February 1982 until September 1984 when she was laid off due to downsizing and lack of seniority.

54.      Bert was not offered the position despite her qualifications and experience.  AK Steel never contacted Bert to acknowledge their receipt of her application, schedule an interview or test, or to notify her of rejection.

55.      Upon information and belief, AK Steel hired one or more white individuals instead of Bert and did not hire Bert for discriminatory reasons.

56.      As a result of Defendant's discriminatory actions, Bert has suffered extreme harm.

57.      **Plaintiff Thaddeus Freeman** applied for employment with AK Steel in Middletown, Ohio repeatedly for seven years.  Freeman's most recent application was in April 2002.

58.      Defendant discriminated against Freeman by denying him employment at AK Steel. In about April 2002, Freeman heard by word of mouth that AK Steel was hiring and filled out an application at AK Steel's employment office.

14

59.    Freeman applied for a general laborer position. Freeman had more than thirty years of continuous work experience in the grocery business cutting meat and in factories working on assembly lines. In addition, Freeman had a good work record of consistently dependable service.

60.    In a 1999 job application to AK Steel, Freeman left blank the application question which asked him to specify his racial identity. After filing this application with AK Steel, Freeman was contacted to come in and take a test. When Freeman returned to the employment office to inquire into his performance on this test, Freeman was dismissed and told that somebody would call him regarding the test. Freeman never heard from AK Steel again.

61.    In all subsequent applications, Freeman selected "African-American" as his racial identity. Each time, Freeman was not offered the position despite his qualifications and experience. AK Steel never contacted Freeman to acknowledge their receipt of his application, schedule an interview or test, or to notify Freeman of rejection.

62.    Upon information and belief, AK Steel hired one or more white individuals instead of Freeman and did not hire Freeman for discriminatory reasons.

63.    As a result of Defendant's discriminatory actions, Freeman has suffered extreme harm.

64.    **Plaintiff Darrell Carter** ("D. Carter") applied for employment with AK Steel in Ashland, Kentucky in April 2002.

65.    Defendant discriminated against D. Carter by denying him employment at AK Steel. In about April 2002, D. Carter heard by word of mouth that AK Steel was hiring and filled out an application with Susan Lester, a white AK Steel recruiter. Lester also scheduled a time for D. Carter to take the AK Steel entrance examination.

15

66.    D. Carter applied for a general laborer position.  D. Carter had eight years of continuous work experience as an iron pourer in the melting department of Ironton Iron Intermit, and was at the time of his application a student in Human Services Technology at Ohio University. Along with approximately a dozen other AK Steel applicants, D. Carter took a test that asked mechanical, logical, and common sense questions.  D. Carter found the examination to be relatively easy and, after having completed it, anticipated that he had performed well.  When D. Carter contacted Lester via phone two to three weeks later, however, Lester informed D. Carter that he had not passed the test.  She offered no further information regarding D. Carter's performance and refused to answer D. Carter's questions.

67.    Upon information and belief, AK Steel hired one or more white individuals instead of D. Carter and did not hire D. Carter for discriminatory reasons.

68.    As a result of Defendant's discriminatory actions, D. Carter has suffered extreme harm.

69.    **Plaintiff Edward James Lewis** ("E. J. Lewis") applied for employment with AK Steel in Middletown, Ohio in approximately November 2001.

70.    Defendant discriminated against E. J. Lewis by denying him employment at AK Steel.  In about November 2001, E. J. Lewis saw AK Steel's help wanted advertizement in a local newspaper and submitted his application by giving it to a current AK Steel employee, Allen Roberts.

71.    E. J. Lewis applied for a general laborer position.  He had more than twelve years of continuous work experience as a construction worker, in which capacity he did sub-contract work through S and K Construction and Graycor Construction at the AK Steel plant in Middletown, Ohio. E. J. Lewis had ability in concrete and blacktop work, among other skills, as well as familiarity with

16

AK Steel plant operations based on his experience working there.

72.     E. J. Lewis was not offered the position despite his qualifications and experience. AK Steel never contacted E. J. Lewis to acknowledge their receipt of his application, schedule an interview or test, or to notify him of rejection.

73.     Upon information and belief, AK Steel hired one or more white individuals instead of E. J. Lewis and did not hire E. J. Lewis for discriminatory reasons.

