Westlaw.

72 F.3d 129 (Table)
**Unpublished Disposition**

Page 1

**(Cite as: 72 F.3d 129, 1995 WL 712765 (6th Cir.(Ky.)))**

**C**
NOTICE:   THIS   IS   AN   UNPUBLISHED
OPINION.

(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing in
the Federal Reporter. Use FI CTA6 Rule 28 and FI
CTA6 IOP 206 for rules regarding the citation of
unpublished opinions.)

United States Court of Appeals, Sixth Circuit.

Detrick Lamonte DYER, Plaintiff-Appellant,
v.
Larry CASEY, and Lexington-Fayette Urban
County Government, Defendant-Appellee.

**No. 94-5780.**

Dec. 4, 1995.

On Appeal from the United States District Court,
for the Eastern District of Kentucky, No. 93-00171;
Karl S. Forester; District Judge.

E.D.Ky.

AFFIRMED.

Before:   MARTIN   and   BATCHELDER,   Circuit
Judges, and COOK, District Judge. [FN*]

PER CURIAM.

**\*\*1** Detrick Dyer appeals several issues arising out
of his § 1983 action against Larry Casey, a
Lexington, Kentucky police officer, and the
Lexington- Fayette Urban County Government.

Dyer's complaint alleged that he was subjected to an
unreasonable strip search which violated the Fourth
and Fourteenth Amendments to the United States
Constitution and § 10 of the Kentucky Constitution.
Here, he claims that the district court erred: (1) in
awarding   summary   judgment   in   favor   of   the
Lexington-Fayette municipality; (2) in excluding
evidence of Casey's prior bad acts; (3) in directing
a verdict in favor of Casey on Dyer's claim that
Casey   initially   conducted   an   unconstitutional
pat-down search of Dyer; and (4) in refusing to
allow him leave to file an amended complaint
asserting a claim under the Equal Protection Clause.
We   conclude   that   none   of   these   complaints
warrant a reversal.

Dyer's claims were tried before a jury, and the
record indicates that, on January 13, 1993, Casey
pulled over the vehicle in which Dyer was a
backseat passenger in front of the Lexington Civic
Center in downtown Lexington. Another passenger,
Diallo Brooks, was seated in the front passenger
seat of the vehicle. Casey, who allegedly smelled
marijuana emanating from the interior of the
vehicle, asked the driver, Carlos Perdue for his
driver's license and returned to his patrol car.
Casey then called for back-up and two other officers
arrived at the scene. Dyer, Perdue, and Brooks
were asked to step out of the car. The officers
searched the car, found marijuana cigarettes in the
front seat, and placed Perdue and Brooks under
arrest, seating them in separate police cruisers.
The police also found drug paraphernalia in the
back seat, and Dyer alleged that one of the officers
subjected him to a pat- down search.

After Casey completed his search of the car, he
approached Dyer. Dyer claims that Casey told him
he was going to strip search him for drugs.
According to Dyer, Casey then subjected him to a
strip   search.   Casey   testified   that   when   he
approached Dyer, he asked Dyer whether he had
any drugs on his person. Dyer then stated, "No, I'll
show you," and pulled his pants and underwear
away from his body. Casey admits to shining his

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

72 F.3d 129 (Table)
**Unpublished Disposition**

Page 2

**(Cite as: 72 F.3d 129, 1995 WL 712765 (6th Cir.(Ky.)))**

flashlight into Dyer's underwear.

The district court awarded summary judgment in favor of the municipality, Lexington-Fayette Urban County Government, on the ground that Dyer failed to prove that Casey acted under a policy or custom of the municipality. *Monell v. Dep't of Social Servs.,* 436 U.S. 658, 695 (1978). We review the district court's award of summary judgment *de novo. Street v. J.C. Bradford, Co.,* 886 F.2d 1472, 1479 (6th Cir.1989). Summary judgment is appropriate where there exists no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56(c). The test for determining whether summary judgment is appropriate is "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co., Inc.,* 879 F.2d 1304, 1310 (6th Cir.1989) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986)). The burden is on the moving party to show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Street.* 886 F.2d at 1479. If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

