UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


| | | |
|---|---|---|
| VIVIAN BERT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. C-1-02-467 |
| | ) | Judge Beckwith |
| AK STEEL CORPORATION, | ) | Magistrate Judge Hogan |
| | ) | |
| Defendant. | ) | |


PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT AK STEEL'S
MOTION FOR SUMMARY JUDGMENT ON COUNTS III AND IV OF THE SECOND
AMENDED COMPLAINT


The Plaintiffs respectfully submit this Memorandum in Opposition to Defendant AK Steel's

Motion for Summary Judgment on Counts III and IV of the Second Amended Complaint.  The

Defendant's motion is entirely based on an argument of *res judicata*.

I.    **INTRODUCTION**

Counts III and IV of the Second Amended Complaint in the instant case assert an entirely

different cause of action involving a different and separate injury based upon an entirely different and

separate nexus of facts and transactions than was litigated by this Court in Allen Roberts' individual

case, *Roberts v. AK Steel*, Case No. 1:02cv:656 (S.D. Ohio, 2004) (J. Beckwith) (hereinafter

"*Roberts*").

In the instant case, Roberts claims injury-in-fact that is fairly traceable to the Defendant's

unlawful hiring practice irrespective of the claims litigated in his individual case.  Roberts' injury in

the instant case is an injury to his personal, associational right to work in an integrated working

environment that is unaffected by racial discrimination. Roberts charges AK Steel with failure to provide a diverse work environment that harmed his associational right to work in an integrated environment and that caused him emotional and psychological distress as well as denying him possible advantageous personal, professional or business contacts with persons of his own race. Furthermore, Roberts suffered the emotional and psychological harm of being stigmatized as a "token" black employee. Roberts charges AK Steel with intentionally screening out African American applicants for employment so as to keep the number of black employees at AK Steel very low. As one of the few African American applicants to be allowed through AK Steel's unlawful racial screening process, Roberts was placed in an untenable situation of being hired to advance AK Steel's agenda of <u>appearing</u> to have a nondiscriminatory workplace when, in fact, AK Steel was making concerted efforts to keep the black employee population of its workforce very low. When Roberts became aware of AK Steel's unlawful hiring practices and his role in AK Steel's hiring policy, he suffered emotional and psychological distress and injury. Regardless of this Court's finding that Roberts was not wrongfully terminated in retaliation for his involvement in the instant lawsuit, nevertheless, Roberts asserts in this case that he still suffered an injury based upon AK Steel's unlawful hiring practices and that his injury was that he was denied the right to work in an integrated environment free of racial discrimination with all the emotional, psychological and associational injury attending upon this circumstance. This injury occurred and would have occurred had Roberts never been terminated.

Roberts' individual case did not address or litigate the Defendant's unlawful hiring practice or the harm it did to Roberts as one of the very few black employees to have been allowed to pass through the screen set up by the Defendant's intentional practice of unlawfully limiting the number

of black employees it hires. In other words, whereas Roberts' individual case was predicated exclusively on Roberts' employment at AK Steel, in the instant case, Roberts' claims are more widely predicated because they involve allegations of unlawful hiring practices on the part of AK Steel that are not exclusively focused on Roberts. As discussed more fully *infra*, courts have recognized the claim Roberts makes in the instant case as a separate cause of action under both Title VII and § 1981.

Moreover, the claims Roberts brings in Counts III and IV of the Second Amended Complaint in the above-styled case **could not** and **should not** have been brought in his individual case. Roberts' claims in Courts III and IV involve an entirely different cause of action predicated upon an entirely different nexus of facts and transactions than was litigated in his individual case. Thus, the Defendant's Motion for Summary Judgment as to Courts III and IV of the Second Amended Complaint based on *res judicata* has no basis in the law and is due to be denied as a matter of law.

## II.    PROCEDURAL HISTORY

### A.    *Bert, et al. v. AK Steel*

*Bert, et al. v. AK Steel*, Case No. C-1-02-467 (hereinafter "*Bert*") is the case at bar. Sixteen (16) African American applicants for employment at AK Steel and Allen Roberts, also African American, who, at the time the Complaint was filed on June 26, 2003, was an employee of AK Steel. Subsequently, on September 12, 2002, Roberts was terminated from his employment. The Plaintiffs filed a Second Amended Complaint on January 19, 2005. The suit was brought as a class action lawsuit with the sixteen (16) African American applicants seeking to represent a class of African American applicants who have been denied employment by AK Steel. Roberts also sought to

represent a class of employees whose associational rights to a working environment free of racial discrimination were allegedly violated by AK Steel's unlawful hiring practices. Roberts withdraws his class claim, and continues to purpose his individual claim against AK Steel in *Bert*. The sixteen (16) African American applicants claimed discrimination in hiring in violating of the Civil Rights Act of 1986, 42 U.S.C. § 1981 (hereinafter "§ 1981") and in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000(e), *et seq.* (hereinafter "Title VII"). Allen Roberts brought his claim of discrimination in employment for violation of his right to work in a racially integrated environment under both § 1981 and Title VII.

