UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VIVIAN BERT, et al. | : | Case No. C-1-02-467 |
| | : | |
| Plaintiffs, | : | Judge Beckwith |
| | : | |
| v. | : | Magistrate Judge Hogan |
| | : | |
| AK STEEL CORPORATION | : | DEFENDANT'S SURREPLY IN |
| | : | RESPONSE TO PLAINTIFFS' REPLY |
| Defendant. | : | MEMORANDUM AND IN |
| | : | OPPOSITION TO PLAINTIFF'S |
| | : | MOTION FOR CLASS |
| | : | CERTIFICATION |

## I. INTRODUCTION

Defendant AK Steel Corporation ("AK Steel") requested leave to file this surreply to respond to evidence and issues raised by Plaintiffs for the first time in their Reply Memorandum. Plaintiffs have filed a new report of their expert, Dr. Bradley ("Bradley Declaration") and then provided legal argument in their Reply using that new evidence. Furthermore Plaintiffs' Reply contains patently incorrect statements of law. AK Steel is entitled to respond to this new evidence and to these incorrect statements of law.

## II. ARGUMENT

A. Plaintiff's Reply Memorandum Misstates The Law; The Law Does Not Support The Continuing Violation Theory Espoused By Plaintiffs.

As discussed in Defendant's Memorandum in Opposition to Plaintiffs' Motion for Class Certification (Doc. # 73) ("Defendant's Opposition"), the claims in this case and any class are governed by the statute of limitations. Plaintiffs have limited their class claims to Title VII

disparate impact claims. In order to bring a Title VII claim, the Plaintiffs and the class members must have first filed a timely EEOC charge.

Individuals who did not file their own charge may "piggyback" onto the timely filed charge of another plaintiff if the charge relied upon is timely and not otherwise defective and arises out of discriminatory treatment similar to and occurring in the same time frame as that suffered by the party seeking to invoke the rule. *EEOC v. Wilson Metal Casket Co.*, 24 F.3d 836, 840 (6th Cir. 1994). *See also Laffey v. Northwest Airline, Inc.,* 567 F.2d 429, 472 (D.C. Cir. 1976), *cert. denied,* 434 U.S. 1086 (1978); *Payne v. Travenol Labs., Inc.,* 673 F.2d 798, 813-14 (5th Cr. 1982) (opening date for class limited to those who could have filed a charge at date of earliest charge), *cert. denied*, 459 U.S. 1038 (1982); *Morton v. ICI Acrylics, Inc.,* 69 F. Supp. 2d 1038, 1044 (W.D. Tenn. 1999) ("the single filing rule cannot save a plaintiff whose time limit elapsed prior to the filing of the EEOC charge he wishes to join.").

In *Howlett v. Holiday Inns, Inc.*, 49 F.3d 189 (6th Cir. 1995), a case relied upon by the Plaintiffs, the court held that an individual who did not have his own timely filed EEOC charge could piggyback onto a timely filed charge of another plaintiff where the piggybacking claim arose within the 300-day period prior to the other plaintiff's EEOC charge. *Id.* at 192, 196-97. The court in *Howlett* did not extend the statute of limitations -- it only allowed an individual to piggyback onto a charge that was timely filed with respect to the piggybacker's claims.

Any proposed class in this case is temporally limited by the earliest valid EEOC charge. (Bradley Supp. Report, attached to Doc. No. 71, p. 2 of 43 n.3). Individuals who claim to have failed the test outside the 300-day period prior to the earliest timely filed charge cannot proceed in this case either as plaintiffs or class members. Plaintiffs concede that the earliest such

charge in this case is Darrell Carter's charge for Ashland. Ashland individuals must claim to have failed the test after August 12, 2001 (300 days before Darrell Carter's EEOC charge); Middletown individuals must claim to have failed the test after September 12, 2001 (300 days before Donald Edwards's EEOC charge). There is no Middletown named Plaintiff who claims to have failed the test after one of these dates. Middletown Plaintiffs Donald Edwards and Thaddeus Freeman do not claim to have failed the test after either of these dates. Their claims are time-barred. They, and any potential class member who did not fail the test after August 12 or September 12, 2001, cannot piggyback onto one of the Plaintiff's EEOC charges because the charges were not timely filed with respect to any claims arising outside that 300-day period.

