**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| VIVIAN BERT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. C-1-02-467 |
| ) | Judge Beckwith |
| AK STEEL CORPORATION, ) | Magistrate Judge Hogan |
| ) | |
| Defendant. ) | |

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION FOR LEAVE TO FILE A SURREPLY REGARDING MOTION FOR CLASS CERTIFICATION**

In its Motion for Leave to File a Surreply (Dkt. # 77) and the actual Surreply itself (Attach. 1 to Dkt. # 77), the defendant falsely accuses plaintiffs of making incorrect statements of law and introducing untimely evidence. In setting forth its arguments, however, the defendant fails to meritoriously challenge the primary arguments advanced by the plaintiffs in their Reply (Dkt. #75):

- A test used at multiple facilities of a company may be challenged on a class basis if it has a disparate impact against a protected group. *Class Cert. Reply* at 1.

- The maintenance of one class action for both the Middletown and Ashland facilities is not affected by the lack of data regarding the test results at Ashland. *Id*. at 2-3.

- The supposed differences noted by the defendant between Middletown and Ashland do not defeat the maintenance of one class action. The Laborer hiring process is the same at both Middletown and Ashland. *Id*. at 3-5.

- The continuing violations theory applies to disparate impact claims. *Id*. at 6-7.

- There exist putative class representatives who were adversely affected within the standard limitations period (300 days before the filing of the first E.E.O.C. charge) for purposes of maintaining a class action and applying the continuing violations theory. Darrel Carter, who worked at Ashland and did not pass the test, filed a charge within 300 days of failing the test, as did other putative class representatives.

- Middletown plaintiff Donald Edwards may piggyback upon the charge of Ashland

       plaintiff Darrel Carter to assert a timely claim within the standard limitations period and permit application of the continuing violations doctrine. *Id*. at 13-16.

- Even if the Court determines that the current plaintiffs may not serve as class representatives for a testing class, clearly reasoned legal authority permits the Court to substitute another individual to serve as a proper class representative. *Id*. at 16.

- Based upon Sixth Circuit precedent holding that a disparate impact claim may be maintained on a class action basis across a multi-facility company, the putative class representatives at Ashland and Middletown may represent the class members for both facilities, or even more, the plaintiffs who failed the test at Ashland may serve as class representatives for a testing class at Middletown. *Id*. at 11-12.

- Even if this Court declined to apply the continuing violations doctrine to the disparate impact claims in this case, the defendant's test still had a disparate impact upon African-American applicants during the standard liability period for Title VII causes of action. *Id*. at 10-11.

- Sixth Circuit precedent provides that there is no strict numerical test for determining numerosity and impracticability of joinder. *Id*. at 16-17.

- Sixth Circuit precedent allows the inclusion of future applicants in determining numerosity and impracticability of joinder where plaintiffs seek prospective remedial relief against illegal policies and practices to which all members of a proposed class are subject. *Class Cert. Memo.* at 18 (Dkt. #71). Prospective remedial relief, i.e., injunctive relief, is not moot in this case because the defendant has not stated that it will not use the test again in the future. *Class Cert. Reply* at 17-18.

- The defendant and its expert, Dr. Baker, does not lodge any substantive critique against Dr. Bradley's finding that its test has a statistically significant impact upon African-American applicants. *Id*. at 19-20.

- Individual defenses do not defeat class certification at this stage. *Id*. at 20-21.

- The putative class representatives share common interests with the putative class members, do not have any conflicts with the putative class or subclasses, and have vigorously prosecuted this class action. *Class Cert. Memo.* at 26-27; *Class Cert. Reply* at 21-22.

       The arguments lodged by the defendant in its Surreply, which wholly fail to rebut the contentions set forth above, do not compel the denial of class certification, and thus, its Motion for

Leave should be denied. Nevertheless, plaintiffs will address the defendant's arguments to demonstrate that they did not mischaracterize applicable law or introduce untimely evidence.

    **A.**    **Sixth Circuit Precedent Provides That the Continuing Violations Doctrine May Be Applied As Asserted By Plaintiffs**

The defendant cites *Dixon v. Anderson*, 928 F.2d 212 (6th Cir. 1991), for the proposition that the continuing violations doctrine may only be applied when there exists a policy or practice of discrimination and a specific discriminatory act against a plaintiff within the standard limitation period. *Def.'s Surreply* at 3. However, Sixth Circuit precedent contravenes the latter declaration in *Dixon*. The defendant itself cited to *Alexander v. Local 96, Laborers' Int'l. Union of N.A.*, 177 F.3d 394 (6th Cir. 1999), for this proposition, and the more recent decision in *Kovacevich v. Kent State Univ.*, 224 F.3d 806 (6th Cir. 2000), demonstrates the continuing violations argument set forth by plaintiffs.

