**EXHIBIT 20**

Westlaw.

2005 WL 1229690                                                                                      Page 1
--- F.Supp.2d ----, 2005 WL 1229690 (N.D.Miss.)
(Cite as: 2005 WL 1229690 (N.D.Miss.))

C

**Motions, Pleadings and Filings**

United States District Court,
N.D. Mississippi, Greenville Division.
Emmitt DAVIS, et al
v.
GENERAL MOTORS ACCEPTANCE CORP., et al
No. Civ.A. 4:04-267PB.

May 23, 2005.

**Background:** African-Americans who received financing from automobile finance company when they purchased vehicles from various defendant car dealers brought action against finance company and dealers, alleging that defendants illegally conspired to defraud them by entering into retail installment contracts (RICs) with them that did not disclose the fact that the dealers were making a profit on the spread between the price of credit offered to them, and the price paid by the dealers to finance company and that they were the victims of race-based discrimination because the mark-up charged on their RICs was higher than the mark-up for similarly situated white purchasers. Defendants filed motion to dismiss.

**Holdings:** The District Court, Barbier, J., held that:
(1) finance company and car dealers were under no duty to disclose the finance charge markups in purchasers' retail installment contracts, and
(2) continuing violation doctrine could equitably toll applicable limitations periods on some of the purchasers' race discrimination claims.
Motion granted in part and denied in part.

[1] Consumer Credit ⚖16

92Bk16 Most Cited Cases

[1] Consumer Credit ⚖52
92Bk52 Most Cited Cases
Automobile finance company and car dealers were under no duty under Mississippi or federal law to disclose the finance charge markups in purchasers' retail
installment contracts (RICs). Truth in Lending Act, § 128(a), 15 U.S.C.A. § 1638(a); West's A.M.C. § 63-19-31(2)(h).

[2] Contracts ⚖168
95k168 Most Cited Cases
Mississippi's duty of good faith attaches to the performance of a contract, not to the negotiation of terms leading to the agreement.

[3] Fraud ⚖7
184k7 Most Cited Cases

[3] Fraud ⚖50
184k50 Most Cited Cases
Under Mississippi law, there is no presumption of a fiduciary relationship between a debtor and a creditor; rather, to establish a fiduciary relationship, the plaintiff must allege facts that demonstrate that (1) the activities of the parties have reciprocal benefit, (2) the activities impose a common interest and profit, (3) the parties repose trust in each other, and (4) one party has dominion and control over another.

[4] Implied and Constructive Contracts ⚖55
205Hk55 Most Cited Cases
Under Mississippi law, doctrine of unjust enrichment applies only to situations where there is no legal contract.

[5] Limitation of Actions ⚖58(1)
241k58(1) Most Cited Cases
If African-Americans who received financing from automobile finance company when they purchased vehicles challenged an over-arching practice of being charged a mark-up on their retail installment contracts (RICs) which was higher than the mark-up for similarly situated white purchasers and if they could establish when a "critical mass" of discrete violations occurred so as to excite inquiry by affected purchasers, continuing violation doctrine could equitably toll applicable limitations periods on some of the purchasers' race discrimination claims. 42 U.S.C.A. §§ 1981, 1982; 12 C.F.R. § 202.17(b)(2); 28 U.S.C.A. § 1658.
James Victor Doyle, Jr., K. Stephen Jackson, PC., Birmingham, AL, for Emmitt Davis, et al.

Katharine M. Samson, Watkins, Ludlam, Winter & Stennis, P.A., Gulfport, MS; Richard McLure Dye, Butler, Snow, O'Mara, Stevens & Cannada, Brenda B. Bethany, C. Michael Ellingburg, Daniel, Coker,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



2005 WL 1229690 Page 2
--- F.Supp.2d ----, 2005 WL 1229690 (N.D.Miss.)
(Cite as: 2005 WL 1229690 (N.D.Miss.))

Horton & Bell, Tiffanee Nicole Wade-Henderson, Baker, Donelson, Bearman & Caldwell, Jackson, MS; Robert Louis Hutton, Glankler Brown, Memphis, TN; Jeffrey Lee Ingram, Galese & Ingram, PC, Birmingham, AL; Ken R. Adcock, Adcock and Morrison, PLLC, Ridgeland, MS; Gerald Haggart Jacks, Jacks, Adams & Norquist, P.A., Cleveland, MS; Romney H. Entrekin, Ferris Burson & Entrekin, Laurel, MS; Earl Wayne Smith, Liberty, MS; and Craig Lawson Slay, Adams & Edensm, Brandon, MS, for General Motors Acceptance Corp., et al.

