UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Vivian Bert, et al,            :
                               :      Case No. 1:02-cv-00467
     Plaintiffs,               :
                               :
v.                             :
                               :
AK Steel Corporation,          :
                               :
     Defendant.                :

ORDER

Before the Court is Plaintiffs' motion for class
certification (Docs. 70, 71).  Defendant opposes the motion (Doc.
73), and Plaintiffs have replied (Doc. 75).  Defendant also seeks
leave to file a surreply (Doc. 77) which Plaintiffs oppose (Doc.
78).

Factual Background

Plaintiffs are sixteen African-American unsuccessful
applicants for employment with AK Steel, and one African-American
employee (Allen Roberts).  Their original complaint, filed on
June 26, 1998, alleged that AK Steel engages in systemic racial
discrimination in its hiring and promotion practices at its
plants located in Middletown, Ohio and Ashland, Kentucky.  The
Second Amended Complaint (Doc. 45) contains claims under 42
U.S.C. §1981 and 42 U.S.C. §2000(e) by both the Applicant
Plaintiffs and by the employee Plaintiff Roberts, alleging
discriminatory disparate treatment and disparate impact.  The
Second Amended Complaint defines a proposed "hiring class" of all

-1-

African-Americans who applied and were rejected for employment, or were deterred or discouraged from applying for employment with AK Steel from June 26, 1998 forward.  (Doc. 45, ¶29)

Nine of the sixteen original Applicant Plaintiffs now seek certification of a more narrowly defined class, of African-Americans who failed a written pre-employment test, and who allege that the test has an impermissible disparate impact on African-American applicants.  (The other seven of the Applicant Plaintiffs apparently did not take this test, and are not included in the proposed class definition.)

A.   <u>Overview of AK Steel's Hiring Process</u>.

The Applicant Class Plaintiffs allege they each applied for entry-level positions at one of AK Steel's plants.  These jobs are called Laborer (or Employment Reserve and Production Employee) in Middletown, and Heat Relief Laborer (or Laborer) in Ashland.  For ease of reference, the Court will refer to all of these entry-level positions as Laborer.  (AK Steel notes that these entry jobs are not "unskilled labor" in a traditional sense.  These jobs are the only method for entering into any of the highly skilled trade and craft positions at AK Steel's plants.)

The Applicant Class Plaintiffs assert that AK Steel uses a substantially identical process for Laborer hiring at both Middletown and Ashland.  According to Plaintiffs, candidates must submit applications through state agencies, either the Ohio or Kentucky Bureau of Employment Services.  Those agencies perform

an initial screen for minimum qualifications: applicants must be at least 18 years old, be a high school graduate or hold a GED, and for Middletown, have two years of prior manufacturing experience.  (The latter qualification may in some cases be waived, according to the deposition testimony of AK Steel's HR personnel.)  State agencies are told to forward only those applications that meet these minimum requirements.  AK Steel generally does not accept applications directly from applicants at its plant facilities, although some minority candidate resumes were taken at Ashland from job fairs and from the Ashland plant's Civil Rights Committee chair.

AK Steel's HR personnel then review applications received from the state agencies for minimum qualifications, as well as for criminal records and any prior work history problems. Applicants who pass this internal review are contacted by telephone to come to the plant to take a screening test.  Exams are graded by an outside consultant (Resource Associates of Knoxville, Tennessee) on a pass/fail basis.

Applicants who pass the test are then invited to an interview with each plant's hiring coordinator and a plant operations representative.  The specifics of the interview vary between Middletown and Ashland, but essentially the interviewers assess and rate factors including safety, productivity, conscientiousness, teamwork, adaptability, and initiative.  AK Steel hiring personnel admit that this interview involves subjective considerations.  Applicants who successfully complete

-3-

the interview must then pass a background check, after which an offer of employment is made subject to an acceptable physical examination.

B.    <u>The Applicant Class Plaintiffs' Disparate Impact Argument</u>.

Title VII, 42 U.S.C. §2000e-2(k)(1)(A)(I), defines unlawful discrimination as including an employer's use of "a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin," unless the employer can demonstrate that the challenged practice is job related and consistent with the employer's business necessity.  A prima facie case of disparate impact discrimination is established when plaintiff has (1) identified a specific employment practice, and (2) demonstrates an adverse impact on the protected group through relevant statistical analysis. <u>Isabel v. City of Memphis</u>, 404 F.3d 404, 411 (6th Cir. 2005). Merely showing a racial imbalance in the workplace is insufficient.  Plaintiffs must show a causal link between the challenged practice and the racial imbalance that suggests discrimination.

