UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| VIVIAN BERT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CASE NO. C-1-02-467 |
| ) | Judge Beckwith |
| AK STEEL CORPORATION, ) | Magistrate Judge Hogan |
| ) | |
| Defendant. ) | |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM
REGARDING MOTION FOR CLASS CERTIFICATION**

In the April 24, 2006, Order [Dkt. #79], the Court ordered plaintiffs to file a supplemental memorandum regarding the appointment of class counsel, including the subject of attorneys' fees and nontaxable costs; Rule 23(b) certification, including formulas for backpay awards and the procedural and/or constitutional implications of litigating the proposed class claims and the individual plaintiffs' claims; and the substitution of a representative for the Middletown subclass. As plaintiffs demonstrate in this Supplemental Memorandum, responses to the Court's questions warrant continued certification of the Middletown and Ashland subclasses.

**I.    RULE 23(G) APPLICATION**

    A.    <u>Plaintiffs' Counsel are Adequate Class Counsel Pursuant to Rule 23(g)</u>

The Court ordered plaintiffs to submit additional information addressing each aspect of Rule 23(g), Federal Rules of Civil Procedure. In the Declarations of Robert F. Childs, Jr., David Sanford, and Grant Morris (*see* Exs. 21, 22, 23, respectively), plaintiffs' counsel establishes that they are qualified to be class counsel in this case. Plaintiffs' counsel have diligently worked to identify and investigate the class action claims, particularly by propounding written discovery to the defendant

regarding the application process at AK Steel; reviewing and organizing thousands of applications and documents produced by the defendant; taking Fed. R. Civ. P. 30(b)(6) depositions of defendant's corporate representatives to ascertain the hiring procedure of AK Steel; selecting and engaging plaintiffs' expert, Dr. Edwin Bradley, to prepare and file expert reports pinpointing the step in defendant's hiring procedure that levied a disproportionate impact upon African-American candidates; and researching and filing three briefs related to the class certification issues. Ex. 21 at ¶ 6.

Plaintiffs' counsel has significant experience in class actions and complex litigation, particularly Title VII disparate impact claims. As reflected in his declaration, Wiggins, Childs, Quinn, & Pantazis, L.L.C., which has been in existence since 1985 with offices in Birmingham, Alabama, and Washington, D.C., is one of the largest, if not the largest, plaintiffs' employment and civil rights law firms in the United States with over 40 attorneys involved in the day-to-day litigation of numerous individual and class actions, including claims of race, sex, age, and disability discrimination, harassment, and retaliation. *See* Ex. 21 at ¶ 2. Mr. Childs has served as class counsel in numerous disparate treatment and disparate impact class actions. *See id*. at ¶ 4. Mr. Johnson served as a law clerk for the Honorable Martha Craig Daughtrey, U.S. Court of Appeals for the Sixth Circuit, and the Honorable Myron H. Thompson, U.S. District Court for the Middle District of Alabama, during which he was assigned several class action cases and issues. *See id*. at ¶ 3. After serving as a law clerk, Mr. Johnson has served as class counsel for several large class actions. *Id*. at ¶ 4. Mr. Sanford has served as class counsel in several class actions in the Title VII and wage and hour arenas, *see* Ex. 22, and Mr. Morris has a comparable level of experience. *See* Ex. 23. Based upon their collective experience of over 60 years, Messrs. Childs, Johnson, Sanford, and Morris

possess a thorough knowledge of the law applicable to Title VII disparate impact class actions and of representing named plaintiffs and putative class members regarding such claims.

Moreover, plaintiffs' counsel command the resources to prosecute this class action. To date, plaintiffs' counsel has expended over $98,000 in hard costs to litigate this class action, all on a contingency fee basis to the named plaintiffs and the putative plaintiff class.

  B. <u>Plaintiffs' Counsel's Attorneys' Fees and Nontaxable Costs Should Be Addressed By the Applicable Statutes and Federal Rules</u>

Upon a successful resolution of this case, plaintiffs' counsel will move for attorneys' fees and costs pursuant to 42 U.S.C. § 2000e-5(k) and Rules 23(h) and 54(d)(2), Federal Rules of Civil Procedure. Section 2000e-5(k) permits the Court to award reasonable attorneys' fees to the prevailing party in a Title VII case. *See also Adcock-Ladd v. Secretary of Treasury*, 227 F.3d 343 (6th Cir. 2000); *Rice v. Gates Rubber Co.*, 521 F.2d 782, 785 (6th Cir. 1975) (even if plaintiff fails to prove his individual claim, district court may still award attorneys' fees if the class action was "well-taken"). Rule 23(h) permits an attorneys' fees award in a class action as "authorized by law or by agreement of the parties."

