```
            UNITED STATES DISTRICT COURT
             SOUTHERN DISTRICT OF OHIO
                  WESTERN DIVISION
```

Vivian Bert, et al,                  :    Case No. 1:02-cv-467
                                     :
    Plaintiffs,                      :
                                     :
v.                                   :
                                     :
AK Steel Corporation,                :
                                     :
    Defendant.                       :

**ORDER**

Before the Court is Plaintiffs' Supplemental Memorandum in support of class certification. (Doc. 81)  Defendant has responded (Doc. 94), and Plaintiffs have replied. (Doc. 95)

**BACKGROUND**

Plaintiffs are sixteen African-American unsuccessful applicants for employment with AK Steel, and one African-American employee.  They allege that AK Steel engages in systemic racial discrimination in its hiring and promotion practices at its plants located in Middletown, Ohio and Ashland, Kentucky.

After filing a Second Amended Complaint (Doc. 45), nine of the sixteen original Applicant Plaintiffs sought certification of a narrower class, of African-American applicants who failed AK Steel's written pre-employment screening test.  (Docs. 70, 71)  This Court's April 24, 2006 Order (Doc. 79) concluded that Rule 23(a)'s requirements of numerosity and commonality were initially satisfied.  As to typicality and adequacy issues, the Court held

that if the named plaintiff Edwards took and failed the challenged employment test in the 300-day period preceding his July 9, 2002 EEOC charge, his claim is timely.  Given AK Steel's lack of any record that Edwards actually took the AK Steel test in that time frame, the Court granted Plaintiffs 45 days in which to name a new representative for the Middletown applicants, if they chose to do so.  The Court also ordered Plaintiffs' counsel to submit information required under Rule 23(g) addressing counsel's ability to represent the proposed class.

The Court also noted a concern about potential conflicts between the Applicant Class Plaintiffs (those nine named plaintiffs who allege they took and failed the AK Steel test) and other plaintiffs who did not take the test, but who more broadly allege discrimination in AK Steel's hiring practices.  In addition, after the class certification motion was filed, the Sixth Circuit decided Reeb v. Ohio Dept. Of Rehab. & Corr., 435 F.3d 639 (6th Cir. 2006), which essentially gives Title VII plaintiffs a choice of proceeding under Rule 23(b)(2) OR 23(b)(3).

Therefore, the Court ordered Plaintiffs to file a supplemental brief addressing the issues of adequacy of representation, equitable back pay calculation, and the manageability of proceeding in this case with variously situated plaintiffs and different class and non-class discrimination

claims.

## ANALYSIS

1. <u>Counsel's Adequacy Under Rule 23(g)</u>.

Plaintiffs have filed an affidavit of their counsel Robert Childs, and statements from attorneys David Sanford and Grant Morris, outlining their significant experience with employment class action litigation. Counsel assert they have expended over $98,000 in hard costs on this case to date, on a contingent fee basis to the named plaintiffs. They plan to move for attorneys fees and costs, if appropriate, after the liability phase of the case.

Defendant does not challenge the professional ability and experience of Plaintiffs' counsel. The Court concludes that the lawyers are experienced in employment litigation and can fairly and ably represent the proposed class.

2. <u>Adequacy of Middletown Representatives.</u>

Plaintiffs have not withdrawn Donald Edwards as a proposed representative of the Middletown Applicants, despite the significant questions raised by AK Steel concerning his standing to prosecute a testing claim. Plaintiffs have proposed adding a second representative, James Greenwood, whose declaration (Doc. 81, Exhibit 6) states he took the AK Steel test on November 8, 2001.

AK Steel argues that Greenwood cannot serve as a class

representative because he has not filed an EEOC charge. It is clear that at least one named plaintiff must have Article III standing and satisfy the requirements of Rule 23(a) in order to serve as an adequate class representative. Plaintiffs cannot "bootstrap" Edwards (who filed an EEOC charge but may not have taken the test) with Greenwood (who took the test but did not file a charge) to satisfy Rule 23(a). Greenwood is certainly a member of the putative class, and the Court has already ruled that every member of the proposed testing class need not have filed an individual EEOC charge. But the class representative must have timely done so.

