UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| **VIVIAN BERT, et al.,** | ) | **CASE NO. C-1-02-467** |
| | ) | |
| Plaintiffs, | ) | **Judge Beckwith** |
| | ) | **Magistrate Judge Hogan** |
| v. | ) | |
| | ) | **PLAINTIFFS' OPPOSITION TO** |
| **AK STEEL CORPORATION,** | ) | **DEFENDANTS' MOTION TO** |
| | ) | **DECERTIFY MIDDLETOWN** |
| Defendant. | ) | **SUBCLASS** |

In the defendant's Motion to Decertify the Middletown Subclass, and the Memorandum in support thereof (Dkt. # 112), AK Steel Corporation argues that the Middletown subclass should be decertified because class representative Donald Edwards purportedly did not take the qualifying test for the defendant's entry-level labor position. Alternatively, AK Steel argues that the subclass should be decertified because Mr. Edwards's August 2001 taking of the test renders untimely his June 28, 2002, discrimination charge with the Equal Employment Opportunity Commission. As plaintiffs will demonstrate, further discovery in this case revealed that there still remains a disputable issue of fact – indeed, the dispute was widened – as to whether Mr. Edwards applied for employment at AK Steel in August 2001 and took its qualifying test at that time. In addition, applicable precedent regarding the limitations periods for employment discrimination claims will portray that Mr. Edwards's claims are timely notwithstanding the taking of the test in August 2001. Further, plaintiffs will revisit their prior arguments that Middletown class representatives Edwards and James Greenwood, an intervening plaintiff, may rely upon the Ashland class representatives' E.E.O.C. charges to maintain their claims and statuses as class representatives. Finally, plaintiffs reassert their argument that one class should be maintained for the African-Americans who failed the qualifying

test at the Middletown and Ashland facilities. As a result, plaintiffs request that the defendant's Motion to Decertify be DENIED.

## I.    BACKGROUND

At the center of the current dispute before the Court is plaintiff Donald Edwards's status as a class representative for the Middletown subclass. As recounted previously, plaintiff Donald Edwards submitted a declaration in which he avers that in August 2001 he applied at Palmer Temps for Laborer positions at AK Steel's Middletown facility. In addition, Mr. Edwards declared that at the time of his application he completed a qualifying test and was told that he would receive word whether his application was approved or rejected. Mr. Edwards never heard anything from AK Steel after his August 2001 application, however. Donald Edwards Decl. at 1 (attached as Ex. 5 to *Pls.' Class Cert. Mot.* (Dkt. #70).

On January 19, 2007, this Court certified two subclasses in this case as follows:

1. All African-American applicants for labor positions at AK Steel's Middletown, Ohio plant who took and failed AK Steel's screening employment test within the 300-day period preceding July 9, 2002, and who allege that test has an impermissible disparate impact on African-American applicants.

2. All African-American applicants for labor positions at AK Steel's Ashland, Kentucky plant who took and failed AK Steel's screening employment test within the 300-day period preceding Jun 8, 2002, and who allege that test has an impermissible disparate impact on African-American applicants.

Dkt. #96 at 12-13. In addition, however, the Court noted that Mr. Edwards cannot serve as a class representative if he took the exam prior to September 12, 2001, – which is 300 days before his June 28, 2002, E.E.O.C. charge of discrimination – or did not take the exam at all. Dkt. #79 at 21.

In reliance upon the Court's statement, AK Steel filed the instant Motion to Decertify to

lodge an argument that Mr. Edwards never took its exam, and even if he did, he did not take it on September 12, 2001, or thereafter. The defendant's arguments do not merit decertification of the class action.

