UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VIVIAN BERT, et al. | : | Case No. C-1-02-467 |
| | : | |
| Plaintiffs, | : | Judge Beckwith |
| | : | Magistrate Judge Hogan |
| v. | : | |
| | : | **REPLY MEMORANDUM OF** |
| AK STEEL CORPORATION | : | **DEFENDANT AK STEEL** |
| | : | **CORPORATION IN SUPPORT OF** |
| Defendant. | : | **ITS MOTION TO DECERTIFY THE** |
| | : | **MIDDLETOWN SUBCLASS** |

## I.      INTRODUCTION

Defendant AK Steel Corporation ("AK Steel" or "the Company") has moved the Court to decertify the Middletown subclass (Doc. 112) pursuant to Federal Rule of Civil Procedure 23 and this Court's Orders of April 24, 2006, January 19, 2007, and April 11, 2007.  (Docs. 79, 96 and 106)  This Court stated in these Orders that for the Middletown subclass to remain certified, the Plaintiffs would need to identify a Middletown plaintiff who took and failed the written AK Steel test after September 12, 2001, i.e., the 300-day period preceding the July 9, 2002 filing of EEOC charge no. 221A200687 by Plaintiff Donald Edwards ("Edwards").  (Doc. 79 at 18, Doc. 96 at 2-4, Doc. 106 at 5)  After it became clear that Plaintiffs would rely solely on Edwards to fulfill this burden, this Court noted that if Edwards did not fulfill Title VII's prerequisites to suit, that this may "require decertification of the Middletown class, as this Court's prior order made clear."  (Doc. 106 at 3-4)  It is now indisputable Edwards did not take and fail the written AK Steel test after September 12, 2001.  He is not a class member, he cannot serve as class representative and the Middletown subclass should be decertified.

{W1063922.7}

Recent discovery makes it plain that Plaintiffs' counsel has known for almost one year that Edwards did not take the AK Steel test after September 12, 2001. Palmer Temps Vice President Richard Nunlist (not a party in this action) told Plaintiffs' counsel Rusty Johnson in September of 2006 that Edwards did not take the AK Steel test at the Palmer Temps office at any time. (R. Nunlist Dep. at 32-35, 75) Mr. Nunlist further explained to Johnson in September of 2006 that the test Edwards took at Palmer Temps in 2001 was a test Palmer Temps used to evaluate candidates to work as temporary employees for Palmer Temps. (R. Nunlist Dep. at 34-35)

Additionally, despite representations by Plaintiffs in a prior legal memorandum that Edwards claims to have taken a test at Palmer Temps later than August of 2001 (Doc. 79 at 13), Edwards testified under oath to the contrary -- he testified that he believes that he took a test at the Palmer Temps office in August of 2001. (Edwards Dep. at 23-24, 54-55)

Now that Plaintiffs are faced with the fact that discovery conclusively proves that they can identify no one who took and failed the Middletown test during the relevant period, they resort to re-arguing positions which have previously been rejected by this Court, wrongly arguing that the Middletown class can piggy-back off an Ashland Plaintiff's charge and wrongly arguing for a single class consisting of applicants for employment at the Middletown, Ohio and Ashland, Kentucky facilities. These positions were rejected by this Court before and they should be rejected again.

## II.    PROCEDURAL POSTURE

Almost two years ago, AK Steel pointed out that the Middletown subclass should not be certified because Plaintiffs could identify no class member with standing to bring a claim challenging the Middletown test. (Memorandum of Defendant in Opposition to Plaintiffs' Motion for Class Certification, Doc. 73 at 15) Edwards has never taken the AK Steel test at

issue. (*Id.* at 15, 26)  Even if Edwards had taken the test in August 2001 when he claimed he took it, Edwards's claim would be untimely as this was more than 300 days prior to his filing a July 9, 2002 EEOC charge. (*Id.* at 15)

Plaintiffs responded to AK Steel's position by making a claim in December 2005 which they knew or should have known at the time was untrue.  This misrepresentation to the Court has resulted in almost two years of discovery wasting this Court's valuable time and costing the parties substantial money and time.  Plaintiffs incorrectly stated that:

