UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VIVIAN BERT, | : | Case No. C-1-02-467 |
| | : | |
| Plaintiffs, | : | Judge Beckwith |
| | : | |
| v. | : | DEFENDANT'S OBJECTIONS TO |
| | : | THE MAGISTRATE JUDGE'S |
| AK STEEL CORPORATION, | : | <u>NOVEMBER 28, 2007 ORDER</u> |
| | : | |
| Defendant. | : | |

## I.  INTRODUCTION

Defendant AK Steel Corporation ("AK Steel") files these objections to the November 28, 2007 Order by the Magistrate Judge. (Doc. # 135) The November 28 Order, which precludes Defendant's use of the written validation studies conducted on the pre-employment test at issue in this case, is unduly harsh and contrary to law and the circumstances of this case.

The Order does not cite a legal basis for the preclusion of evidence, but states that it believes AK Steel took a disingenuous position. This conclusion was reached after a telephonic discovery conference at which the Magistrate Judge stated at the outset that he did not have the authority to decide whether to preclude evidence, thereby precluding discussion of this issue.

Preclusion of evidence is a harsh remedy that should be imposed only in rare situations. *Polokoff v. International Pantyhose, Inc.*, 1998 WL 308022, * 1 (S.D.N.Y. 1998); *Almonte v. Coca-Cola Bottling Co.*, 169 F.R.D. 246, 249 (D. Conn. 1996). There is no basis for such a harsh order here where (1) Plaintiffs have known about the validation studies for over 4 years; (2) AK Steel produced the documents sought to be precluded (the validation studies) during the discovery period, *more than three weeks before* the noticed deposition of AK Steel's validation witness Lucy Gibson and just two months past when, according to the Magistrate, they should

have been produced; (3) the validation studies were never the subject of a motion or order to compel; and (4) there is no history of bad faith or discovery abuses by the Defendant.

## II. RELEVANT PROCEDURAL HISTORY

Plaintiffs filed this action over five years ago, on June 26, 2002. Since that time, Plaintiffs have repeatedly delayed, extended deadlines and changed the theory of the case.[1] Plaintiffs initially challenged the entire hiring process. On January 19, 2005, they amended the Complaint for a second time to add Title VII disparate impact claims.[2] (Doc. # 45) Plaintiffs did not focus on the pre-employment test, as opposed to the entire application process, until they filed their motion to certify the class on October 31, 2005, at which time they dropped eight of their original 16 proposed class representatives. (Doc. # 70)

Under their current legal theory, Plaintiffs seek to establish that AK Steel's pre-employment test has a disparate impact on African-Americans. *If* Plaintiffs were able to do this, AK Steel would then have to show a business justification for the test. The business justification can be established by showing that the test was professionally developed and validated. AK Steel's test was professionally developed and validated by Lucy Gibson, a principal at Resource Associates, Inc., several years before the instant litigation commenced. Dr. Gibson created the validation studies at issue as part of the validation process.

---

[1] Plaintiffs have requested and received, either from AK Steel or the Court, at least 10 extensions in this case, including a request this past summer to extend, until August 23, 2007, its time to respond to AK Steel's motion to decertify filed on June 15, 2007. After five years of litigation, Plaintiffs' counsel purportedly needed more time to refute the testimony of purported class representative Donald Edwards, their own client, and to talk to their other clients to learn what information they might have. (Doc. # 115)

[2] This Court decided that Plaintiffs had not properly pled these claims in the initial complaint. (Doc. # 26)

Plaintiffs have been aware of the existence of the validation studies at issue here since the beginning of this case. On February 3, 2003, AK Steel provided initial disclosures to Plaintiffs which identified Lucy Gibson as a witness who would testify about the validation of AK Steel's test.[3] (Rogers Dec. ¶ 2, Ex. 1) On June 4, 2004, in response to an inquiry from Plaintiffs, AK Steel's counsel informed Plaintiffs that it had not produced the test validation studies because, at that time, they were neither relevant nor reasonably calculated to lead to the discovery of admissible evidence on a disparate treatment claim. (*Id.* ¶ 3, Ex. 2) This correspondence again confirmed the existence of the validation studies. AK Steel told Plaintiffs that it would reconsider this objection if the Court allowed Plaintiffs to plead a disparate impact claim. (*Id.*) On January 3, 2005, AK Steel's counsel sent a letter to Plaintiffs' counsel again confirming the existence of validation studies. In that letter counsel stated:

> "In our last conversation, ***you conceded*** that AK Steel's written test ***did not*** create an adverse impact on African-American applicants. We advised you that the test had been initially validated by means of a concurrent study and then subsequently validated by means of a criterion study. In view of the fact that discovery has closed, and even more so in light of the fact that the test does not have an adverse impact, we have concluded not to provide you with a copy of the validation report."

