UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

VIVIAN BERT, et al.,            )
                              )
      Plaintiffs,        )
                              )
v.                        )         CASE NO. C-1-02-467
                              )         Judge Beckwith
AK STEEL CORPORATION,    )         Magistrate Judge Hogan
                              )
      Defendant.        )

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S OBJECTIONS TO THE MAGISTRATE JUDGE'S NOVEMBER 28, 2007 ORDER

The Magistrate Judge's November 28, 2007 Order properly excluded Defendant's "alleged" validation studies because the Defendant's "failure to produce such [studies] was unjustified," and Defendant's interpretation of Plaintiffs' requests for such studies was "unreasonable" and "disingenuous at best." *Order* entered November 28, 2007 (Doc. 135). Plaintiffs agree with the Magistrate Judge's well-reasoned ruling that the three late-produced, "alleged" validation studies dated May 1997, August 1997 and September 30, 1999, attached hereto as Exh. 1, are to be excluded as evidence in this case. Plaintiffs respond to Defendant's Objections to the Magistrate Judge's November 28, 2007 Order (Doc. 144) (hereinafter "Objections") as follows:

## I.    PROCEDURAL BACKGROUND AND LEGAL ARGUMENT

### A.    The "Alleged" Validation Studies Are Clearly Expert Evidence, and Dr. Lucy Gibson Is An Expert Witness that Defendant Failed To Disclose.

Defendant's "alleged" validation studies, which clearly would constitute expert evidence if allowed, were untimely produced to Plaintiffs on November 5, 2007 and do not meet the

1

requirements of Fed. R. Civ. P. 26(a)(2). Moreover, Dr. Lucy Gibson, whom the Defendants wants to testify regarding these studies, has never been identified by the Defendant as an expert witness in this case. In fact, Defendant has never identified an expert witness to testify regarding its burden to validate any test that has adverse impact.

Defendant's initial disclosures dated February 3, 2003, named Lucy Gibson as an individual likely to have discoverable information regarding validation of AK Steel's test, but she was not identified as an expert witness in these disclosures. *See* Exh. 2 attached. Dr. Gibson has never been identified as an expert witness in this case, nor have the untimely produced validation studies ever been identified as expert reports. It is the Plaintiffs' position that Dr. Lucy Gibson is an expert witness, as defined by Fed. R. Civ. Pro. 26, who was never identified as such by the Defendant; that the three, late-produced "alleged" validation studies are expert reports produced in anticipation of litigation; and that the Magistrate Judge properly excluded them as evidence pursuant to Fed. R. Civ. Proc. 37(c).

On January 13, 2003, this Court set March 5, 2004 as the deadline for Defendant's disclosure of its expert witnesses. (Doc. 15). Subsequent Orders extended the deadline for Defendant's disclosure of expert witnesses to May 18, 2005. *See* Docs. 32, 40, 44, 57, 66. The Defendant never identified Dr. Gibson as an expert witness pursuant to any of these Orders of the Court, nor provided these "alleged" validation studies to the Plaintiffs. Finally, on February 28, 2007, this Court entered a Calendar Order (Doc. 103) setting November 28, 2007 as the deadline for all discovery, including experts, to be completed. On November 12, 2007, Defendant served its Amended Witness List and Summary pursuant to the Court's February 28, 2007 Order, but no expert witness, other than Dr. Baker (Defendant's statistical expert) was identified. Indeed, Defendant identified "Lucy Gibson" as

2

a fact witness, stating that "Ms. Gibson has knowledge and is expected to testify about the development and validation of the pre-employment test."[1] *See* Exh. 3, attached, at p. 2.

Plaintiffs contend that Dr. Lucy Gibson is, indeed, an expert witness and that she should have been identified as such by the Defendant in its initial disclosures (as the Defendant did regarding Dr. Baker), in accordance with this Court's many Orders regarding disclosure of experts, in any supplementation of these required disclosures, and as the author of the untimely produced and incomplete validation studies. Despite the fact that Defendant obviously intends to use Dr. Lucy Gibson as an expert witness in this case and as the author of its "alleged" validation studies, the Defendant has never identified her as an expert witness.[2] The failure to disclose Dr. Lucy Gibson, the author of the "alleged" validation studies, as an expert in this case is a reason, among other reasons argued herein, that the Magistrate Judge's ruling excluding the validation studies is due to be upheld.

"The difference between an expert witness and an ordinary witness is that the former is allowed to offer an opinion, while the latter is confined to testifying from personal knowledge." *United States v. Williams,* 81 F. 3d 1434, 1442 (7th Cir. 1996). *Accord, Empire Oil & Refining Co. v. Hoyt,* 112 F. 2d 356, n.p. (6th Cir. 1940) (designating expert witnesses as required when the jury or the court is "confronted with issues the proper understanding of which requires specialized knowledge or experience and which cannot be determined intelligently from deductions and

---

[1] Plaintiffs observe that on its Witness List and Summary, Defendant identifies Lucy Gibson as "Ms." Plaintiffs take this designation for Lucy Gibson to be another disingenuous attempt to conceal that Dr, Gibson, who has a Ph.D. in her field, has special, expert knowledge and that her testimony would be as an expert, not as a fact witness.

