UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VIVIAN BERT, | : | Case No. C-1-02-467 |
| | : | |
| Plaintiffs, | : | Judge Beckwith |
| | : | |
| v. | : | MOTION OF DEFENDANT AK |
| | : | STEEL CORPORATION FOR |
| AK STEEL CORPORATION, | : | SUMMARY JUDGMENT ON THE |
| | : | <u>CLAIMS OF ALLEN ROBERTS</u> |
| Defendant. | : | |

Pursuant to Federal Rule of Civil Procedure 56, Defendant AK Steel Corporation moves for summary judgment on the claims of Allen Roberts. It is respectfully submitted that there are no genuine issues of material fact and summary judgment is appropriate on each of his claims. A Memorandum in Support of this Motion is attached.

                                                                                        Respectfully submitted,

                                                                                        /s/ Gregory Parker Rogers
                                                                                    Lawrence J. Barty (0016002)
                                                                                    Gregory Parker Rogers (0042323)
                                                                                    Patricia Anderson Pryor (0069545)
                                                                                    Taft, Stettinius & Hollister LLP
                                                                                    425 Walnut Street, Suite 1800
                                                                                   Cincinnati, Ohio 45202-3957
                                                                                   (513) 381-2838

                                                                                  Trial Attorney for Defendant
                                                                                  AK Steel Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VIVIAN BERT, | : | Case No. C-1-02-467 |
| | : | |
| Plaintiffs, | : | Judge Beckwith |
| | : | |
| v. | : | MEMORANDUM OF DEFENDANT |
| | : | AK STEEL CORPORATION IN |
| AK STEEL CORPORATION, | : | SUPPORT OF ITS MOTION FOR |
| | : | SUMMARY JUDGMENT ON THE |
| Defendant. | : | <u>CLAIMS OF ALLEN ROBERTS</u> |

## I.   INTRODUCTION

Defendant AK Steel Corporation ("AK Steel" or "the Company") moves for summary judgment on the claims of Allen Roberts (Counts III and IV of the Second Amended Complaint). Roberts, who has already brought and lost one case of race discrimination against AK Steel (*See* Case No. 1:02CV656), now attempts to recover in this case for what he claims is hiring discrimination against others. Roberts does not have standing to pursue this claim. He admitted in his deposition that he has suffered no injury as a result of AK Steel's hiring practices. Moreover, the undisputed evidence shows that he worked in a racially integrated environment. Summary judgment is appropriate.

## II.   STATEMENT OF FACTS

A.   <u>Roberts Worked With 220 African Americans At AK Steel.</u>

Despite the fact that the African American community in the Middletown area is "relatively small," AK Steel employed approximately 220 African American employees, including Roberts, during the relevant period. (Roberts Dep. 90-91) AK Steel employed a higher percentage of African Americans than were present in the Middletown-area work force. (Doc. # 73, Short Dec. ¶ 7; Roberts Dep. 90-91: approximately 7% of workforce at AK Steel was

African American) (*cf.* Doc. # 73, Baker Report, Appx. B: only 4.90% of those available in Middletown Hamilton, Ohio MSA workforce are African Americans)  Roberts testified he knew all the African American employees at AK Steel through his employment interactions with them. (Roberts Dep. 90-91)

    B.  Roberts Worked In Maintenance In Caster And Annealing With Other African Americans.

During the relevant period, AK Steel employed Roberts as a maintenance journeyman in the caster maintenance/steelmaking department and then in the annealing area.

From 1995 until July, 2001,[1] Roberts provided maintenance for both the caster and basic oxygen furnace (BOF). (Roberts Dep. 61)  The caster maintenance group included roughly 40 to 55 employees. (*Id.* at 62)  Roberts was one of four crew chiefs in caster maintenance. (*Id.* at 64)  Emmy Langster, Andrew Smith and James Coleman,[2] all of whom are African Americans, were also crew chiefs. (*Id.* at 64-65)  As a crew chief, Roberts assigned the work to the individuals on his crew. (*Id.*)  In addition to the three other African American crew chiefs, Roberts recalled at least seven other African Americans who worked in maintenance in the caster/BOF department. (*Id.* at 66-69)

In July, 2001, as a result of some performance issues, AK Steel moved Roberts into the maintenance group for annealing and removed his crew chief title. (Roberts Dep. 74; Case No. 1:02cv656, Doc. # 53, p. 3, 15)  The annealing maintenance group was smaller, consisting of only 30 to 40 people.  Roberts did not know all of the people in this smaller group. (*Id.* at 76) The annealing area encompassed an area approximately a quarter-mile long.  Roberts worked with only three or four people on a shift.  Roberts recalled at least two other African Americans.