74.     As a result of Defendant's discriminatory actions, E. J. Lewis has suffered extreme harm.

75.     **Plaintiff Timothy Oliphant** applied for employment with AK Steel in Ashland, KY in April 2002.

76.     Defendant discriminated against Oliphant by denying him employment at AK Steel. Having found out at church that AK Steel was accepting applications, Oliphant visited the AK Steel booth at a job fair at a local shopping mall.  There, AK Steel recruiter Rodney Cosby instructed Oliphant to fax Cosby his resume.  AK Steel recruiter Susan Lester contacted Oliphant subsequently via email to schedule a time for Oliphant to take AK Steel's qualifying exam.

77.     Oliphant applied for a general labor position.   Oliphant had twelve years of experience working as a machine operator for New Boston Coke Corporation and five years of experience laying rail and tie for the Norfolk & Southern Rail Company.

78.     Approximately two to three days after taking the test, Oliphant contacted Lester via phone to inquire into his performance.  Lester told Oliphant that he had not passed.  Lester did not tell Oliphant his score or offer any other information regarding the examination.

79.     Upon information and belief, AK Steel hired one or more white individuals instead

of Oliphant and did not hire Oliphant for discriminatory reasons.

80.    As a result of Defendant's discriminatory actions, Oliphant has suffered extreme harm.

81.    **Plaintiff Mary Harris** applied for employment with AK Steel in Middletown, Ohio in February 2002.

82.    Defendant discriminated against Harris by denying her employment at AK Steel. Having learned that AK Steel was hiring through the Ohio Unemployment Office around February 2002, Harris submitted her application at that location.

83.    Harris applied for a general laborer position. Harris had experience as a welder, doing bench assembly, and eight years of continuous employment experience at a General Electric factory doing labor, sub-labor, and assembly.

84.    After Harris applied, she heard nothing back from AK Steel. Defendant did not acknowledge receipt of Harris' application materials, schedule an interview or test, or notify her of rejection.

85.    Upon information and belief, AK Steel hired one or more white individuals instead of Harris and did not hire Harris for discriminatory reasons.

86.    As a result of Defendant's discriminatory actions, Harris has suffered extreme harm.

87.    **Plaintiff Roderique Russell** applied for employment with AK Steel in Middletown, Ohio in September 2001.

88.    Defendant discriminated against Russell by denying him employment at AK Steel. Russell applied for both a general labor and a management position. Russell held a bachelor of arts degree, the prerequisite to work in management. Russell's work experience included approximately five years as a fourth hand paper maker at a paper mill, approximately two years as a K-8 substitute

teacher in Middletown, and approximately three years as a Service Coordinator for Malachi, a faith-based government funded agency which serves as a resource center helping to find, among other things, tutors, jobs, and transportation to work for youths ages fourteen to twenty-one who live more than seventy percent below the poverty line.

89.  In around September 2001, Russell was called in to take a test.  Although he never received an assessment of his performance on this test, Russell was subsequently called in for an interview.  At his interview, an AK Steel representative asked Russell if Russell would prefer to work in management or general labor.  Russell responded that he would prefer to work in management but that he was interested in both positions.  The AK Steel representative told Russell that Russell would be contacted for a second interview, but that was the last that Russell heard from AK Steel.  In March 2002, Russell put in another application for a general laborer position, but Russell was not offered the position despite his qualifications.  AK Steel did not acknowledge their receipt of Russell's application materials, schedule an interview or test, or notify Russell of rejection.

90.    Upon information and belief, AK Steel hired one or more white individuals instead of Russell and did not hire Russell for discriminatory reasons.

91.    As a result of Defendant's discriminatory actions, Russell has suffered extreme harm.

92.    **Plaintiff Kay Jackson** applied for employment with AK Steel in Ashland, Kentucky in 1999, 2001, and on approximately May 9, 2002.

93.    Defendant discriminated against Jackson by denying her employment at AK Steel. In 1999, 2001, and on approximately May 9, 2002, Jackson applied for a general laborer or clerical position. Jackson had more than eighteen years of continuous work experience in a clerical capacity at Teneco Packaging. During each application process, Jackson was called in to take a test on basic

19

mechanics, mathematics, and reading comprehension. After taking the test in 1999, an AK Steel representative told Jackson that Jackson had failed the test. Despite this, Jackson was subsequently contacted for a phone interview, during which time a hiring agent posed personal questions like "Why do you want to work at AK Steel?" A week later Jackson received a letter informing her that Jackson's services were "not needed at this time." In 2001, Jackson took the exam for a second time. Jackson was neither informed of her performance nor contacted for an interview or for any other reason. Since taking the exam on approximately May 9, 2002, Jackson has not been contacted by AK Steel. After Jackson took the exam in 1999, an AK Steel representative called Jackson within one week.