**\*\*2** Dyer argues that the liability of the Lexington-Fayette County Urban Government is based upon the investigative files of the police department, which reveal that the department conducted cursory investigations of several incidents involving complaints made against Casey and did not discipline Casey sufficiently. This Court has held that a failure to investigate complaints or discipline officers can give rise to § 1983 liability. *Marchese v. Lucas,* 758 F.2d 181, 188 (6th Cir.1985), *cert. denied,* 480 U.S. 916 (1987); *see also Leach v. Shelby County Sheriff,* 891 F.2d 1241, 1247 (6th Cir.1989), *cert. denied,* 495 U.S. 932 (1990). The theory underlying these cases is that the municipality's failure to investigate or discipline amounts to a "ratification" of the officer's conduct. Dyer argues that, under the reasoning of *Marchese* and *Leach,* a genuine issue of material fact existed as to whether the

department's treatment of the various incidents involving Casey amounted to a ratification of Casey's conduct. Dyer also relies on *Gutierrez-Rodriguez v. Cartagena,* 882 F.2d 553, 563-66 (1st Cir.1989), a case in which the First Circuit upheld the introduction of case files concerning past civilian complaints into evidence on a theory of municipality liability under § 1983.

However, *Marchese, Lucas,* and *Gutierrez-Rodriguez* are distinguishable. In all three cases, the responsible governmental entity took *absolutely no action* in the face of several prior incidents which should have required an investigation into the employee's conduct. Here, however, the department conducted meaningful investigations into the incidents involving Casey. This case is more like the situation presented to this Court in *Walker v. Norris,* 917 F.2d 1449, 1457 (6th Cir.1990), where we upheld the district court's directed verdict in favor of the defendants. In *Walker,* the plaintiff sued prison guards and the guard's supervisors for their alleged deliberate indifference in failing to prevent the death of an inmate. On the ratification issue, this Court found *Marchese* factually inapposite, noting that the prison's internal affairs division investigated the incident at issue thoroughly, whereas the officials in *Marchese* failed to conduct any kind of meaningful investigation. *Id.*

Similarly, here the police department conducted investigations of the incidents involving Casey. As a matter of law, the department's investigations into Casey's conduct do not amount to a "deliberate indifference" to Casey's alleged unconstitutional conduct. Accordingly, Dyer's claim against the municipality under a failure to investigate theory is without merit, and the district court properly awarded summary judgment in favor of Lexington-Fayette Urban County Government.

Dyer also claims that the district court erred in awarding summary judgment in favor of Lexington on his claim brought under § 10 of the Kentucky Constitution. He claims that, under Kentucky law, the municipality is liable for Casey's conduct under a *respondeat superior* theory. Dyer relies on *Ellis v. Jordan,* 571 S.W.2d 635 (Ky.Ct.App.1978), a case in which the plaintiff sued a police officer and

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

72 F.3d 129 (Table)
**Unpublished Disposition**

**(Cite as: 72 F.3d 129, 1995 WL 712765 (6th Cir.(Ky.)))**

the municipality for assault, battery and false imprisonment. *Ellis,* however, was a tort claim, not a state civil rights action. As such, it may be distinguished from the instant case.

**\*3** The Kentucky Supreme Court has in the past looked to federal law to determine state standards and procedures while analyzing a claim under Section Ten of the Kentucky Constitution. *See Yocum v. Burnette Tractor Co., Inc.,* 566 S.W.2d 755, 758 (1978). We believe that Kentucky courts would analogize to federal law and require Dyer to establish a policy or custom on the part of the municipality just as he is required to do under § 1983. Accordingly, the district court properly awarded summary judgment in favor of the municipality on Dyer's claim under Section Ten of the Kentucky Constitution.

The more difficult of Dyer's claims is that the district court erred in granting Casey's motion in limine prohibiting any reference to the events underlying Casey's written reprimand for conduct unbecoming an officer. He argues that this evidence was admissible under Federal Rule of Evidence 608(b) and FRE 404(b). In October of 1991, fifteen months before the encounter between Casey and Dyer, Casey made a racially derogatory remark and was disciplined for that remark. During his deposition testimony, when asked about the written reprimand, Casey stated that the reason he received a reprimand was that he, (1) had made a "comment," (2) did not have sufficient familiarity with the area in which he was patrolling with his training officer, and (3) forgot to bring required equipment on his shift. According to Casey's deposition testimony, he received a reprimand because "I neglected to bring that particular piece of equipment with me, so I was charged for conduct unbecoming because I was a probationary officer...." The actual reprimand, however, focuses on the fact that Casey made a racially derogatory comment. Dyer argues that he should have been able to cross-examine Dyer about the reprimand and his deposition testimony because it relates directly to his character for truthfulness under FRE 608(b).