Discovery is still on going at the present time. On March 1, 2005, the Plaintiffs will deliver to the Defendant an expert report that concludes that there is a statistically significant shortfall in the hiring of African American applicants by AK Steel. No depositions have been taken. The Defendant filed its Motion of Defendant AK Steel Corporation for Summary Judgment on Counts III and IV of the Second Amended Complaint on January 21, 2005, to which the Plaintiffs now reply.

**B.** ***Roberts v. AK Steel***

*Roberts v. AK Steel*, Case No. 1:02cv:656 (S.D. Ohio, 2004) (J. Beckwith) was brought by Allen Roberts against AK Steel on September 13, 2002, claiming retaliation and disparate treatment under Title VII. AK Steel terminated Roberts from his employment on September 17, 2002. Roberts filed a "First Amended Complaint" on June 24, 2003, to include state law claims and to include incidents surrounding his alleged wrongful termination. Roberts' EEOC charge, filed on April 7, 1999, was a "third-party" charge alleging that AK Steel discriminated against African Americans in its hiring practices, and a copy of this charge was appended to Roberts' Complaint. Subsequently, on September 27, 1999, Roberts filed a supplemental EEOC charge alleging disparate

treatment and retaliation, which was also appended to his original Complaint. Roberts' claims of disparate treatment and retaliation, including wrongful termination were dismissed with prejudice on February 24, 2004, when this Court granted summary judgment on all counts. Roberts' appeal of this decision was dismissed, and the judgment in *Roberts* is now final. (Doc. No. 58).

## III. <u>STATEMENT OF FACTS</u>

Discovery is currently ongoing in this case; therefore, no facts have yet been entered. The Plaintiffs' expert report will be presented to the Defendant on March 1, 2005, the day after the Plaintiffs file their instant opposition to the Defendant's motion for summary judgment on Counts III and IV wherein the Defendant presents an argument for summary judgment based entirely on *res judicata*. The Plaintiffs' expert report will show a statistically significant shortfall in AK Steel's hiring of African American applicants. Roberts' injuries based upon the claim he makes in Counts III and IV have been properly alleged in the Second Amended Complaint. Because the instant motion does not address the merits of the case at bar, Roberts' statement of his alleged injuries is sufficient for the disposition of the instant motion. At the time this Court properly considers the merits of Roberts' claim, the Plaintiffs will have completed discovery and will have presented all of the facts underlying Roberts' claims that he states in Counts III and IV. It is simply not appropriate or timely under the current motion to consider the merits of Roberts' claims stated in Counts III and IV.

## III. <u>SUMMARY JUDGMENT STANDARD</u>

Federal Rule of Civil Procedure 56(c) provides that a party is entitled to summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." The moving party bears the burden of presenting evidence that demonstrates the nonexistence of any issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159 (1970). Until the movant has met its burden, the opponent of a summary judgment motion is under no obligation to present any evidence. *Id.* at 160-61. Furthermore, the Supreme Court has stated that "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential that party's case, and on which that party will bear the burden at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In conducting the summary judgment analysis, [the] court must view all inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party." *Anthony v. BTR Automotive Sealing Systems, Inc.*, 339 F.3d 506, 511 (6th Cir. 2003).

## IV.    ARGUMENT

### A.    *Res judicata* Standard

The Sixth Circuit has set out the principles governing *res judicata*, or claim preclusion, as follows:

> The doctrine of *res judicata*, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in a prior action. As stated by this court, *res judicata* has four elements: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies: (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Kane v. Magna Mixer Co.,* 71 F.3d 555, 560 (6th Cir. 1995) (internal citations omitted). There is no dispute that there was a final decision on the merits in *Roberts*. There is also no dispute that *Bert* is a

6

subsequent action between somewhat different parties since in *Bert* sixteen other plaintiffs join Roberts in their charge of discriminating hiring practices by AK Steel.  As to Counts III and IV in *Bert,* which comprise the subject of the Defendant's instant motion for summary judgment, there is an identity of parties since in *Roberts,* it was obviously Roberts who brought the complaint.  The dispute in the instant motion involves the third and fourth elements of *res judicata*, as articulated by the 6th Circuit, i.e, whether the issues raised in Counts III and IV in *Bert* were litigated or should have been litigated in *Roberts*, and the related issue of whether the claims articulated in Counts III and IV in *Bert* constitute an identical "cause of action" as was litigated in *Roberts.* These issues are discussed in turn, *infra.*

> **B.    Counts III and IV of the Second Amended Complaint in the Instant Case <u>Were</u> Not Litigated in *Roberts* and <u>Could Not</u> and <u>Should Not</u> Have Been Litigated in *Roberts.***

Count III of the Second Amended Complaint in the instant case states, *inter alia*, as follows:

> AK Steel has discriminated against Plaintiff Roberts . . . by denying AK Steel employees the right to work in a racially integrated environment free from racial discrimination and the enjoyment of all benefits, privileges, terms and conditions of working in a racially integrated environment, in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.,* as amended.

Second Amended Complaint (hereinafter "*Bert,* Second Amended Complaint"), filed 1/19/2005 in *Bert*, ¶ 156.

Count IV of the Second Amended Complaint in *Bert* is identical to Count III except that Court IV alleges that AK Steel discriminated against Roberts by denial of his right to work in a racially integrated environment "in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as

amended."[1] *Bert,* Second Amended Complaint, ¶ 161.