In a futile attempt to save these stale claims, Plaintiffs mischaracterize the law regarding the so called "continuing violation" theory. The Supreme Court in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) limited the use of the continuing violation theory when discrete acts are involved. Plaintiffs cite no case post-*Morgan* that allows a disparate impact claim based on discrete acts, like failure to hire, to save otherwise time-barred claims.

In order to establish a continuing violation, the Sixth Circuit requires a plaintiff to show the existence of a continuing over-arching policy of discrimination **and** a specific discriminatory act against the plaintiff within the limitation period. As the Sixth Circuit stated in *Dixon v. Anderson*, 928 F.2d 212, 217 (6th Cir. 1991), the mere existence of an alleged policy of violating rights will not toll the running of the statute of limitations, "there must be a specific allegedly discriminatory act against the plaintiff within the limitations period." *See also Blevins v. Gen. Elec. Co.*, 1993 WL 188381, *2 (6th Cir. 1993); *Conlin v. Blanchard*, 890 F.2d 811, 815 (6th Cir. 1989). "[T]his requirement that a plaintiff must show not only a longstanding,

overarching policy of discrimination but also a specific, allegedly discriminatory act against her within the relevant limitations period has been favored by other circuit courts of appeal" as well. *Claybrooks v. Primus Automotive Fin. Services, Inc.*, 363 F. Supp. 2d 969, 983 (M.D. Tenn. 2005) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1221 (11th Cir. 2001) ("We can find no authority, however, for allowing one plaintiff to revive a stale claim simply because the discriminatory policy still exists and is being enforced against others."); *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1303 (8th Cir. 1997) (requiring that plaintiff show an ongoing pattern or practice of discrimination and that any violation took place within the statutory period and analyzing whether such violation occurred with respect to the plaintiff herself during that period); *Miller v. Int'l Tel. & Tel Corp.* 755 F.2d 20, 25 (2d Cir. 1985) ("[S]everal courts have held that an employee who has been discharged pursuant to a discriminatory policy may not take advantage of later discriminatory acts against other employees for the purpose of postponing the running of the statutory period as to him on a continuing violation theory.")). *See also Lanning v. Southeastern Pa. Transp. Auth.*, 176 F.R.D. 132, 149-50 (E.D. Pa. 1997);[1] *Lumpkin v. Coca Cola Bottling Co.*, 216 F.R.D. 380, 386 (S.D. Miss. 2003); *Laffey v. Northwestern Airlines, Inc.*, 567 F.2d 429, 472 (D.C. Cir. 1976) (the timely filing of an EEOC charge by one member of a class does not revive claims which are no longer viable at the time of filing).

Despite this precedent, Plaintiffs wrongly claim in their Reply that Thaddeus Freeman and Donald Edwards, who have not suffered an injury within the statute of limitations, may nonetheless proceed in this case because Plaintiffs have alleged a continuing violation based on alleged acts against other individuals. Plaintiffs erroneously cite *Havens Realty Corp. v.*

---

[1] *Lanning* was not reversed as wrongly asserted by Plaintiffs in their Reply Memorandum. (Pl. Reply p. 10) In *Lanning v. Southeastern Pa. Transp. Auth.*, 181 F.3d 478 (3d Cir. 1999), the

*Coleman*, 455 U.S. 363 (1982) and *Alexander v. Local 96, Laborer's Int'l Union*, 177 F.3d 394 (6th Cir. 1999) for this proposition. Plaintiffs are wrong. In fact, a similar argument has been rejected by another court in this circuit: *Claybrooks v. Primus Automotive Fin. Services, Inc.*, 363 F. Supp. 2d 969, 981-83 (M.D. Tenn. 2005).