In *Kovacevich*, the Sixth Circuit analyzed both forms of the continuing violations doctrine – a series of discriminatory acts, with one falling within the standard limitations period;[1] and a longstanding policy of discrimination. *Id*. at 829. After finding that the appellant could not assert the first type of continuing violations theory because she failed to allege a discriminatory event within the standard limitations period, the Court still proceeded to examine whether the appellant could advance the second category of continuing violations doctrine – a longstanding policy of discrimination -- as an "alternative." *Id*. Although the Court found that the appellant failed to demonstrate that her employer maintained a policy of discrimination, the import for purposes of the

---

[1] As plaintiffs stated in their Memorandum regarding class certification, this form of the continuing violations doctrine may no longer be applied pursuant to Supreme Court precedent. *Class Cert. Memo.* at 19.

case at bar is that the detriment which barred application of the first category of continuing violations doctrine did not block the Court's adjudication of the second category. That is, the failure to allege a discriminatory event occurring within the standard limitations period does not bar application of the continuing violations doctrine when there exists a longstanding policy of discrimination.

This distinction between the two categories of continuing violations doctrine was actually discussed by Judge Jones in his dissent in *Dixon*. As Judge Jones prefaced in his dissent, the *Dixon* majority misstated the second category of the continuing violations doctrine. 928 F.2d at 219. Specifically, the *Dixon* majority relied upon an alternative holding in *Roberts v. North Am. Rockwell Corp.*, 650 F.2d 823 (6th Cir. 1981), in which the Sixth Circuit found that the plaintiff had alleged a discriminatory act within the standard limitations period, to declare that such a finding was required for the second category of the continuing violations doctrine. *Dixon*, 928 F.2d at 221; *Roberts*, 650 F.2d at 828. However, the first and primary holding in *Roberts* was that "'[i]f an ongoing discriminatory policy is in effect, the violation of Title VII is ongoing as well,'" and thus, there is no need to demonstrate the occurrence of a specific discriminatory act within the standard limitations period. *Dixon*, 928 F.2d at 221 (quoting *Roberts*, 650 F.2d at 827). Therefore, based on the prior, controlling precedent, *Roberts*, Donald Edwards may sustain his claim under the continuing violation doctrine even if the Court finds that his charge was not filed within the standard limitations period.[2]

As Judge Jones stated in his dissent, the "application of the 'continuing violation' theory is

---

[2] Of course, as plaintiffs have previously stated, Mr. Edwards's charge is timely because he may properly piggyback upon Darrel Carter's charge, and because his charge does not allege that he failed a test in August 2001 rather than some later date. Furthermore, these contentions have no bearing upon the viability of the Ashland plaintiffs serving as class representatives.

inconsistent and confusing." *Dixon*, 928 F.2d at 221.  The proper reading of *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), falls into that characterization.  The defendant cites *Claybrooks v. Primus Automotive Fin. Scvs., Inc.*, 363 F. Supp. 2d 969 (M.D. Tenn. 2005), for an interpretation of *Havens Realty* inimical to that of plaintiffs, but even the *Claybrooks* court accepted plaintiffs' interpretation of *Havens Realty* at an earlier stage of the case.  *See Claybrooks*, 363 F. Supp. 2d at 981 ("In ruling on defendants' Motion to Dismiss, this court perceived a conflict between the Sixth Circuit's articulation of the second category of continuing violations and the Supreme Court's discussion of the doctrine in" *Havens Realty*.).  The ultimate holding in *Claybrooks* was subsequently criticized for its misconstrual of *Havens Realty*.  *Davis v. General Motors Acceptance Corp.*, No. Civ.A. 4:04-267PB, 2005 WL 1229690, *7 (May 23, 2005) (attached as Ex. 20).  As the *Davis* court ruled,

> While all of the *Havens* plaintiffs may have experienced some deprivation during the limitations period, *Havens* does not appear to require that, stating simply that "where a plaintiff . . . challenges not just one incident of conduct . . . but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days of the last asserted occurrence of that practice."