## ORDER

BARBIER, District Judge.

*1 Before the Court is the **Motion to Dismiss** filed by defendant General Motors Acceptance Corporation ("GMAC"). Rec. Doc. 25. Plaintiffs oppose the motion. Having considered the record, the memoranda of counsel, and applicable law, the Court finds that the motion should be granted in part and denied in part, and for the reasons which follow, plaintiffs' non-disclosure-based claims must be dismissed, and plaintiffs' race discrimination-based claims must be preserved for the present.

### Background

Plaintiffs are African-Americans who received financing from defendant GMAC when they purchased vehicles from various defendant car dealers. Their complaint alleges that defendants illegally conspired to defraud plaintiffs by entering into retail installment contracts ("RICs") with the plaintiffs that did not disclose the fact that the dealers were making a profit on the spread between the price of credit offered to the purchaser/plaintiffs, and the price paid by the dealers to GMAC, to whom the RICs were assigned (the "mark-up"). Plaintiffs also claim that they were the victims of race-based discrimination because the mark-up charged on their RICs was higher than the mark-up for similarly situated white purchasers.

A RIC typical of those at issue in this case can be found at Exhibit A-4. It reflects a cash price from which is subtracted any down payment and amounts paid to others (license, registration, and title fees), for a total amount financed; the annual percentage rate, the total finance charge, the total of payments, and the total sale price.

Plaintiffs do not allege that they were charged an interest rate, finance charge, or any other fee that differs from what is disclosed in the RIC. Rather, as stated above, they allege that the defendants were required to disclose the fact and the amount of the dealer markup and failed to do so, and that defendants discriminated by imposing higher markups on African-Americans. More specifically, in Count 1, plaintiffs claim that defendants suppressed material facts they were under a duty to communicate (the markup); in Count 2, that defendants fraudulently concealed the markup; in Count 3, that defendants made negligent misrepresentations (in failing to disclose the markup); in Count 4, that the defendants conspired in the alleged fraud; in Count 5, that the defendants breached their duty of good faith; in Count 6, that defendants breached their fiduciary duty; in Count 7, that defendants were unjustly enriched at plaintiffs' expense; in Count 8, that defendants failed to properly train and supervise their employees and agents, thereby facilitating the fraud and/or negligence; in Count 9, that defendants violated 42 U.S.C. § § 1981 and 1982 (civil rights claims); and in Count 10, that defendants violated 15 U.S.C. § 1691 (Equal Credit Opportunity Act, "ECOA").

### Standard of Review

In ruling on a 12(b)(6) motion, the Court must accept as true all well-pleaded facts and shall not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997). Thus, when under controlling law there is no construction of the facts as alleged by plaintiffs which would permit them to recover on their claims, the claims must be dismissed. However, "[w]hen considering a motion to dismiss for failure to state a claim, the district court must take the factual allegations of the complaint as true and resolve any ambiguities or doubts regarding the sufficiency of the claim in favor of the plaintiff." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993).

### Analysis

*2 [1] Plaintiffs' allegations in Counts 1 through 4 all depend on the existence of a duty on the part of the defendants to disclose the dealer markup. The allegations of Count 5 require a duty of good faith on the part of the defendants. To prevail on Count 6, the defendants must have owed plaintiffs a fiduciary duty. The Court's review of the law indicates that none of the defendants owed any of these duties to these plaintiffs. Therefore, in Counts 1 through 6, plaintiffs have failed to state a claim against the defendants for which relief can be granted.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Case 1:02-cv-00467-SSB-TSH    Document 78-3    Filed 02/13/2006    Page 4 of 9

2005 WL 1229690                                                                    Page 3
--- F.Supp.2d ----, 2005 WL 1229690 (N.D.Miss.)
(Cite as: 2005 WL 1229690 (N.D.Miss.))