Dr. Edwin Bradley, Plaintiffs' statistical expert, opines that AK Steel's qualifying test has a statistically significant adverse impact on black applicants.  "Statistical significance" establishes that the outcome of a particular process is not due to chance, but rather is causally linked to the variable at issue - here, the race of the applicant taking the test.  Broadly speaking, an accepted measure of statistically significant

-4-

disparity is approximately two standard deviations from the expected result. See generally, Hazelwood School Dist. v. United States, 433 U.S. 299, 311 n. 17 (1977); Smith v. Xerox Corp., 196 F.3d 358, 365 (2nd Cir. 1999); and Eng. Contractors Assn. v. Metropolitan Dade County, 122 F.3d 895, 914 (11th Cir. 1997).

An alternative to the standard deviation analysis is an employment practice's selection ratio, a method the EEOC adopted in its employment practices guidelines. The EEOC regards a procedure that selects candidates from the least successful group at 80% or less than the most successful group's selection rate is evidence of an adverse impact. Smaller differences may also constitute adverse impact if they are statistically and practically significant, or if an employer's actions have disproportionately discouraged applicants in protected categories. See 29 C.F.R. §1607.4(D).

Dr. Bradley analyzed data files on the Middletown applicant pool for the period January 1, 2000 to December 31, 2003. Bradley states that AK Steel keeps no records concerning any applicant excluded by AK's initial minimum qualifications screen. Therefore, Bradley assumes that the applicant pool data includes only applicants that are qualified to take the written test. (See Doc. 71, Exh. 3, Bradley Rebuttal Report at p. 5, n. 16.) Bradley opines that AK Steel hired 844 individuals at Middletown during the defined time frame, 47 of whom were African-American.[1]

_____

[1] Earlier versions of Dr. Bradley's report contain slightly different hiring numbers. Bradley's Rebuttal Report states that he uses the same numbers used by defendant's expert Dr. Baker.

Based upon the racial composition of the entire applicant pool during that time frame, Bradley calculated a benchmark of 9.01% of that entire pool who were African American.  Thus, under Bradley's analysis of the selection process at Middletown, the expected number of African-Americans hired would be 76.  The actual number, 47, was 3.71 standard deviations from Bradley's expected number, with an adverse selection rate of 59.5%.

Bradley also analyzed the impact of the written test component standing alone for Middletown.  Bradley states that 1,896 applicants passed the test from January 1, 2000 to December 31, 2003, of whom 114 were African-American.  Using the same benchmark he calculated for the total selection process (9%), Bradley argues that 170 African-Americans should have passed. The shortfall is 6.10 standard deviations of difference, and the adverse selection rate is 64.8%.  (Bradley Rebuttal Report at pp. 7-8.)

A different scenario exists for the Ashland plant because AK Steel does not have the same quantity and quality of data for Ashland as it apparently does for Middletown.  AK Steel's expert, Dr. Mary Baker, describes the available Middletown data in her report as including: data on the initial screening; the individuals who did and did not take the test; the test results; the individuals who were interviewed and the results of those interviews; and the individuals who were referred for background checks and physical exams.  The Middletown documents also

---

See Doc. 71 at p. 8 and Bradley Rebuttal Report at p. 7.

identify applicants who voluntarily withdrew from the hiring process. Dr. Baker states that comparable documentation and data regarding each step of the Ashland hiring process is not available. (See Baker Report, p. 2 n. 4.)

Because of the lack of specific data for Ashland, Bradley asserts that plaintiffs may analyze the "entire hiring decision making process" for the Ashland plant. To do this, Bradley originally used a data file he describes as "AK Steel Ashland Data" covering the period 10/24/2000 to 09/17/2002. Dr. Baker used a different Ashland data file covering the period August 12, 2001 to December 31, 2003, a data set that Bradley describes as the "Baker Ashland Data." Given Dr. Baker's criticisms of Bradley's earlier report, Bradley's Rebuttal Report uses the "Baker Ashland Data" file to determine the hires at Ashland from January 1, 2000 to December 31, 2003. According to the "Baker Ashland Data" file, Bradley calculates that Ashland had a total of 289 hires during the period, 12 of whom were African American. Bradley then uses a 8.56% benchmark, which he calculated based on the "AK Steel Ashland Data" file, and not the Baker data file. Bradley predicts that approximately 25 of the Ashland hires would be African American, 2.81 standard deviations of difference and a selection ratio of 46.3%. Bradley admits that he cannot separately analyze test data from Ashland as he did for Middletown, because the data is not available. But he argues that the same test and procedure for determining who takes the test is used in both plants. Therefore, Bradley asserts that his

analysis of the Middletown test component standing alone can also apply to Ashland.