A motion for such attorneys' fees and nontaxable costs will be made at a time set by the Court, usually after adjudication of the liability phase of the case, or an award of attorneys' fees and nontaxable costs will be part of a settlement of plaintiffs' claims. *See* Rule 23(h). Pursuant to Rule 23(h), notice of the request for attorneys' fees and costs will be accomplished either through notice of a motion for fees and expenses or via notice of a settlement. Any motion for an award of attorneys' fees and nontaxable costs will be based upon a lodestar method of computation. *See Adcock-Ladd*, 227 F.3d at 349; *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004).

C. <u>Representation of the Testing Class Does Not Raise a Conflict Between Applicant Class Plaintiffs and the Remaining Named Plaintiffs</u>

The Court ordered plaintiffs to "directly address whether their representation of the proposed disparate impact 'testing' class raises any potential conflicts between the Applicant Class Plaintiffs and the remaining named Plaintiffs, whose damage claims are not limited to equitable relief." Dkt. #79 at 22. Plaintiffs' counsel's representation of the Middletown and Ashland subclasses does not raise any conflicts between the Applicant Class Plaintiffs and the remaining named plaintiffs.

Conflicts that do not relate to the subject matter in controversy do not warrant a finding of inadequacy in a class action case. *See Kuenz v. Goodyear Tire and Rubber Co.*, 104 F.R.D. 474, 477 (E.D. Mo. 1985); *c.f., Gill v. Monroe County Dept. of Social Scvs.*, 95 F.R.D. 518, 520 (W.D.N.Y.) (1982) ("Differences which do not raise questions as to the very legitimacy of the class action process . . ., but merely reflect variances in view as to the proper outcome of a suit, do not provide reasons for a court to refuse to hear a class suit."). Here, Applicant Class Plaintiffs and the remaining named plaintiffs do not have a conflict regarding the subject matter in controversy, that is, whether AK Steel discriminated against African-American applicants in its hiring process. Both sets of plaintiffs share the same grievance against AK Steel – discrimination against African-American applicants for Laborer vacancies – although the manner in which they suffered discrimination may differ somewhat.

Furthermore, competition among plaintiffs and class members for job opportunities does not present a conflict of interest for adequacy purposes. *See Kuenz*, 104 F.R.D. at 477 (competition between named plaintiffs and proposed class members for future promotional opportunities does not present a conflict because they have a common interest in establishing the existence of

discrimination perpetrated by the defendant); *Meiresonne v. Marriott Corp.*, 124 F.R.D. 619, 625 (N.D. Ill. 1989) (accepting defendant's contention that no class members are adequate representatives because they compete against each other for the same promotions "would [impermissibly] doom almost every *class* action charging discrimination in promotion") (emphasis in original); *Simmons v. City of Kansas City, KS*, 129 F.R.D. 178, 180 (D. Kan. 1989) (rejecting defendant's contention that named plaintiffs have interests antagonistic to proposed class members because some named plaintiffs received promotions: "[a]t most, defendants have highlighted the inevitable factual variations among named plaintiffs and potential class members" that are "insufficient to undermine . . . adequacy"). Therefore, competition between the Applicant Class Plaintiffs and the remaining named plaintiffs for job opportunities at AK Steel, if such exist as available remedies for the two sets of plaintiffs, does not present a conflict of interest sufficient to render plaintiffs' counsel inadequate.

As foreshadowed in the previous passage, divided loyalties among two sets of plaintiffs only arise if two groups will compete for the same remedies. *See Beavers v. Amer. Cast Iron Pipe Co.*, 852 F.2d 527, 531 (11th Cir. 1988) (counsel's representation of a male class and a female class against the same company regarding discrimination does not present a conflict because the remedies sought by the classes were not in conflict); *Bacon v. Honda of Amer. Mfg., Inc.*, 205 F.R.D. 466, 482-83 (S.D. Ohio 2001) (counsel's representation of female class and African-American class seeking same remedies for discrimination renders counsel inadequate due to potential conflicts of interest). Here, plaintiffs' counsel does not possess divided loyalties between the Applicant Class Plaintiffs and the remaining named plaintiffs. The Applicant Class Plaintiffs will seek remedies to rectify the use of the discriminatory entry-level test, which includes injunctive, declaratory, and

5

equitable relief. The injunctive and declaratory relief, which would include eradication of the discriminatory test and a declaration that it was unlawful, represents a benefit for the remaining named plaintiffs, not a harm.