Plaintiffs cite Griffin v. Dugger, 823 F.2d 1476 (11th Cir. 1987) to argue that an **intervenor**-plaintiff like Greenwood may rely on the single filing rule. There, the Eleventh Circuit held that an intervening plaintiff need not have filed a separate EEOC charge, because "As long as at least one named plaintiff timely filed an EEOC charge, the precondition to a Title VII action is met for all other named plaintiffs and class members." Id. at 1492 (internal citation omitted). The principle is sound, but it applies here only if Edwards actually took the test. If he did not, he is not a member of the Applicant Class. The single filing rule does not stretch so far as to permit Greenwood to be the sole Middletown class representative.

AK Steel also attacks Greenwood's adequacy because he lacks

a substantive "personal stake" in the class claims, and does not share common interests with other members of the class. Greenwood testified that he has worked at another company since 1987. He applied at AK Steel in September 2001 due to a possible layoff from his employer. He did not pass the challenged test, after which an AK Steel representative suggested he meet with a different hiring group for "professionals." Greenwood apparently did not follow up because he learned that his job with his long-term employer was safe. He also testified that, if he was now offered a laborer's job at AK Steel, he would "leave his options open. I wouldn't say no. ... I would have to think about it, talk to my wife and look at my pros and cons. If it was to my advantage, I would probably do it. I need to get better, not regress." (Doc. 92, Greenwood Deposition p. 20.)

In addition to Mr. Greenwood's honest assessment of his economic and career interests, he also testified that he got involved in this lawsuit because he is a lifelong Middletown resident and he "knows what goes around. And the minority at AK Steel - - AK is very minimum, very minimum. And if there's some way for me to open the doors to make it easier for my brother or my three best friends that tried to get hired at AK that couldn't, I'll help in any way I can to do what I have to do." He testified that he was seeking "Satisfaction. Change the test basis." (Doc. 92, Deposition at pp. 21:22 - 22:7.) Net economic

loss is not necessarily the primary qualification for an "adequate" class representative in an employment discrimination case. Mr. Greenwood took and failed the challenged test, and may have suffered from its alleged disparate impact. He is sufficiently motivated and informed of the class claim of discrimination. Assuming that Edwards proves to be a class member, Mr. Greenwood is an adequate co-representative.

    3.   <u>Possible Conflicts Among Plaintiffs</u>.

Plaintiffs assert there is no conflict between the proposed Applicant Class and the other named plaintiffs who never took the test, and who bring individual disparate treatment claims. (Those individuals are Vivian Bert, Edward James Lewis, Mary Harris, Roderique Russell, Michael Miller, Ronald Sloan, and Shawn Pryor. Plaintiff Allen Roberts is a former employee with his own employment-related claims.)

Newberg & Conte describe a conflict fatal to class certification as one that is "central to the litigation". Newberg on Class Actions, §24:33 (4th Ed. 2002). In employment litigation such a conflict may exist when different plaintiffs are directly competing for the same jobs. See, e.g., <u>Bacon v. Honda of Amer. Mfg., Inc.</u>, 205 F.R.D. 466, 482-83 (S.D. Ohio 2001), finding conflict when the same lawyers represented African-American and female employee groups suing Honda in different actions. In other contexts, economic interest

conflicts among class members will prevent certification. See, e.g., Valley Drug v. Geneva Pharmaceuticals, 350 F.3d 1181 (11th Cir. 2003), where class certification was denied in an antitrust action, because the injury alleged by the named plaintiffs actually benefitted other members of the proposed class. And see, Paper Systems, Inc. v. Mitsubishi Corp., 193 F.R.D. 601 (E.D. Wis. 2000), where the proposed class representative dismissed a primary defendant at the behest of Paper Systems' president, who said he had a good relationship with the dismissed party, thus creating an irreconcilable conflict with the rest of the class.