## II.    AK STEEL'S PURPORTED EVIDENCE THAT EDWARDS DID NOT TAKE THE LABOR QUALIFYING EXAM DOES NOT COMPEL DECERTIFICATION

In its initial volley against Mr. Edwards, AK Steel relied upon a declaration from Mary Jane Palmer Nunlist, founder and owner of the Palmer Group. *See* Ex. 2 to Def.'s Motion. In her declaration, Mrs. Nunlist avers that the Palmer Group was not taking applications for AK Steel Labor positions in August 2001 and never administered its qualifying exam. M. Nunlist Decl. at ¶¶ 2, 3, 4. Furthermore, Mrs. Nunlist declared that the Palmer Group's records purportedly show that Mr. Edwards registered with the Palmer Group to serve as a temp worker on January 29, 2001, and additionally that he purportedly took the Palmer Group's test, not AK Steel's test, on either January 29th or February 6, 2001. *Id*. at ¶ 5.

Due to unfortunate circumstances, however, Ms. Nunlist's declaration should not be given any probative value. Mrs. Nunlist's husband, Richard Nunlist, testified at a deposition on August 17, 2007, that she has suffered from unknown primary cancer since 2005, and her chemotherapy treatment has subjected her to memory loss. R. Nunlist Dep. at 11, 96-98 (filed contemporaneously herewith). Mrs. Nunlist's deposition testimony starkly demonstrates the memory loss she has suffered.

In essence, Mrs. Nunlist's deposition testimony compels the conclusion that she was not competent to testify about the disputed facts at issue during her deposition or at the time she rendered her declaration on May 24, 2007. Early in her deposition, Mrs. Nunlist responded as follows to a

3

query regarding her capacity to recall events and information:

> Q. Okay. Well, what I'm going to ask you today -- the questions I'm going to ask you, I'm just asking you to give your knowledge as far as you can recall today. All right?
> A. Four years ago?
> Q. Yes.
> A. If somebody asked me where did I go for lunch yesterday --
> Q. Well, I'm just asking you to do your best to recall to the best of your ability.

M. Nunlist Dep. at 9 (filed contemporaneously herewith).

Most critically for this case, Mrs. Nunlist could not remember the date at which the Palmer Group stopped accepting applications for AK Steel:

> Q. I understand. Okay. Has Palmer Temps ever accepted applications for employment from AK Steel?
> A. Yes.
> Q. Do you know at what times Palmer Temps has done this?
> A. I really don't. I don't really know when it was.

\* \* \*

> Q. At what time are you saying that AK Steel decided to call it off? Do you know?
> A. I think it was -- I think she told him around the beginning of the year, or she wanted him to stop on January the 1st. But we already had people scheduled, and so we went ahead and tested them. So it was probably the end of the month when we actually stopped.
> Q. Are you talking about 2007?
> A. Yes. Well --
> Q. That's this year.
> A. Yes, I think it was this year. I'm not real sure.
> Q. Okay.
> A. I think it's probably 2006. I just don't know.

\* \* \*

> Q. Now, at the time that AK Steel asked you to stop taking applications, you said it might be 2006, it might be 2007, but you are not sure; is that correct?
> A. It could have been, but it could have been 2003 or 4 too. I'm just not sure.

\* \* \*

Q. I see. Is it your testimony that you have never provided employees for AK Steel who worked inside the mill?
A. If we did, it was eight, ten years ago.

* * *

Q. Do you know when -- and maybe I have asked you this before, but maybe this will help clarify this. There was a certain period of time that you accepted applications for laborer positions at the mill; is that correct?
A. Uh-huh.
Q. Okay. How long was this period of time? Was it a matter of years, or a matter of months?
A. It probably was April to January of 2005.
Q. Were there any other times that you took applications for laborer positions at the mill?
A. No.

* * *

Q. Okay. Paragraph number two [of M. Nunlist Declaration], could you read that to me, please?
A. AK Steel -- AK Steel asked us to help it with its direct hires by accepting applications for its labor reserve jobs at our offices on Roosevelt Boulevard. It was our understanding that AK Steel needed some administrative help processing applications during this time. We performed this function for AK Steel for a period of time, completed this form [sic] prior to January 29th, 2001, and have not performed it since.
Q. Okay. Does this document refresh your memory as to the time frame when you accepted applications for the laborer position for AK Steel?
A. Uh-huh.
Q. Is that a yes?
A. Gosh, 2001?
Q. Are you answering yes to my question?
A. I'm talking to myself. 2001. Yeah, I guess it was 2001.