> However, plaintiff Edwards <u>has never alleged that he failed the qualifying test in August 2001</u>.  As reflected in plaintiff Edwards's declaration (attached as Exh. 5 to plaintiffs' Class Cert. Memo.), he merely stated, "In previous applications, such as one in August 2001, I took an aptitude test and was interviewed by a white male Palmer Temp representative."  Ex. 5 at 1.  Plaintiff Edwards's statement does not state that he submitted an application in August 2001 and immediately took the test.  Rather, he indicates that he submitted an application in August of 2001 and subsequently was tested.

(Plaintiffs' Reply in Support of Motion for Class Certification, Doc. 75 at 13; emphasis in the original)

In response to the representation by Plaintiffs' counsel that its sole proffered Middletown class representative Donald Edwards had taken the AK Steel test after September 12, 2001, this Court ruled that: "[i]f the facts establish that Mr. Edwards took the AK Steel test within 300 days prior to July 9, 2002, his claim is timely and he would have standing to sue.  If, on the other hand, he took the exam earlier, or if he did not take the AK Steel exam at all, he obviously cannot serve as a typical or adequate class representative." (Doc. 79 at 18)  The Court further forewarned that: "[t]he questions of whether Edwards is a member of the class will presumably be resolved before the question of liability, and may require a de-certification of the Middletown subclass, as the Court's prior order made clear." (Doc. 106 at 3-4)  The facts now make clear that decertification is appropriate.

{W1063922.7}                                3

### III. ARGUMENT

#### A. Donald Edwards Did Not Take The AK Steel Test.

Plaintiffs incorrectly argue in their Memorandum in Opposition to Defendants' Motion to Decertify the Middletown Subclass that a disputable issue of fact exists as to whether Edwards took the AK Steel test at the Palmer Temps office in August of 2001. Plaintiffs wrongly state that AK Steel's position that Edwards did not take the AK Steel test is dependent upon the Declaration of Palmer Temps' owner Mary Jane Nunlist. Plaintiffs argue that Mary Jane Nunlist is not competent to testify due to complications from cancer[1] and that AK Steel's Motion fails if it cannot rely on Mary Jane Nunlist's testimony. (Doc. 121 at 3-9)

Plaintiffs are incorrect. AK Steel's position does not depend upon the testimony of Mary Jane Nunlist. One must remember that Federal Rule of Civil Procedure 23 requires the Plaintiffs prove that their named representative for the class satisfies all jurisdictional prerequisites before the class can go forward. *City of Hialeah v. Rojas*, 311 F.3d 1096, 1101 (11th Cir. 2002). Hence, AK Steel need not provide any evidence at all if Plaintiffs fail to produce evidence to prove that Edwards took the AK Steel test.

Plaintiffs make their argument that Edwards took the AK Steel test in August of 2001 based solely on Edwards's self-serving testimony that he took a test at the Palmer Temps office which consisted of seven to 15 simple math questions, was not divided into sections, and took between 15 and 30 minutes to complete. (Edwards Dep. at 24-25, 53-55) Plaintiffs proffer no other evidence that Edwards took the AK Steel test.

Even Edwards's deposition testimony in which he gave description of the test he took at Palmer Temps makes it clear that the test he took at Palmer was not the AK Steel test. The AK

---

[1] Mrs. Nunlist's mental state in May, 2007 when she signed her Declaration was quite different than it was at the time of her deposition. She did fully participate in the drafting of her Declaration and verified and supplied the facts for her Declaration. No words were put in her mouth. Her husband testified that her memory has gotten worse since her June round of chemo, and it is apparent that this was the case. (R. Nunlist Dep. at 96-98)