(*Id.* ¶ 4, Ex. 3) (emphasis added) On February 16, 2005, Susan Lester, AK Steel's Human Resource Manager at its Ashland Works, testified at her deposition that the test was validated, that there was a validation report, that she had seen it and that it was created before 2000. (Lester Dep. 72) Despite the Plaintiffs' indisputable knowledge of the existence of pre-2000 validation studies and of AK Steel's position with respect to producing them, at no time did the Plaintiffs move to compel the production of the validation studies.

---

[3]   Dr. Gibson is not an expert witness under Federal Rule of Civil Procedure 26(a)(2). Her opinions were not created for purposes of this litigation. She validated the pre-employment test years before this litigation.

On July 23, 2007, Plaintiffs sent a new request for production of documents.[4] (Rogers Dec. ¶ 5) That request, which the Order characterizes as asking for validation studies conducted by AK Steel "for tests administered (by AK Steel) from February, 2001 to the present," actually consists of a fairly long, convoluted sentence with 26 words in between "tests" and "from February 2001 to the present." (*Id.* Ex. 4)

AK Steel in good faith read that request as seeking validation studies conducted from February, 2001 to the present. (*Id.* ¶ 5) There are no such studies. The phrase "from February, 2001 to the present" at the end of a long sentence can reasonably be read as modifying the validation studies which were being requested, as AK Steel interpreted it, rather than the test, as Plaintiffs now claim it was intended.

In order to avoid any question as to how it was reading this request, AK Steel timely answered on August 27, 2007: "There are no validation studies from February 2001 to the present relating to the pre-employment test challenged in this lawsuit." (Rogers Dec. ¶ 5, Ex. 4) This letter clearly alerted Plaintiffs how AK Steel interpreted this request.

Plaintiffs knew from earlier discovery responses and the deposition they had taken that there were validation studies in existence that had been created before 2000. Therefore, on October 29, 2007, Plaintiffs wrote to ask the following:

> "Have there been validation studies done on the test used by AK Steel for its entry-level laborer position during any time frame? If so, we would ask that you provide them. We are requesting any validation studies done on that test."

---

[4] If Plaintiffs believed they were entitled to validation studies based on their earlier discovery requests there would have been no reason to send a new document request as opposed to simply following up on the first request or moving to compel.

{W1139700.2}    4

(Rogers Dec. ¶ 7) After Plaintiffs made this clarification, AK Steel produced the validation studies at issue within one week. (*Id.* ¶ 8) Plaintiffs, not AK Steel, delayed clarifying this for two months. Had Plaintiffs made this clarification in August, when they received AK Steel's responses, they would have had the validation studies then.

The end result was Plaintiffs received the studies just two months after the Magistrate now contends they should have been produced. This delay did not prejudice Plaintiffs. Plaintiffs were well aware that the test had been validated, that validation studies existed, and that Lucy Gibson was going to testify about the validation of the test.[5] Rather than follow up with AK Steel on a timely or clear basis about their request or move to compel their production at any time during the last five years, Plaintiffs waited until the end of discovery so they could feign prejudice by the purported delay. Plaintiffs' sit-and-wait attitude and failure diligently to prosecute their purported claims should not be rewarded.

### III.  ARGUMENT

A.  Rule 37 Does Not Permit Sanctions When A Response Is Provided And No Motion To Compel Is Required For Production.

Federal Rule of Civil Procedure 37 governs sanctions in discovery disputes.

Rule 37(d) provides for sanctions when a party fails to appear for his deposition, fails to answer or object to properly served interrogatories, or fails to serve a written response to properly served requests to inspect documents. None of these are present here. AK Steel's representatives have attended all properly noticed depositions. AK Steel served a timely written response to all properly served interrogatories and requests to inspect documents, including the

---

[5] Plaintiffs never noticed Dr. Gibson for deposition until November 9, 2007 when they noticed her for a deposition on November 28, 2007. Despite the late notice, both Dr. Gibson and AK Steel's counsel cleared their schedules to make themselves available for this date. Plaintiffs then decided not to take the deposition. (Rogers Dec. ¶ 9)

{W1139700.2}   5

July 23, 2007 request. Rule 37(d) does not apply. *See Sloan v. Oakland Police Dept.*, 2006 WL 753013, * 4 (N.D. Cal. 2006) (37(d) allowed for sanctions when a party "fails" to respond; finding no support for preclusion of evidence where responses are late). Even if Rule 37(d) did apply, sanctions would not be appropriate absent a certification from the movant that the movant had in good faith conferred or attempted to confer with the other party in an effort to obtain a response without court action. Plaintiffs made no attempt to confer in good faith about AK Steel's response, which stated how AK Steel interpreted the request, until October 29, 2007, at which point AK Steel produced the validation studies without the need for (and before any request for) court action or intervention.