[2] Defendant has informed Plaintiffs' counsel that Dr. Lucy Gibson is the author of the three validation studies at issue here. However, her name does not appear on these studies. *See* Exh. 1.

inferences drawn on the basis of ordinary knowledge and practical experience. On such issues, testimony of one possessing special knowledge or skill is required to arrive at a just and intelligent conclusion."); *Malloy v. Monahan,* 73 F. 3d 1012, 1016 (10th Cir. 1996); *In re Moazma Syed, Debtor.* 238 B.R. 135, 144 (U.S. Bankruptcy Court, N.D. Ill. 1999).

Defendant suggests that it will confine Dr. Lucy Gibson to testifying from only her personal knowledge regarding the "alleged" validation studies that she presumably conducted and that she will not give her opinion regarding the conclusions made in these studies. If this in indeed the Defendant's intent, such testimony will be insufficient to meet the Defendant's burden in this case. "Defendants, it must be emphasized, have the heavy burden of justifying the use of the entry-level admission examination . . . by producing evidence of successful validation studies." *Officers for Justice v. Civil Service Commission,* 371 F. Supp. 1328, 1338 (N.D. Cal. 1973). *Accord, Albermarle Paper Co. v. Moody,* 522 U.S. 405, 425 (1975) (holding that once plaintiffs make out a case of disparate impact, the employer must show that its tests are job-related. If the employer makes such a showing, it remains open to the complaining party to show that other tests or selection devices would also serve the employer's interests without having a similar adverse impact); *Horace v. City of Pontiac,* 624 F. 2d 765, 767-768 (6th Cir. 1980) (finding that defendant failed to demonstrate a non-discriminatory reason for its height test for police officers stating that "[a]fter a prima facie case under Title VII is made out, the burden of going forward shifts to the defendant to demonstrate a legitimate, non-discriminatory reason for the use of the test . . . .").

Evidence of proper studies validating the use of its pre-employment test is required in the instant case for the Defendant to meet its burden. This Court has already certified two sub-classes of African-American applicants who took AK Steel's pre-employment test and failed it based on a

4

finding that AK Steel's pre-employment test had an adverse impact on African-American applicants who took the test. (Doc. 196). At this point, Defendant has the burden of justifying the use of its pre-employment test despite its adverse impact. *See Bridgeport Guardians, Inc. v. Members of the Bridgeport Civil Service Commission, et al.* 482 F. 2d 1333, 1336-1338 (2nd Cir. 1973) (finding that defendants failed to sustain their burden of showing that the written hiring examination bore a demonstrable relationship to successful performance of patrolman's job). Such evidence can only come from an expert witness who is qualified to offer such opinions to the court and who, in fact, offers opinion evidence, not simply factual evidence based on the witness' personal knowledge. *See Gonzales v. Galvin*, 151 F.3d 526, 535 (6th Cir. 1998) (noting that "in making the technical and complex determination of whether a validation study conforms to the Uniform Guidelines requirements, a court is entitled to rely on expert opinions."). *Accord, Police Officers for Equal Rights v. City of Columbus*, 916 F.2d 1092, 1103 (6th Cir. 1990).

If Dr. Lucy Gibson only offers alleged factual testimony based on her personal knowledge regarding the validation studies, she will only be testifying about, among other factual matters, her procedures and methods in conducting the studies, not about the conclusions offered by the studies and her opinion regarding those conclusions.[3] The conclusions reached by the "alleged" validation studies and Dr. Gibson's knowledge of how she conducted the studies or any other factual evidence she may offer are relevant expert evidence and opinion for this case. To say that Dr. Lucy Gibson is not an expert witness is simply to hide the truth of the matter so that the Defendant can attempt to offer expert opinion evidence into this case when it has failed to timely disclose the use of such an

---

[3] As the 7th Circuit explained in *Williams, supra,* when discussing the difference between an expert and a lay witness, "An economist, for example, is allowed to testify that a particular pattern of pricing indicates that the defendant participated in a price-fixing conspiracy, whereas the lay witness could testify only to what the prices were." *Williams, supra,* at 1442.

expert. The Federal Rules of Civil Procedure 26(a)(2) and Federal Rules of Evidence 702 and 104(a)

simply do not allow this. The Magistrate Judge's ruling excluding the "alleged" validation studies

from evidence in this case is also justified because the studies are expert matters being offered

without a qualifying expert's opinion as to their conclusions, as well as the other grounds argued

herein.