---

[1] From September 1, 1999 to November 2, 2000, he was not physically present at the plant due to a disciplinary termination that was later converted to a suspension. (Roberts Dep. 73-74)
[2] At some point, Coleman transferred to an inspector position. (Roberts Dep. at 65)

(*Id.* at 76) Each individual was assigned to a different area to work. (*Id.* at 77-78) To Roberts's knowledge, no one was hired into annealing while he was there. (*Id.* at 84)

### C. Roberts Had Numerous Performance Failings.

Roberts had issues with his employment. He had attendance issues, including tardiness, absenteeism, and leaving work without permission. He was discovered asleep (or likely asleep) during his shift on more than one occasion, and he had repeated performance issues caused by inattention and neglect of duties. (Roberts Dep. 53-60, Ex. 1) During his employment, Roberts received five formal warnings, 13 suspensions and was terminated twice. (Roberts Dep. Ex. 1) On September 24, 2002, he was finally discharged when he was caught (likely) asleep in a locked tool shanty with the lights off, one and one-half hours before the end of his shift, lied to his supervisor and the Industrial Relations representatives about the incident, and then unsuccessfully tried to suborn perjury from a co-worker who refused to lie under oath at arbitration as Roberts had requested of him. (*Id.* at 54; Case No. 1:02cv656, Doc. # 53, p. 4, 18)

Roberts filed a lawsuit (Case No. 1:02CV656) challenging his discipline, the alleged denial of overtime, the alleged lack of training, his termination and other terms and conditions of his employment as both race discrimination and retaliation for having filed charges with the EEOC. On February 24, 2004, this Court granted summary judgment to AK Steel on all of Roberts's claims of discrimination and retaliation in Case Number 1:02CV656.

### D. Procedural Posture.

In the midst of his performance failings, and on the advice of his attorney, Roberts encouraged his unemployed friends and relatives (the Middletown Plaintiffs in this case) to apply at AK Steel. (Roberts Dep. 150, 158-163, 165, 168, 171-73, 192-93) Roberts then filed this lawsuit alleging that he was denied an integrated work environment.

On January 21, 2005, AK Steel filed a Motion for Summary Judgment on Roberts's claims based on claim preclusion because Roberts had already brought and lost claims for race discrimination and retaliation against the Company relating to his discipline, termination, alleged denial of overtime and alleged lack of training. Roberts opposed AK Steel's motion claiming that his claims in this case were different from the claims in his previous action in that they were based on different events and harm to him. (Doc. # 62) On May 11, 2006, this Court denied AK Steel's Motion. (Doc. # 80)

### III.   ARGUMENT

A.   Roberts Does Not Have Standing to Bring This Action; He Admitted He Has Suffered No Injury.

Roberts's claim in this case (brought under both Title VII and 42 U.S.C. § 1981) is a third party claim of hiring discrimination against others. Roberts does not have standing to bring this claim. Roberts did not suffer any injury as a result of the alleged hiring practices. He does not have standing to pursue claims of discrimination directed at others.

"Article III's requirement of a 'case or controversy' obligates the federal courts to hear only suits in which the plaintiff has alleged some actual or threatened harm to him or herself as a result of a 'particular illegal action.'" *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 184 (2d Cir. 2001). Roberts must prove that he suffered actual injury proximately caused by the alleged discrimination. *Yeager v. General Motors Corp.*, 67 Fed. Appx. 335, 338 (6th Cir. 2003). He cannot proceed on a "third party" claim based on injury allegedly suffered by others.

Roberts's testimony makes clear that any alleged failure to hire entry level Labor Reserve employees did not cause any injury to him, a trained journeyman repairman and crew chief. Roberts testified:

> Q.   Okay. And what damages do you claim to have suffered as a result of the alleged hiring discrimination?

|   |   |
|---|---|
| A. | As far as hiring is concerned? |
| Q. | Mm-hmm. |
| A. | You mean damages to me? |
| Q. | Yeah.  Did you suffer any damages as a result of the alleged hiring? |
| A. | I lost my job – you know, I thought, in reference to the hiring process. |
| Q. | Did you lose it in reference to the hiring process or because you filed a charge about the hiring process? |
| A. | Well, I guess in the – in reference to the process of filing the charges against the hiring, in reference to that. |
| Q. | Have you been harmed in any other way because of the alleged hiring discrimination that you claim occurred at AK Steel? |
| A. | I can't say at this time that I – I mean, I can't – I don't think I have.  I mean, as far as hiring is concerned? |
| Q. | Yes, as far as the hiring is concerned. |
| A. | I don't think that I've personally been harmed because I – you know, I was working at the time. |

(Roberts Dep. 142-143)  Roberts does not have standing to bring this claim.  He admitted he has suffered no injury.