94.     Upon information and belief, AK Steel hired one or more white individuals instead of Jackson and did not hire Jackson for discriminatory reasons.

95.     As a result of Defendant's discriminatory actions, Jackson has suffered extreme harm.

96.     **Plaintiff Marnie Carter** ("M. Carter") applied for employment with AK Steel in Ashland, Kentucky in January 2002.

97.     Defendant discriminated against M. Carter by denying her employment at AK Steel. In about January 2002, M. Carter attended a career fair in Portsmouth, Ohio at which AK Steel had a booth. An AK Steel representative there gave M. Carter an application, which she submitted at the AK Steel plant. A week later, an AK Steel representative contacted M. Carter via phone to schedule M. Carter for a test given in the basement of the AK Steel plant.

98.     M. Carter applied for a general laborer position. M. Carter had work experience as forklift operator at Ironton Iron Intermit. Along with approximately a dozen other AK Steel applicants, M. Carter took a test that asked logic, math, and general questions. Approximately a

week and a half later, M. Carter spoke via telephone with AK Steel recruiter Susan Lester, who informed M. Carter that she had failed the test. Lester refused to answer M. Carter's questions regarding her performance.

99.     Upon information and belief, AK Steel hired one or more white individuals instead of M. Carter and did not hire M. Carter for discriminatory reasons.

100.     As a result of Defendant's discriminatory actions, M. Carter has suffered extreme harm.

101.     **Plaintiff Darlene Denise Carter** ("D. D. Carter") applied for employment with AK Steel in Ashland, Kentucky in January 2002.

102.     Defendant discriminated against D. D. Carter by denying her employment at AK Steel. In about January 2002, D. D. Carter attended a career fair in Portsmouth, Ohio at which AK Steel had a booth. An AK Steel representative there gave D. D. Carter an application, which D. D. Carter submitted at AK Steel.   A week later, an AK Steel representative contacted D. D. Carter via phone to schedule D. D. Carter for a test given in the basement of the AK Steel plant.

103.     D. D. Carter applied for a general laborer position.  Along with approximately a dozen other AK Steel applicants, D. D. Carter took a test that asked logic, math, and general questions.  Approximately a week and a half later, D. D. Carter spoke via telephone with AK Steel recruiter Susan Lester, who informed D. D. Carter that she had failed the test.  Lester refused to answer D. D. Carter's questions regarding her performance.

104.     Upon information and belief, AK Steel hired one or more white individuals instead of D. D. Carter and did not hire D. D. Carter for discriminatory reasons.

105.     As a result of Defendant's discriminatory actions, D. D. Carter has suffered extreme

harm.

106.     **Plaintiff Dwight Lewis** ("D. Lewis") applied for employment with AK Steel in Ashland, Kentucky in May 2002.

107.     Defendant discriminated against D. Lewis by denying him employment at AK Steel. In about May 2002, D. Lewis attended a career fair in Portsmouth, Ohio at which AK Steel had a booth. An AK Steel representative there gave D. Lewis an application and scheduled him to take a test two weeks later.

108.     D. Lewis applied for a general laborer position. D. Lewis had two years of experience working as a general laborer at a steel foundry, Dayton Walter, assembling brake irons and monitoring the molds into which liquid iron is poured on an assembly line, among other things, as well as five years of experience doing janitorial work in hospitals and three years of experience as a prison security guard. AK Steel gave D. Lewis two tests. The first, a test of general aptitude, asked basic science, math, reading comprehension and pattern recognition questions The second, a personality test, posed questions regarding one's work preferences and the way in which one would deal with potential problems. Approximately one week later, D. Lewis spoke via telephone with AK Steel recruiter Susan Lester, who informed D. Lewis that he had failed the test. When D. Lewis inquired whether he had failed the general exam or the personality test, Lester refused to answer D. Lewis's questions.