We review the district court's evidentiary rulings for abuse of discretion. *Snyder v. AG Trucking, Inc.,* 57 F.3d 484, 491 (6th Cir.1995). The district

court believed the evidence concerning Casey's racially derogatory remark to be of marginal relevance and highly prejudicial. We do not believe on this record that the district court abused its discretion in prohibiting reference to this evidence.

Dyer further argues that the district court abused its discretion by refusing to amend the scheduling order to allow Dyer to file an amended complaint. We disagree. This issue is governed by Fed.R.Civ.P. 16(b) and 15(a). Rule 16(b), which governs scheduling orders, allows modifications of the scheduling order "upon a showing of good cause." Under Rule 15(a), which states that leave to file an amended complaint shall be "freely given when justice so requires," courts may consider factors such as undue delay, dilatory motive on the part of the movant, and undue prejudice to the opposing party in determining whether to allow leave to file an amended complaint.

**\*4** In this case, the district court required all motions to amend to be filed by January 1, 1994. On March 24, 1994, the defendants filed their motion in limine to prohibit reference to Casey's racially derogatory remark. In the motion, the defendants pointed out that Dyer had not pled racial animus or a racially discriminatory motive, and that, as a result, Casey's racially derogatory remark was irrelevant. On April 7 Dyer filed a response to the defendant's motion, making no reference to a proposed amendment to the complaint. On May 5, the district court granted defendants' motion in limine, primarily because Dyer had not pled a racial issue. On May 9, Dyer motioned the court to amend the scheduling order and for leave to file an amended complaint. The trial was scheduled to begin the next day, on May 10.

Dyer argues that the "unexpected" court ruling on May 5, which prohibited reference to Casey's remark, should have been grounds for allowing his May 9 motion for a change in the scheduling order and leave to file an amended complaint. However, it appears that Dyer was on notice that the defendants were relying on the fact that he had not pled a racial animus in support of their motion in limine as early as March 24, the day the defendants filed their motion. Dyer did not file his motion for

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

72 F.3d 129 (Table)
**Unpublished Disposition**

**(Cite as: 72 F.3d 129, 1995 WL 712765 (6th Cir.(Ky.)))**

an amendment in the scheduling order and leave to file an amended complaint until May 9, one day before trial. Accordingly, the district court did not abuse its discretion by refusing to change the schedule of trial and by refusing to allow the amended complaint.

Finally, Dyer argues that the district court improperly granted a directed verdict in favor of Casey on his claim that Casey conducted a pat-down search in the absence of a reasonable suspicion that Dyer was armed and dangerous. We review the district court's grant of a directed verdict *de novo.* A directed verdict is proper where "the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion as to the verdict...." *Moore v. City of Paducah,* 890 F.2d 831, 835 (6th Cir.1989) (citations and quotations omitted). A mere scintilla of evidence in support of the nonmoving party's case is not enough, there must be evidence sufficient for the jury to find in favor of the nonmoving party. *Id.*

The only evidence introduced at trial that a pat-down search even occurred was Dyer's uncorroborated testimony. Casey denied even touching Dyer. Dyer's fellow passengers in the car, who claimed to have witnessed the strip search, did not testify that they observed a pat-down search. Dyer's attorney never questioned Casey as to whether he conducted a pat-down search or whether Casey had an articulable suspicion for conducting a search. Under these facts, we believe the district court properly directed a verdict in favor of Casey on this issue.

All the remaining issues were submitted to the jury, which found for the defendant Casey. We AFFIRM.

      FN* The Honorable Julian A. Cook, Chief United States District Judge for the Eastern District of Michigan, sitting by designation.

72 F.3d 129 (Table), 1995 WL 712765 (6th Cir.(Ky.)), Unpublished Disposition

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works