As discussed more fully in Section IV.C., *infra*, the cause of action Roberts brings in *Bert* contains three elements: (1) AK Steel intentionally discriminated against African American applicants in its hiring practices; (2) Roberts was injured; and (3) there is a connection between AK Steel's unlawful hiring practices and Roberts' injury. *See Gray v. Greyhound Lines, East*, 545 F.2d 169, 175 n. 16 (D.C. Cir. 1976) (recognizing African American employees' cause of action against Greyhound for injury to their right to an integrated working environment due to Greyhound's discriminatory hiring practices and stating that "[w]hether plaintiffs will ultimately be able to prove the elements of their claim—the illegality of Greyhound's hiring practices, their injuries, and the connection between the hiring practices and the injuries—cannot be resolved on a motion for summary judgment"). As discussed more fully below, the elements of the causes of action Roberts brings in Counts III and IV of the Second Amended Complaint were not litigated by this Court in Roberts' individual case, nor should they have been litigated in Robert's individual case.

### 1.    Counts III and IV of the Second Amended Complaint in the Instant Case Were Not Litigated in *Roberts*.

This Court's Memorandum and Order (Doc. No. 53), filed on February 24, 2004, (hereinafter "Memorandum and Order") in *Roberts* makes clear that summary judgment was granted on Roberts' retaliation, wrongful termination, and disparate treatment claims that he brought in his individual case under Title VII. Roberts' First Amended Complaint (Doc. No. 27), filed on June 24, 2003, (hereinafter "*Roberts,* First Amended Complaint") contained five counts against AK Steel: Count I alleged retaliation under Title VII; Count II alleged retaliation under O.R.C. § 4112.02(1); Count III

---

[1] In Counts III and IV of the Second Amended Complaint in *Bert*, Roberts asserts his associational right for himself as well as for a class of employees similarly situated. Roberts will not pursue his class claims as stated in Counts III and IV.

alleged race discrimination in disparate treatment under Title VII; Count IV alleged race discrimination in disparate treatment under O.R.C. § 4112.01; and Count V alleged violation of Ohio Public Policy. *Roberts,* First Amended Complaint, ¶¶ 42-70. This Court dismissed Counts III and IV finding that Roberts' opposition did not mention these claims. Memorandum and Order at 5. This Court noted that it had previously granted judgment to Defendant with respect to Count V. *Id.* at 1 n.1. Then, this Court analyzed Roberts' retaliation claims using the familiar *McDonnell Douglas/Burdine* mode of analysis and granted summary judgment as to Counts I and II. *Id.* at 9-19.

None of the claims Roberts brought in his individual case and none of the analyses of his claims, either by Roberts, by the Defendant or by this Court, involved AK Steel's hiring practices or the injury to Roberts caused by these hiring practices. As the Plaintiffs argue, *infra,* such an analysis would have been immaterial to Roberts' claims of retaliation and disparate treatment.

The Defendant attempts to show that the causes of action litigated in *Roberts* are the same as the cause of action brought by Roberts in *Bert* by juxtaposing various references to race discrimination in both cases. Motion of Defendant AK Steel Corporation for Summary Judgment on Counts III and IV of the Second Amended Complaint (hereinafter "Defendant's Motion for Summary Judgment"), pp. 3-5. Such a comparison is not dispositive of the question of whether there is an identity of cause of action in *Bert* and *Roberts.* Certainly, both cases involve charges of race discrimination under Title VII, and *Bert* charges race discrimination under § 1981 as well. Such general references to race discrimination in both cases does not offer this Court the kind of analysis that is required for a determination of whether the preclusive effect of *res judicata* should apply to Counts III and IV in *Bert.*

---

Of course, Roberts' individual claims as stated in Counts III and IV are the subject of the instant motion.

As explained more fully in Section IV.C., *infra*, the question of the preclusive effect of *res judicata* depends upon "the unlawful violation of a right which the facts show." *Nevada v. United States,* 463 U.S. 110, 131 n. 12 (1983). In *Bert*, Roberts attempts to vindicate an associational right to work in an integrated work environment unharmed by racial discrimination which he clearly states in Counts III and IV of the Second Amended Complaint in *Bert,* and which was not stated at all in the Amended Complaint in *Roberts*. As courts note, the proper comparison in terms of the language that defines a cause of action brought in a lawsuit is the language of the two complaints compared to one another, particularly the language of the Counts alleged. Rather than conducting that simple comparison, the Defendant first compares the language of the April 7, 1999 EEOC charge of *Roberts* with the Second Amended Complaint in *Bert*. Defendant's Motion for Summary Judgment, p. 3-4 ¶ 1. Next, the Defendant finds an identity of cause of action by comparing ¶ 59 of the First Amended Complaint with ¶ 1 of the Second Amended Complaint in *Bert*. *Id.* at p. 4, ¶ 2. Both paragraphs allege race discrimination to be sure, but ¶ 1 of the Second Amended Complaint in *Bert* hardly constitutes the language of the cause of action Roberts bring in *Bert*, which is contained in Counts III and IV where he clearly alleges a violation of his associational right. Thirdly, the Defendant compares the language of certain exhibits attached to Robert's Amended Complaint in his individual case coupled with "numerous terms and conditions of his employment that he believed were affected, including disciplinary actions, his opportunity to work overtime, transfers he received, and an alleged denial of promotional opportunities" in his Amended Complaint in his individual case to ¶ ¶ 156 and 161 of the Second Amended Complaint in *Bert* where Roberts clearly states that he is bringing a cause of action for a violation of his right to work in a racially integrated environment free from racial discrimination. *Id.* at p. 4 ¶ 3. Again, this comparison is not illuminating as to the