The Supreme Court in *Havens Realty* did not allow a plaintiff, who had not suffered an injury within the statute of limitations period, to proceed with a claim based on the continuing violation theory. The plaintiffs in *Havens Realty* alleged housing discrimination. Two minority plaintiffs alleged that they had been denied housing and lied to about the availability of housing because of their race. These two, along with a non-minority individual, also alleged that, as residents of the area, they had been injured by the defendant's discriminatory practice of denying housing to minorities because they were denied the "important social, professional, business and economic, political and aesthetic benefits of interracial associations that arise from living in integrated communities free from discriminatory housing practices. The Court allowed the plaintiffs' claims of housing discrimination based on denial of interracial association in the neighborhood to proceed past a motion to dismiss because one minority plaintiff had been denied housing within the limitations period thereby allegedly causing injury to all of the plaintiffs who were in the neighborhood within the period. *Havens Realty*, 455 U.S. at 381. The Court, however, did not allow the other minority plaintiff who had himself been denied housing outside the limitations period to proceed with a non-associational claim based on that denial of housing. *Id.* Even though the alleged discriminatory policy continued into the limitations period, that particular plaintiff had not himself suffered injury with respect to that

---

court reversed summary judgment from a separate opinion. The class certification issues addressed by the district court in 176 F.R.D. 132 were not raised on appeal.

claim within the limitations period. *Id.* The court in *Claybrooks* distinguished *Havens Realty* and stated that:

> A close reading of *Havens Realty* reveals that, because of the nature of the neighborhood claims in *Havens Realty*, the denial of housing to an African-American (Coles) stated an injury as to all those who sought to benefit from interracial association. Thus, the denial of housing to Coles did cause a specific injury to both Coleman and Willis within the limitations period, independent of any interaction they might have had with Havens Realty, because the rejection of Coles deprived them of the benefits of interracial association. Coleman and Willis could show both an ongoing policy of discrimination and an injury to themselves during the limitations period.

*Claybrooks*, 363 F. Supp. 2d at 982.

The court in *Claybrooks* also rejected the plaintiffs' attempted reliance on *Alexander* to save a time-barred claim when the individual had not suffered an injury during the limitations period:

> This court does not find that the decision in *Alexander* overcomes its obligation to follow the binding precedent of *Dixon*. Although it relied on *Dixon* for an articulation of the second category of continuing violations. *Alexander* did not import the *Dixon* court's requirement that the plaintiff show at least one discriminatory action within the limitations period pursuant to a longstanding, overarching policy of discrimination, which is a salient point of that decision. Thus, *Alexander* did not pointedly consider whether or not one additional act had to occur within the limitations period for the second category to apply, and if so, against whom this action had to have been taken. Moreover, the *Alexander* court was considering both categories of continuing violations at once and found that both had been invoked. This court is bound to follow *Dixon* which is prior, controlling authority on the exact point at issue in this case.

*Claybrooks*, 363 F. Supp. 2d at 983. The court's analysis in *Claybrooks* is equally applicable here.

Plaintiffs cannot use the continuing violation theory to revive the stale claims of Freeman and Edwards. The claims of individuals who applied outside the 300-day period prior

to the EEOC charges are time-barred as they have not suffered an injury within the statute of limitations.

        B.      Plaintiffs' Attempt To Create A Class At Ashland By Distorting The Law And Facts Fails.

As Defendant argued in its Opposition, Plaintiffs cannot create a combined class of applicants at Middletown and Ashland who claim to have failed the test. Plaintiff's own expert analyzed the two facilities differently. At Middletown, he analyzed the impact of the test, but at Ashland he analyzed the entire process. (Doc. # 71 at 22-23) The hiring processes were different at the two facilities, the labor pool was different at these two geographically different facilities and Plaintiffs have admitted that they cannot identify any Ashland proposed class member who failed the test other than the named Plaintiffs. Plaintiffs, in their Reply, erroneously claim that they can, nevertheless, create an Ashland class by (1) using Middletown statistics to create an Ashland class or (2) having the seven named Ashland Plaintiffs join the purported Middletown class and represent it (because there is no adequate representative for the purported Middletown class). Both of these tactics fail.