*Id.* (quoting *Havens*, 455 U.S. at 381).  The *Davis* court also stated that its interpretation was consistent with Fifth Circuit precedent construing *Havens Realty*: "the continuing violation doctrine 'includes cases in which the original violation occurred outside the statute of limitations, but is closely related to other violations that are not time-barred.'" *Id.* (quoting *Hendrix v. City of Yazoo City*, 911 F.2d 1102, 1103 (5th Cir. 1990)).  Due to the consistency of plaintiffs' interpretation of *Havens Realty* with the Sixth Circuit's *Roberts* opinion, *supra*, plaintiff Edwards should be able to sustain his claim under the continuing violations doctrine if the Court finds that his charge was not filed within the standard limitations period.

**B.     Plaintiffs' Expert's Statistical Analysis May Sustain a Class at Ashland**

The defendant's arguments against maintenance of a testing class at Ashland rely upon faulty logic and misstatements of its own witnesses. First, the defendant completely mischaracterizes *U.S. v. City of Warren,* 138 F.3d 1083 (6th Cir. 1998). As plaintiffs stated in their Reply, the Sixth Circuit in *City of Warren* reviewed a district court's decision holding that the defendant's recruiting practices for police and firefighter vacancies had a disparate impact on potential black applicants. *Id*. at 1083. The district court upheld a disparate impact claim regarding the police and firefighter vacancies because the United States had presented statistical evidence of the discriminatory effect of the city's recruiting practices regarding those positions. Contrarily, the district court denied the disparate impact claim as to other municipal vacancies because no statistical evidence was presented regarding the impact of the recruiting practices on those positions. *Id.* at 1089. The Sixth Circuit, noting that the district court had determined that the recruiting practices for all municipal positions were substantially similar, held that "[b]ecause the recruitment practices for all municipal positions were identical, . . . the district court clearly erred in holding that the United States did not meet its burden with regard to municipal positions other than police and firefighter positions." *Id.* at 1093.

The defendant asserts that *City of Warren* does not apply to this case because the Court "is not being asked to determine and isolate allegedly discriminatory practices affecting the Plaintiffs." *Def.'s Surreply* at 8. If that is the defendant's position, it clearly misunderstands the requirements of a disparate impact claim. As plaintiffs noted in their Memorandum regarding class certification, a plaintiff must proffer "a statistical analysis demonstrating that the challenged practice has an adverse impact on a protected group" to prove disparate impact, *Isabel v. City of Memphis*, 404 F.3d 404, 411 (6th Cir. 2005) (citations omitted). *City of Warren* is applicable to this case because the

Sixth Circuit ruled that if the typical statistical proof is unavailable – i.e., if a company fails to maintain the necessary records to analyze the statistical impact of a challenged employment practice – then plaintiffs may rely upon alternative statistics. *City of Warren,* 138 F.3d at 1093, 1094. In this instance, *City of Warren* sanctions the use of an alternative statistical analysis that demonstrates the effect of the challenged practice upon a similar population. *Id.* at 1093. That is exactly what plaintiffs have done here – relied upon the statistical analysis demonstrating that the challenged test had an impact upon African-American applicants at Middletown as an alternative analysis to show its effects upon the same class of individuals at Ashland.

      Furthermore, *City of Warren* does not hold, as intimated by the defendant, that a plaintiff's alternative statistical analysis *had* to portray a 'grossly discriminatory impact' based upon a general labor market analysis to be used as a proxy. *Def.'s Surreply* at 8-9. Although the Sixth Circuit noted such a disparity in *City of Warren*, the rule from *City of Warren* requires only a showing of alternative statistical analyses. Here, plaintiffs may rely upon its expert's analysis of the total hiring process at Ashland – which demonstrated a statistically significant impact upon African-American applicants – as the alternative statistical analysis sanctioning a testing class at Ashland. *See Class Cert. Memo.* at 9, 23; *Class Cert. Reply* at 24. As plaintiffs' expert demonstrated, the statistically significant shortfall in the total hiring process at Middletown was caused by the same test used at Ashland. *Class Cert. Memo.* at 8; Bradley Rebut. Rep. at 5 (attached as Ex. 2 to *Class Cert. Memo.*). The only difference is that the cause of the shortfall in the total hiring process at Middletown could be isolated, i.e., the test, whereas the defendant failed to retain the requisite data to do so for Ashland. It would be unjust to allow the defendant to argue that its failure to maintain proper data on the Ashland hiring process precludes the plaintiffs from relying upon an alternative statistical

analysis to sustain a testing class at Ashland.