With respect to the disclosure of the markup, no applicable law requires disclosure of the dealer's fee arrangement with the lender. The Mississippi Vehicle Sales Financing Law ("MVSFL") requires disclosure of "the" finance charge. Miss.Code Ann. § 63-19-31(2)(h). That requirement conforms with the federal Truth in Lending Act ("TILA"), 15 U.S.C. § 1638(a)(3), which requires creditors to disclose "[t]he 'finance charge,' not itemized, using that term"; and "[t]he finance charge expressed as an 'annual percentage rate,' using that term." Id. at § 1638(a)(4). Likewise, TILA's implementing Regulation Z requires disclosure of "[t]he 'finance charge,' using that term, and a brief description such as 'the dollar amount the credit will cost you' " and "[t]he 'annual percentage rate,' using that term, and a brief description such as 'the total cost of your credit as a yearly rate.' " 12 C.F.R. § 226.18(d) & (e). Further, the Official Staff Comment to the regulation explicitly states that "[t]he finance charge must be shown on the disclosures only as a total amount; the elements of the finance charge must not be itemized in the segregated disclosures, although the regulation does not prohibit their itemization elsewhere." Official Staff Comment 226.18(d)-1.

The RICs submitted in connection with this case [FN1] all meet with the foregoing disclosure requirements. Moreover, in a thorough opinion dealing extensively with this question, the court in Baldwin v. Laurel Ford Lincoln-Mercury, Inc., applying Mississippi and federal law, has explicitly held that markups like the ones complained of here, which are an element of the total finance charge, need not be disclosed in a RIC. 32 F.Supp.2d 894, 898-99 (S.D.Miss.1998).

In responding to GMAC's motion, plaintiffs attempt to distinguish the instant case from Baldwin, by stating that "[h]ere, Plaintiffs allege that the defendants deliberately inflated interest rates and failed to disclose the discriminatory mark-up when financing the automobile purchases by these African-Americans, based on racial animus." Rec. Doc. 38, 5. Even assuming the truth of that statement, it is an argument for preserving plaintiffs' civil rights/discrimination claims; it does nothing to support their fraudulent nondisclosure claims.

Accordingly, the Court finds that because defendants (both GMAC and the dealer defendants) were under no duty to disclose the finance charge markups, and further, that they complied fully with all applicable disclosure requirements, there is no set of facts under which plaintiffs could prevail on their claims made in Count 1 (that defendants suppressed material facts they were under a duty to communicate), Count 2 (that defendants fraudulently concealed the markup), Count 3 (for negligent or reckless misrepresentation or omission in failing to disclose the markup), and in Count 4 (for conspiring to deceive plaintiffs regarding the markup), for the simple fact that in the absence of an underlying wrong, there can be no conspiracy.

*3 [2] With respect to Count 5, in which plaintiffs allege that the defendants have breached their duty to act in good faith and deal fairly, the Court notes that "Mississippi law recognizes an implied covenant of good faith and fair dealing in every contract." Baldwin, 32 F.Supp.2d at 898, citing Cenac v. Murry, 609 So.2d 1257, 1272 (Miss.1992). However, the duty of good faith attaches to the performance of the contract, not to the negotiation of terms leading to the agreement. Baldwin, 32 F.Supp.2d at 899; see also, Hill v. Galaxy Telecom, L.P., 176 F.Supp.2d 636, 642 (N.D.Miss.2001). There has been no allegation by the plaintiffs that the express terms of the contract have been breached, by any defendant. Thus, the only duty of good faith that may be imputed to any defendant in this case, is the dealers' duty to honor the terms of the RIC. As already stated, there is no allegation they have failed to do so. Accordingly, plaintiffs have failed to state a claim against GMAC or the dealer defendants in Count 5, and the claims alleged therein must be dismissed.