Finally, Bradley aggregates his results for Middletown and Ashland for the period January 1, 2000 to December 31, 2003, and concludes that 41.5% fewer African-Americans were hired than expected during the period, 4.62 standard deviations of difference.  (See Bradley Rebuttal Report at pp. 11-12 and Table 4.)

AK Steel and Dr. Baker vigorously challenge Bradley's data set, his analytical method, and his results on a variety of grounds.  These criticisms include Bradley's improper analytical time frame; his failure to count some Ashland applicants who were in fact hired; his failure to properly account for Middletown applicants who voluntarily withdrew from the hiring process, or became ineligible for hire due to unsuccessful background checks or physical exams; and Bradley's alleged use of a "hypergeometric method" to compute standard deviations, rather than Baker's "binomial" method.  (See Baker Report at pp. 2-4.)  AK Steel and Baker also argue that AK Steel in fact hired more African-Americans than would be expected based on the qualified labor population of the area from which AK Steel recruits.  Baker cites the latest federal census data showing that Middletown, Ohio's MSA has 4.09% available applicants who are African-American, and that the Ashland MSA has 2.0%.  AK Steel argues that there is no disparate impact caused by its hiring process when compared to the available labor pool, as opposed to the flawed data Bradley

-8-

used concerning the applicant pool.  (See Doc. 73, pp. 3-4 and
Baker Report, p. 9.)

**DISCUSSION**

A.    Fed. Rule Civ. Proc. 23(a).

The proposed class representative must establish that each
of the four requirements of Rule 23(a) is satisfied.  In re
American Medical Systems, Inc., 75 F.3d 1069, 1079 (6th Cir.
1996); Senter v. General Motors Corp., 532 F.2d 511 (6th Cir.),
cert. denied, 429 U.S. 870 (1976).  Those four requirements are:

> (1)  the members of the class must be so numerous that
>      joinder of all members is impracticable (the
>      "numerosity requirement");
>
> (2)  questions of law or fact must be common to the
>      entire class (the "commonality requirement");
>
> (3)  the claims or defenses of the named representative
>      must be typical of the claims or defenses of the
>      class (the "typicality requirement"); and
>
> (4)  the named representative must fairly and
>      adequately represent the interests of the class as
>      a whole (the "adequacy of representation"
>      requirement).

Fed. R. Civ. P. 23(a).

In determining whether to certify a class, the Court must
not weigh or make a preliminary determination of the merits of
the action.  Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178
(1974).  For purposes of a class certification motion, the Court
must accept as true the allegations of the complaint.  Shelter
Realty Corp. v. Allied Maintenance Corp., 574 F.2d 656, 661 n.15
(2d Cir. 1978); Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th
Cir. 1975), cert. denied, 429 U.S. 816 (1976).  The Court "may

-9-

consider reasonable inferences drawn from facts before [it] at
that stage of the proceedings." <u>Senter</u>, 532 F.2d at 523.  The
Court must rigorously analyze the Plaintiff's allegations and
evidence under Rule 23 because actual, and not assumed,
compliance with Rule 23's requirements is indispensable.  <u>General
Telephone Co. v. Falcon</u>, 457 U.S. 147, 160 (1982).  Within the
framework of Rule 23, the Court has substantial discretion to
grant class certification pursuant to its inherent power to
control pending litigation.  <u>Reeb v. Ohio Dept. Of Rehab. &
Correction</u>, 435 F.3d 639, 643 (6th Cir. 2006).

    1.  <u>Numerosity</u>.

    Under Rule 23(a)(1), Plaintiffs must establish that "the
class is so numerous that joinder of all members is
impracticable."  As noted above, Bradley's Rebuttal Report
calculates that approximately 56 African-Americans failed the
test in Middletown during the 2000-2003 time frame.  For Ashland,
Bradley opines that 13 fewer African-Americans were **hired** than
expected.  Plaintiffs also allege that future applicants should
be included in the class seeking injunctive relief against
continuing use of the test.