Finally, as the challenged test is an intermediate step in the hiring process, and thus, it is not possible to know with any degree of certainty who would have actually been hired by AK Steel, the equitable backpay relief for the identified class members will be bestowed on a classwide rather than individualized basis. Such equitable backpay relief, which will be based upon the shortfall in the number of African-Americans who should have made it past the testing stage, is wholly distinct and separate from the backpay, compensatory, and punitive damages relief that may be awarded to the remaining named plaintiffs for their disparate treatment claims. The remaining named plaintiffs' relief will be based upon the disparate treatment proof model, and plaintiffs' counsel will not have a conflict in adjudicating their claims vis-a-vis the Applicant Class Plaintiffs' claims.

## II.   TRIAL OF CLASS CLAIMS AND PROOF OF ENTITLEMENT TO BACKPAY

The Court additionally ordered plaintiffs to provide a "more detailed description of how Class Plaintiffs would structure the trial of their claim and the proof of any entitlement to back pay." Dkt. #79 at 24. Plaintiffs propose a structure and proof method that adheres to the precedent applicable to this case.

As the Manual for Complex Litigation states, Title VII employment discrimination class actions may be adjudicated in two stages: a liability phase and a remedy phase:

> Employment discrimination class actions have commonly been tried in separate stages under Rule 42(b). In some cases the class issues may themselves be severed, with the Phase I trials of different class issues conducted separately. The Phase I trial determines whether the defendants have discriminated against the class. . . . If class-wide discrimination is found, issues of relief are tried in Phase II. . . . Where the

>case is tried to the court [as disparate impact claims are], the judge should determine, in Phase I, the appropriateness of class-wide injunctive relief. The individual damage claims of the class members should be resolved in Phase II.

Manual for Complex Litigation (Fourth) § 32.45 (2004) (footnote omitted); *see also Int'l. B'hood of Teamsters v. U.S.*, 431 U.S. 324 (1977). A well-regarded treatise on employment discrimination law states that disparate impact class actions are well-suited for a two-stage trial:

>Whether bifurcation will be useful in a particular class action depends upon the circumstances of the case. For example, in a 'simple' adverse impact case, the Stage I proceeding involves statistical proof relating to the alleged adverse impact of the challenged practice and the employer's proof of business necessity. Stage II proceedings focus upon individual determinations of whether particular employees were actual victims of the discriminatory practice and the appropriate remedies for each.

2 Barbara Lindemann & Paul Grossman, Employment Discrimination Law 1630 (3d ed. 1976) (footnotes omitted).

This bifurcated structure and proof method represents the same procedures proposed by the parties in their Fed. R. Civ. P. 26(f) Report and Joint Discovery Plan. *See* Ex. 24 at ¶ 2(B) ("The parties recommend that discovery should be bifurcated between liability and damages."). Therefore, the liability of AK Steel for the discriminatory impact of its entry-level test will be adjudicated in the first phase of a class action trial. The Court would hear testimony on the statistical evidence relevant to the impact of the test, any job-relatedness and business necessity defenses advanced by AK Steel, and any alternatives that would meet the defendant's purported business necessity and have less impact against African-Americans. If plaintiffs prevail on the disparate impact claim, then the Court may award appropriate injunctive relief, and an interim award of attorneys' fees and costs may also be awarded after granting injunctive relief. *See* Manual for Complex Litig., at § 32.45.

As for the Stage II remedy proceedings, the Court previously repeated the Sixth Circuit

holding that "back pay is an equitable remedy available under [Rule] 23(b)(2) certification." *Id.*; *see also Reeb v. Ohio Dept. of Rehab. & Correction*, 435 F.3d 639 650 (6th Cir. 2006) (citing *Coleman v. GMAC*, 296 F.3d 443, 449-50 (6th Cir. 2002); *Senter v. General Motors Corp.*, 532 F.2d 511, 525 (6th Cir. 1976)). Although the authorities cited above sanction the provision of damage remedies based upon individualized circumstances, plaintiffs do not believe such awards are appropriate in this case. Because passing the test would not guarantee that any particular class member actually would be hired by AK Steel due to the additional steps in its hiring process, ascertaining which class members would have been entitled to a Laborer vacancy is nigh impossible here. *See Bailey v. Great Lakes Canning, Inc.*, 908 F.2d 38, 42 (6th Cir. 1990) (in approving relief on a classwide basis, ruling that "[i]t would have been virtually impossible for the court to determine which individuals would have been hired but for the discrimination."); *EEOC v. O & G Spring & Wire Forms Spec. Co.*, 38 F.3d 872, 880 n. 9 (7th Cir. 1994) ("To hold individualized hearings for 451 applicants to determine what they had earned when they were not employed at [defendant] would have been unreasonable; moreover, given that [defendant's] jobs were entry level jobs requiring little experience, it would be impossible to determine which specific class members would have been hired absent discrimination."). In circumstances such as those presently before the Court, the Sixth Circuit, and other courts, have sanctioned the use of classwide backpay awards. *See Bailey*, 908 F.2d at 42 (because it was impossible to determine which class members would have been hired but for discrimination, a "*pro rata* distribution of the award among the class was the fairer method"); *O & G Spring*, 38 F.3d at 880 & n. 9 (same); *Pettway v. Amer. Cast Iron Pipe Co.*, 681 F.2d 1259, 1266 (11th Cir. 1982) ("[W]e fully recognized the difficulties involved in arriving at a fair determination of back wages to which a class of employees are entitled because of their having been prejudiced by