AK Steel argues that Plaintiffs' maneuvers to obtain certification have created a conflict. The named Applicant Class Plaintiffs have stated that, in order to avoid any Seventh Amendment problems and to ease the management of this action, they are relinquishing their individual disparate treatment claims they may have. (Doc. 81, p. 10) AK Steel characterizes this as a concession that a conflict exists, one that strongly supports denial of class certification.

The named plaintiffs, however, stress that this waiver of their broader claims is personal and will not bind all the absent class members. Plaintiffs cite cases holding that the court must not pre-judge any potential res judicata or collateral estoppel issues in determining class certification. In Coleman v. GMAC,

220 F.R.D. 64, 81 (M.D. Tenn. 2004), the district court observed that, to its knowledge, the Sixth Circuit has never squarely addressed the question of whether class suits for declaratory and injunctive relief preclude subsequent individual actions for monetary damages. Other authorities suggest that such a determination is very fact specific. See, e.g., <u>Cooper v. Federal Res. Bank of Richmond</u>, 467 U.S. 867, 873 (1984). Plaintiffs describe the disparate impact claim, with its equitable award of back pay, as distinct from a disparate treatment claim, and state that the outcome of the former will not bar absent class members from proceeding on any of the latter individual claims they may have. The Sixth Circuit's holding in <u>Reeb v. Ohio Dept. Of Rehab.</u>, 435 F.3d at 651, may support Plaintiffs' arguments, as the Court noted that class plaintiffs must choose between Rule 23(b)(2) and (b)(3), but "as always" remain free to bring individual Title VII actions.

The Court therefore concludes that there is no conflict among the plaintiffs that would preclude certification at this stage of the proceedings.

    4.   <u>Management of Further Proceedings.</u>

Applicant Class Plaintiffs propose a phased trial. Phase I would determine whether AK Steel's test had an impermissible disparate impact on African-American applicants, any defenses to that claim, and whether injunctive or other equitable relief is

warranted.  Phase II would determine the scope of equitable relief, which Plaintiffs characterize as including an equitable, classwide award of back pay.  Plaintiffs admit that it would be almost impossible to determine who among the Applicant Class members would have actually been hired if a class member had passed the test, due to AK Steel's multi-step hiring process.  Therefore Plaintiffs assert that a class-wide award is appropriate.

    Plaintiffs cite <u>Bailey v. Great Lakes Canning, Inc.</u>, 908 F.2d 38 (6th Cir. 1990) as authority for such a pro rata award.  There, the Sixth Circuit approved a pro rata distribution to approximately 150 identified class members, after a trial finding that the Defendant engaged in a pattern and practice of racial discrimination in an almost entirely subjective hiring process.  Based upon plaintiffs' calculated statistical shortfall in Africa-American hiring established during trial, twenty additional African-Americans should have been hired during the relevant period.  The back pay award was nevertheless allocated pro rata to all class members, because it was virtually impossible to determine which class members might have actually been hired.  This allocation was approved despite evidence of the 45 African-American applicants who actually possessed superior credentials to the white applicants who were hired; yet these 45 individuals received no added benefit from the aggregate award.

The Court notes that <u>Bailey</u> involved a settlement after trial, and addressed objections from dissenting plaintiffs. Here, AK Steel vigorously contests the propriety and legitimacy of Plaintiffs' proposed formula to calculate back pay. That formula, according to Plaintiffs, requires determination of the size of the class through class notice and opt-out rights. Once the class is defined, total wages and benefits that would have been earned but for the test would be calculated. That amount would be offset by an "appropriate mitigation" amount for actual earnings, and further adjusted by African-American employment rates in the pertinent labor market. The net result would be distributed pro rata among class members.