* * *

Q. Mary Jane -- you have asked me to call you Mary Jane -- I have asked your attorney to withdraw this declaration from this lawsuit, because I feel like when you signed it, you weren't certain about these statements that you made here, and I don't think you are certain about them today. And you testified that you were just as ill in May as you are today. And you are having a difficult time remembering things; is that correct?
A. Yes.

M. Nunlist Dep. at 19, 20-21, 27, 36, 38-39, 54-55, 68.

As alluded to in the last passage quoted above, Mrs. Nunlist testified that she suffered from the ill effects of her treatment at the time she rendered her declaration on May 24, 2007:

> Q. Did you have a bad memory in May of 2007 when you signed this declaration?
> A. Uh-huh. Well, you know, at times I don't, at times I do. I have a lot of trouble with numbers.
> Q. Okay. In May of 2007 when you signed this declaration, were you living in Florida?
> A. Yes. In May?
> Q. Yes.
> A. Yes.
> Q. And how was your health in May of 2007, which was earlier this year, May of this year?
> A. Stage four.
> Q. I'm sorry. I'm sorry. I have to ask you because --
> A. I know. It just upsets me.
> Q. Yeah, I'm sure. And I'm sorry. But I need to understand what's going on.
> A. My health wasn't any better then.
> Q. It wasn't any better then? Okay.
> A. It's been like this probably a year and a half.

M. Nunlist Dep. at 65-66. Mr. Nunlist confirmed that Mrs. Nunlist suffered from memory loss when she executed her declaration:

> Q. Have you had any observations about the effect of the chemotherapy on your wife's memory?
> A. Yes.
> Q. And what observations have you had?
> A. She has had two major rounds of chemo. She is on a pill chemo currently. And after the first round, toward the end, I noticed a difference in her memory. And then after she was off of it for a month or two, it seemed to come back. She came back pretty much to her normal self. And this last chemo, toward the end of it, I noticed it again, but this time she isn't getting better. She is actually getting worse in the last month.
> Q. When did the last chemo end? I'm sorry.
> A. Around June 1st.
> Q. Of 2007?
> A. Well, that was the IV chemo. She is currently on pill chemo, which, according to her doctor here, is as strong, in fact, stronger, has more worse side effects than the IV chemo. So she is currently on pill chemo right now.

R. Nunlist Dep. at 97-98.

Indeed, it appears from Mrs. Nunlist's deposition testimony that she did not even provide the

6

information for her declaration:

> Q. Were you contacted by someone to make this declaration?
> A. They sent it to us in the mail, I believe.
> Q. Who sent it to you?
> A. Your attorneys you are working for.
> Q. My attorneys? No.
> A. The attorneys in Atlanta -- or in Georgia.
> Q. The attorneys in Georgia?
> A. Well, I don't know. There's been so many lawsuits.
> Q. All right.
> A. Maybe the president sent it to me. It's federal, so --
> Q. Do you mean that as a joke?
> A. I just knew when I got it that I was going to have to, you know, go to -- have a deposition.
> Q. All right. Now, you signed this declaration. Are you testifying that it was sent to you in the mail typed as it is right now?
> A. I don't know if it was exact or not.
> Q. Did you talk to anyone before you received this in the mail, if you did receive it in the mail?
> A. No.
>
> \* \* \*
>
> Q. All right. I'm sorry if I'm not asking very clear questions. What I'm asking you is what attorney talked to you about this declaration, not attorney -- that's what I'm asking you. What attorney talked to you about this declaration?
> A. Well, they pretty well ignored me. But Greg talked to me about it.
> Q. Okay. And you are indicating Greg Rogers?
> A. Yes.
> Q. I don't want to know anything about the content or how you feel about Greg Rogers. I don't want to know anything about that. I just wanted to know which lawyer contacted you in regard to this declaration, and you're answering that it was Greg Rogers?
> A. Right.
> Q. All right. So you did not type up this declaration; is that true?
> A. No.
> Q. Okay. And you received this in the mail; is that true?
> A. Uh-huh.
> Q. And you read it over?
> A. I think it was gotten in the mail. I can't think of any other way I would get it.
>
> \* \* \*