Steel test consists of 365 questions versus the seven to 15 questions on the test taken by Edwards; takes approximately three hours to complete versus the 15 to 30 minutes to complete the test taken by Edwards; and consists of seven distinct sections (Pattern Series, Mechanical Reasoning, Reading Comprehension, Industrial Math, Form Pattern Perception, 3-D Reasoning, and Person Style Inventory) versus the test taken by Edwards with no separate sections. (Doc. 112, Morris Dec. ¶ 3) Moreover, the AK Steel test has never been given at the Palmer Temps office. (Doc. 73, Short Dec. ¶ 13; Doc. 112, Morris Dec. ¶ 5; R. Nunlist Dep. at 69-70, 94; M. Palmer Nunlist Dep. at 21, 69)

Plaintiffs learned a year ago from Palmer Temps Vice President Richard Nunlist that Edwards (a) did not apply at the Palmer Temps office in August 2001 for work at AK Steel; (b) did not take the AK Steel test at the Palmer Temps office; and (c) that the test Edwards took at Palmer Temps was Palmer Temps' own test, yet Plaintiffs continue to represent otherwise to the Court.

In September of 2006, Plaintiffs' counsel Rusty Johnson contacted Mr. Nunlist; told Mr. Nunlist that he was an attorney representing Edwards in a lawsuit; and asked Mr. Nunlist if Edwards applied for a position for AK Steel through Palmer in August of 2001. (R. Nunlist Dep. at 32, 73-75) Mr. Nunlist informed Johnson that Edwards had not applied for AK Steel employment at Palmer Temps in August of 2001 and that Edwards had never taken the AK Steel test at the Palmer Temps office. (R. Nunlist Dep. at 32-33, 75) Mr. Nunlist told Johnson that Edwards came to the Palmer Temps office on January 29, 2001 and applied to work as a temporary employee for Palmer Temps, i.e., not to work for AK Steel, and that he took the test which Palmer Temps uses to evaluate candidates to work for Palmer. (R. Nunlist Dep. at 33-34)

Mr. Nunlist sent a confirming e-mail to Johnson dated September 11, 2006 in which he stated that "Donald Edwards did not apply for any AK mill position with us in August of 2001.

{W1063922.7}                                    5

In fact we did not take any applications from anyone for any AK mill positions in August of 2001." (R. Nunlist Dep. at 31 and Dep. Exh. 3)

The afternoon of his August 17, 2007 deposition, Mr. Nunlist confirmed from the Palmer Temps computer data base that Edwards applied to work as a Palmer Temp in January 2001 and took the Palmer Temp test at that time. (R. Nunlist Dep. at 96-97)

Further, Edwards could not have taken the AK Steel test at Palmer Temps because the AK Steel test has never been administered at the Palmer Temps office. Phyllis Short, Jessica Morris, Richard Nunlist, and Mary Jane Nunlist have all unequivocally stated that the AK Steel test was never administered at the Palmer Temps office. (Doc. 73, Short Dec. ¶ 13; Doc. 112, Morris Dec. ¶ 5; R. Nunlist Dep. at 69-70, 94; M. Palmer Nunlist Dep. at 21, 69) Plaintiffs offer no evidence to contradict the testimony of these four individuals that the AK Steel test has never been administered at Palmer Temps.

While Plaintiffs have attempted to discredit Ms. Nunlist's testimony due to her health issues and her corresponding difficulty to remember certain details (especially those dealing with numbers)(M. Palmer Nunlist Dep. at 65), there is no hesitation in her testimony regarding the fact that Palmer Temps has never administered the AK Steel test at Palmer Temps. She testified that:

> I just don't understand why this is even going on, how I even got involved. You know, we have never tested anybody in our office with an AK test ever.

(M. Palmer Nunlist Dep. at 69) Further, if there are any issues with her Declaration, Richard Nunlist testified as to every point made in the Declaration, and the information from the Mary Jane Nunlist Declaration is now in the record from this additional source. (R. Nunlist Dep. at 91-96)

Palmer Temps Vice President Richard Nunlist was unequivocal in his testimony regarding the AK Steel test never having been administered at Palmer Temps. An exchange with Plaintiffs' counsel Susan Donahue is telling.