Rule 37(a) also does not apply. Rule 37(a) applies to incomplete or evasive responses. It only provides for an award of fees or expenses when a motion to compel is required and a party first makes a good faith effort to obtain the discovery without court action. Fed. R. Civ. P. 37(a)(4)(A). Here, AK Steel produced the requested discovery without court action.

Moreover, Rule 37(a) does not provide for other sanctions beyond the fees and expenses for a motion to compel. *If* a court order is issued and a party still does not comply, then Rule 37(b) provides for other sanctions. However, there was no court order and no motion to compel here. In the absence of a motion to compel or violated court order, sanctions based on arguably delayed responses or arguably inadequate responses are inappropriate. As one court stated:

> [T]o the extent that Defendants rely on the inadequacy of Plaintiff's responses, it is premature to impose sanctions where the Court has not instructed Plaintiff regarding how his discovery responses are deficient. *See In Re Rubin*, 769 F.2d 611, 616 (9th Cir. 1985) (holding that "[a] party should be given some indication by the court of how its discovery responses have been deficient," before imposing sanctions). Rather, Defendants may bring a motion to compel addressing the responses they assert are inadequate. If the Court determines, on the basis of full briefing, that an order compelling additional responses is appropriate, it will

> issue an order with specific instructions to Plaintiff. ***Such an order is a prerequisite*** to the imposition of sanctions based on inadequate interrogatory responses.

*Sloan v. Oakland Police Dept.*, 2006 WL 753013, * 5 (N.D. Cal. 2006) (emphasis added). *See also Qualcomm, Inc. v. Broadcom Corp.*, 2007 WL 935617, *4 (S.D. Cal. 2007) (delay resulting from disagreement over scope of request due to ambiguous language does not warrant harsh sanction of preclusion of evidence); *Almonte v. Coca-Coca Bottling Co.*, 169 F.R.D. 246, 249 (D. Conn. 1996) (untimely filing of damages analysis, witness lists and exhibit lists even combined with prior failures to provide discovery not sufficient to support harsh sanction of preclusion of evidence).

      B.    Even If Rule 37 Applied, Sanctions Are Not Appropriate Under The Sixth Circuit's Four-Factor Analysis.

Regardless of whether Rule 37 allows for the preclusion of evidence as a sanction for a delayed or evasive/incomplete discovery response, the circumstances here do not support such a harsh sanction. The Sixth Circuit considers four factors in determining whether a sanction is appropriate: (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith or fault; (2) whether the adversary was prejudiced by the party's failure to cooperate in discovery; (3) whether the party was warned that failure to cooperate could lead to the sanction; and (4) whether less drastic sanctions were first imposed or considered. *Freeland v. Amigo*, 103 F.3d 1271, 1277 (6th Cir. 1997). Each of these factors weighs against sanction here.

Even if AK Steel were unreasonable in its interpretation of Plaintiffs' document request, it was not evasive and it did not otherwise demonstrate willfulness, bad faith or fault. There is no history of discovery problems caused by AK Steel. AK Steel has timely and appropriately

responded to discovery throughout this five-year litigation. It has engaged in good faith discussions with Plaintiffs when disputes have arisen.[6] It has not violated any court order.

AK Steel has never concealed the fact that there are validation studies validating the use of the pre-employment test. Earlier in litigation, AK Steel, while clearly stating their existence, objected to their production because they were not relevant when there was no disparate impact claim and when there was no asserted adverse impact related to the test itself. Plaintiffs never moved to compel or otherwise objected to this position. Instead Plaintiffs sent a new request more than two years later, which was ambiguous at best. AK Steel timely responded to this request and clearly stated how it was interpreting this new request. As soon as it was aware that Plaintiffs were making a broader request, it provided the requested documents. This is exactly the procedure the rules envision, which is why there is a requirement that the parties engage in good faith discussions to obtain the information before involving the court.