**B.      In Addition to Being Produced Untimely, the "Alleged" Validation Studies Are Deficient and Do Not Meet the Requirements of Fed. R. Civ. P. 26 (a)(2)(B).**

The late-arriving, "alleged" validation studies of the Defendant are incomplete and do not

conform to the requirements for expert reports as stated in Fed. R. Civ. P. 26 (a)(2)(B).  Rule

26(a)(2)(B) states as follows:

> The [expert] report shall contain a complete statement of all opinions to be expressed
> and the basis and reasons therefor; the data or other information considered by the
> witness in forming the opinions; any exhibits to be used as a summary of or support
> for the opinions; the qualifications of the witness, including a list of all publications
> authored by the witness within the preceding ten years; the compensation to be paid
> for the study and testimony; and a listing of any other cases in which the witness has
> testified as an expert at trial or by deposition within the preceding four years.

The validation studies produced by Defendant on November 5, 2007, are deficient in all the

above-stated requirements.  First, as a basic matter, the "alleged" validation studies do not specify

their author or authors.  Further, they do not contain complete statements because the studies, as

produced, have both sentences and sections of the studies redacted.  *See* Exh. 1 "Predictive Selection

test Validation Study" dated September 30, 1999, pp. 11-12, 14-15, p. 16.  The validation studies

also fail to provide the data used to form the opinions expressed therein because the actual job

analyses and technical manuals are not included.  Moreover, since no author or authors are named,

there is obviously no statement of qualifications of the author(s), no list of publications, no statement

6

of compensation paid to the author(s), and no list of other cases in which the author(s) have testified as an expert at trial or by deposition. The Magistrate Judge's ruling to exclude the untimely "alleged" validation studies is due to be upheld because they do not meet the requirements of Fed. R. Civ. P. 26(a)(2)(B), among the many other reasons argued herein, including their untimely production without good cause shown.

**C.    Defendant Failed To Produce the Requested Validation Studies Until 23 Days Before the End of Discovery.**

Plaintiffs first requested "validation studies" from the Defendant on October 17, 2002 in its First Request for Production of Documents. *See* Exh. 4 attached. Plaintiffs' Request for Production ("RFP") No. 7 plainly requested the studies as follows:

> 7.    All job analyses, **validation studies**, tests, criteria, systems, models or processes or similar document **utilized for jobs at AK Steel Corporation in any way relating to employee selection or hiring**, whether in evaluating jobs, job tasks, job functions, job duties, job responsibilities, and/or lines of job progression, and/or in evaluating or assessing necessary job qualifications, criteria, training, and/or job performance, and/or in determining the impact of selection devices on African-Americans **from January 1, 1995 to the present.** (emphasis added)

Defendant objected to the production of any validation studies pending this Court's determination as to whether the Plaintiffs had properly pled their Title VII claims. [*See* Letter from Gregory Parker Rogers to David Sanford dated June 4, 2004, attached hereto as Exh. 5.] Defendant responded to RFP #7 as follows:

> AK Steel has not produced affirmative action studies, test validation studies, test, or affirmative action plans, which we do not believe are relevant to a disparate treatment theory, or reasonably calculated to lead to the discovery of admissible evidence. . . . **We also said we would reconsider this objection if the Court allowed you to plead a Title VII claim.**

*Id.* at page 2 (emphasis added).

7

On January 1, 2005, this Court ruled that Plaintiffs had properly pled a valid Title VII claim (Doc. 44). Pursuant to Fed. R. Civ. P. 26(e)(2), defendant was "under a duty seasonably to amend a prior response to a[n] . . . request for production, . . . if the party learns that the response is in some material respect incomplete or incorrect . . . ." Disregarding its duty to amend its prior response pursuant to Fed. R. Civ. Pro. 26(e) after the Court's January 1, 2005 Order and contrary to the specific statement in its June 4, 2004 letter that it would reconsider its objection if the Court allowed Plaintiffs to plead a Title VII claim, the Defendant did not produce the requested validation studies after January 1, 2005, nor amend its response to RFP #7. Indeed, as its June 4, 2004 letter manifests, Defendant "deliberately and consciously withheld" the production of its "alleged" validation studies as requested by Plaintiffs pending the Court's ruling on whether Plaintiffs had pled a Title VII claim.

Once this Court certified two sub-classes of African-American applicants who took and failed AK Steel's pre-employment test and well before the end of discovery, Plaintiffs renewed their request for "validation studies" in their Second Request for Production of Documents served on July 23, 2007, attached hereto as Exh. 6. RFP # 2 in Plaintiffs' Second Request for Production requests as follows:

> 2.   Any and all **validation studies conducted by AK Steel or by any of its agents** pursuant to the EEOC's Uniform guidelines on Employee Selection Procedures **for the tests administered by AK Steel** or any of its agents for hourly bargaining unit candidates for employment at its Middletown, Ohio location and its Ashland, Kentucky location **from February, 2001 to the present.** (emphasis added)

*Id.* Defendant responded on August 27, 2007 that "[t]here are no validation studies from February 2001 to the present relating to the pre-employment test challenged in this lawsuit." *See* Exh. 7, attached. Defendant further stated in a letter from Lawrence J. Barty to Susan Donahue dated October 15, 2007, that "[t]here were no validation studies conducted during the relevant time frame."