      B.      <u>AK Steel Provided Roberts With A Racially Integrated Environment.</u>

Roberts's attorneys have claimed that Roberts's alleged injury was the alleged denial of a "racially integrated environment."  (Doc. # 45, ¶¶ 156, 161)  Even if a party could bring a third party claim based on the denial of a "racially integrated environment,"[3] the undisputed evidence is that AK Steel did not deny Roberts a racially integrated environment.

---

[3] Several courts have rejected or questioned the viability of such claims.  *See Childress v. City of Richmond*, 134 F.3d 1205, 1209-1210 (4th Cir. 1998) (concurring opinion) (Title VII plaintiff "must assert his own statutory rights and allege that he, not someone else, has been discriminated against."); *Leibovitz v. New York City Transit Auth.*, 252 F.3d 179, 187 (2d Cir. 2001) (court did not endorse district court ruling that standing under Title VII is as broad as

{W1122007.3}      6

Roberts worked in a racially integrated environment. He worked with Caucasian and African American employees. (Roberts Dep. 64-69, 76, 90-91) AK Steel provided Roberts with greater opportunity for interracial association than was generally available in the Middletown working forces. AK Steel's workforce was made up of 7% African Americans, nearly double that available in the surrounding area where Roberts lived. (Doc. # 73, Short Dec. ¶ 7; Roberts Dep. 90-91) (*cf.* Doc. # 73, Baker Report, Appx. B: only 4.90% of those available in Middletown Hamilton, Ohio MSA workforce are African Americans). Roberts knew approximately 220 other African Americans in the workplace. (Roberts Dep. 90-91) He was one of four crew chiefs in his area, all of whom were African Americans. (*Id.* at 64-65) Roughly 15% of those who worked in his maintenance groups (he recalled 13 African Americans among the 70-95 employees who worked in his maintenance groups) were African American (compared to the 4.90% in the community where he lived). (Roberts Dep. 64-69, 76; Doc. # 73, Baker Report, Appx. B) AK Steel did not deny Roberts the benefits of a "racially integrated environment."

Roberts does not have standing to proceed on a claim based on alleged hiring discrimination against others. He has not suffered cognizable harm or injury related to AK Steel's hiring practices.

### C.   AK Steel Did Not Discriminate Against African Americans In The Hiring Process.

Although Roberts's claim should be dismissed because he has no standing and he was not denied a racially integrated environment, the claim also fails because Roberts cannot establish that AK Steel discriminated against African Americans in the hiring process. During the

---

standing under Article III); *Deleon v. Putnam Valley Bd. Of Educ.*, 2006 WL 236744 (S.D.N.Y. 2006) (plaintiff lacked standing to assert claim that the defendant's intentionally discriminatory hiring policies and practices denied plaintiff a racially diverse workplace and deprived her of interracial association in employment).

relevant period, AK Steel hired more African Americans than reasonably would be expected from the recruitment area.  (*Compare* Baker Report, Appx. B, attached to Doc. # 73:  4.09% of available laborers in recruitment area are African Americans, *with* Bradley Supp. Report, p. 8, attached to Doc. # 71: 5.2% of hires were African American *and* Baker Report, Table 1.a, attached to Doc. # 73:  5.9% of hires were African American.)  As discussed more fully in the separate motions for summary judgment on the Middletown Plaintiffs' hiring discrimination claims, there is no evidence that anyone was not hired because of their race.  Even if Roberts had suffered injury, which he denied, summary judgment is appropriate because he cannot establish that any injury was caused by race discrimination in the hiring process.

### III.   CONCLUSION

For each and all of the foregoing reasons, Defendant AK Steel Corporation respectfully requests that this Court grant its Motion for Summary Judgment and dismiss the claims of Allen Roberts found in Counts III and IV of the Second Amended Complaint.

Respectfully submitted,

 /s/ Gregory Parker Rogers
Lawrence J. Barty (0016002)
Gregory Parker Rogers (0042323)
Patricia Anderson Pryor (0069545)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957
(513) 381-2838

Trial Attorneys for Defendant
AK Steel Corporation

**CERTIFICATE OF SERVICE**

      I hereby certify that the foregoing was electronically filed on January 14, 2008 using the Court's CM/ECF system, which will send notice of this filing to Susan Donahue, Robert Childs, Herman N. Johnson, Jr., Wiggins, Childs, Quinn & Pantazis, P.C., The Kress Building, 301 19th Street North, Birmingham, Alabama  35203; Paul H. Tobias, Tobias, Kraus & Torchia, 911 Mercantile Library Building, 414 Walnut Street, Cincinnati, Ohio 45202; and David Sanford, Sanford, Wittels & Heisler, L.L.P., 2121 K Street, N.W., Suite 700, Washington, D.C.  20037.

                                                    /s/ Gregory Parker Rogers