109.     Upon information and belief, AK Steel hired one or more white individuals instead of D. Lewis and did not hire D. Lewis for discriminatory reasons.

110.     As a result of Defendant's discriminatory actions, D. Lewis has suffered extreme harm.

111.    **Plaintiff Michael Miller** applied for employment with AK Steel in Middletown, Ohio in June 2001 and January 2002.

112.    Defendant discriminated against Miller by denying him employment at AK Steel. In about the summer of 2001, Miller saw AK Steel's advertizement in the help wanted section of a local newspaper. Miller filled out an application at the Hamilton Bureau of Employment and took a two-part qualifying exam around July 2001.

113.    Miller applied for a skilled position in technical repair. Miller had four years of experience in the U.S. Army working as an electronics mechanic, one year of itinerant work experience repairing electromechanical equipment for car factories such as Ford and General Motors in various locations throughout the country, and three years of experience as a master mechanical technician for Motoman Robotics. In addition, Miller held an associates' degree in robotics. The first test that AK Steel had Miller take, a test of general aptitude, posed logic, common sense, reading comprehension, and basic math and science questions. About three weeks later, Miller was called in to take a test tailored to the skilled position in technical repair for which Miller had applied. This exam, however, dealt with material more directly related to an electrician's responsibilities than a technical repair person's. The exam tested one's knowledge of specific issues that only an electrician would encounter. Of approximately sixty questions, only about ten related directly to the technical issues with which a technical repair person would need to be familiar.

114.    After the test, Miller was interviewed by Jessica Hicks, a white Human Resources representative, and a white supervisor from the technical repair department. During the interview, Hicks and the technical repair supervisor told Miller about AK Steel's safety policies, the job benefits of the technical repair position, and the shifts for which Miller could be scheduled. At the

23

end of the interview, Hicks informed Miller that she would contact him in the coming weeks. When he heard nothing after five weeks, Miller contacted Hicks via phone. Hicks informed Miller that he had scored poorly on the second exam and asked Miller if he would be interested in a production job, an unskilled position. Miller agreed to be considered for a production job. About three weeks later, in approximately October 2001, Miller was contacted by Advantage Hire, a hiring service, to confirm his employment background. AK Steel did not subsequently contact Miller. Around the end of November 2001, Miller contacted Hicks. Hicks informed Miller that she was waiting to hear from a Human Resources manager regarding the status of Miller's application for the production position. When Miller called again around the end of December 2001, Hicks relayed the same message. Miller called again in January 2002, and Hicks informed him that she didn't know what had happened to Miller's application and suggested that he reapply. Miller submitted a second application for a production position at AK Steel in Middletown, Ohio in approximately January, 2002. AK Steel did not respond to that application at all.

115.    Miller was not offered the position despite his qualifications and experience. AK Steel never contacted Miller to acknowledge their receipt of his application, schedule an interview or test, or notify Miller of rejection.

116.    Upon information and belief, AK Steel hired one or more white individuals instead of Miller and did not hire Miller for discriminatory reasons.

117.    As a result of Defendant's discriminatory actions, Miller has suffered extreme harm

118.    **Plaintiff Ronald Sloan** applied for employment with AK Steel in Middletown, Ohio in September 2001.

24

119.    Defendant discriminated against Sloan by denying him employment at AK Steel. Having found out that AK Steel was hiring from some friends who were AK Steel employees, Sloan submitted an application by way of the state of Ohio's Unemployment Services. Sloan was called in to take a qualifying exam in November 2001. At this time, an AK Steel representative told Sloan that, in order to be considered for a management position, the requirement was a test score above a certain level.

120.    Sloan applied for a position in either management or production. Sloan's employment background included six years of service in the U.S. Navy as an electronics technician doing repair and maintenance of communications and encrypting equipment and five years at Proctor & Gamble as a Research Associate doing, among other things, operations and maintenance on a diaper converting unit at a research and development facility, and operations management at a prototype facility.

121.    AK Steel's exam asked questions in subjects such as mechanical reasoning, basic math and English. At a subsequent interview with Human Resources representative Jessica Hicks, a white woman, Hicks contradicted the information that Sloan had received from an AK Steel representative regarding his eligibility for a position in management. Hicks told Sloan that applicants received only a pass/fail grade on AK Steel's general aptitude test. Sloan was told that he had received a "pass." Hicks added that AK Steel had instituted a freeze on management hiring save for those applicants who possessed a bachelor's degree in engineering. Because Sloan attended college classes under an engineering program but did not finish, Sloan was told that he was ineligible to be considered for a management position at this time. Having maintenance experience, Hicks informed him, qualified Sloan to be considered for a maintenance position in addition to being

considered for the production position whose eligibility requirements Sloan did meet.