question of whether there is an identity of causes of action in *Bert* and in *Roberts*.  It is simply not a comparison of the language of the Counts alleged by Roberts in each case.  Finally, in ¶ 4 on page 4 of the Defendant's Motion for Summary Judgment, the Defendant compares the language of a series of exhibits to Robert's Amended Complaint in his individual case to the language of ¶ ¶ 4 and 156 of the Second Amended Complaint in *Bert*.  Again, the Defendant attempts to show an identity of causes of action by picking out similar language referring to race discrimination in a series of documents.  The proper comparison of the sort that the Defendant attempts to make is to compare the language of the Counts alleged in *Roberts* with the language of Counts III and IV in *Bert*.  Such a comparison clearly shows that Roberts brings separate and distinct causes of action in *Bert* from what was litigated in *Roberts*.

Roberts alleged the following counts in his Amended Complaint in *Roberts* which are pertinent to this analysis:

> Count I—Retaliation—Title VII.
> 43.    Defendant treated Plaintiff differently from other similarly-situated Caucasian employees and employees who have not filed charges of race discrimination against Defendant or complained of unlawful acts of race discrimination against Defendant or complained or unlawful acts of race discrimination by Defendant, and further, engaged in a pattern and practice of retaliation against Plaintiff in violation of Title VII.
>
> Count III—Race Discrimination—Title VII.
> 59.    Defendant treated Plaintiff differently from other similarly-situated Caucasion employees, and further, engaged in a pattern and practice of race discrimination in violation of Title VII.

*Roberts*, Amended Complaint, ¶ ¶ 43 and 59.

Roberts alleged the following counts in *Bert,* which are pertinent to this analysis and which

11

are the counts upon which the Defendant presently seeks summary judgment:

> Count III—Discrimination in Employment Due to Hiring
> Discrimination in violation of Title VII
>
> 156.   AK Steel has discriminated against Plaintiff Roberts . . . by
> denying AK Steel employees the right to work in a racially
> integrated environment free from racial discrimination and the
> enjoyment of all benefits, privileges, terms and conditions of
> working in a racially integrated environment, in violation of
> the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, as
> amended.
>
> Count IV—Discrimination in Employment Due to Hiring
> Discrimination in Violation of § 1981
>
> 161.   AK Steel has discriminated against Plaintiff Roberts . . . by
> denying AK Steel employees the right to work in a racially
> integrated environment free from racial discrimination and the
> enjoyment of all benefits, privileges, terms and conditions of
> *Nevada v. United States,* 463 U.S. 110, 130 (1983), working
> in a racially integrated environment, in violation of the Civil
> Rights Act of 1966, 42 U.S.C. § 1981, as amended.

*Bert*, Second Amended Complaint, ¶¶ 156 and 161.  Clearly, Counts I and III of *Roberts* assert

retaliation and disparate treatment, respectively, and Counts II and III of *Bert* assert the associational

right to an integrated environment free from racial discrimination.[2]  As discussed more fully in

---

[2] The Defendant cites *Havercombe v. Department of Educ. Of the Commonwealth of Puerto Rico,* 250 F.3d 1 (1st Cir. 2001) and *Clark v. Haas Group, Inc.*, 953 F.2d 1235 (10th Cir. 1992) in support of its argument that there is an identity of causes of action in *Bert* and *Roberts* such that Counts III and IV in *Bert* should be barred by the principle of *res judicata*.  These cases are easily distinguishable from the case at bar.  In *Havercombe*, the court upheld the district court's bar against a second lawsuit brought by the same plaintiff against the same defendant.  The plaintiff had received a substantial jury award in his first lawsuit for racial discrimination under Title VII for failure to promote and work place harassment that occurred before 1997, the closing date of the lawsuit.  When Havercombe brought a second, virtually identical lawsuit alleging the same causes of action for failure to promote and work place harassment but for the time period after 1997 and this time under § 1981  The Second Circuit disallowed the second lawsuit finding that "the descriptive allegation in the complaint filed in the second action were materially the same as those in the first lawsuit." The Plaintiffs have no disagreement with this result.  Under the analysis presented by the Plaintiffs in their instant opposition, the "cause of action" was identical in the two *Havercombe* lawsuits even though one was brought under Title VII and one was brought under § 1981.  This is because the same nexus of facts and transaction applied to both lawsuits even though the time frame was different and the claim was brought under § 1981 rather than Title VII in the second lawsuit.  The court found that the claim under § 1981 "could have and should have" been brought in the first *Havercombe*

Section IV.C., *infra*, the language of these various counts asserts three distinct causes of action.