        1.      Middletown Statistics Do Not Show Discrimination At Ashland.

Plaintiffs have failed to present evidence to support a claim of discrimination at Ashland or establish the existence of a class of individuals harmed at Ashland. Instead, Plaintiffs erroneously argue they can use statistics at Middletown to show discrimination at Ashland citing *U.S. v. City of Warren,* 138 F.3d 1083 (6th Cir. 1998).

The Court in *City of Warren* did not allow one group of plaintiffs to proceed based solely on statistics for another group, as Plaintiffs attempt to do here. In *City of Warren*, the plaintiff had statistical evidence of the impact of the City's recruiting practices on the hiring

of police and fire personnel.  The plaintiffs did not have similar evidence with respect to the other municipal positions which used the same recruiting practices.  The district court held that the plaintiff had not met its burden to establish that the recruiting practices for other municipal positions were discriminatory because it could not isolate the challenged recruiting practices as the reason that the applicant pool included few, if any, blacks before 1986 when the practices were changed.  There was an additional residency requirement that contributed to the disparate impact on these other positions.  The Sixth Circuit reversed and reasoned that the district court had previously determined in separate opinions that each of these practices, the recruiting practices and the residency requirement, violated Title VII.  Therefore, its later decision determining that the plaintiff had not met its burden with respect to this issue was contrary to the law of the case and was clearly erroneous.  *Id.* at 1093.  With respect to the lack of statistical evidence concerning the effect of the recruiting practices on other municipal positions, the court determined that plaintiff had submitted sufficient alternative statistics.  The court determined that the analysis of "identical" recruiting practices for the police and fire fighter positions and the statistical evidence reflecting the racial composition of the population from which the City would have recruited for the municipal positions was sufficient, concluding that evidence that the City employed "not a single black person out of a work force of 1,500 clearly demonstrates a grossly discriminatory impact.  Statistical analysis is unnecessary to establish this point." *Id.* at 1094.

       The analysis in *City of Warren* does not apply here.  This Court is not being asked to determine and isolate allegedly discriminatory practices affecting the Plaintiffs and there is no similar evidence of a "grossly discriminatory impact" as evidenced by a comparison of the number of African-Americans hired to the number in the recruiting area.  Unlike in *City of Warren*, where only one African-American was hired despite the expected number of 99, in this

case the undisputed evidence is that AK Steel hired more African-Americans than were statistically available in the recruitment area. (Bradley Supp. Report, p. 8, attached to Doc. # 71)

Moreover, unlike in *City of Warren*, where the recruiting practices were "identical" and in the same area, the processes at Middletown and Ashland were different in material respects, and the types of individuals they were testing were significantly different. Phyllis Short testified that at Middletown, unlike at Ashland, they screened applicants out before they were tested if they did not have two years of manufacturing experience. (Short Dep. 7, 9, 75, 107-108) This was done at the Ohio Bureau of Employment Services (OBES) before AK Steel even saw the applications and again by AK Steel's human resources. (*Id.*) No such screening was done at Ashland. Plaintiffs erroneously attempt to establish that Ashland conducted similar screens by citing the testimony of Susan Lester. Susan Lester testified that at Ashland they screened for high school education, GED, 18 years of age and criminal records; she did *not* testify that they screened for manufacturing experience. (Lester Dep. 56-57) Therefore, a different labor pool took the tests at the two facilities. There is no basis to conclude that test results at Middletown, where tests were given to individuals with manufacturing experience, would be the same at Ashland, where tests were given to individuals who were not experienced.