The defendant continues to assert that the hiring processes at Middletown and Ashland differed. *Def.'s Surreply* at 9. On this occasion, the defendant asserts that before applications were forwarded to AK Steel's Middletown facility, the Ohio Bureau of Employment Services ("OBES") screened out applicants who did not have two years of manufacturing experience. *Id*. Once again, the defendant's own Rule 30(b)(6), Federal Rules of Civil Procedure, witness contradicts its assertion. Phyllis Short clearly testified as follows:

> Q. . . . Did I understand you to say, Ms. Short, that AK Steel in Middletown has waived the requirement of two years of manufacturing experience for minorities and females at any point in time from January of 2000 to the present?
> A. What I said was, if we had minority and female candidates, we're much more willing to consider them without the two years of manufacturing experience than we would other candidates.
> Q. *Where is that consideration taken, at the point in time the application comes back to AK Steel, or when?*
> A. *That consideration actually would have been given to the bureaus.*
> Q. So are you saying that at some point in time the bureaus were told not to enforce the two years of manufacturing requirement at their initial screens?
> A. They would have been told to send us -- send AK as many applicants as they could who, you know, had -- maybe they didn't have two years of manufacturing experience but they had a year and let us make the determination if they go through the process.

Short Dep. at 136-37 (pages attached as Ex. 19) (emphasis added). Therefore, the newest purported distinction between the Middletown and Ashland hiring processes is also false.

After erroneously asserting that the OBES screened Middletown applicants for two years of manufacturing experience, the defendant then reverses course and argues that its practice of relaxing that same requirement for minority applicants impairs plaintiffs' expert's statistical analysis. The defendant claims that Dr. Bradley, plaintiffs' expert, impermissibly compares the test results of non-minority applicants who met the two-year requirement with minority applicants who did not because

8

the test was allegedly designed to "ferret" out those individuals with the necessary skills to work in AK Steel's manufacturing environment. *Def.'s Surreply* at 9-10. The defendant's contention is logically flawed as it pertains to disparate impact claims.

      The proper comparison pool in a disparate impact case is the applicant pool. If the proper applicant pool has been identified, then the statistical analysis is performed on the applicant pool. If a test has a discriminatory impact on a protected group within the applicant pool, then the defendant must prove the business necessity of the test, not attempt to evaluate the qualifications of the applicants. That is, the test has to be validated, not the candidacy of the individuals who take the test. The defendant seeks to explain away the impact of the test by attempting to find flaws within the affected group. That is impermissible. The flaw ascribable to the protected group arises only if the challenged practice, the test, meets the strictures of business necessity, in this case, validation. Then the defendant may argue that the onus for the results of the test fall upon the protected group.

      The defendant's argument would eviscerate *Griggs v. Duke Power Co.*, 401 U.S. 424 (1971), the first and seminal case on disparate impact claims. In *Griggs*, the plaintiffs challenged the discriminatory impact of the company's high school diploma requirement upon African-American applicants. If the discriminatory impact upon African-American applicants could have been explained away by arguing that the African-American applicants disproportionately lacked high school degrees, without demonstrating that the high school degree requirement was valid, then the requisite analysis would have been turned on its head and the Supreme Court may have never sanctioned the use of disparate impact challenges. That is, the very practice challenged in *Griggs*, the high school degree requirement, would have been used in a circular way to hold the African-American applicants responsible for the impact rather the invalid criterion itself. The Supreme Court

declined to accept such a circular argument, yet such a course of action is requested by the defendant here. If the discriminatory impact of the test, purportedly designed to "ferret" out individuals who lacked skills to succeed in a manufacturing environment, could be explained away by arguing that African-American applicants disproportionately lacked two years of manufacturing experience – without demonstrating that the test was valid for its purported purpose – then the requisite disparate impact analysis would be turned on its head. That is, the very practice challenged, the test, would be used to hold the African-American applicants responsible for the impact rather than the test itself. The defendant's proposed course of action is contrary to well-established law and logical reasoning and thus, should not be permitted.

      **C.**      **Plaintiffs' Expert's Declaration is Not Untimely and Numerosity is Satisfied**

The defendant asserts that the declaration Dr. Bradley submitted with plaintiffs' Reply is untimely because it was not submitted in accordance with the Court scheduling order. *Def.'s Surreply* at 12. The defendant fails to acknowledge, however, that the Supplemental Report offered by its expert, Dr. Baker, was also not submitted in accordance with the Court's scheduling order; there exists no provision for Dr. Baker's supplemental expert report. Nevertheless, the defendant relied upon Dr. Baker's supplemental report in its Opposition to plaintiffs' Motion for Class Certification. Dr. Bradley's declaration was tendered as a response to arguments made by the defendant based upon Dr. Baker's supplemental report. Therefore, Dr. Bradley's declaration should be accepted as timely.