[3] A similar result obtains with respect to plaintiffs' allegations in Count 6 that the defendants breached a fiduciary duty. Under Mississippi law, "there is no presumption of a fiduciary relationship between a debtor and a creditor." Baldwin, 32 F.Supp.2d at 898, citing Peoples Bank & Trust Co. v. Cermack, 658 So.2d 1352, 1358 (Miss.1995). Rather, to establish a fiduciary relationship, "the plaintiff must allege facts that demonstrate that (1) the activities of the parties have reciprocal benefit, (2) the activities impose a common interest and profit, (3) the parties repose trust in each other, and (4) one party has dominion and control over another." Id. at 898, citing Hopewell Enters., Inc. v. Trustmark Nat'l Bank, 680 So.2d 812, 816-17 (Miss.1996). This type of relationship is not present in the ordinary debtor and creditor relationship, which is contractual, "not a confidential or fiduciary one," and has been specifically held to not be present "when a consumer enters into a purchasing agreement pursuant to an ordinary retail automobile sale." Id. at 898 (internal quotations and citations omitted). Given these precedents, and noting especially that plaintiffs cannot allege that GMAC or



Case 1:02-cv-00467-SSB-TSH    Document 78-3    Filed 02/13/2006    Page 5 of 9

2005 WL 1229690                                                                Page 4
--- F.Supp.2d ----, 2005 WL 1229690 (N.D.Miss.)
(Cite as: 2005 WL 1229690 (N.D.Miss.))

the dealers exercised dominion or control over them, the Court finds no fiduciary duty may be imputed to any defendant, and therefore cannot have been breached. Thus, the claims alleged in Count 6 must fail.

[4] In Count 7, plaintiffs allege that defendants were unjustly enriched because they received and possessed money from plaintiffs which were wrongfully obtained through fraud and/or deceptive practices. However, under Mississippi law, "[t]he doctrine of unjust enrichment ... applies only to situations where there is no legal contract...." *Hans v. Hans,* 482 So.2d 1117, 1122 (Miss.1986). In cases like the one at bar, in which an express contract in the form of a RIC exists for each and every plaintiff, the contract governs the rights and obligations of the parties, and the quasi-contractual doctrine of unjust enrichment has no application. Accordingly, Count 7 must be dismissed.

*4 As a result of the foregoing, all of plaintiffs' claims against all defendants as set forth in Counts 1 through 7 must be dismissed. This leaves pending plaintiffs' claims for negligent supervision and training (Count 8); violation of 42 U.S.C. §§ 1981 and 1982 (Count 9); and violation of 15 U.S.C. § 1691 (Count 10). In its motion, defendant GMAC contends that many of these claims have prescribed.

### Statute of Limitations—ECOA & §§ 1981 & 1982 Claims

Claims brought under the ECOA must be brought within two years after the date of the occurrence of the violation. 12 CFR § 202.17(b)(2). Claims brought under §§ 1981 and 1982 must be brought within the limitations period for analogous state claims. *Burnett v. Grattan,* 468 U.S. 42, 49, 104 S.Ct. 2924, 82 L.Ed.2d 36 (1984). Excepted from this rule are § 1981 claims brought under the 1991 amendments to that statute, which must be brought within four years. 28 U.S.C. § 1658; *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 124 S.Ct. 1836, 1840, 158 L.Ed.2d 645 (2004). [FN2] In the present case, GMAC argues that the three-year statute of limitations for an action based on a false representation should be imported from Mississippi law and applied to plaintiffs' §§ 1981 and 1982 claims. Accordingly, because plaintiffs' suit was filed on August 31, 2004, GMAC contends that the ECOA claims of all plaintiffs who entered into RICs prior to August 31, 2002 must be dismissed, and the §§ 1981 and 1982 claims of all plaintiffs who entered into RICS prior to August 31, 2001 must be dismissed. Further, in connection with the ECOA claims, GMAC has argued at length that the ECOA limitations period is not subject to a "discovery exception"--that is, that the date of plaintiff's discovery of the violation is immaterial, and rather that the critical date is the date of the violation.

[5] Plaintiffs do not take issue with the two-year ECOA limitations period or argue that they are entitled to a discovery exception; nor do plaintiffs quibble with a general three-year limit for the race discrimination claims. Instead, they argue that the limitations period should be equitably tolled under the "continuing violation" doctrine, because their injuries are due to a continuing practice of discrimination based upon race, and that GMAC's discriminatory practices continue until this day. Accordingly, the Court considers whether the continuing violation doctrine saves the claims of those plaintiffs whose RICs were confected more than two years prior to the filing of suit. Its task in this regard is made difficult both by the state of the law on the continuing violation doctrine, and the generality of plaintiffs' allegations.