    AK Steel responds that it has not hired any Laborers at
either plant since October 2003, and that given its current
economic status, it has no plans to resume hiring.  AK Steel
suggests that there is no reason to include future applicants in
determining certification.  AK Steel also attacks Bradley's use
of data for the entire period from January 2000 to December,

2003, because it includes putative class members whose claims are time-barred. Under the shorter (and what AK Steel believes proper) time period of August or September 2001 to October 2003, the number of potential class members is even smaller. Indeed, Bradley's declaration filed with Plaintiffs' Reply Brief states that within those times frames, the entire class may be less than 30 (excluding future applicants).

Initially, the Court rejects AK Steel's argument that prospective relief is inappropriate solely because of AK Steel's unilateral workforce reductions. AK Steel's decision to suspend hiring, and to reduce the size of its workforce, does not equate to a decision to discontinue use of the challenged test in the event that hiring resumes again at some point.

There is no hard and fast rule about the number of potential class members required for certification. Classes as small as 17 identified individuals have been certified; see Afro-American Patrolmens League v. Duck, 503 F.2d 294, 298 (6th Cir. 1974). The key to determining whether certification is appropriate under Rule 23(a)(1) rests on the impracticability of joinder. Joinder of all affected individuals need not be impossible. In addition to the numbers, the Court may consider geographical location of class members; the ease (or lack thereof) of identifying class members; the financial resources available to the class; and considerations of judicial economy. See, e.g., Pecere v. Empire Blue Cross and Blue Shield, 194 F.R.D. 66, 70-71 (E.D.N.Y. 2000). Given the nature of Plaintiffs' allegations, the Court concludes

-11-

that all African-American applicants who failed the test would
not likely pursue a separate claim, or would necessarily be
located.  While the number of affected individuals is not large,
the other factors counsel that the numerosity requirement is at
least initially satisfied.

    2.  <u>Commonality</u>.

    Rule 23(a)(2)'s commonality requirement is satisfied if the
resolution of at least one common issue will affect the class as
a whole.  See <u>Fallick v. Nationwide Mut. Ins. Co.</u>, 162 F.3d 410,
424 (6th Cir. 1998).  A "perfect fit" of all issues is not
required.  Rather, the commonality required by Rule 23(a)(2) is
"qualitative rather than quantitative, that is, there need be
only a single issue common to all members of the class."  <u>In re</u>
<u>American Med. Systems</u>, 75 F.3d 1069, 1080 (6th Cir. 1996).  The
common issue identified should advance the litigation if
resolved.  <u>Sprague v. General Motors Corp.</u>, 133 F.3d 388, 397
(6th Cir. 1998).

    Class Plaintiffs identify a common question, whether AK
Steel's qualifying exam has a statistically significant impact
upon African-American applicants, and if so whether use of the
test violates Title VII.  That question is clearly common to the
proposed Applicant Class.  The fact that issues peculiar to
individual class members may remain after the determination of
the common question does not necessarily defeat certification.
See <u>Sterling v. Velsicol Chem. Corp.</u>, 855 F.2d 1188, 1197 (6th
Cir. 1988).

AK Steel points out that Plaintiffs cannot identify any
African-American applicant who failed the test at Ashland other
than the seven named plaintiffs.  Because of this, as noted
above, Bradley's statistical analysis concerns African-Americans
who were **not hired** at Ashland, rather than those who failed the
test.  AK Steel argues there are many reasons why any individual
may not have been hired, including a voluntary withdrawal of an
applicant, necessitating an individualized review of each
applicant's history and defeating commonality.

Class Plaintiffs rely on the 1991 Title VII amendment
providing that "if the complaining party can demonstrate to the
Court that the elements of a respondent's decision-making process
are not capable of separation for analysis, the decision-making
process must be analyzed as one employment practice."  See 42
U.S.C. §2000e(k)(1)(B)(i).  (This amendment specifically condones
a challenge to the decision-making process as a whole.  See,
Atonio v. Wards Cove Packing Co., 10 F.3d 1485, 1491 (9th Cir.
1993), discussing background to the statutory amendment.)  Since
AK Steel's record-keeping does not permit the separation of the
test from the rest of the hiring decision-making process for the
Ashland plant, Class Plaintiffs argue they are entitled to
challenge the entire process.  Alternatively, Class Plaintiffs
request certification of a separate subclass for each plant.