discriminatory promotion and transfer policies. However, we indicated several possible solutions of a classwide nature."); *c.f.*, *Reeb*, 435 F.3d at 651 (compensatory and punitive damages that inure to a group benefit may be awarded to a Title VII Rule 23(b)(2) class).

Therefore, plaintiffs propose that a classwide backpay award be utilized in this case, which would be distributed on a pro rata basis to class members identified through the defendant's applicant records as having failed the defendant's test. Notice may be sent to class members giving them an appropriate period of time to indicate their desire to remain a part of the subclass and receive relief. The backpay award would be calculated by ascertaining the total wages and benefits, plus interest, that the class members would have earned at AK Steel from the beginning of the liability period until the time of judgment on liability. This total amount would be offset by an appropriate mitigation amount reflecting the interim earnings of the class members, as adjusted by the employment rate of African-Americans within the relevant labor market. The resulting backpay amount would then be divided *pro rata* among the class members. This method of computing a classwide backpay award has been expressly upheld by the Sixth and Seventh Circuits. *See Bailey*, 908 F.2d at 41; *O & G Spring*, 38 F.3d at 880 n. 9.

### III. COURT MAY SEPARATE CLAIMS OF NONCLASS PLAINTIFFS FROM CLASS PLAINTIFFS VIA RULES 21 OR 42, AND, CLASS PLAINTIFFS FOREGO THEIR DISPARATE TREATMENT CLAIMS

In its discussion regarding certification under Rule 23(b), the Court ordered plaintiffs to address two additional issues: (1) how those plaintiffs who are not members of the subclasses intend to litigate their disparate treatment claims along with the narrower, adverse impact testing class claim; and (2) how or whether the Applicant Class Representatives intend to try their individual disparate treatment claims along with the adverse impact testing class claim. Dkt. #79 at 25.

9

As for the first question posed by the Court, the non-class plaintiffs' disparate treatment claims may either be severed into another action pursuant to Rule 21, Federal Rules of Civil Procedure, or set for a separate trial under Rule 42, Federal Rules of Civil Procedure. Either procedure would avoid the unnecessary complexity and potential confusion that may arise from trying the two types of claims together. Either procedure would also avoid problems under the Seventh Amendment to the U.S. Constitution, in that the Court's adjudication of the adverse impact class claims will not overlap with a jury's consideration of the non-class plaintiffs' individual disparate treatment claims for compensatory and punitive damages. Plaintiffs are prepared to initiate a formal request (via motion) for a Rule 21 severance or Rule 42 separation if the Court deems such necessary to accomplish the suggestions discussed above.

As for the Applicant Class Representatives' disparate treatment claims, the Applicant Class Representatives hereby relinquish those claims. As reflected in the declarations attached to the Memorandum in support of plaintiffs' Motion for Class Certification, the Applicant Class Representatives' allegations properly encompasses discrimination resulting from a test having a disparate impact. *See* Dkt. #71, Exs. 5-13. The Applicant Class Representatives' disparate impact claim is the most advantageous method of proving they were subject to racial discrimination in the application process. If the Court desires, the Applicant Class Representatives will file a more formal dismissal of their disparate treatment claims via motion.

**IV.     SUBSTITUTION OF MIDDLETOWN CLASS REPRESENTATIVE**

Finally, the Court ordered plaintiffs, if they intend to do so, to name a new representative for the Middletown subclass within 45 days of the date of its April 24th Order. Dkt. #79 at 26. Therewith, as a part of this Supplemental Memorandum, plaintiffs move to intervene James E.