The Court need not resolve the dispute between the parties about this proposed formula at this time, as it is intertwined with the merits of entitlement to back pay. While Defendant's concerns may well be valid, it appears plausible that an appropriate method to determine back pay awards could be developed, one that is not based merely on speculation or conjecture. As with Plaintiffs' basic evidence on disparate impact, that showing is sufficient for initial certification.

After trial of the disparate impact class claim, Plaintiffs intend to proceed with a jury trial on the remaining individual disparate treatment claims. As discussed above, to achieve this bifurcation of class and non-class claims, the Applicant Class

Plaintiffs are relinquishing their individual disparate treatment claims. Plaintiffs also intend to seek formal severance of the class and non-class claims under either Rule 21 or Rule 42.

AK Steel argues that Plaintiffs are "desperate" to achieve class certification to divert attention from the substantive weakness of their claims, and to "extort" a settlement. While certification can be a powerful plaintiff's tool, class certification serves the laudable goal of efficiently determining a truly common issue in one proceeding.

Another appropriate consideration here is whether or not the claim would be prosecuted by an individual plaintiff if class certification were denied. The 1991 Title VII amendments made the prosecution of individual discrimination suits far more economically feasible. However, disparate impact claims by necessity involve experts and complex statistical analysis and evidence, the costs of which may not be readily borne by individual plaintiffs. The advantages of determining that threshold question in one proceeding seem obvious.

The Court concludes that Rule 23(b)(2) certification is appropriate for the question of whether the challenged test had a statistically significant disparate impact on the African-American test-takers. The Court has discretion under Rule 23(c)(4)(A) to certify that issue alone. The Sixth Circuit has often observed that variations and differences among the class do

not defeat certification, so long as "one common issue" is identified and class resolution of that issue is appropriate under Rule 23. See, e.g., Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1197 (6th Cir. 1988). The Court is also mindful of the need to avoid a class certification tail wagging the larger lawsuit dog, a concern that is central to the requirements of Rule 23(b).

Given the Named Class Plaintiffs' intent to waive their claims for money damages, the homogeneity of interests necessary to Rule 23(b)(2) certification is sufficient here. The Court has discretion to order notice to this class at any stage of the proceeding, under Rule 23(d), in order to protect the interests of the absent class members. Plaintiffs state that notice would be appropriate to determine a back pay award, but do not state at what stage of this proceeding they believe notice would be appropriate. That issue will be addressed as discussed below.

## CONCLUSION

Given the need to progress to the merits of this case, the Court will conditionally certify two subclasses under Rule 23(b)(2). Those subclasses are defined as:

1. All African-American applicants for labor positions at AK Steel's Middletown, Ohio plant who took and failed AK Steel's screening employment test within the 300-day period preceding July 9, 2002, and who allege that test has an impermissible disparate impact on African-American applicants.

    2.    All African-American applicants for labor positions at AK Steel's Ashland, Kentucky plant who took and failed AK Steel's screening employment test within the 300-day period preceding June 8, 2002, and who allege that test has an impermissible disparate impact on African-American applicants.

Rule 23(d) gives the Court broad discretion to issue orders appropriate to these proceedings. The Court may alter or amend this certification order at any time before judgment, under Rule 23(c)(1)(C). Further discovery on any of the issues discussed above, or in the Court's April 24, 2006 Order (Doc. 79), may require alteration, amendment, or decertification of either or both subclasses.

    Plaintiffs shall file a statement with the Court on the timing and general text of a proposed notice to the subclasses by February 2nd, 2007. Defendant may respond to Plaintiffs' proposal by February 12th, 2007.

    This matter is referred to the Magistrate Judge for a scheduling conference at the earliest possible date that is convenient for the Magistrate Judge and the parties.

    **SO ORDERED.**

DATED: January 19th, 2007      s/ Sandra S. Beckwith
                                        Sandra S. Beckwith, Chief Judge
                                            United States District Court