7

    Q. All right. When you signed this declaration, did you, yourself, check any documents to see if this was correct?
    A. Check any other documents?
    Q. Uh-huh, to see if this date, January 29th, 2001, was correct.
    A. No.
    Q. You did not check any other documents to make sure this was a correct date?
    A. No.
    Q. How did you determine that this was the correct date, then?
    A. I just trust everybody that it's the right information.
    Q. Okay.
    A. It's a legal document. I mean, I never -- I don't question that much.

M. Nunlist Dep. at 49-50, 52-53, 55-56.

Based upon the testimony from the Nunlists' depositions, there should not be any dispute that Mrs. Nunlist did not have the capacity to render her declaration on May 24th or to testify at her deposition on August 17th. Therefore, Mrs. Nunlist's testimony may not be relied upon in support of AK Steel's Motion to Decertify because her declaration and deposition are not admissible evidence in this case.

Plaintiffs' counsel discovered that Mrs. Nunlist was seriously ill with cancer more than two weeks before her deposition. Therefore, plaintiffs' counsel contacted defense counsel Greg Rogers on August 1, 2007, and offered to cancel the deposition of Mrs. Nunlist if the defendant would withdraw Mrs. Nunlist's declaration and have Mr. Nunlist testify as to the facts in the declaration. *See* 8/1/07 Email from S. Donahue to G. Rogers (attached as Ex. 29 hereto). Plaintiffs deemed this arrangement suitable because Mr. Nunlist has been the Vice-President of the Palmer Group for a number of years. Defense counsel responded, however, that he was not certain that Mr. Nunlist could testify as to the same facts as Mrs. Nunlist, so the defendant declined to withdraw Mrs. Nunlist as a witness in this case. *See* 8/1/01 G. Rogers Email to S. Donahue (attached as Ex. 30).

Nevertheless, after Mrs. Nunlist demonstrated during her deposition that the facts in her

8

declaration are in dispute, the defendant attempted to cure the deficiencies in Mrs. Nunlist's memory by having Mr. Nunlist corroborate the facts in Mrs. Nunlist's declaration. R. Nunlist Dep. at 93-95. Coupled with the realization that AK Steel has been a client of the Palmer Group from 1986 to the present (*id*. at 16), and that defense counsel for AK Steel represented the Nunlists at their depositions (*id*. at 6; M. Nunlist Dep. at 4), there certainly exists a disputed issue of fact as to whether Mr. Edwards applied for a Labor job at the Palmer Group in August 2001 and took AK Steel's qualifying test therewith.

Indeed, the disputed issue of fact is buttressed by evidence that the Palmer Group may have retaliated against Mr. Edwards for his participation in this lawsuit against AK Steel. Mr. Nunlist testified, as stated in Mrs. Nunlist's Declaration at ¶ 3, that he sent plaintiffs' counsel Rusty Johnson an email on September 10, 2006, stating that Mr. Edwards did not apply for an AK Steel position at the Palmer Group in August 2001. R. Nunlist Dep. at 94. However, unbecknowst to plaintiffs' counsel, on September 8, 2006, Mr. Edwards was told by an official of the Middletown Community Center that he needed to complete an application at Palmer Group to secure employment as a custodian with the Center. *See* D. Edwards 2006 E.E.O.C. Charge (attached as Ex. 31 hereto). When Mr. Edwards went to Palmer Group to apply for the position on or about September 15, 2006, a Palmer Group receptionist viewed his record on their system, conferred with her "boss," and subsequently informed Mr. Edwards that "'My boss said that it wouldn't be appropriate' to hire you." *Id*. As evidenced, Mr. Edwards filed an E.E.O.C. charge of discrimination against the Palmer Group based upon its retaliatory treatment. Therefore, Mr. Nunlist's September 10, 2006, email to plaintiffs' counsel that Mr. Edwards did not apply for an AK Steel position in August 2001 was subsequently tainted by the Palmer Group's retaliation against Mr. Edwards on or about September

15, 2006.