> Q. Well, did you understand that you were a witness to an aspect of the lawsuit and that is why you were being asked the question, a factual question?
>
> A. I wasn't -- well, in your terminology maybe I was a witness. In my thinking, we didn't give anybody the test that AK -- at Palmer Temps ever. We never -- Don Edwards did not come in August of 2001. So, you know, I guess in my mind, I wasn't part of it.
>
> Now, you are saying I'm a witness. I guess I am a witness to something that didn't happen.

(R. Nunlist Dep. at 69)

Plaintiffs have known since September of last year that Edwards did not take the AK Steel test at Palmer Temps. The AK Steel test has never been administered at Palmer Temps. Edwards did apply at Palmer Temps in January 2001 to obtain work as a Palmer temporary employee. Edwards took a test at the Palmer Temps office in January 2001 that is utilized by Palmer Temps to evaluate their candidates to become Palmer Temps. This test consisting of seven to 15 questions was not the 365 question test utilized by AK Steel to evaluate candidates for entry level positions at the Middletown Works. Because Edwards has never taken the AK Steel test, he is not a class member, and he cannot serve as class representative. In the absence of a class representative, the Middletown subclass cannot meet the Fed. R. Civ. Proc. 23(a)(3)'s "typicality" requirement and 23(a)(4) "adequacy of representation" requirement and the Middletown class should be decertified.

**B.     If Edwards Took The AK Steel Test, The Company Has No Record Of The Test Results And AK Steel Could Not Have Acted Upon It.**

Even if one were to believe that the seven to 15 question test that Edwards took at the Palmer Temps office was the AK Steel 365 question test (despite the fact that the AK Steel test

has never been administered at the Palmer Temps office), AK Steel has never received results of a test for Plaintiff. (Short Dec. ¶ 13) AK Steel could not have discriminated against Edwards based upon the Middletown test for the simple reason that AK Steel has no test results for Edwards. As such, Edwards cannot be a class representative for the Middletown test takers and the Middletown subclass should be decertified.

Plaintiffs have no evidence that AK Steel ever received any test results for Edwards. Plaintiffs claim in their Memorandum in Opposition that a factual issue was somehow created in that Plaintiffs claim they served a subpoena on Palmer Temps "seeking all records, electronic or otherwise regarding its interactions with Mr. Edwards" and Palmer Temps produced no records regarding Edwards's January 2001 application. (Doc. 121 at 10) This argument is a red herring and false.

The subpoena did not request records regarding Palmer Temps' interactions with Edwards, as falsely claimed by Plaintiffs. The subpoena requested:

> (1) documents regarding the processing of application for employment at AK Steel;
> (2) executed contracts between AK Steel and Palmer Temps;
> (3) documents regarding Palmer Temps administering tests related to employment at AK Steel; and
> (4) any and all tests administered by Palmer Temps related to employment at AK Steel.

(R. Nunlist Dep. Exh. 2) Edwards's 2001 application to be a Palmer Temp had nothing to do with AK Steel. It was not requested by the subpoena.

AK Steel cannot have discriminated against Edwards based upon the AK Steel test when AK Steel has no test results regarding Edwards. For this additional reason, Edwards does not meet the requisite standard to be a class representative for Middletown.

    **C.    Whatever Test Edwards Took, He Claims He Took It In August 2001 And He Is Not A Member Of The Class of Unsuccessful Test Takers That Begins September 12, 2001.**

This Court has been quite clear in its prior Orders that for the Middletown subclass to remain certified Plaintiffs would need to identify a Middletown plaintiff who took and failed the written AK Steel test after September 12, 2001. (Doc. 79 at 18; Doc. 96 at 2-4; Doc. 106 at 5)

Edwards testified that he believes he took the AK Steel test in August of 2001. (Edwards Dep. at 24, 55) Even were Edwards correct, he is untimely, and he does not qualify as a class member or class representative as he does not satisfy the Title VII prerequisites to suit.[2]

    **D.    Plaintiffs' Requests For A Single Class Or For Piggy Backing Of Middletown Plaintiffs On An Ashland Plaintiff's Charge Have Been Repeatedly Rejected By This Court And Should Be Again.**