The second factor also weighs against sanction. Plaintiffs have not been prejudiced. They have known of the existence of the studies and the existence of Lucy Gibson for years. They could have obtained the same information that was contained in the validation studies and other information about the validation of the test through a deposition of Dr. Gibson. They also could have actively pursued the validation studies or moved to compel their production. Any prejudice that they now claim after waiting until the end of discovery to raise it "must be given less weight, because [their] attorneys also engaged in dilatory conduct." *Freeland v. Amigo*, 103

---

[6] Plaintiffs do not have clean hands in this litigation. Although Plaintiffs responded to document requests in 2002, numerous documents were not produced until 2007 after the depositions of the Plaintiffs. According to many of the Plaintiffs, they had never even looked (or been asked to look) for responsive documents prior to that time. In the meantime, many of the documents they claim they had in 2002 have disappeared. (Kay Jackson Dep. 106-107, Ex. 8; Darlene Denise Carter Dep. 11, 61-62, Ex. 1; Darrell Carter Dep. 108-109, Ex. 1; Roderique Russell Dep. 84: Shawn Pryor Dep. 70: Edward James Lewis Dep. 89-90; Vivian Bert Dep. 97-98)

F.3d 1271, 1278 (6th Cir. 1997).  *See also Williams v. Saint-Gobain Corp.*, 2002 WL 1477618, * 2 (W.D.N.Y. 2002) (refusing to preclude evidence; "plaintiff could have deposed [witness] on topic before initial discovery deadline but chose not to").  The rules do not allow one party to sit and wait, without making diligent efforts to obtain the discovery or correct a misrepresentation, so as to play "gotcha" and claim prejudice at the end of the discovery period.  *See Croom v. Western Conn. State University*, 218 F.R.D. 15, 18 (D. Conn. 2002) ("The remedy of preclusion is not to be employed as a 'paper tiger' with parties capitalizing on technical mistakes in discovery, but rather should be employed sparingly when the circumstances demand such a drastic measure"; production of incomplete expert report two weeks before discovery deadline did not merit preclusion of expert testimony).

With respect to the third factor, AK Steel has not acted in flagrant disregard for the discovery process or the Court's orders or procedures.  AK Steel was not warned that its course of action would lead to sanctions.  AK Steel was never even placed on notice that there was a problem with its discovery responses or that it had misinterpreted the request.  *See In Re Rubin*, 769 F.2d 611, 616 (9th Cir. 1985) (holding that "[a] party should be given some indication by the Court of how its discovery responses have been deficient," before imposing sanctions); *Almonte v. Coca-Cola Bottling Co.*, 169 F.R.D. 246, 249 (D. Conn. 1996) (plaintiff was not put on notice that further delays in discovery might result in dismissal).

Finally, even if AK Steel's conduct with respect to a single issue in discovery were sufficient to support sanctions, less drastic sanctions would be appropriate.  The Sixth Circuit requires a court to consider less drastic sanctions before taking the extreme measure of precluding evidence.  *See Freeland v. Amigo*, 103 F.3d 1271, 1280 (6th Cir. 1997) (citing with approval *Taylor v. Medtronics, Inc.*, 861 F.2d 980 (6th Cir. 1998) where the court originally did

not preclude evidence even though plaintiff had ignored prior discovery orders because such sanction was too drastic due to potential effect on plaintiffs' ability to present their case). As was the case with the party in *Freeland*, AK Steel "has not been on notice by way of repeated court orders of the inadequacy of [its] level of cooperation." *Id.* The harsh remedy of preclusion of the written evidence is not warranted here where there have been no prior warnings or discovery abuses.

### IV.    CONCLUSION

Neither the Federal Rules of Civil Procedure nor Sixth Circuit precedent support the Magistrate Judge's decision. There is no legal basis for precluding evidence that was voluntarily produced upon request during discovery without the need or request for court intervention.

For each and all of the foregoing reasons, Defendant AK Steel Corporation respectfully objects to the Magistrate Judge's November 28, 2007 Order and requests that this Court overturn the November 28 Order and allow the use of the written validation studies in this case.

Respectfully submitted,

/s/ Gregory Parker Rogers
Lawrence J. Barty (0016002)
Gregory Parker Rogers (0042323)
Patricia Anderson Pryor (0069545)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
(513) 381-2838

Trial Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on December 12, 2007 using the Court's CM/ECF system, which will send notice of this filing to Susan Donahue, Robert Childs, Herman N. Johnson, Jr., Wiggins, Childs, Quinn & Pantazis, P.C., The Kress Building, 301 19th Street North, Birmingham, Alabama 35203; Paul H. Tobias and David Kammer, Kraus & Torchia, 911 Mercantile Library Building, 414 Walnut Street, Cincinnati, Ohio 45202; and David Sanford, Sanford, Wittels & Heisler, L.L.P., 2121 K Street, N.W., Suite 700, Washington, D.C. 20037.

/s/ Gregory Parker Rogers