8

*See* Exh. 8 attached.

The Magistrate Judge found the Defendant's assertion that "no validation reports were created during the 'requested period' and their implication that Plaintiffs simply failed to properly phrase their request, to be disingenuous at best." *Order* entered November 28, 2007, at p. 4. This is the proper ruling based both on the plain wording of plaintiffs' second request for production and defendant's failure for two years to properly respond to plaintiff's first request for production which was a knowing and willful violation of its duty under Fed. R. Civ. P. 26(e)(2).

When defendant finally produced its "alleged" validation studies on November 5, 2007, there were only 23 days left in the discovery period. Plaintiffs have been severely prejudiced by the Defendant's intentional violation of the discovery rules in this case, and its dilatory and disingenuous tactics withholding the requested validation studies until November 5th. With only 23 days left until the close of discovery, there was insufficient time for Plaintiffs to retain an expert regarding the "alleged" validation studies done by AK Steel (the Defendant's burden of proof at trial), to prepare for and depose the Defendant's expert, Dr. Lucy Gibson, regarding these studies, and to prepare a rebuttal expert report regarding "validation" and "alternatives with less impact" (the Plaintiffs' burden once proper validation reports are prepared by the Defendant). Defendant's untimely production of its "alleged" validation studies cannot be seen as inadvertent or for good cause. Rather, Defendant's disingenuous violation of the discovery rules is an obvious attempt by the Defendant to produce its "alleged" validation studies as late as possible in the discovery period so that plaintiffs would have insufficient time to properly evaluate and respond. The sanction of excluding evidence produced under such circumstances is anticipated by Fed. R. Civ. Pro. 37(c). Along with the other reasons argued herein, the Magistrate Judge's ruling excluding the "alleged"

9

validation studies from evidence in this case is due to be upheld because their untimely production with no good cause shown for the delay and for the severe prejudice to the Plaintiffs which would result if the validation studies are allowed into evidence under these circumstances..

**D.    The Magistrate Judge's Ruling is Proper Under Fed. R. Civ. P. 37(c).**

Fed. R. Civ. P. 37(c)(1) provides, in pertinent part, as follows:

> **(c) Failure to Disclose; False or Misleading Disclosure; Refusal to Admit.**
>> **(1)** A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed.

*Id.*  This Rule is designed specifically for situations such as the one here where one party attempts to place into evidence on the eve of the close of discovery, unsigned, redacted validation studies with no expert witness identified who is qualified to give an opinion as to the conclusions in those studies. Evidence produced in this manner is simply too prejudicial to the other side to be allowed.  The Defendant must pay the price of its dilatory, disingenuous tactics.  The Defendant has not even attempted to argue that its many failures to identify Dr. Lucy Gibson and the "alleged" validation studies has been harmless or was done for good cause.  Even this Defendant could not make such an argument with a straight face.  Based on the foregoing argues, facts and law. the Magistrate Judge's ruling should be affirmed by this Honorable Court.  In the alternative, if the "alleged" validation studies are allowed, discovery should be reopened so that the Plaintiffs can depose Dr. Lucy Gibson and additional time given for Plaintiffs' experts to prepare and file rebuttal reports.

Respectfully submitted this 7th day of January, 2008,

10

s/ ***Susan Donahue***
Robert F. Childs, Jr. (*pro hac vice*)
Herman Nathaniel Johnson, Jr. (*pro hac vice)*
Susan Donahue (*pro hac vice*)
WIGGINS, CHILDS, QUINN & PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500
(205) 254-1500 (facsimile)


Paul Henry Tobias (OH bar No. 0032415)
David Donald Kammer
TOBIAS, KRAUS & TORCHIA
414 Walnut Street
Suite 911
Cincinnati, Ohio 45202
(513) 241-8137
(513) 241-7863 (facsimile)

David W. Sanford (*pro hac vice*)
SANFORD, WITTELS & HEISLER, L.L.P.
2121 K Street N.W.
Suite 700
Washington, D.C. 20037
(202) 942-9124
(202) 628-8189 (facsimile)

*Attorneys for the Plaintiffs*

11

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically serve the following:

Mr. Gregory P. Rogers
Mr. Lawrence James Barty
Ms. Patricia Anderson Pryor,
TAFT, STETTINIUS & HOLLISTER, LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957

s/ ***Susan Donahue***
OF COUNSEL