122.   In December 2001, Sloan was called in for a second interview with Hicks and the maintenance department's assistant manager, a white man. The assistant manager told Sloan that he would have to take a basic electronics exam, and suggested that Sloan should take it that very afternoon. Sloan explained that he was unprepared for an electronics exam that afternoon and requested time to prepare. Additionally, Sloan had indicated that he preferred to begin working in a production position so as to prepare for a position in maintenance and ensure his success in that capacity. Hicks informed Sloan that all openings might have been filled by the time Sloan was ready to take their test. Sloan requested to be considered for a job in production instead. Hicks agreed and informed Sloan that the only remaining steps were a background check and drug test.

123.   In January 2002, Sloan received a call from a woman doing a background check for his AK Steel application. She asked Sloan to confirm the spelling of his first name, Ronald, and restate his social security number. Even though Sloan never committed a felony or had professional or personal problems that might blackball him in a background check, Sloan never heard from AK Steel again.

124.   Upon information and belief, AK Steel hired one or more white individuals instead of Sloan and did not hire Sloan for discriminatory reasons.

125.   As a result of Defendant's discriminatory actions, Sloan has suffered extreme harm.

126.   **Plaintiff Donald Edwards** applied repeatedly for employment with AK Steel in Middletown, Ohio. Edwards' most recent application was in January 2002.

127.   Defendant discriminated against Edwards by denying him employment at AK Steel. In about January 2002, Edwards saw AK Steel's advertizement in the help wanted section of a local

26

paper and on televison. Edwards filled out an application at Palmer Temp, an organization that handles hiring for AK Steel, and never heard back from either them or AK Steel.

128.    Edwards applied for a general laborer position. Edwards' work experience consisted of doing manual labor, such as mowing the fields along the sides of Ohio highways, for the Ohio Department of Transportation (ODOT) and working as a medical supply clerk delivering supplies, among other things, to the different facilities of the Fairfield Center for Mental Retardation. In previous applications, such as one in August 2001, Edwards took an aptitude test on easy questions of simple math and common sense and had an interview with a white male Palmer Temp representative. At that time, Edwards was told that Palmer Temp would submit his application to AK Steel and that Edwards would receive word whether his application was approved or rejected. Edwards never heard anything after his August 2001 application, however. When Edwards reapplied in January 2002, he likewise heard nothing back from AK Steel.

129.    Edwards was not offered the position despite his qualifications and experience. AK Steel never contacted Edwards to acknowledge their receipt of his application, schedule an interview or test, or to notify Edwards of rejection.

130.    Upon information and belief, AK Steel hired one or more white individuals instead of Edwards and did not hire Edwards for discriminatory reasons.

131.    As a result of Defendant's discriminatory actions, Edwards has suffered extreme harm

132.    **Plaintiff Shawn Pryor** applied for employment with AK Steel in Middletown, Ohio in October 2001.

133.    Defendant discriminated against Pryor by denying him employment at AK Steel.  In about October 2001, Pryor heard by word of mouth that AK Steel was hiring.  Pryor obtained an application, filled it out and turned it in at one of Defendant's employment offices.

134.    Pryor applied for a computer technical position.  His work experience consisted of three years of selling computers and fixing PC's for CompUSA and one year of servicing a computer network and upkeeping thirty-five computers, among other things, as a computer information systems manager for Trader Publishing in Miamisburg, Ohio.  In addition, Pryor possessed a Bachelor of Arts degree in English from Miami University in Oxford, Ohio.

135.    Pryor was not offered the position despite his qualifications and experience.  AK Steel never contacted Pryor to acknowledge their receipt of his application, schedule an interview or test, or to notify Pryor of rejection.

136.    Upon information and belief, AK Steel hired one or more white individuals instead of Pryor and did not hire Pryor for discriminatory reasons.

137.    As a result of Defendant's discriminatory actions, Pryor has suffered extreme harm.

138.    **Plaintiff Tiffany Jackson** applied for employment with AK Steel in Ashland, Kentucky in December 2001.