> **2.     Counts III and IV of the Second Amended Complaint in the Instant Case <u>Could Not</u> and <u>Should Not</u> Have Been Litigated in *Roberts*.**

It is the Plaintiffs' position that Roberts' associational right to an integrated work environment, which he pled in Counts III and IV of the Second Amended Complaint in *Bert*, could not have been litigated in *Roberts* simply because Roberts did not pled that cause of action in his individual case. Beyond this observation, the Plaintiffs further argue that Roberts' associational right to an integrated work environment <u>should</u> not have been litigated in his individual case. Litigating Roberts' associational claim in his individual lawsuit would have created an awkward and confusing trial situation. The array of facts, expert reports and witnesses required for proof of AK Steel's unlawful hiring practices are simply unrelated to the proof required by the claims of retaliation and disparate treatment made in Roberts' individual suit. *See Nevada v. United States*, 463 U.S. 110, 131 n. 12 (1983) (citing the *Restatement (Second) of Judgments* § 24 for its suggestion that whether the facts "form a convenient trial unit" is a consideration, *inter alia*, for determining whether there is an identity of causes of action).

> **C.     The "Causes of Action" Pled in *Roberts* Are Different than the "Cause of Action" Pled in Counts III and IV of the Second Amended Complaint in the Instant Case.**

---

lawsuit. In the instant case, Roberts does not assert the same cause of action in *Bert as* he brought in his individual lawsuit , as argued herein. *Havercombe* cannot be used to support *res judicata* in the instant case.

In *Clark*, the plaintiff's second lawsuit was identical to her first lawsuit in that both lawsuits involved her employment by the defendant at the identical time period. In her first lawsuit, the plaintiff sued only for unpaid overtime compensation under the FLSA. When the plaintiff later sued for equal pay under the EPA and for age discrimination under the ADEA, the court disallowed her second lawsuit. The court reasoned that the same nexus of facts controlled all of the claims made in both lawsuit, and that the claims made in the second lawsuit could have and should have been brought in the first. *Clark* is wholly unlike the instant case where an entirely different set of facts, particularly those regarding AK Steel's hiring practices, are invoked in Counts III and IV of *Bert* while there was no need at all to consider AK Steel's hiring practices in Roberts' individual law suit. Neither of the cases cited by the Defendant support a finding of *res judicata* in the instant case.

Courts note that the question of an identity of causes of action for purposes of claim prelusion can be a difficult one.  *See Donegal Steel Foundry Co. v. Accurate Products Co.,* 516 F.2d 583, 588 n. 10 (3d Cir. 1975) (noting that "the term 'cause of action' cannot be precisely defined, nor can a simple test be cited for use in determining what constitutes a cause of action for *res judicata* purposes").  As the Supreme Court explained in *Nevada, supra,* at 130, "[d]efinitions of what constitutes the 'same cause of action' have not remained static over time."  The Supreme Court explained as follows:

> Under the first Restatement of Judgments § 61 (1942), causes of action were to be deemed the same 'if the evidence needed to sustain the second action would have sustained the first action,'  In the Restatement (Second) of Judgments (1982), a more pragmatic approach, one 'not capable of a mathematically precise definition,' was adopted.  *Id.* § 24, comment b.  Under this approach causes of actions are the same if they arise from the same 'transaction'; whether they are products of the same 'transaction' is to be determined by 'giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* § 24.

*Id.* at 131 n. 12.  The Supreme Court went on to note its reasoning in *Baltimore Steamship Co. v. Phillips*, 274 U.S. 316 (1927) as follows:

> A cause of action does not consist of facts, but of the unlawful violation of a right which the facts show.  The number and variety of the facts alleged do not establish more than one cause of action so long as their result, whether they be considered severally or in combination, is the violation of but one right by a single legal wrong .  . . .  The facts are merely the means, and not the end.  They do not constitute the cause of action, but they show its existence by making the wrong appear.  The *thing*, therefore, which in contemplation of law as its *cause*, becomes a ground for action, is not the group of *facts* alleged in the declaration, bill or indictment, *but the result of these in a legal wrong, the existence of which, if true, they conclusively*

14

*evince.*

*Id.* (citing *Baltimore Steamship Co. v. Phillips*, 274 U.S. 316, 321 (1927) (internal citations omitted)).  Recently, the Sixth Circuit has stated simply that "[a] cause of action is an attempt by the plaintiff to vindicate what he believes is a legal right or obligation owed." *Combs v. International Insurance Company*, 354 F.3d 568, 591 (6th Cir. 2004).  Other circuits have established tests for determining whether there is an identity of causes of action in two separate lawsuits such that the second would be precluded by the judgment rendered in the first.  The Third Circuit established the following test in one case for whether there is an identity of causes of action, as follows:

> (1)  whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions);  (2)  whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the *material* facts alleged are the same.

*Athlone Industries, Inc. v. Consumer Product Safety Commission*, 746 F.2d 977, 984 (3d Cir. 1984) (emphasis in original).