Plaintiffs attempt to dispute this significant difference by claiming that Phyllis Short testified that at Middletown they sometimes did not screen strictly if the candidate was a female or a minority. The fact that at Middletown, notwithstanding the two-year manufacturing experience otherwise required, AK Steel may have allowed minorities to test even without this experience highlights even further why Ashland and Middletown Plaintiffs cannot be considered together and why statistics at Middletown cannot be used at Ashland (and, for that matter, why Plaintiffs' expert's analysis is meaningless.). According to Plaintiffs, the Middletown statistics

Plaintiffs rely on compare the results of non-minority applicants who had two years manufacturing experience with African-Americans who may not have had similar experience and background on a test designed to ferret out those with the critical skills necessary to be successful in the manufacturing environment at AK Steel.  Comparing test results of experienced individuals with the results of inexperienced individuals is meaningless.  Any disparity between the results of minorities and non-minorities at Middletown would be explained by this important variable which is not accounted for by Plaintiff's expert.  *See Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308 n.13 (1977) ("When special qualifications are required to fill particular jobs, comparisons to the general population (rather than to the smaller group of individuals who possess the necessary qualifications) may have little probative value"); *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir. 1997) (affirming district court's exclusion of expert report that did not account for the presence of people who were not similarly situated in the comparison group); *Baker v. Ogden Service Corp.*, 1996 WL 15490, *6 (10th Cir. 1996) (to be relevant, statistics must compare similarly situated individuals and take into account relevant factors including qualifications); *Rhodes v. Cracker Barrel Old Country Store*, 2002 WL 32058462, at *61 (N.D. Ga. 2002), *report and rec. adopted by* 213 F.R.D. 619 (N.D. Ga. 2003) (with statistics, court must be mindful of proper comparisons and use of proper qualified applicant pools).

    This difference among the test takers is not found at Ashland.  There is no evidence of a disparate impact among the test takers of Ashland who unlike the Middletown applicants, are not alleged to have been screened differently.  Because there is no evidence of a disparate impact at Ashland, there is no support for Plaintiffs' allegation that individuals at Ashland share a common claim with each other or with individuals at Middletown.

Moreover, even if the Ashland Plaintiffs could show disparate impact at Ashland, based on results at Middletown, they still cannot satisfy the prerequisites for a class action, including numerosity. Plaintiffs cannot identify anyone other than the seven named Ashland Plaintiffs as potential class members who have failed the test at Ashland. There is no class of individuals harmed. The seven named Ashland Plaintiffs are already joined in this litigation. Joinder is not impracticable. There is no class for them to represent.

    2.  The Ashland Plaintiffs Cannot Represent A Purported Class Of Middletown Applicants.

Recognizing that they cannot establish the existence of a class of individuals who have failed the test at Ashland, Plaintiffs claim that the Ashland Plaintiffs, individuals who claim to have applied for employment in Ashland, not Middletown, could join the purported Middletown class and act as class representatives for individuals who applied in Middletown. The Ashland Plaintiffs cannot adequately represent the claims of individuals who failed to obtain employment in Middletown. They were not denied hire at Middletown; they are not seeking hire to Middletown. In addition, as discussed above, the hiring process at the two facilities was different in material respects. The Ashland Plaintiffs did not undergo the Middletown hiring process or screening prior to testing. As discussed above, any analysis of the test results at Middletown has no meaning with respect to them. Their claims would not be typical or common with those of the purported class in Middletown. They cannot join the purported Middletown class or represent applicants at Middletown.

    C.  Plaintiffs' Expert's New "Report" (Declaration) Does Not Save The Class Claims At Middletown; Plaintiffs Still Fail To Establish The Necessary Prerequisites For Class Certification.

{W0612056.1}  - 11 -

Plaintiffs similarly have not satisfied the prerequisite for a class at Middletown. With Plaintiffs' Reply Memorandum, Plaintiffs for the first time submit a declaration from their expert, Edwin Bradley, in which he changes his opinion to fit within the appropriate timeline. This declaration is untimely. It was not submitted in accordance with the Court's deadline for expert reports. It also was not submitted with Plaintiffs' Motion for Class Certification. However, even with this new "expert report," Plaintiffs have not satisfied the necessary prerequisites for a class action.