Despite its attack on Dr. Bradley's declaration, the defendant attempts to utilize the findings of Dr. Bradley's declaration to demonstrate that the plaintiffs fail the numerosity requirement if a

standard limitations period is applied to plaintiffs' disparate impact claim. *Def.'s Surreply* at 12.[3] Noting that Dr. Bradley purportedly found a statistically significant shortfall of 17 African-American applicants during the standard limitations period, the defendant cites *Jackshaw Pontiac, Inc. v. Cleveland Press Publishing Co.*, 102 F.R.D. 183 (N.D. Ohio 1984), for the proposition that "classes of less than twenty-five persons have rarely been certified." *Id*. at 188. As a first rejoinder, Dr. Bradley found a shortfall of **18** African-American applicants at Middletown if September 9, 2001 is used as the beginning date of the limitations period, and a shortfall of 17 African-American applicants if the limitations period began on August 12, 2001. *See* Ex. 14 at ¶¶ 7, 8. When the **Ashland plaintiffs who failed the discriminatory test** are added to the Middletown shortfall, there exists a class of 25 African Americans for the standard limitations period, and thus, pursuant to the rationale of *Jackshaw Pontiac*, plaintiffs have met the requirements for numerosity.

In any event, the defendant's reliance upon *Jackshaw Pontiac* is misplaced because it contradicts Sixth Circuit precedent. As plaintiffs provided in their Memorandum, the addition of future applicants, although presently unidentifiable, is warranted here because the plaintiffs seek prospective remedial relief against the illegal policies and practices to which all black individuals are subject. *See Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1028, 1030 (6th Cir. 1977) (numerosity satisfied when class consisted of present and unidentified prospective black employees); *Afro Am. Patrolmens League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (numerosity satisfied when class consisted of 17 identified black applicants and unidentified future black employees). As portrayed by the citation to *Duck*, a class may be maintained with less than 25 identified African-

---

[3] Because the defendant relies upon Dr. Bradley's declaration in its Surreply, it has waived its timeliness argument regarding the declaration.

American applicants. Furthermore, inclusion of future applicants is not 'speculative,' as asserted by the defendant. *See Def.'s Surreply* at 12-13. Plaintiffs meet their burden to demonstrate numerosity by seeking injunctive relief for the benefit of future applicants. If the defendant wants to prevent the inclusion of future applicants, then it bears the burden -- not plaintiffs -- to demonstrate that injunctive relief is moot in this case. As plaintiffs depicted in their Reply, the defendant has failed to carry this burden. *Class Cert. Reply* at 17-18.

The other arguments lodged by the defendant in its Surreply have been addressed at length by plaintiffs in their Memorandum and Reply, and therefore, plaintiffs incorporate those pleadings to rebut the contentions raised by the defendant in its Surreply.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, plaintiffs respectfully request the Court to grant their Motion for Class Certification and deny the defendant's Motion for Leave to File a Surreply. If the Court deems an oral argument is necessary, then plaintiffs do not object to the defendant's request for an oral argument on the issues regarding the Motion for Class Certification.

Respectfully Submitted,

*/s/ Herman N. Johnson, Jr.*
Robert F. Childs, Jr. (ASB-2223-C-60R)
Herman N. Johnson, Jr.(ASB-3607-R50J)
**WIGGINS, CHILDS, QUINN & PANTAZIS**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 328-0640
(205) 254-1500 (facsimile)

Tobias, Kraus & Torchia, LLP

414 Walnut Street
Suite 911
Cincinnati, Ohio 45202
(513) 241-8137

**CERTIFICATE OF SERVICE**

      I do hereby certify that on February 13, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Gregory Parker Rogers
Lawrence James Barty
Patricia Anderson Pryor
Taft, Stettinius & Hollister, LLP
1800 First Star Tower
425 Walnut Street
Cincinnati, OH 45202
Fax: (513) 381-0205

                                              */s/ Herman N. Johnson, Jr.*
                                              OF COUNSEL

## LIST OF EXHIBITS

Ex. 19:   Phyllis Short Deposition Excerpts

Ex. 20:   *Davis v. General Motors Acceptance Corp.*, No. Civ.A. 4:04-267PB, 2005 WL 1229690 (May 23, 2005)