As to the law on this issue, the Supreme Court has issued two opinions, separated by twenty years, in which it has attempted to delineate the contours of this doctrine, the first in *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982); and the second in *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).

In *Havens,* the Supreme Court considered the continuing violation doctrine in connection with the 180-day statute of limitations for the Fair Housing Act of 1968, 42 U.S.C. § 3604, ("FHA"). In that case, three individual plaintiffs and a housing referral service known as HOME (Housing Opportunities Made Equal) sued the defendant alleging that it had engaged in racial steering in violation of the FHA. In a test organized by HOME, two tester plaintiffs (one black and one white) and one renter plaintiff (black) sought housing through Havens Realty. The black tester and the black renter were told no apartments were available; the white tester was told some were available. Five alleged steering events occurred, but only the renter plaintiff filed suit within the 180-day limitations period of the FHA.

*5 The Supreme Court held that none of the claims were time-barred because together they amounted to a "continuing violation" of the FHA. The Court explained that "a 'continuing violation' of the Fair Housing Act should be treated differently from one

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Case 1:02-cv-00467-SSB-TSH    Document 78-3    Filed 02/13/2006    Page 6 of 9

2005 WL 1229690                                                                     Page 5
--- F.Supp.2d ---, 2005 WL 1229690 (N.D.Miss.)
(Cite as: 2005 WL 1229690 (N.D.Miss.))

discrete act of discrimination. Statutes of limitations ... are intended to keep stale claims out of the courts. Where the challenged violation is a continuing one, the staleness concern disappears." 455 U.S. at 380, 102 S.Ct. 1114. The Court emphasized that "[p]lainly the claims, as currently alleged, are based not solely on isolated incidents involving the two respondents, but a continuing violation manifested in a number of incidents--including at least one ... that is asserted to have occurred within the 180-day [limitations] period." Id. at 381, 102 S.Ct. 1114. The Court found that the alternative view--strict application of the 180- day limit notwithstanding the continuing nature of the harm alleged--amounted to a "wooden application" of the statute, ignoring "the continuing nature of the alleged violation, [which] only undermines the broad remedial intent of Congress embodied in the Act." Id. at 380, 102 S.Ct. 1114.

Twenty years later, in a case presenting very different facts, the Court opined on the limits of the continuing violation doctrine in *National Railroad Passenger Corporation v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). In *Morgan,* the Court considered the applicability of the continuing violation doctrine to the 180-and 300-day limitations period for filing a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") imposed by Title VII. 42 U.S.C. § 20003-5(e)(1). Morgan, a black male, filed discrimination and retaliation charges against the National Railroad Passenger Corporation (Amtrak). He alleged that he had been subjected to discrete discriminatory and retaliatory acts, as well as a racially hostile work environment throughout his employment at Amtrak. Following issuance of the EEOC's Right to Sue letter, Morgan filed suit. However, while some of the alleged discriminatory acts he complained of took place within 300 days of the his filing of the EECO charge, some predated the 300-day period. The district court granted partial summary judgment for the defendant, dismissing all claims premised on activity pre-dating the 300-day window. The Ninth Circuit reversed, finding that the older acts were "sufficiently related" to incidents within the 300-day period or were part of a systematic policy that took place within the period, so as to save the claims from prescription.

The Supreme Court held that the discrete retaliatory and discriminatory acts "occurred" on the day that they "happened," and thus a party "must file a charge within either 180 or 300 days of the date of the act or lose the ability to recover for it." 536 U.S. at 110, 122 S.Ct. 2061. However, observing that "[h]ostile work environment claims are different in kind from discrete acts," the Court concluded they should be treated differently, because "[t]heir very nature involves repeated conduct." Id. at 115, 122 S.Ct. 2061. "Given ... that the incidents constituting a hostile work environment are part of one unlawful employment practice, the employer may be liable for all acts that are part of this single claim." Id. at 118, 122 S.Ct. 2061. The Court thus held that "[i]n order for the charge to be timely, the employee need only file a charge within 180 or 300 days of any act that is part of the hostile work environment." Id. The Court also specifically stated that *Morgan* did not address the question of how the continuing violation theory should apply to pattern-or-practice claims, which Morgan did not allege. Id. at 115 n. 9, 122 S.Ct. 2061.