AK Steel then argues that commonality is clearly lacking if
the Middletown plaintiffs are challenging only the impact of the
test, and the Ashland plaintiffs are challenging the entire

-13-

decision-making process.  And with regard to Middletown, AK Steel argues that Bradley's opinion concerning the impact of the test alone is so fatally flawed that no common questions exist in this case at all.  AK Steel also points to differences between Bradley's several reports, arguing that Bradley claims he was able to do something in the latest Rebuttal Report (analyze Middletown testing component data separately from all the other data) that Bradley said he couldn't do in his earlier report.

The Court's task in ruling on class certification is not to determine which expert's opinion has merit, but rather to determine if Plaintiffs' proffered method to establish a statistically significant disparate impact is not simply speculation or unsupported conjecture.  See, e.g., Bacon v. Honda of America Mfg., 205 F.R.D. 466 (S.D. Ohio 2001), noting that weighing statistical evidence is not appropriate at the class certification stage.  "However, this does not mean that the conclusions plaintiffs urge on the basis of this evidence must be accepted uncritically.  For common questions to exist, plaintiffs' statistical evidence must logically support the inference of discrimination against the class asserted.  . . . The appropriate inquiry is whether the statistics are sufficient to show ... the existence of common questions."  Id. at 470 (internal citations and quotations omitted).

In Phillips v. Cohen, 400 F.3d 388 (6th Cir. 2005), the Sixth Circuit reversed a summary judgment granted to the defendant, the Secretary of Defense, in a Title VII disparate

-14-

impact case based on an allegedly discriminatory promotions
policy.  The employer (an independent agency in the Department of
Defense) systematically destroyed its promotions data every two
years, so the parties could not identify the employees who were
actually selected as finalists for any promotions within the
relevant time frame at issue in the case.  The experts therefore
had to devise alternate statistical methods of analyzing the data
that was available.  The district court found that plaintiff's
alternate method was "unhelpful" because the expert's statistical
analysis failed to "screen out multiple promotions for the same
person," and because she failed to consider whether the employees
were actually qualified for each promotion.  The district court
found that the employer's approach, creating "constructed pools"
of applicants, was the proper analysis and that it established a
lack of disparate impact.

The Sixth Circuit held that the district court impermissibly
weighed the credibility of the competing experts' methodologies.
The Court noted that both expert's analyses were unavoidably
flawed given the absence of the promotion data, but that
plaintiff's approach, combined with other evidence in the record,
was sufficient to overcome the employer's summary judgment
motion.  The Court noted that the "Supreme Court has rejected
rigid mathematical formulas in analyzing statistics purporting to
show disparate impact," citing <u>Bazemore v. Friday</u>, 478 U.S. 385,
404 (1986).  See also, <u>Isabel v. City of Memphis</u>, 404 F.3d 404,
412 (6th Cir. 2005), where the Court noted that statistics "come

-15-

in infinite variety" and rejected an employer's argument that
plaintiff's alternate statistical analysis was insufficient to
establish a prima facie case.

In ruling on Plaintiffs' class certification motion, the
Court need not determine whether or not Dr. Bradley's opinion can
survive a Daubert challenge, whether the underlying data is
sufficiently accurate and reliable to adequately support his
opinion, or whether Plaintiffs' disparate impact evidence on the
whole will be sufficient to withstand a Rule 56 motion.  The
Court is initially satisfied that Bradley has presented a
statistical analysis **framework** that is not fatally flawed, one
that if properly supported with reliable data could give rise to
a reasonable inference of a disparate impact of the written test
upon African American applicants at the Middletown plant.

Concerning the Ashland plant, the Court finds that it would
be manifestly unfair to deny Plaintiffs class certification at
this juncture because AK Steel's Ashland records are not as
complete as those for Middletown.  Given the availability of the
Middletown data, the fact that the same test is used in Ashland,
and the factual disputes about the available data and the hiring
process details, the Court finds that creation of two subclasses,
one for each plant, would be appropriate at this stage.  The
Court has the authority to do so under Rule 23(c)(4)(B).  The
Court also has the continuing obligation to alter or decertify
either or both of these subclasses, if further discovery and
developments should warrant.

-16-

3.    <u>Typicality</u>.

Rule 23(a)(3) requires that the named class representatives'
claims be "typical" of the absent class members claims.  AK Steel
argues that many of the named Plaintiffs lack standing to sue
because they failed to timely file claims, and therefore are not
"typical" class members.  A Title VII plaintiff must file an EEOC
charge within 300 days of the challenged act, and must file suit
no later than 90 days after receipt of the EEOC's notice of right
to sue.  See 42 U.S.C. 2000e-5(e).