Greenwood as an additional party-plaintiff and class representative for the Middletown subclass pursuant to the Court's April 24th Order and Rule 24, Federal Rules of Civil Procedure. By this Motion, Mr. Greenwood requests an Order permitting him to adopt the Second Amended Complaint (Dkt. #45) of plaintiffs in the above-styled proceeding as his own with like effect as if fully repeated, with any and all other proper relief.

Mr. Greenwood is a member of the class, pursuant to his application within the liability period. *See* Ex. 25. Mr. Greenwood took the AK Steel entry-level test and failed it. *See* Ex. 25. He desires to serve as a plaintiff and representative for the Middletown subclass. *See* Ex. 25. Mr. Greenwood has a substantial interest in the subject matter of the pending disparate impact class action as he will be bound by any judgment, decree or order that will be entered regarding the disparate impact class action. His testing claim shares common questions of law and fact with the disparate impact class action issues. Permitting Mr. Greenwood to intervene will not delay or otherwise interfere with the disposition of this matter as the Court expressly gave plaintiffs permission to substitute a class representative in its April 24th Order. *See* Dkt. #79 at 19, 26.

At this time, plaintiffs do not intend to withdraw Donald Edwards as a putative class representative for the Middletown subclass. Although the defendant contends that Mr. Edwards never applied for employment at AK Steel within the liability period, and never took and failed their entry-level test within 300 days of submitting an application, Mr. Edwards firmly believes that he timely took and failed the test. Thus, he is also an adequate representative for the Middletown subclass. Plaintiffs previously set forth authority for the proposition that individual defenses, such as whether plaintiff Edwards actually took and failed the test in 2001, do not defeat class certification at this stage. *Wagner v. Nutrasweet Co.*, 95 F.3d 527, 534 (7th Cir. 1997) ("Typicality under Rule

11

23(a)(3) should be determined with reference to the company's actions, not with respect to particularized defenses it might have against certain class members.") (citation omitted); *Jeffreys v. Communication Workers of America*, 212 F.R.D. 320, 322 (E.D. Va. 2003) ("differences in the availability of certain defenses against the representative plaintiffs[] does not prohibit a finding of typicality as long as the claims are based on the same legal or remedial theory") (citations omitted); *Dietrich v. Bauer*, 192 F.R.D. 119, 125 (S.D.N.Y. 2000) ("a representative may satisfy the typicality requirement even though that party may later be barred from recovery by a defense particular to him that would not impact other class members") (citations omitted); *Cook v. Rockwell Intl. Corp.*, 151 F.R.D. 378, 386 (D. Colo. 1993) ("a [statute of limitations] contention cannot serve to bar a class certification [because] an inquiry into a claimed affirmative defense impermissibly allows an issue going to the merits of the litigation to intrude upon the class certification analysis required by Rule 23").[1]

## **CONCLUSION**

WHEREFORE, PREMISES CONSIDERED, plaintiffs respectfully request that the Court to maintain the certification of the Middletown and Ashland subclasses.

    Respectfully Submitted,

    */s/ Herman N. Johnson, Jr.*
    Robert F. Childs, Jr. (ASB-2223-C-60R)
    Herman N. Johnson, Jr.(ASB-3607-R50J)
    **WIGGINS, CHILDS, QUINN & PANTAZIS**
    The Kress Building
    301 19th Street North

---

[1] *See also Lawson v. Metropol. Sanitary Distr. of Greater Chicago*, 102 F.R.D. 783, 793 (N.D. Ill. 1983) ("a class representative need not prove that his or her claim will succeed as a condition of representation").

Birmingham, Alabama 35203
(205) 328-0640
(205) 254-1500 (facsimile)

Tobias, Kraus & Torchia, LLP
414 Walnut Street
Suite 911
Cincinnati, Ohio 45202
(513) 241-8137
(513) 241-7863 (facsimile)

**CERTIFICATE OF SERVICE**

      I do hereby certify that on June 8, 2006, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Gregory Parker Rogers
Lawrence James Barty
Patricia Anderson Pryor
Taft, Stettinius & Hollister, LLP
1800 First Star Tower
425 Walnut Street
Cincinnati, OH 45202
Fax: (513) 381-0205

                                        */s/ Herman N. Johnson, Jr.*
                                        OF COUNSEL

## **LIST OF EXHIBITS**

Ex. 21         Affidavit of Robert F. Childs, Jr.

Ex. 22         Statement of Adequacy of David W. Sanford

Ex. 23         Statement of Adequacy of Grant Morris

Ex. 24         Parties' Rule 26(f) Report and Joint Discovery Plan

Ex. 25         Declaration of James E. Greenwood