As a result of the foregoing facts in their totality, the defendant has not demonstrated that Mr. Edwards erroneously declared that he applied for a Labor job at the Palmer Group in August 2001 and took the AK Steel test at the same time. Indeed, it is noteworthy that plaintiffs served a subpoena on the Palmer Group, with a return date of August 10, 2007, seeking all records, electronic or otherwise, regarding its interactions with Mr. Edwards, and to date the Palmer Group has not produced any such records regarding Mr. Edwards's purported application for a temp job in January 2001 and the purported taking of the Palmer Group's test during the same period. Furthermore, that the defendant does not have any records of Mr. Edwards's August 2001 application, or that he took its test during that period (*see* Def.'s Memo. at 6), is also thrown into disrepute by the foregoing facts. At this juncture, the circumstances surrounding Mr. Edwards's application and test still remain disputed, and therefore a class certification determination is not the appropriate stage to resolve the dispute. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974) ("nothing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action"); *see also, Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 1201 (6th Cir. 1974) ("when determining the maintainability of a class action, the district court must confine itself to the requirements of Rule 23 and not assess the likelihood of success on the merits"). Therefore, AK Steel's Motion to Decertify should be denied on this basis.

### III.     EDWARDS IS A PROPER CLASS REPRESENTATIVE EVEN IF HE TOOK THE TEST UPON APPLYING IN AUGUST 2001

AK Steel argues that even if Mr. Edwards took the qualifying test in August 2001, his claims would be untimely because the Middletown subclass's limitations period begins September 12, 2001. *Def.'s Memo.* at 6-8. The defendant errs in its analysis, however, because it fails to acknowledge the appropriate time from which Mr. Edwards had 300 days to file his E.E.O.C. charge.

Relying upon Supreme Court precedent, the Sixth Circuit has held that "the limitations period does not begin to run on a claim for employment discrimination until an employer makes and communicates a final decision to the employee." *E.E.O.C. v. UPS, Inc.*, 249 F.3d 557, 561-62 (6th Cir. 2001) (per curiam) (citing *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980)); *see also Mayo v. Kenwood Country Club, Inc.*, No. 97-4007, 1998 WL 863624, *2 (6th Cir. Nov. 23, 1998) (per curiam) ("In an employment discrimination case, the limitation period begins to run when an employee has unequivocal notice of an adverse employment decision.") (citing *Chardon v. Fernandez*, 454 U.S. 6, 8 (1981)); (other citations omitted). "Once the employee is aware or reasonably should be aware of the employer's decision, the limitations period commences." *UPS*, 249 F.3d at 562 (citing *Ricks*, 449 U.S. at 258); (other citation omitted).

As Mr. Edwards stated in his declaration, after applying and taking the test in August 2001 he never heard back from either the Palmer Group or AK Steel about the test results or his candidacy. Ex. 5 to *Class Cert. Mot.*, at 1. Based on Sixth Circuit precedent, Mr. Edward's limitations period for filing his charge of discrimination began to run when he reasonably should have been aware that AK Steel rejected his August 2001 candidacy for employment. Plaintiffs submit that such a reasonable time period should encompass, and conceivably extend beyond, September 12, 2001.

Although one does not have the exact date in August 2001 when Mr. Edwards applied and took the test, at the outer limits there exists a mere 42 days between the earliest possible date (August 1, 2001) and September 12, 2001.  Therefore, Mr. Edwards filed a timely charge of discrimination regarding his August 2001 application and test.