This Court has been consistent in its rulings over the last two years that for the Middletown subclass to avoid decertification Plaintiffs must identify a Middletown class representative who took and failed the AK Steel test after September 12, 2001. (Doc. 79 at 18; Doc. 96 at 2-4; Doc. 106 at 5) Now that Plaintiffs are faced with the reality that no Middletown plaintiff took the AK Steel test after September 12, 2001, Plaintiffs ask this Court to reverse all these rulings. However, the argument against a single class and Middletown plaintiffs piggy backing off an Ashland plaintiff's charge are now stronger than when this Court made its prior rulings. This is because AK Steel no longer uses the disputed test to evaluate applicants for its Middletown Works, while it does continue to use the test at issue at its Ashland Works. (3rd Short Dec. ¶¶ 5, 6)

---

[2] In an interesting twist and facing the fact that Edwards himself does not claim to have taken a test after August of 2001, Plaintiffs now argue that a test taken in August 2001 could still be timely for a July 2002 Charge because AK Steel never told Edwards that he failed the test. (Doc. 121 at 11-12) The simple answer is that AK Steel never told Edwards that he failed the test because Edwards never took the AK Steel test (and there is no evidence that he in fact "failed" whatever test he did take). Regardless, the class is defined as those "who took and failed AK Steel's screening employment test within the 300-day period preceding July 9, 2002." Edwards, by his testimony, is not a member of this class, and cannot represent this class.

In support of Plaintiffs' request for the certification of a single class in their Motion for Class Certification, Plaintiffs argued that class certification was appropriate because the class sought injunctive and declaratory relief that predominates over any monetary relief. (Doc. 71 at 2, 28) The Plaintiffs further argued that the shared objective of both the Ashland and the Middletown plaintiffs in obtaining their proposed injunctive relief regarding AK Steel's test supported the certification of a single class. (Doc. 71 at 25) In fact, Plaintiffs placed so much emphasis on the importance of their claims for equitable relief through a disparate impact theory for single class certification that the class representatives waived their claims to compensatory and punitive damages available under disparate treatment claims. (Doc. 70 at 28-29; Doc. 81 at 10)

Now that AK Steel no longer utilizes the test at issue for hiring at the Middletown Works, the Middletown Plaintiffs' request for injunctive relief is moot. Injunctive relief can no longer be the predominant relief sought for the Middletown Works, and certification of a class that includes Middletown plaintiffs may not be maintained under Federal Rule of Civil Procedure 23(b)(2). *See, e.g.*, *Hoffman v. Honda of Am. Mfg., Inc.*, 191 F.R.D. 530, 535-36 (S.D. Ohio 1999) (23(b)(2) class is inappropriate when class is not primarily interested in injunctive or declaratory relief); *Marascalco v. International Computerized Orthokeratology Soc., Inc.,* 181 F.R.D. 331, 336 (N.D. Miss. 1998) (class certification under Fed. R. Civ. Proc. 23(b)(2) denied because the appropriate final relief relates exclusively or predominantly to damages, i.e., not injunctive relief). Therefore, the legal and pragmatic basis for not permitting Middletown plaintiffs to piggy back on an Ashland Plaintiff's charge, and against a single class, are now stronger than at the time when the Court made its previous rulings.

Additionally, the basis for this Courts' two years of consistent rulings remain in place. Ashland and Middletown have different Human Resources professionals making hiring decisions utilizing different selection processes. They use different interview systems and Middletown required industrial experience and other qualifications before testing while Ashland did not. (Doc. 73, Short Dec. ¶ 12; Lester Dep. at 39-43)

As such, AK Steel did not screen out any Ashland applicant before testing, but it screened out over 30% of Middletown applicants before testing them. (*Id.*) In Ashland, any analysis of the impact of the test, or the hiring process itself, would have little probative value because qualifications for the job are not reviewed by the Company before the applicant tests. *See Hazelwood Sch. Dist. v. United States*, 433 U.S. 299, 308 n.13 (1977) ("When special qualifications are required to fill particular jobs, comparisons to the general population (rather than to the smaller group of individuals who possess the necessary qualifications) may have little probative value"). The demographics for the pool of applicants for the two plants are also different as the two plants are in two different states and are 177 miles apart, one in a suburban-urban setting and the other on the edge of Appalachia.