139.    Defendant discriminated against Jackson by denying her employment at AK Steel.  In about October 2001, Jackson attended a career fair in Portsmouth, Ohio at which AK Steel had a booth.  There, Jackson picked up an application and spoke with a white AK Steel representative about current job openings.  Although Jackson had been hoping to obtain an office position, the representative, Susan Lester, told Jackson that no office positions were available.  Along with her resume, Jackson mailed the application to AK Steel in approximately December 2001.  In May 2002,

Lester contacted Jackson via telephone to schedule a time for Jackson to come in and take AK Steel's qualifying exam.

140.    Jackson applied for any available position.   Jackson had five months of work experience inputting client data into computer spreadsheet files as a data processor for Lester Telemarketing and approximately six months of work experience calling businesses to secure magazine subscription renewals as a telemarketer for Lester Telemarketing.  Her current  position, an inventory coordinator for Liebert Corporation, an air conditioner manufacturer, required Jackson to keep track, via a computer program and on-site checks, of parts shortages to insure that workers always had on hand the mechanical parts they needed to construct Liebert Corporation's air conditioners.  In addition, Jackson possessed a high school diploma.

141.    AK Steel gave Jackson two tests.  The first, a test of general aptitude, asked  basic science, math, reading comprehension and pattern recognition questions.  The second, a personality test, posed questions regarding one's work preferences and the way in which one would deal with potential problems.  Jackson had taken the tests as part of an earlier application, in approximately June 2001, that she filed with AK Steel.  In preparation for taking AK Steel's test for a second time, Jackson had consulted study guides for standardized tests such as the SAT and ACT.  In addition, she studied an introduction to math textbook.  Approximately one week later, Jackson spoke via telephone with AK Steel recruiter Susan Lester, who informed Jackson that Jackson had failed the test.  Lester offered no further information and quickly hung up the phone.

142.    Upon information and belief, AK Steel hired one or more white individuals instead of Jackson and did not hire Jackson for discriminatory reasons.

143.    As a result of Defendant's discriminatory actions, Jackson has suffered extreme harm.

## IX.    CAUSES OF ACTION

### A.    COUNT I

**(Class-Wide Discrimination in Hiring in Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and in Violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000(e), *et seq*.)**

144.    Plaintiffs Bert, Freeman, D. Carter, E. J. Lewis, Oliphant, Harris, Russell, Jackson, M. Carter, D. D. Carter, D. Lewis, Miller, Sloan, Edwards, Pryor, and Jackson restate and reallege paragraphs 1 through 143 as though set forth here in full.

145.    AK Steel has discriminated against the Plaintiffs and all members of the proposed class by denying them employment and the same rights as are enjoyed by white applicants for employment with AK Steel and to the enjoyment of all benefits, privileges, terms and conditions of that relationship, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§1981"), as amended.

146.    AK Steel has conducted itself intentionally, deliberately, willfully, and in callous disregard of the rights of the Plaintiffs and members of the proposed class.

147.    By reason of the continuous nature of AK Steel's discriminatory conduct, unstayed throughout the entire liability period, the Plaintiffs and class members are entitled to application of the continuing violation doctrine to all of the violations alleged herein.

148.    By reason of AK Steel's discrimination, the Plaintiffs and the members of the proposed class are entitled to all legal and equitable remedies available under §1981, including, but not limited to, nominal and punitive damages.

## B.    COUNT II

**(Class-wide Discrimination in Employment Due to Hiring Discrimination in Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and in Violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000(e), *et seq.*)**

149.    Plaintiff Roberts restates and realleges paragraphs 1 through 148 as though set forth here in full.

150.    AK Steel has discriminated against Plaintiff Roberts and against all of Defendant's employees by denying AK Steel employees the right to work in a racially integrated environment free from racial discrimination and the enjoyment of all benefits, privileges, terms and conditions of working in a racially integrated environment, in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), and Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000(e), *et seq.* ("Title VII").

151.    AK Steel has conducted itself intentionally, deliberately, willfully, and in callous disregard of the rights of Plaintiff Roberts.

152.    By reason of the continuous nature of AK Steel's discriminatory conduct, unstayed throughout the entire liability period, Plaintiff Roberts is entitled to application of the continuing violation doctrine to all of the violations alleged herein.