### 1.    There is no identity of "cause of action" as between *Roberts* and *Bert*.

By whatever test this Court may use, there is no identity of "cause of action" as between *Roberts* and *Bert*.  The evidence that must be proved is not the same for retaliation and disparate treatment claims and a claim of a violation of an associational right.  Evidence of unlawful hiring practices is not brought forth in retaliation and disparate treatment claims because such evidence is immaterial to these claims.  For an associational right claim, proof of unlawful hiring practices is fundamental to show a violation of an associational right to an integrated work environment.  The acts complained of in Roberts' individual lawsuit were not the same acts complained of in Counts III

and IV in *Bert*. In Roberts' individual suit, he complained of retaliation, including wrongful termination in retribution for his involvement in *Bert*, as well as race discrimination for that involvement. In *Bert*, Robert complains that AK Steel's unlawful hiring practices created an emotionally and psychologically injurious working environment for him since AK Steel's unlawful hiring practices violated his associational right to an integrated working environment. Because the acts complained of are different in the two lawsuits, the relief sought in the two lawsuits differs. In *Roberts*, Roberts sought reinstatement into his employment at AK Steel, as well as compensatory and punitive damages whereas in *Bert*, Roberts seeks injunctive relief including a change in AK Steel's hiring practices, as well as compensatory and punitive damages for his emotional and psychological injury. Roberts does not seek reinstatement into his employment at AK Steel in *Bert*.

The relief sought differs in *Roberts* and *Bert* because the theory of recovery is not the same in both lawsuits.[3] As discussed, *supra*, the elements of Roberts' retaliation and disparate treatment claims are entirely different than the elements of Roberts' associational claim. The witnesses and documents that will be used to prove Roberts' associational claim in *Bert* are entirely different that the witnesses and documents Roberts brought in his individual case. Perhaps most significantly, the

---

[3] Roberts did not bring a § 1981 claim in his individual suit, and this Court did not grant summary judgment based on § 1981 in *Roberts*. However, Roberts' claim of a violation of associational right in *Bert* was brought under both Title VII and § 1981. Roberts does not base his opposition to summary judgment in the instant motion on the omission of § 1981 in his individual case and the inclusion of § 1981 in the instant case. It is clear that Title VII and § 1981 provide separate claims and create a separate basis for liability. *See Patel v. The Board of Governors of State Colleges and Universities*, 1997 WL 399644, No. 92 C 8300 at *3 (N.D. Ill. July 11, 1997); *West v. The Boeing Company*, 851 F.Supp. 395, 399 (D. Kan. 1994); *Grimes v. Superior Homes Health Care of Middle Tennessee, Inc.*, 929 F.Supp. 1088, 1094 (M.D. Tenn. 1996). Yet, the Plaintiffs' opposition to the instant motion is not based upon the omission of § 1981 in Roberts' individual case and its inclusion in *Bert*. Rather, the Plaintiffs' opposition in the instant motion is based on the difference in the "causes of action" brought in *Roberts* and *Bert*. Had Roberts merely reasserted his retaliation claim and his disparate treatment claim in *Bert* but had asserted those claims under § 1981, his retaliation claim and his disparate treatment claim under § 1981 would be properly barred by *res judicata* due to the grant of summary judgment on those claims under Title VII in his individual case. In *Bert*, Roberts brings an entirely different cause of action than he brought in his individual case, which, the Plaintiffs argue, should not be barred by *res judicata* because Roberts' associational right was never asserted or litigated in *Roberts*.

16

material facts of AK Steel's unlawful hiring practices, the facts of Roberts' injury to his associational right, and the facts concerning the connection between the two are the facts that give rise to the legal wrong of the violation of Roberts' associational right to an integrated working environment for which Roberts seeks redress in the instant case.

> **2.    Courts have recognized Roberts' claim of his associational right to an integrated working environment that he brings in Counts III and IV of the Second Amended Complaint in the instant lawsuit as a cause of action under Title VII and § 1981.**

*EEOC v. Bailey Company, Inc.,* 563 F.2d 439 (6th Cir. 1977) is the leading case in the 6th Circuit recognizing an employee's associational right to work in an environment free from racial discrimination under Title VII, which is the claim Roberts makes in Court III in the Second Amended Complaint of the case at bar.  In *Bailey*, the Sixth Circuit allowed a white female employee to sue her employer, whom she claimed had failed to recruit and hire African Americans, for her "loss of benefits from the lack of *interracial* associations."  *Id.* at 453 (emphasis in original).  In so ruling, the 6th Circuit relied upon the Supreme Court's ruling in *Trafficante v. Metropolitan Life Insurance Co.,* 409 U.S. 205 (1972), which the 6th Circuit determined "requires us to hold that the definition of 'a person claiming to be aggrieved' under Title VII includes a white person, . . . who may have suffered from the loss of benefits from the lack of association with racial minorities at work."  *Id.* at 452.  In *Trafficante*, the Supreme Court recognized the cause of action brought by white tenants of an apartment complex who alleged that because of their landlord's discrimination against nonwhites that they lost the social benefits and associations of living in an integrated community.  409 U.S. at 212.  The Supreme Court held that "the alleged injury to existing tenants by exclusion of minority persons from the apartment complex is the loss of important benefits from

interracial association." *Id.* at 210.  In ruling that an employee has an associational right to a working environment free from race discrimination, particularly when the employer's discriminatory hiring practices prevent the working environment from being integrated, the *Bailey* court found that "the purposes and effects of Title VII in the employment field are identical to the purposes and effects of Title VIII in the housing field."  563 F. 2d at 453.