        1.        <u>The New Declaration Establishes That There Is Insufficient Numerosity To Satisfy This Necessary Prerequisite.</u>

Bradley's new "report" makes it even more evident that there is not sufficient numerosity to make joinder impracticable. Bradley's Declaration reduces the potential number of class members from 56 to 17. "[C]lasses of less than twenty-five persons have rarely been certified." *Jackshaw Pontiac, Inc. v. Cleveland Press Publishing Co.*, 102 F.R.D. 183, 188 (N.D. Ohio 1984). Plaintiffs cite no case where the existence of 17 potential individuals alone is sufficient numerosity. Before Plaintiffs can certify any class, they must establish that the class is so numerous that joinder would be impracticable. They have not and cannot do this. Seventeen potential class members who are all identifiable and in the same geographic area are not sufficient to support a class action. There is no reason why these individuals could not be joined if they wanted to proceed with a claim.

Plaintiffs attempt to avoid this lack of numerosity by claiming that their class includes future applicants. AK Steel has not hired since 2003 and has no plans to hire in 2006. Plaintiffs' claim, under these circumstances, that there are future class members is too speculative to satisfy their burden to establish numerosity. *See Golden v. City of Columbus*, 404 F.3d 950, 965-66 (6th Cir. 2005) ("impracticability of joinder must be positively shown and

cannot be speculative") (citations omitted), *cert. denied*, 126 S. Ct. 738 (2005). Plaintiffs' argument that it is Defendant's burden to show that injunctive relief is moot misses the issue. It is Plaintiffs' burden to prove numerosity. Regardless of whether an injunction is appropriate, Plaintiffs have failed to establish that the class is so numerous that joinder is impracticable. Even if an injunction were appropriate under these circumstances, Plaintiffs cannot utilize the class action process unless they first establish the prerequisites under Rule 23, including numerosity. This they cannot do.

    2. Plaintiffs Have Not Established An Adequate Class Representative With Standing And Typical Claims To Represent The Purported Middletown Class.

In addition, even if there were sufficient numerosity, Plaintiffs cannot establish the remaining three prerequisites necessary to support their request for class certification. There is no class representative, who has standing, and whose alleged claim is typical of the purported class, who could adequately represent the interests of the individuals who failed the test at Middletown.

    a. The Claims Of Thaddeus Freeman And Donald Edwards Are Time-Barred.

Plaintiffs recognize that the claims of Thaddeus Freeman and Donald Edwards are independently untimely. However, they claim that under *Havens Realty*, Freeman and Edwards can bring a claim even though they were not aggrieved within the standard liability period. Plaintiffs claim that Freeman and Edwards have standing to serve as class representatives because other unnamed individuals have been harmed during the limitations period. (Pl. Reply 12) Plaintiffs miscite the law for this proposition. As discussed above, the law does not allow a plaintiff to save his own untimely claim based on more recent events which did not cause injury to him. The Supreme Court in *Havens Realty*, cited by Plaintiffs, only allowed the plaintiffs to

recover for injuries when the plaintiffs themselves had suffered injury within the limitations period. Neither Freeman nor Edwards claims to have been injured within 300 days of a timely filed charge. The claims of both Freeman and Edwards are time-barred.

### b. Edwards Cannot Represent The Purported Class.

Edwards claims in his affidavit that in an application in August, 2001 he took a test and was interviewed by a Palmer Temp representative and then "never heard anything back from them in August, 2001." (Edwards Aff., Attached to Pl. Motion) As discussed in Defendant's Opposition, Edwards's own charge is not timely filed with respect to his claim. Edwards's charge was not filed until July 9, 2002. Actions that occurred prior to September 12, 2001, such as Edwards's alleged application and test in August, 2001, are untimely.[2]

Plaintiffs argue that Edwards can "piggyback" onto the charge filed by an Ashland plaintiff, Darrell Carter. Carter's charge, which was filed in Kentucky and alleged that Carter was discriminated against with respect to his application to the Ashland facility, is not sufficient to support the piggybacking of claims at a different facility.