*6 The Fifth Circuit's gloss on these cases is only partially illuminating. In an opinion citing *Havens,* Judge Rubin observed that "[t]he distinction between single statutory violations and continuing violations is as much a matter of perspective and history as logic." *Hendrix v. City of Yazoo City,* 911 F.2d 1102, 1103 (5th Cir.1990). He went on to explain:

> [T]he continuing violation doctrine embraces two types of cases. The first includes cases in which the original violation occurred outside the statute of limitations, but is closely related to other violations that are not time-barred. In such cases, recovery may be had for all violations, on the theory that they are part of one, continuing violation. *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982); *Glass v. Petro-Tex Chemical Corp.,* 757 F.2d 1554 (5th Cir.1985); *Berry v. Board of Supervisors,* 715 F.2d 971 (5th Cir.1983).
> The second type of continuing violation is one in which an initial violation, outside the statute of limitations, is repeated later; in this case, each violation begins the limitations period anew, and recovery may be had for at least those violations that occurred within the period of limitations.
> Id. (other internal citations omitted).

Important to the analysis of the present case is the *Hendrix* court's observation that "a series of discrete acts only later recognizable as part of a general discriminatory pattern could properly be considered a continuing violation." Id. at 1104.

Nevertheless, a later Fifth Circuit panel cautioned that "[a] plaintiff cannot use the continuing violation theory to resurrect claims about discrimination concluded in the past, even though its effects persist."

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



*McGregor v. Louisiana State University Bd. of Sup'rs,* 3 F.3d 850, 867 (5th Cir.1993)(internal quotations and citations omitted). To do so would be "inconsistent ... with the reason for allowing a continuing violation to toll a statute of limitations. The Supreme Court in *Havens Realty Corp. v. Coleman* ... explained that a continuing violation tolls a statute of limitations because statutes of limitations are meant only to prevent stale claims." *Id.* "We must be careful not to confuse continuous violations with a single violation followed by continuing consequences; only continuous unlawful acts can form the basis of a continuous violation." *Id.* (internal quotations and citations omitted). "Furthermore, the emphasis should not be placed on mere continuity but on whether any present violation existed." *Id.*

The Fifth Circuit has applied *Morgan* in a straight forward fashion only in the context of employment discrimination claims. *See, e.g., Pegram v. Honeywell, Inc.,* 361 F.3d 272 (5th Cir.2004)(where only discrete acts alleged, and no hostile work environment claim stated, continuing violation not present).

The undersigned is aware of the difficulty in drawing any firm conclusions for our case based on the foregoing precedent. For one thing, all of the cases discussed are factually dissimilar to ours and the bulk of them involve employment discrimination, which is not at issue here. As well, the *Morgan* court stated explicitly that it did not address pattern-or-practice claims, which may be what plaintiffs allege here.

*7 Notwithstanding these hurdles, however, some inferences may be drawn which suggest to the Court that dismissing plaintiffs' claims on limitations grounds would be inappropriate at this stage. The plaintiffs herein appear to challenge not only individual discrimination, but an over-arching pattern or practice of discrimination which they argue continues to this day. See First Amended Complaint, ¶ 14. [FN3] Given this, the rule of *Havens* would seem to save from prescription otherwise time-barred claims, provided they ultimately are found to be part of an over-arching, illegal policy. However, the Court must also consider whether the more recent discussion in *Morgan* qualifies the *Havens* rule with respect to plaintiffs' claims, so as to eliminate any time-bar relief plaintiffs might enjoy under *Havens.* Clearly, if the acts complained of by plaintiff are analogous to the discrete discriminatory and retaliatory acts complained of in *Morgan,* that case would seem to foreclose the application of the continuing violation doctrine to the claims herein. If, on the other hand, plaintiffs' claims herein are more analogous to the hostile work environment claims brought in *Morgan,* or like the cases decribed by *Hendrix,* in which discrimination is only recognized after a pattern involving many events has been established, those cases indicate that so long as one of the complained of acts occurred within the limitations period, related acts should not be time-barred.