Mr. Edwards alleges he took the AK Steel test sometime after
August 2001 in Middletown.  Mr. Freeman alleges he took the test
sometime in 1999 in Middletown.  The remaining seven Applicant
Plaintiffs (Lewis, Oliphant, Darrel Carter, Darlene Carter,
Marnie Carter, Tiffany Jackson and Kay Jackson) allege they each
took the test in Ashland sometime between October 2001 (Tiffany
Jackson) and May 2002 (Lewis and Kay Jackson).

Darrell Carter filed his EEOC charge on June 8, 2002.
Carter's EEOC charge was timely filed within 300 days of taking
the test, it identified the written test, and it included
adequate allegations of classwide discrimination.  (See Doc. 71,
Exhibit 9)  Carter has standing to bring his testing claim.

Donald Edwards filed his EEOC charge on July 9, 2002,
alleging he submitted an application to work at Middletown in
both August 2001 and January 2002.  Edwards states that he
submitted his applications at Palmer Temps, which Edwards alleges
handles hiring for AK Steel.  Edwards' EEOC charge states "I took

-17-

an aptitude test and was interviewed by a white male Palmer Temp representative." Edwards also describes some of the questions on the "AK Steel exam" but does not specify a date on which he took this exam. AK Steel submits an affidavit stating it has no record of Edwards ever taking **their** test, that Palmer Temps does not administer AK Steel's test, and notes that Edwards does not allege that he actually failed the test he took.

If the facts establish that Mr. Edwards took the AK Steel test within the 300 days prior to July 9, 2002, his claim is timely and he would have standing to sue. If, on the other hand, he took the exam earlier, or if he did not take the AK Steel exam at all, he obviously cannot serve as a typical or adequate class representative.

Mr. Freeman's individual testing claim is time barred, a conclusion Plaintiffs do not seriously contest. Instead they argue that the "continuing violations" doctrine, and/or the "single filing" rule or the ability to "piggyback" on another's timely filed claim, permit Freeman to be a class representative. They also argue that the "continuing violations" doctrine permits the temporal scope of the class to extend back to January 2000 (or even earlier, to 1999 when AK Steel apparently first started using the challenged test).

The "single filing" (or "piggybacking") doctrine is a judicially created exception to the rule that a timely administrative charge is a prerequisite to filing suit. If a plaintiff's claim arises from the same discriminatory conduct

committed in the same time frame as the claim already in suit,
the court can disregard the failure to file an administrative
charge.  See, e.g., <u>Horton v. Jackson County Board of</u>
<u>Commissioners</u>, 343 F.3d 897, 899 (7th Cir. 2003).  The doctrine's
genesis was in Title VII class actions.  See, <u>Albermarle Paper</u>
<u>Co. v. Moody</u>, 422 U.S. 405, 414 n. 8 (1975).  Thus, the putative
class members need not have filed their own EEOC charge
concerning the AK Steel written test so long as the class
representative has timely done so.

But the "same time frame" element of the doctrine requires
that a putative class member **could** have timely filed a charge if
he or she had chosen to do so.  See, e.g., <u>Lange v. CIGNA</u>, 766
F.Supp. 1001, 1002-03 (D. Kan 1991), and <u>Lumpkin v. Coca-Cola</u>
<u>Bottling Co.</u>, 216 F.R.D. 380, 384-85 (S.D. Miss. 2003).  See
also, Wright Miller & Kane, <u>Fed. Prac. and Proc.</u>: Civil 3d §1776
[class representative who filed timely administrative claim is a
proper representative, but the class is limited "to those persons
who could have filed an administrative charge about similar
discriminatory treatment at the time the representative did."]

The membership of the Middletown subclass will be those
African-American applicants who took and failed the written AK
Steel test within the 300-day period preceding July 9, 2002.  If
Plaintiffs intend to substitute a proposed class representative
for Mr. Edwards (as they suggested in their briefs), they must do
so within forty-five days of the date of this order.

The membership of the Ashland subclass will be those

African-American applicants who took and failed the written test within the 300-day period preceding June 8, 2002, the date of Mr. Carter's EEOC charge.