Furthermore, as plaintiffs have argued previously, even if plaintiff Edwards's charge isultimately found to be untimely, he and intervening class representative James Greenwood could still piggyback upon the charge of Ashland plaintiff Darrel Carter – with a rearward temporal scope back to August 12, 2001, for the standard liability period – to maintain a Middletown subclass.  *See Howlett v. Holiday Inns, Inc.*, 49 F.3d 189 (6th Cir. 1995).  The piggyback, or single filing rule, "allows the administrative charge of one plaintiff to satisfy the charge filing obligations of other plaintiffs."  *Id.* at 194 (citing *Equal Employment Opportunity Comm'n v. Wilson Metal Casket Co.*, 24 F.3d 836 (6th Cir.1994)).  A "charge will be adequate to support piggybacking under the single filing rule if it contains sufficient information to notify prospective defendants of their potential liability and permit the EEOC to attempt informal conciliation of the claims before a lawsuit if filed."  *Id.* at 195.  The *Howlett* Court also favorably cited a Second Circuit decision for the proposition that for large work units, the representative charge must sufficiently indicate violations against a group of individuals for a plaintiff to piggyback on the charge for class action purposes.  *Id.* at 195-96 (discussing *Tolliver v. Xerox Corp.*, 918 F.2d 1052 (2d Cir.1990)).

Plaintiff Darrell Carter's charge is clearly sufficient for class representatives Edwards and Greenwood to piggyback on for their individual and class action disparate impact claims.  *See* Ex. 9 to Pls.' *Class Cert. Memo.* (Dkt. #71).  In his charge, plaintiff Carter describes his failure of the test and prefaces his narrative with the statement that "AK Steel Corporation's actions are part of

a continuing pattern and practice of discrimination against African-American applicants for employment . . . ." *Id.* at 1. Plaintiff Carter concludes his charge with the following declaration:

> I have been adversely affected by these discriminatory practices by being deprived of the equal opportunity to be hired. Such discrimination denies me and other African-Americans the right to be hired for positions for which we are qualified. . . . Based on my experiences, I believe that AK Steel Corporation has engaged and continues to engage in a pattern and practice of discrimination against its African-American applicants for employment . . . . I believe this policy has effected a class of black persons comprised of all past, present and future black applicants for employment with AK Steel. *I believe that these discriminatory practices occur throughout AK Steel Corporation. I make this charge on behalf of myself and all similarly situated African-American applicants for employment and employees.*

*Id.* at 2 (emphasis added). As portrayed, plaintiff Carter's charge was clearly sufficient to inform the E.E.O.C. and AK Steel that he was alleging discrimination against the defendant for its Labor hiring practices throughout the company, including its discriminatory qualifying test, and that these allegations were made on behalf of a class of African-Americans. Because plaintiff Carter's charge was filed along with at least 15 other E.E.O.C. charges alleging discrimination in AK Steel's hiring practices, all alleging class claims, the E.E.O.C. and the defendant were sufficiently notified of a class action so that class representatives Edwards and Greenwood may piggyback on plaintiff Carter's charge.[1]

Furthermore, that Mr. Edwards may have filed an untimely E.E.O.C. charge is not

---

[1] Moreover, the Sixth Circuit has commented that the "reasonable investigation rule" would permit a non-charge filing individual to file a lawsuit. *See E.E.O.C. v. Wilson Metal Casket Co.*, 24 F.3d 836, 840 n. 3 (6th Cir. 1994); *see also, id.* at 843 (Ryan, J., *dissent*). The reasonable investigation rule provides that a Title VII complaint is "limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *E.E.O.C. v. Bailey*, 563 F.2d 439, 446 (6th Cir. 1977), *abrogated on other grounds by*, *Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412 (1978). As discussed, the E.E.O.C. investigation of Darrell Carter's charge should have reasonably encompassed a review of AK Steel's qualifying test utilized at the Middletown and Ashland facilities.

dispositive. Under binding Sixth Circuit precedent he could still be an adequate class representative for the Middletown subclass. In *Howlett*, the Sixth Circuit stated:

> The single filing rule serves to prevent a wooden application of the administrative charge requirement where the ends of the requirement have already been satisfied. The purpose of the single filing rule is no less well served in application to a potential plaintiff who has filed an untimely EEOC charge than to one who has never filed an administrative charge. A potential plaintiff who has filed an untimely EEOC charge is not given any more of a 'second bite at the apple' than any plaintiff who brings a civil action . . . after filing an EEOC charge.