The report of Mary Dunn Baker, Ph.D., noted that an analysis that compares two groups that are not similarly situated is ineffective because "statistically significant differences may be caused by non-racial factors for which the analysis did not account. This will occur when the demographic groups whose outcomes are compared are not similarly situated." (Baker Report, p. 6, n.12) (attached to Doc. 73) *See also Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir. 1997) (court excluded expert report that did not account for the presence of people who were not similarly situated in the comparison group); *Baker v. Ogden Service Corp.*, 74 F.3d 1248 (Table) (10th Cir. 1996) (to be relevant, statistics must compare similarly situated individuals and take into account relevant factors including qualifications); *Rhodes v. Cracker Barrel Old Country*

*Store*, 2002 WL 32058462, at *61 (N.D. Ga. 2002), *report and rec. adopted by* 213 F.R.D. 619 (N.D. Ga. 2003) (with statistics, court must be mindful of proper comparisons and use of proper qualified applicant pools).

Plaintiffs' own expert analyses further illustrate the significant difference in the subclasses for the two facilities. For Middletown, Plaintiffs' expert only analyzes the impact of the test. (Doc. 71 at 22) For Ashland, Plaintiffs analyze the entire hiring process. (Doc. 71 at 23) It makes no sense to combine a class of unsuccessful Middletown test takers with a class of unsuccessful Ashland applicants who were unsuccessful for a variety of reasons, as there are no common issues between the groups.

## IV.    CONCLUSION

The time has come for the Middletown subclass to be decertified. This Court's prior Orders were quite clear that the Middletown subclass would be decertified unless Plaintiffs identified a Middletown Plaintiff with a timely filed EEOC charge who took and failed the written AK Steel test after September 12, 2001. Plaintiffs cannot do so. Donald Edwards states that he took a seven to 15 question test in August 2001 at the Middletown, Ohio office of Palmer Temps. This is not the 365 question test used by AK Steel for hiring entry level employees. Edwards has never taken the test at issue in this lawsuit. Edwards took a different test used by Palmer Temps to evaluate candidates to work as temporary employees for Palmer Temps.

Even if someone were to somehow believe that the test taken by Edwards was the AK Steel test, his taking the test in August of 2001 does not fall within the time frame required for Edwards to be the representative for the Middletown class. Further, there is no evidence that AK Steel ever received results of a test taken by Edwards or acted upon the results of its test for Edwards. In any event, in order to maintain a 23(b)(2) class, injunctive relief must predominate. AK Steel's Middletown Works no longer uses the test challenged here. Therefore, Plaintiffs'

request for injunctive relief at Middletown is moot and can no longer predominate over damages and other relief.  For each and all of the foregoing reasons, AK Steel respectfully requests that this Court should decertify the Middletown subclass.

          Respectfully submitted,

          /s/ Gregory Parker Rogers
          Lawrence J. Barty (0016002)
          Gregory Parker Rogers (0042323))
          Patricia Anderson Pryor (0069545)
          Taft Stettinius & Hollister LLP
          425 Walnut Street, Suite 1800
          Cincinnati, Ohio 45202
          (513) 381-2838
          Trial Attorneys for Defendant
          AK Steel Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed on September 6, 2007 using the Court's CM/ECF system, which will send notice of this filing to Susan Donahue, Robert Childs, Herman N. Johnson, Jr., Wiggins, Childs, Quinn & Pantazis, P.C., The Kress Building, 301 19th Street North, Birmingham, Alabama  35203; Paul H. Tobias, Tobias, Kraus & Torchia, 911 Mercantile Library Building, 414 Walnut Street, Cincinnati, Ohio 45202; and David Sanford, Sanford, Wittels & Heisler, L.L.P., 1666 Connecticut Avenue, N.W. Suite 310, Washington, D.C.  20009.

          /s/ Gregory Parker Rogers