153.    By reason of AK Steel's discrimination, Plaintiff Roberts is entitled to all legal and equitable remedies available under § 1981 and Title VII, including, but not limited to, nominal, compensatory, and punitive damages.

31

## X.    **PRAYER FOR RELIEF**

154.    Wherefore, Plaintiffs request the following relief:

a.    Acceptance of jurisdiction of this case;

b.    Certification of the case as a class action maintainable under Federal Rules of Civil Procedure Rule 23(a), (b)(2) and/or (b)(3), on behalf of the proposed applicant class, and designation of Plaintiffs Bert, Freeman, D. Carter, E. J. Lewis, Oliphant, Harris, Russell, Jackson, M. Carter, D. D. Carter, D. Lewis, Miller, Sloan, Edwards, Pryor, and Jackson as representatives of this class and their counsel of record as class counsel;

c.    A declaratory judgment that the Defendant's hiring practices challenged herein are illegal and in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000(e), *et seq.*

d.    A permanent injunction against AK Steel and its officers, owners, agents, successors, employees, and representatives and any and all persons acting in concert with them, from engaging in any further unlawful practices, policies, customs, usages, racial discrimination and retaliation by AK Steel as set forth herein.

e.    An Order requiring AK Steel to initiate and implement programs that (i) will provide equal employment opportunities for African-American employees and applicants; (ii) will remedy the effects of AK Steel's past and present unlawful employment policies, practices and procedures; and (iii) will

32

eliminate the continuing effects of the discriminatory and retaliatory practices described above;

f.      An Order requiring AK Steel to initiate and implement systems of hiring African-American applicants in a non-discriminatory manner;

g.      An Order establishing a task force on equality and fairness to determine the effectiveness of the programs described in (e) through (g) above, which would provide for (i) monitoring, reporting, and retaining of jurisdiction to ensure equal employment opportunity, (ii) the assurance that injunctive relief is properly implemented, and (iii) a quarterly report setting forth information relevant to the determination of the effectiveness of the programs described in (e) through (g) above;

h.      An Order placing or restoring the named Plaintiffs and the members of the hiring class into those jobs they would now be occupying, but for AK Steel's discriminatory policies, practices and procedures;

i.      An Order directing AK Steel to adjust the wage rates and benefits for the named Plaintiffs and the hiring class to the level that they would be enjoying but for AK Steel's discriminatory policies, practices and procedures;

j.      An award of back pay, front pay, lost benefits, restoration of seniority, damages, lost benefits, preferential rights to jobs, and other damages for lost pay and job benefits suffered by the named Plaintiffs and the hiring class;

k.      An award of nominal, compensatory, and punitive damages to Plaintiff Allen Roberts;

33

l.    Any other appropriate equitable relief to the named Plaintiffs and class members;

m.    An award of litigation costs and expenses, including reasonable attorneys' fees, to the Plaintiffs and class members;

n.    Pre-judgment interest;

o.    Such other and further relief as the Court may deem just and proper; and

p.    Retention of jurisdiction by the Court until such time as the Court is satisfied that AK Steel has remedied the practices complained of herein and is determined to be in full compliance with the law.

## X.    **JURY TRIAL DEMANDED**

155.    Plaintiffs request a trial by jury for all issues triable as of right to a jury.

Respectfully submitted this _30th_ day of April 2003.

DAVID SANFORD, D.C. Bar No. 457933
ERIC BACHMAN, KY Bar. No. 88122
**GORDON, SILBERMAN, WIGGINS & CHILDS, P.C.**
7 DUPONT CIRCLE, N.W.
SUITE 200
WASHINGTON, D.C. 20036
(202) 467-4123
(202) 467-4489 (facsimile)


GRANT MORRIS, D.C. Bar No. 926253
**LAW OFFICES OF GRANT MORRIS**
7 DUPONT CIRCLE, N.W.
SUITE 250

WASHINGTON, D.C. 20036
(202) 331-4707

PAUL H. TOBIAS, OH Bar No. 0032415
DAVID D. KAMMER, OH Bar No. 0061808
**TOBIAS, KRAUS & TORCHIA, LLP**
414 WALNUT STREET
SUITE 911
CINCINNATI, OH 45202
(513) 241-8137
(513) 241-7863 (facsimile)

*Attorneys for Plaintiffs*