A majority of Circuit Courts of Appeals have similarly found that standing to sue under Title VII, as well as under § 1981, for the violation of an associational right to an integrated work environment is co-terminus with the standing requirements of Article III of the Constitution.  As explained by the D. C. Circuit in *Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corporation*, 28 F.3d 1268, 1278 (D.C. Cir. 1994), "[s]tatutes [such as Title VII] confer a cause of action upon everyone who meets the Article III requirements—that is, anyone 'genuinely injured by conduct that violates *someone's* . . . rights' under the statute" (citing *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 103, n. 9. (1979)).  As the D. C. Circuit pointed out, its "case law establishes that Title VII is such a statute."  *Id.  See DeMatteis v. Eastman Kodak Company*, 511 F.2d 306 (2nd Cir. 1975) (granting white employee the right to sue his employer under § 1981 when the employee alleged that he was forced into early retirement when he sold his house to a black fellow employee); *Leibotitz v. New York City Transit Authority*, 252 F.3d 179 (2nd Cir. 2001) (holding that female employee had Article III standing under Title VII to bring suit when she alleged that discrimination directed against other women in her workplace, but not directed at herself, injured her own work environment).

Most significantly for the case at bar, at least two circuits have considered a claim of violation of an associational right to an integrated working environment when the claim was brought

by African American employees of a company charging that unlawful hiring practices by that company suppressed the number of black applicants hired and thereby violated their associational right to an integrated working environment free from racial discrimination.  In *Gray*, *supra*, a group of African American bus drivers brought a class action lawsuit charging Greyhound with maintaining discriminatory hiring practices in violation of Title VII and § 1981.  The plaintiffs claimed that Greyhound's hiring practices of suppressing the number of black bus drivers supported an atmosphere of discrimination that caused them psychological harm.  In recognizing this claim, the D.C. Circuit noted that the Supreme Court has recognized that "injuries to intangible interests fulfill the constitutional requirement [of Article III] as well as do injuries to economic interests." *Id.* at 175 (citing *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972)).  The Court then concluded, "We therefore see no reason why the psychological injuries which plaintiffs claim are caused by defendants' actions cannot serve as the basis for invoking judicial remedies against defendants." *Id.*  The court concluded that the "[p]laintiffs' claim that Greyhound's hiring practices support an atmosphere of discrimination which has caused plaintiffs psychological harm . . . satisfies . . . the usual test for standing [under Article III]." *Id.* 177.  The Court reasoned that "[the EEOC] policy [of consistently holding that Title VII grants an employee the right to a working environment free of racial intimidation], the congressional determination that standing to challenge unlawful employment practices should be liberally granted, and the consistent administrative interpretation of the scope of [Title VII] all support the conclusion that plaintiffs' claim implicates an interest at least arguably within the zone of interests to be protected or regulated by Title VII." *Id.* (internal citations omitted).  The D.C. Circuit also notes that "[t]he result is the same under § 1981."[4] *Id.* n. 20.

---

[4] In *Fair Employment Council of Greater Washington, Inc. v. BMC Marketing Corporation*, 28 F. 3d 1268 (D.C. Cir.

The Second Circuit has recently considered whether African American employees have standing to bring a claim under Title VII for the violation of their associational right to work in an integrated environment when their employer intentionally suppresses the number of black applicants who will be hired. In *Palmer v. Occidental Chemical Corporation*, 356 F.3d 235 (2nd Cir. 2004), the court ultimately upheld a grant of summary judgment on the plaintiffs' claim of a violation of their associational right to work in an integrated environment because the court found that the plaintiffs had not made out a prima facie case of the company's allegedly discriminatory hiring practices, and the court did not reach the question of "whether *Trafficante* applies to a Title VII claim of denial of interracial association in the workplace." *Id.* at 237. Nevertheless, the court's

---

1994), the D.C. Circuit has rejected its view in *Gray* that an associational right to an integrated work environment was equally cognizable under Title VII and § 1981. *Gray*, *supra*, at 1278-79. The *Fair Employment Council* court cited *Mackey v. Nationwide Insurance Companies*, 724 F.2d 419 (4th Cir. 1984) in support of its view that § 1981 "is restricted to the direct victims of the alleged discriminatory practice." 28 F. 3d at 1279. The court noted that other courts have come to a different result regarding associational rights under § 1981, as follows:

> This conclusion, although not our embrace of *Mackey*, seems to be in tension with *Gersman v. Group Health Association*, 931 F.2d 1565 (D.C. Cir. 1991) . . . . That case also involved a claim that the defendant had refused to contract with one person ("A") because of a discriminatory animus against someone else ("B"). But where *Clifton Terrace* [*Associates v. United Technologies Corp.,* 929 F.2d 714 (D.C. Cir. 1991)] held that A lacked standing to sue under § 1981 because any such suit would be an attempt to assert B's rights under the Statute, *Gersman* took the opposite view. Reasoning that § 1981 protects the right to make contracts, we held that B lacked standing because it was A—not B—with whom the defendant allegedly was refusing to contract.