Even if Edwards could piggyback on a charge from another location to save his untimely claim, Edwards is not an adequate representative for a class both because his claims are not typical of the claims of the purported class and because he cannot adequately represent the interests of others. Edwards could not represent the proposed class because his claims are not

---

[2] Plaintiffs, in their Reply, attempt to dispute Edwards' own affidavit and claim that his statement did not mean he tested in August and that he could have tested later. This is belied by the affidavit of Edwards.

typical of a class of individuals who failed the test at Middletown.  Nowhere does Edwards claim to have failed the test and there is no evidence that he failed a test at AK Steel.  Edwards claims only that in August, 2001 he "took an aptitude test and was interviewed by a white male Palmer Temp representative" and then he never heard back.  (Edwards Aff., attached to Pl. Motion)  He does not claim he actually **failed** the test or that anyone told him he failed the test.  AK Steel has no record of him taking the test.  (Short Dec. ¶ 13)  The statute of limitations issue and the issue concerning whether he even took and failed the test would be the focus of his claims; his claims are not typical or common with those of the purported class.

        Plaintiffs wrongly claim they can satisfy the typicality prong even with the existence of these unique defenses.  However, these serious issues with Edwards's claim establish not only that his claims will not be typical of the class he purports to represent, but also that he is not an adequate representative.  *See Levels v. Akzo Nobel Salt, Inc.*, 178 F.R.D. 171, 179 (N.D. Ohio 1998) ("Also, the named class representative must himself satisfy all jurisdictional prerequisites before a class action can go forward."); *Hardin v. Harshbarger*, 814 F. Supp. 703, 708 (N.D. Ill. 1993) ("Further, it is settled law that the presence of even an arguable defense against the named plaintiff that is not applicable to the proposed class, or in this case subclass, can vitiate the adequacy of named plaintiff's representation.").  In fact, the court in *Dietrich v. Bauer*, 192 F.R.D. 119, 125 (S.D.N.Y. 2000), which was cited by Plaintiffs, recognized that "certification is properly denied when class representatives are 'subject to unique defenses which threaten to become the focus of the litigation.'" *Id.* (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d. Cir. 1990)).  Edwards is not an adequate representative of a class of individuals who do not have these issues.

Moreover, Edwards, who did not himself file a timely charge with respect to his claim is not an adequate representative to prosecute the claims of others. Although the court in *Howlett* allowed a plaintiff to piggyback onto the timely filed charge of another plaintiff when his claim fell within the same time period, *Howlett* was not a class action. The court did not hold that the piggybacker was an adequate representative to lead a class action and protect the rights of others. An individual who allows his own claim to lapse is not an adequate representative to protect the rights of others.

There is no named Plaintiff (or any other identified individual) who claims to have failed the test at Middletown within the statute of limitations period and who can adequately represent the interests of a class. Plaintiffs' Motion for Class Certification must be denied for this independently dispositive reason.

### III. CONCLUSION

For each and all of the foregoing reasons and those in Defendant's Opposition to Plaintiff's Motion for Class Certification, Defendant AK Steel Corporation respectfully requests that this Court deny Plaintiffs' Motion for Class Certification.

                Respectfully submitted,

                s/ Gregory Parker Rogers
                Lawrence J. Barty (0016002)
                Gregory Parker Rogers (0042323)
                Patricia Anderson Pryor (0069545)
                Taft, Stettinius & Hollister LLP
                425 Walnut Street, Suite 1800
                Cincinnati, OH   45202
                (513) 381-2838
                (513) 38l-0205 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed on January 23, 2006 using the Court's CM/ECF system, which will send notice of this filing to Susan Donahue, Wiggins, Childs, Quinn & Pantazis, P.C., The Kress Building, 301 19th Street North, Birmingham, Alabama 35203, Paul H. Tobias and David Kammer, Kraus & Torchia, 911 Mercantile Library Building, 414 Walnut Street, Cincinnati, Ohio 45202 and David Sanford, Sanford, Wittels & Heisler, L.L.P., 2121 K Street, N.W., Suite 700, Washington, D.C. 20037

    s/ Gregory Parker Rogers
Lawrence J. Barty (0016002)
Gregory Parker Rogers (0042323)
Patricia Anderson Pryor (0069545)
Taft, Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
(513) 381-2838
(513) 38l-0205 (fax)