It seems to the Court that what plaintiffs complain of herein is more analogous to the hostile work environment claims than discrete discriminatory acts (though doubtless, the plaintiffs have also alleged individual discriminatory acts). The ongoing discrimination plaintiffs allege could only manifest itself after a critical mass of similarly situated people experienced it, so as to bring an over-arching pattern to light, the precise situation that *Hendrix* suggested was appropriate for application of the continuing violation doctrine. Cumulation is necessary to demonstrate an otherwise concealed policy, and plaintiffs allege that GMAC and the dealers acted pursuant to a specific, racially discriminatory policy.

The Court further observes that this view conforms with the general principle (as noted by the *Havens* court), that limitations periods serve to avoid stale claims. If a policy is continuing into the present, as plaintiffs argue in their opposition, claims challenging it cannot be considered stale. This view also comports with the notion that statutes designed to correct illegal discrimination are considered remedial, and should be construed to permit the fullest remedial effect.

GMAC's main argument against applying the continuing violation doctrine in this case is premised on a case from the Middle District of Tennessee, *Claybrooks v. Primus Automotive Financial Services, Inc.,* which involved facts similar to those at hand and in which the court found that the continuing violation doctrine did not save the ECOA claims of plaintiffs whose RICs were confected outside the two-year limitations period of the ECOA. 363 F.Supp.2d 969, 980-81 (M.D.Tenn.2005). The *Claybrooks* court reached its result by relying on Sixth Circuit precedent that required a plaintiff to "show not only a longstanding, overarching policy of discrimination but also a specific, allegedly discriminatory act against her within the relevant limitations period...." *Id.* at 982-83. Recognizing that this result was seemingly inconsistent with *Havens, Claybrooks* attempted to reconcile the two by

Case 1:02-cv-00467-SSB-TSH   Document 78-3   Filed 02/13/2006   Page 8 of 9

2005 WL 1229690                                                                                      Page 7
--- F.Supp.2d ----, 2005 WL 1229690 (N.D.Miss.)
(Cite as: 2005 WL 1229690 (N.D.Miss.))

positing that in *Havens*, the plaintiffs had actually met this requirement, because the denial of housing that occurred during the limitations period did cause a specific injury to the other plaintiffs (whose denials occurred outside of the 180-day period) within the period, since the later (timely) denial deprived the otherwise prescribed applicants of the benefits of interracial association. 363 F.Supp.2d at 981-82. While all of the *Havens* plaintiffs may have experienced some deprivation during the limitations period, *Havens* does not appear to require that, stating simply that "where a plaintiff ... challenges not just one incident of conduct ... but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days of the last asserted occurrence of that practice." 455 U.S. at 381, 102 S.Ct. 1114. Likewise, the Fifth Circuit has specifically opined, relying on *Havens*, that the continuing violation doctrine "includes cases in which the original violation occurred outside the statute of limitations, but is closely related to other violations that are not time-barred." *Hendrix v. City of Yazoo City*, 911 F.2d 1102, 1103 (5th Cir.1990).

*8 Moreover, the rationale employed by *Claybrooks* to reconcile its result with *Havens* could be applied herein if one takes the view that all plaintiffs who made car payments higher than similarly situated whites during the limitations period experienced a deprivation during the limitations period. This view would be consistent with the Supreme Court's pronouncement in *Bazemore v. Friday*, 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986)(*per curiam*), that when considering a discriminatory salary structure, although the salary discrimination began prior to the date that the act was actionable under Title VII, "[e]ach week's paycheck that deliver[ed] less to a black than to a similarly situated white is a wrong actionable under Title VII...." *Id.* at 395, 106 S.Ct. 3000. For all of these reasons, while the Court recognizes the factual similarity of the instant case to *Claybrooks*, that case does not dictate a finding that the continuing violation doctrine is inapplicable here.