Plaintiffs' arguments concerning the "continuing violation" doctrine do not change this result. The continuing violation theory permits recovery of damages based on conduct that is otherwise time-barred if it is part of a continuing pattern of discrimination, such as in a hostile work environment claim. In Amtrak v. Morgan, 536 U.S. 101 (2002), the Supreme Court limited the use of the "continuing violation" theory in cases which involve a series of discrete acts. It is sometimes difficult to neatly separate "discrete discriminatory acts" from acts which are part of a "longstanding pattern and practice of discrimination." However, this Court concludes that each time the AK Steel written test is given to a different applicant is a separate "discrete act." While all such testing is arguably related to the AK Steel policy of using a written qualifying test, every "discrete act" by an employer can likely be tied to a larger policy or practice. The Supreme Court clearly stated that a discrete act is a single occurrence, even when it has a connection to other acts. See Morgan, 536 U.S. at 111-112. To accept Plaintiffs' argument would, in the Court's judgment, be tantamount to rejecting Morgan.

The Court's ruling on the class membership time period is not a determination that evidence pre-dating the class period is irrelevant or inadmissible, an evidentiary question that is

-20-

plainly premature at this point.

    4.  <u>Adequacy of Representation</u>.

Rule 23(a)(4) requires that the "representative parties will fairly and adequately protect the interests of the class."  To satisfy this subsection of the Rule, Plaintiffs must show that the class representatives' interests do not conflict with the absent class members' interests, and that the representatives and their attorneys are able to and will vigorously prosecute the action on behalf of the class.

As to the class representatives, AK Steel repeats its arguments that Edwards' claim is untimely and that Carter (as an Ashland applicant) cannot represent anyone who failed the test in Middletown.  These arguments have been addressed above.  If it is established that Edwards did not take the AK Steel test, he would obviously be an inadequate representative of the proposed class.

As to class counsel, Rule 23(g) requires the Court to carefully consider the work counsel has done in identifying or investigating potential claims; counsel's experience in handling class actions, other complex litigation, and employment discrimination claims; counsel's knowledge of the applicable law; and the resources counsel will commit to representation of the class.  The Court may also consider any other issue concerning counsel's ability to fairly and adequately represent the class, and may direct counsel to propose terms for attorneys fees and nontaxable costs.

Plaintiffs' class certification motion notes these

requirements, and states that Plaintiffs' counsel satisfies all
of them, but provides no facts or information concerning any of
them.  No resume or other information is provided about the
depth and breadth of experience of lead counsel, their work in
investigating potential claims, or the issue of attorney fees and
nontaxable costs.  AK Steel does not address this question at any
length, simply noting that the adequacy issue "raises additional
concerns of whether the representatives will vigorously prosecute
the interests of the class through qualified counsel.  This case
has been pending for three years.  The theory has significantly
changed during that time.  Seven of the named Plaintiffs are now
not even included in the proposed class."  (See Doc. 73, p. 27.)

        The Court therefore orders that Plaintiffs' counsel submit
additional information addressing each aspect of Rule 23(g), and
the question of potential attorneys fees and nontaxable costs, so
that the Court is able to make an informed judgment about the
appointment of counsel.  Plaintiffs' supplemental memorandum
should also directly address whether their representation of the
proposed disparate impact "testing" class raises any potential
conflicts between the Applicant Class Plaintiffs and the
remaining named Plaintiffs, whose damage claims are not limited
to equitable relief.

        B.    <u>Fed. R. Civ. P. 23(b)</u>.

        If Class Plaintiffs can satisfy all four requirements of
Rule 23(a), they must also satisfy one subsection of Rule 23(b).
The Class Plaintiffs argue that certification is proper under

b(2) and/or b(3).

Certification under Rule 23(b)(2) is appropriate when the party opposing the class has acted or refused to act on grounds generally applicable to the class, making final injunctive or declaratory relief appropriate. A disparate impact challenge to a standardized employment test, seeking injunctive relief against further use of that test, would seem well-suited to Rule 23(b)(2) certification. AK Steel argues it is not proper here, because AK Steel's hiring ceased in October 2003 with no plans to resume, making injunctive relief inappropriate. As noted above, the Court believes that AK Steel's unilateral workforce hiring decisions do not preclude injunctive or declaratory relief (although it raises some question as to whether injunctive relief is truly the predominant relief sought).