*Howlett*, 49 F.3d at 196-97; *see also Smith v. Healthsouth Rehab. Center of Memphis, Ltd.*, 234 F. Supp. 2d 812, 816 (W.D. Tenn. 2002) ("Based on its review of the case law and the pleadings [including *Howlett*], the court finds that [plaintiff] may benefit from the single filing rule only if she did not file an EEOC charge at all *or if she filed a charge that was untimely*.") (emphasis added); *c.f., Binion v. Metropolitan Pier and Expos. Auth.*, 163 F.R.D. 117 (N.D. Ill. 1995) (class representatives are allowed to establish an earlier limitations period based upon the earlier charge of another complainant). Therefore, class representatives Edwards and Greenwood may rely upon the standard liability period established by plaintiff Carter's charge – back to August 12, 2001 – to demonstrate that his claim fell within the liability period and that he has standing based on this fact.

**IV.    THE COURT SHOULD MAINTAIN ONE CLASS ENCOMPASSING THE ASHLAND AND MIDDLETOWN TEST TAKERS BECAUSE THEY TOOK THE SAME TEST**

Finally, if the Court ultimately rules that Messrs. Edwards and Greenwood are not adequate class representatives because they did not file a timely charge and they cannot rely upon the Ashland class representatives' charges of discrimination, then plaintiffs respectfully reassert their argument that one class may be maintained for African-American applicants who failed the same qualifying test used at the Ashland and Middletown facilities. As plaintiffs have argued previously, it is beyond

dispute that a test used at multiple facilities of a company may be challenged on a class basis if it has a disparate impact against a protected group. *See, e.g., Williams v. Ford Motor Co.*, 187 F.3d 533, 535-36 (6th Cir. 1999) (in a class action covering seven Ford Motor Company plants in Ohio, the Sixth Circuit examined the validity of a pre-employment test used for the hiring of unskilled, hourly laborers); *Bacon v. Honda of America Mfg., Inc.*, 205 F.R.D. 466, 471-72, 477-78 (S.D. Ohio 2001) (finding commonality regarding a disparate impact claim challenging facially neutral criteria used at four Honda plants in central Ohio), *affm'd by*, 370 F.3d 565 (6th Cir. 2001); *Dothard v. Rawlinson*, 433 U.S. 321 (1977) (disparate impact claim upheld for neutral height and weight policy used for multiple prison facilities); *c.f.*, *General Telephone Company of the Southwest v. Falcon*, 457 U.S. 147, 159 n. 15 (1982) ("If petitioner used a biased testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test would satisfy the commonality and typicality requirements of Rule 23(a)." Disparate impact cases necessarily "satisfy the commonality and typicality requirements of Rule 23(a)"); *Stastny v. Southern Bell Tel. & Telegraph Co.*, 628 F.2d 267, 274 n. 10 (4th Cir. 1980) (it is "well recognized" that "class action commonality criteria are, in general, more easily met when a disparate impact rather than a disparate treatment theory underlies a class action"). As AK Steel uses the same test at both Middletown and Ashland,[2] a disparate impact class action may be properly maintained across both facilities.