28 F.3d at 1279 n. 4 (citing in contrast to its holding in *Fair Employment Council* , *Alizadeh v. Safeway Stores, Inc.* 802 F.2d 111, 114 (5th Cir. 1986) (recognizing cause of action under § 1981 where employer allegedly fired plaintiff because her husband was not white); *Parr v. Woodmen of the World Life Ins. Co.,* 7901 F.2d 888, 890 (11th Cir. 1986) (similar, where company allegedly refused to hire plaintiff because of his wife's race); *Fiedler v. Marumsco Christian School,* 631 F.2d 1144, 1149 (4th Cir. 1980) (recognizing cause of action under § 1981 where white students alleged that private school had expelled them for associating with blacks); *Patrick v. Miller*, 953 F.2d 1240, 1250 (10th Cir. 1992) (holding that such causes of action under § 1981 are "clearly established")). The Sixth Circuit has not taken a position as to whether § 1981 and Title VII differ in their recognition of an associational right to an integrated work environment. The Sixth Circuit has made it clear in *Bailey, supra*, that Title VII encompasses such a right. There is ample case law in other circuits, even considering the D.C. Circuit's comments on *Gray* in *Fair Employment Council*, and the *Fair Employment Council* court's citation of contrary cases which support the Plaintiffs' position in the instant motion, for this Court to recognize that Roberts has properly pled an associational right to an integrated working environment under both Title VII and § 1981. Nothing in the D. C. Circuit's opinion in *Fair Employment Council* threw doubt on its opinion in *Gray* that the African American bus drivers had a cause of action under Title VII for a violation of their associational right to an integrated working environment.

discussion offers guidance for the instant motion in the case at bar.  The court explained the associational right asserted as follows:

> Assertion of a denial of a right of interracial association has two components.  Initially, the plaintiff makes a third-party claim that persons with whom he or she would like to associate have been excluded from the relevant context on the basis of racial discrimination.  In addition, the plaintiff makes a first-party claim of denial of the benefits of associating, in a relevant context, with those who would have been included in the relevant context had they not been excluded because of a racially discriminatory selection process.

*Id.* at 236.  The Second Circuit notes that "[s]everal circuits have applied *Trafficante* to the workplace context, ruling that Title VII's phrase 'person claiming to be aggrieved,' 42 U.S.C. §§ 2000e-5 allows 'third-party' standing to the fullest extent permitted by Article III's case or controversy requirement."  *Id.* at 237 (citing *Angelino v. New York Times Co.* 200 F.3d 73, 90, 91 and n. 25 (3d Cir. 1999); *EEOC v. Mississippi College,* 626 F.2d 477, 481-83 (5th Cir. 1980) (cited in *Leibovitz v. New York City Transit Authority,* 252 F.3d 179, 186 n. 5 (2nd Cir. 2001)); *Waters v. Heublein, Inc.,* 547 F.2d 466, 469 (9th Cir. 1976); and *Gray v. Greyhound Lines, East,* 545 F.2d 169, 175-76 (D.C. Circuit 1976)).

    While the 6th Circuit has not yet considered a case where the associational right to an integrated working environment has been brought by an African American employee claiming racially discriminatory hiring practices on the part of his employer, it is clear in *Bailey, supra*, that the Sixth Circuit recognizes the associational right to an integrated working environment to be a separate cause of action under Title VII.  It is also clear that there is ample case law in other circuits to support a ruling that Roberts has brought a cognizable cause of action under both Title VII and § 1981 for a violation of his associational right to an integrated working environment in Counts III and

IV in the case at bar.

## V.     <u>CONCLUSION</u>

Allen Roberts has brought a cause of action in Counts III and IV of the instant case that is separate and distinct from the causes of action that were litigated in his individual case. Roberts' associational right to work in an environment free from racial discrimination could not and should not have been litigated in his individual case. Proof of the cause of action Roberts brings in Counts III and IV depends upon entirely different facts, expert reports and witnesses than were used in his individual case. In fact, the facts required to proof Robert's claims in the instant case would have been wholly immaterial to what was required in his individual case.

For the reasons stated, the Plaintiffs respectfully request that this Court deny the Defendant's Motion for Summary Judgment on Counts III and IV.

Respectfully submitted,


s/ ***Susan Donahue***
Robert F. Childs, Jr. (*pro hac vice*)
Barry V. Frederick (*pro hac vice*)
Herman Nathaniel Johnson, Jr. (*pro hac vice*)
Susan Gale Donahue (*pro hac vice*)
Allison W. Lowell (*pro hac vice*
WIGGINS, CHILDS, QUINN & PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500
(205) 254-1500 (facsimile)

Paul Henry Tobias (OH bar No. 0032415)
David Donald Kammer
TOBIAS, KRAUS & TORCHIA
414 Walnut Street

Suite 911
Cincinnati, Ohio 45202
(513) 241-8137
(513) 241-7863 (facsimile)

David W. Sanford (*pro hac vice*)
SANFORD, WITTELS & HEISLER, L.L.P.
2121 K Street N.W.
Suite 700
Washington, D.C. 20037
(202) 942-9124
(202) 628-8189 (facsimile)

*Attorneys for the Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will automatically serve the following:

Mr. Gregory P. Rogers
Mr. Lawrence James Barty
Ms. Patricia Anderson Pryor,
TAFT, STETTINIUS & HOLLISTER, LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957


s/ *Susan Donahue*
OF COUNSEL