The Court cautions the parties that this ruling is subject to reconsideration as the record is developed. As stated above, the allegations of plaintiffs' complaint are vague, and it is unclear whether plaintiffs are attempting to bring a true "pattern-or-practice" claim, or for that matter, whether they could do so. [FN4] If further testing of the pleadings demonstrates that plaintiffs cannot or do not challenge an over-arching practice to which the continuing violation doctrine would apply, some of their claims may well be time-barred. In addition, if plaintiffs' ability to properly allege a continuing violation depends on a finding that a certain number of discrete violations had to occur before an illegal practice could be identified (see *Hendrix*), eventually it must be established when a "critical mass" of violations occurred so as to excite inquiry by affected individuals. The establishment of that fact may well result in some claims being time-barred. In addition, the Court notes that the murkiness of the continuing violation doctrine is itself problematic, a situation which was not aided by the quality of briefing on the instant motion. In sum, the instant opinion represents a "close call" made on the basis of less than ideal pleadings, briefs, and precedent, in the context of the general rule that in ruling on a 12(b)(6) motion, doubts are construed in favor of the plaintiff.

Finally, the Court declines to grant GMAC's motion with respect to Count 8, for negligent supervision, since in the event plaintiffs succeed in any of their claims, it is possible that GMAC or other defendants may been negligent in supervising the individuals charged with carrying out the alleged discrimination.

### Miscellaneous Issues

Also pending before the undersigned are three other motions to dismiss, filed by defendant Kossman's, Inc. (Rec.Doc. 11), Hallmark Motors, Ltd. (Rec.Doc. 12), and Martin Motor Company (Rec.Doc. 36). The motions are based chiefly on the movants' contention that plaintiffs' allegations lack sufficient specificity. Because the instant order directs plaintiffs' to re-plead with greater specificity, these motions are denied for the present without prejudice to be re-urged following the filing of plaintiffs' amended "best complaint" in accordance with this order.

*9 Accordingly,

**IT IS ORDERED** that the Motion to Dismiss filed by defendant General Motors Acceptance Corporation, Rec. Doc. 25, should be and is hereby **GRANTED** in part, and plaintiffs' claims alleged in Counts one through seven are **DISMISSED** as to all defendants; in all other respects, the motion is **DENIED**;

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Kossman's Inc. (Rec.Doc. 11) should be and is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the Motion to Dismiss, or in the Alternative for a More Definite Statement, filed by Hallmark Motors (Rec.Doc. 12) should be and is hereby **DENIED**;



2005 WL 1229690                                                                                                     Page 8
--- F.Supp.2d ----, 2005 WL 1229690 (N.D.Miss.)
(Cite as: 2005 WL 1229690 (N.D.Miss.))

**IT IS FURTHER ORDERED** that the Motion to Dismiss filed by Martin Motor Company (Rec.Doc. 39) should be and is hereby **DENIED**;

**IT IS FURTHER ORDERED** that plaintiffs shall file an amended complaint within *30 days* of entry of this order, re-stating their entire complaint in conformity with this opinion, excluding the dismissed claims and more clearly stating the remaining allegations.

> FN1. Consideration of the RICs which were attached to defendant's motion, referenced in plaintiffs' complaint, and upon which the complaint is premised, does not require converting defendant's motion to one for summary judgment. *See Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 725 (5th Cir.2003) (other citations omitted) (quoting case for proposition that "Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

> FN2. Plaintiffs' complaint does not specify whether the § 1981 claims are brought pursuant to the present or the original version of the statute.

> FN3. The Court notes that the contention that the discrimination is continuing to the present is argued in plaintiffs' motion papers but not specifically alleged in the Amended Complaint. At a minimum, plaintiffs must amend their complaint to make this allegation which is necessary to their continuing violation argument.

> FN4. The Fifth Circuit has expressed skepticism about the ability to employ the pattern-or-practice method of proof outside of Rule 23 class actions. *See, Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 355-56 (5th Cir.2001).

--- F.Supp.2d ----, 2005 WL 1229690 (N.D.Miss.)

Motions, Pleadings and Filings (Back to top)

• 2005 WL 3490576 (Trial Motion, Memorandum and Affidavit) Defendant Hammett Motor Company's Motion for Summary Judgment (Oct. 13, 2005)

• 2005 WL 2914909 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Motion to Dismiss (Sep. 12, 2005)

• 2005 WL 2402198 (Trial Motion, Memorandum and Affidavit) Martin Motor Company's Motion to Dismiss, or in the Alternative, for More Definite Statement (Jul. 18, 2005)

• 4:04cv00267 (Docket) (Aug. 31, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.