The Applicant Class Plaintiffs also expressly affirm that they do not seek compensatory or punitive damages for the "testing" claim. Thus 23(b)(2) certification is not improper under the Sixth Circuit's recent decision in <u>Reeb v. Ohio Dept. Of Rehab. & Corr.</u>, 435 F.3d 639 (6th Cir. 2006), which held that "because of the individualized nature of damages calculations for Title VII plaintiffs and the ability of those plaintiffs to bring individual actions, the claims for individual compensatory damages of members of a Title VII class necessarily predominate over requested declaratory or injunctive relief, and individual compensatory damages are not recoverable by a Rule 23(b)(2)

-23-

class." <u>Id.</u> at 651.[2]  The Sixth Circuit also specifically
reaffirmed its pronouncement in <u>Coleman v. GMAC</u>, 296 F.3d 443
(6th Cir. 2002) that back pay is an equitable remedy available
under 23(b)(2) certification.  <u>Reeb</u> concluded that Title VII
plaintiffs have the choice of proceeding under Rule 23(b)(3), or
under 23(b)(2) "for declaratory or injunctive relief alone or in
conjunction with compensatory and punitive damages that inure to
the **group benefit**."  <u>Reeb</u>, 435 F.3d at 651 (emphasis added).

Class Plaintiffs' motion was filed before <u>Reeb</u> was
published.  Class Plaintiffs' motion does not address in any
detail how a back pay award procedure would be structured, other
than stating that the creation of a classwide formula would not
be "onerous nor prejudicial" in this case.  (See Doc. 75, p. 23.)
Back pay is, of course, an equitable remedy.  Given <u>Reeb</u>, and the
fact that the challenged test is but one step in the overall
hiring process, as well as AK Steel's affidavit that it hires
only 42% of **all** applicants who pass the challenged examination,
the Court requires a more detailed description of how Class
Plaintiffs would structure the trial of their claim and the proof
of any entitlement to back pay.

Class Plaintiffs also argue that Rule 23(b)(3) certification
is proper, because a class action is the superior method of

---

[2] <u>Reeb</u> involved a broad disparate **treatment** claim by female
corrections officers at an Ohio prison.  The Court specifically
noted in reaching its decision that the plaintiffs sought both
money damages and injunctive relief, but did not specify the
conduct they sought to have enjoined.  <u>Reeb</u>, 435 F.3d at 640.

determining their disparate impact testing claim, and because
that claim predominates over any individualized issues.  Factors
pertinent to the superiority requirement are (A) the interest of
class members in individual control of prosecution of an action;
(B) the extent of other pending litigation; (C) the desirability
of litigating the claims in this forum; and (D) the difficulties
likely to be encountered in the management of a class action.
Manageability is a consideration that is "peculiarly within the
court's discretion."   In re Visa Check/MasterMoney Antitrust
Litig., 280 F.3d 124, 141 (2nd Cir. 2001) (citation omitted).

     Class Plaintiffs do not address the issue of how the
plaintiffs who are **not** members of the proposed class intend to
litigate their broad disparate treatment claims alleged in the
Second Amended Complaint along with the narrower attack on the
alleged disparate impact of the standardized test.  Nor do they
explain how or whether they intend to try their own individual
disparate treatment claims with the "testing class" claim.
Plaintiffs' Reply Brief states that the fact that 8 of 17 named
plaintiffs are not members of the class is "wholly irrelevant."
(See Doc. 75, p. 22.)  The Court disagrees, as the presence of
differently situated plaintiffs raises questions (and possible
constitutional concerns) about the superiority and manageability
of trying a disparate impact class claim in the same action with
individual claims for compensatory and punitive damages, when all
of the claims may have common or overlapping factual and legal
issues.

**CONCLUSION**

The Court orders Plaintiffs to file a supplemental brief addressing the requirements of Rule 23(g) and the appointment of Class Counsel, including the subject of attorneys fees and nontaxable costs.  The brief should also address the questions raised above concerning Rule 23(b) certification, including proposed formulas for back pay awards, and the procedural and/or constitutional implications of proceeding on both the proposed class claims and the individual plaintiffs' claims.  The brief shall be filed within forty-five days of the date of this Order. Responses and replies shall be filed in accordance with the Court's Local Rule 7.2(a)(2).

The Court also orders that if Plaintiffs intend to name a new representative of the Middletown subclass and withdraw Mr. Edwards, they shall do so within forty-five days of the date of this Order.


DATED: April 24, 2006              s/Sandra S. Beckwith
                              Sandra S. Beckwith, Chief Judge
                                United States District Court