Indeed, the Sixth Circuit has approved the maintenance of one applicant class even if the class challenges several different hiring requirements utilized by different entities. *See Smith v. United B'hood. of Carpenters and Joiners of America*, 685 F.2d 164 (6th Cir. 1982). In *Smith*, a class

---

[2]Lester at 73-74 (attached as Ex. 17 to *Pls.' Class Cert. Reply* (Dkt. #75)).

of skilled and unskilled African Americans seeking employment as carpenters lodged a disparate impact claim against four local carpentry unions, the union international, the collective bargaining agent for the locals, and a joint contractor-union apprenticeship council for their use of discriminatory entrance requirements for the trade. *Id*. at 165. The Court ruled that the class representatives met the adequacy prong of the Fed. R. Civ. P. 23 analysis so as to represent all class members regardless of the entrance requirement challenged:

> Here, only the entrance requirements to the trade were challenged. This case is not analogous to a broad attack on an employer's hiring, firing, and seniority procedures. That instance requires separate representatives because the interests of employees are pitted against those of non-employee applicants. In contrast, this lawsuit presents only the claims of the latter group. *Inasmuch as applicants' interests are the same, it is not necessary to divide them into subgroups according to the individual entrance criteria.* To do so unreasonably burdens the plaintiffs.

*Id*. at 167 (emphasis added); *see also Intl. Union, United Automobile, Aerospace, and Agricul. Implem. Workers of America v. General Motors Corp.*, __ F.3d __, Nos. 06-1475, 06-2064, 2007 WL 2239208, at *11 (6th Cir. Aug. 7, 2007) ("if every distinction drawn (or not drawn) . . . required a new subclass, class counsel would need to confine [the class] to the simplest imaginable or risk fragmenting the class beyond repair"); *Clark Equip. Co. v. Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 803 F.2d 878, 880 (6th Cir.1986) ("Subclassing . . . is appropriate only when the court believes it will materially improve the litigation" and is not always necessary because "subclassing often leads to more complex and protracted litigation."). As the Supreme Court has held, for adequacy purposes "the interests of those within the single class [need only be] aligned" to dispense with the creation of subclasses. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 (1997).

      The interests of the African Americans who failed AK Steel's qualifying test for the Ashland and Middletown facilities are aligned. This actions presents a challenge to a test that is utilized at

both facilities, and there exists no conflict between Middletown test-takers and Ashland test-takers. Indeed, counsel for AK Steel has represented, and offered to stipulate, that the Ashland class representatives were definitively not hired because they failed the test. *See* Ex. 30. There should be no impediment preventing the class representatives who failed the test at Ashland from representing the African-Americans who failed the test at Middletown and vice-versa, especially given the guidance from *Smith*, *supra*. Therefore, plaintiffs respectfully request that the Court re-certify one class for the African-American applicants who failed the same qualifying test at Ashland and Middletown.

## **CONCLUSION**

WHEREFORE, PREMISES CONSIDERED, plaintiffs respectfully request that the Court DENY the defendant's Motion to Decertify the Middletown Subclass. In the alternative, plaintiffs respectfully request that the Court re-certify one class for the African-American applicants who failed the same qualifying test at Ashland and Middletown.

Respectfully Submitted,

*/s/ Herman N. Johnson, Jr.*
Robert F. Childs, Jr. (ASB-2223-C-60R)
Herman N. Johnson, Jr.(ASB-3607-R50J)
**WIGGINS, CHILDS, QUINN & PANTAZIS, LLC**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 328-0640
(205) 254-1500 (facsimile)

Tobias, Kraus & Torchia, LLP
414 Walnut Street
Suite 911
Cincinnati, Ohio 45202
(513) 241-8137

(513) 241-7863 (facsimile)

ATTORNEYS FOR THE PLAINTIFFS

**CERTIFICATE OF SERVICE**

       I do hereby certify that on August 23, 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Gregory Parker Rogers
Lawrence James Barty
Patricia Anderson Pryor
Taft, Stettinius & Hollister, LLP
1800 First Star Tower
425 Walnut Street
Cincinnati, OH 45202
Fax: (513) 381-0205

                                    */s/ Herman N. Johnson, Jr.*
                                    OF COUNSEL