UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VIVIAN BERT, et al., | : | Case No. 1:02CV467 |
| | : | |
| Plaintiffs, | : | Judge Beckwith |
| | : | |
| v. | : | **MOTION OF AK STEEL** |
| | : | **CORPORATION FOR SUMMARY** |
| AK STEEL CORPORATION, | : | **JUDGMENT ON THE CLAIMS OF** |
| | : | **VIVIAN BERT, EDWARD JAMES** |
| Defendant. | : | **LEWIS, MICHAEL MILLER AND** |
| | : | **SHAWN PRYOR** |
| | : | |

Pursuant to Federal Rule of Civil Procedure 56, Defendant AK Steel Corporation moves for summary judgment on the claims of Plaintiffs Vivian Bert, Edward James Lewis, Michael Miller and Shawn Pryor. There are no genuine issues of material fact and summary judgment is appropriate on each of their individual claims. A Memorandum in Support of this Motion, and the Declarations of Phyllis Short and Jessica Morris, are attached.

                                            Respectfully submitted,

                                            /s/ Gregory Parker Rogers
                                          Lawrence J. Barty (0016002)
                                          Gregory Parker Rogers (0042323)
                                          Patricia Anderson Pryor (0069545)
                                          Taft Stettinius & Hollister LLP
                                          425 Walnut Street, Suite 1800
                                          Cincinnati, Ohio  45202
                                          (513) 381-2838
                                          (513) 381-0205 (fax)

                                          Trial Attorneys for Defendant
                                          AK Steel Corporation

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VIVIAN BERT, et al., | : | Case No. 1:02CV467 |
| | : | |
| Plaintiffs, | : | Judge Beckwith |
| | : | |
| v. | : | **MEMORANDUM OF AK STEEL** |
| | : | **CORPORATION IN SUPPORT OF** |
| AK STEEL CORPORATION, | : | **ITS MOTION FOR SUMMARY** |
| | : | **JUDGMENT ON THE CLAIMS OF** |
| Defendant. | : | **VIVIAN BERT, EDWARD JAMES** |
| | : | **LEWIS, MICHAEL MILLER AND** |
| | : | **SHAWN PRYOR** |
| | : | |

## I.    INTRODUCTION

Defendant AK Steel Corporation ("AK Steel" or "the Company") respectfully submits that summary judgment is appropriate on the individual claims of Vivian Bert, Edward James Lewis, Michael Miller and Shawn Pryor. These Plaintiffs are not part of the asserted class in this case.[1] Instead, these Plaintiffs individually claim that AK Steel did not hire them because of their race. As shown below, each of their individual claims fails as a matter of law. AK Steel did not hire over 3,300 Caucasian applicants during the same period that Bert, Lewis, Miller and Pryor sought employment. There is no evidence that AK Steel took any action against these Plaintiffs because of their race. Summary judgment is appropriate as a matter of law.

## II.

---

[1] Plaintiffs represented to the Court that they would sever the individual Plaintiffs' claims from the class claims. (Doc. # 81, p. 10; Doc. # 96, p. 11) To date they have not done so. As the individual claims are separate and distinct from the class claims and each other, AK Steel is filing separate motions for summary judgment with respect to the claims of the two separate classes. AK Steel is also filing separate motions with respect to the claims of Roderique Russell and Allen Roberts.

## STATEMENT OF FACTS

    A.    <u>AK Steel.</u>

AK Steel is an integrated steel manufacturer whose largest manufacturing facility is its Middletown Works. (Short Dec. ¶ 2)[2] The Company's goal is to lead the integrated steel industry in safety, quality and productivity. (Short Dec. ¶ 3)

AK Steel's number one priority is safety. AK Steel is far and away the leader in the integrated steel industry in safety. (*Id.*) This is no accident. AK Steel believes that a top flight hourly workforce is a key component to further its safety, quality and productivity goals. (*Id.* at ¶ 4) Both managers and the hourly workforce must be knowledgeable and skilled and follow the Company's safety programs to achieve this enviable record.

    B.    <u>AK Steel's Hiring Process During The Relevant Period.</u>

When AK Steel is hiring, it receives thousands of applications. (Baker Report, Table 1.a) (attached) For example, between September 12, 2001 and December 31, 2003, AK Steel received over 4,000 applications at Middletown. (*Id.*)

During this period, AK Steel hired employees with the expectation that an individual must be able to succeed not only as an entry-level "laborer," but also in the many other safety sensitive, demanding, technical, skilled and leadership positions into which an individual would be assigned pursuant to the seniority provisions of AK Steel's collective bargaining agreement with the Armco Employees Independent Federation. (Short Dec. ¶ 10) The Company's hiring processes were designed to achieve this goal.

---

[2]     Phyllis Short has provided several declarations throughout this litigation. Her November 30, 2005 Declaration, originally attached to Doc. # ___, and attached here for easy reference, will be referred to as "Short Dec. ¶ ___." Her most recent Declaration, her fourth, will be referred to as "4th Short Dec. ¶ ___." It is also attached.

At its Middletown Works, AK Steel required individuals to file an application through the Ohio Department of Job and Family Services ("ODJFS"). (Short Dec. ¶ 12; Morris Dep. 14) Those applications were then forwarded by ODJFS to the Middletown Works Human Resources Department, where applications were screened for, among other things, (a) a high school degree or GED, (b) two years manufacturing or laborer experience, (c) a valid driver's license, (d) no criminal history (other than certain non-violent and non-drug-related minor misdemeanors) and (e) no prior employment by AK Steel (or its predecessor, Armco). (Morris Dep. 24, 37, 115) Those whose applications indicated possession of these minimum qualifications and who were not otherwise deemed unsuitable for employment for a wide variety of reasons were invited to take a written test. (Short Dec. ¶ 12) Approximately 30% of applicants were screened out and not permitted to test. (*Id.*) Those who passed the written test were interviewed. (*Id.*) Those selected through the interview process underwent a background check through which the Company checked the applicant's criminal record, driving record and educational and employment history. (*Id.*; Morris Dep. 66) Finally, those who passed the background check were given an offer of employment, conditioned upon passing a physical examination. (Short Dec. ¶ 12)

        C.      <u>Ninety Percent Of Those Who Applied Were Not Hired.</u>

Only about ten percent of all applicants were eventually hired in the rigorous procedure used at Middletown Works. (Baker Report, Table 1.a, attached to Doc. # 73) During the period September 12, 2001 to December 31, 2003, over 3,300 Caucasian applicants were not chosen for employment in Middletown. The overwhelming number of applicants -- irrespective of race -- were not hired. (*Id.*)

AK Steel's hiring process did not discriminate against African Americans. As a result of AK Steel's efforts to employ a diverse work force, AK Steel recruited and hired more African

Americans than reasonably would be expected from the recruitment area. Plaintiffs' own expert concluded that the Company hired 5.2% African Americans in Middletown (versus the available 4.09% in the area). (Bradley Supp. Report p. 8, attached to Doc. # 71, p. 8 of 43)

      D.      <u>Plaintiffs Were Among The Greater Than 3,300 People Not Hired.</u>

Plaintiffs Bert, Lewis, Miller and Pryor claim to be among the greater than 3,300 individuals (most of whom were Caucasian) whom AK Steel did not hire between 2001 and 2003. These Plaintiffs were not hired because they did not meet the minimum qualifications for employment at AK Steel or did not complete the AK hiring process.

      1.      <u>Vivian Bert's Application Was Screened Out Because She Was Previously Employed By Armco.</u>

Vivian Bert is the sister of Plaintiff Allen Roberts. (Bert Dep. 20) She was employed at Armco from 1982 to 1984. (Bert Dep. 6) Bert claims that she applied to work at AK Steel approximately four times by submitting an application at the ODJFS employment career center on University Boulevard in Middletown. (Bert Dep. 34) She testified she made copies of her application and resubmitted the same application each time. (Bert Dep. 57-58) The last application that AK Steel received from Vivian Bert was in May 2001. (Morris Dep. 119; 4th Short Dec. ¶ 2)

AK Steel's application asks if the applicant has previously worked for AK Steel or Armco. (Bert Dep. Exs. 6, 7) Bert answered yes. Both ODJFS and AK Steel screened out applications where the applicant had previously worked for Armco or AK Steel. (2d Morris Dec. ¶ 3) AK Steel did not hire Bert because of her previous employment at Armco. (Morris Dep. 115)

Bert claims she applied more recently in April 2002 and May 2002. AK Steel has no record of receiving these applications from ODJFS. (Morris Dep. 119; 4th Short Dec. ¶ 2) Bert

admitted she never heard anything from AK Steel concerning these alleged applications. (Bert Dep. 51) However, even had Bert applied in April 2002 or May 2002, as she now claims, she would have again been screened out due to her previous employment with Armco. (Morris Dep. 115, 118; 2d Morris Dec. ¶ 3)

        2.      <u>Edward James Lewis Does Not Have A High School Diploma Or GED; AK Steel Attempted To Contact Him But His Phone Had Been Disconnected.</u>

Plaintiff Edward James Lewis is a friend of Allen Roberts. (Lewis Dep. 21, 56; Roberts Dep. 163-64) Lewis applied for employment with AK Steel in April 2001. (Lewis Dep. 12) On his application and applicant survey he falsely stated that he had a high school diploma or a GED. (Lewis Dep. 11, 32; Exs. 1 and 4) Lewis does not have a high school diploma or a GED; he only completed the ninth grade. (Lewis Dep. 11) Had he completed his application honestly he would have been screened out in the initial screening process. (2d Morris Dec. ¶ 5) Based on his false representations, he passed the initial screening process.

Jessica Morris, who at that time was responsible for the hourly hiring at Middletown, attempted to contact Lewis about his application, however the phone number that he had provided was no longer in service. (Morris Dep. 77-78) Lewis admitted that he frequently changed phone numbers. (Lewis Dep. 10) He was removed from the application process because the Company could not reach him at the number he provided. (Morris Dep. 77)

Even had Lewis not changed his phone number after applying, AK Steel would have removed him from the process when his background check would have revealed that (1) he was not eligible for the job because he did not have a GED or high school diploma and (2) he had falsified his application. (2d Morris Dec. ¶ 5)

In this lawsuit, Lewis challenges AK Steel's alleged decision not to hire him based on an alleged application in November 2001. (Doc. # 45, 2d Am. Compl. ¶¶ 12, 70) AK Steel never

received such an application. (4th Short Dec. ¶ 3; 2d Morris Dec. ¶ 4) Lewis denied submitting any application through Allen Roberts, which the Complaint alleged he did in November 2001. (Doc. # 45, 2d Am. Compl. ¶ 70; Lewis Dep. 67) Even had Lewis applied again in November 2001, the application automatically would have been screened out because he did not graduate from high school and did not have a GED. Lewis testified that he truthfully stated that he did not graduate from high school on all applications other than his April 2001 application. (Lewis Dep. 32-33)

### 3. Michael Miller Did Not Pass The Background Check.

Michael Miller went to church with Allen Roberts. (Miller Dep. 86) Michael Miller filled out two applications for employment at AK Steel, one in August 2001 and one in September 2001. AK Steel considered these applications together. (Morris Dep. 103) On both applications, he falsely claimed he had no criminal convictions. (Miller Dep. 6-9; Miller Dep. Exs. 2, 3, 4, 5) Miller had prior convictions for theft, felonious assault and driving with a suspended license. (Miller Dep. 6-10) Based on his false representations, he passed the initial screening process. (2d Morris Dec. ¶ 6)

On September 18, 2001, Miller took and passed the pre-employment exam. AK Steel called him in for an interview on October 3, 2001. (2d Morris Dec. ¶ 6) At the interview, Miller learned that the next step was a background check. Miller's background check revealed that he had eight points on his driving record, his license had been suspended and he had been caught driving with a suspended license. (Morris Dep. 104) AK Steel did not hire Miller based on the results of the background check. (2d Morris Dec. ¶ 6; 4th Short Dec. ¶ 4)

In this lawsuit, Miller challenges AK Steel's alleged decision not to hire him based on an alleged application in June 2001 and January 2002. (Doc. # 45, 2d Am. Compl. ¶¶ 20, 112) AK Steel never received these alleged applications. (2d Morris Dec. ¶ 7; 4th Short Dec. ¶ 5) In his

deposition, Miller admitted that he only applied twice, and that the August and September 2001 applications were his. (Miller Dep. 102-03)

          4.      Shawn Pryor Applied For A Computer Technical Position; AK Steel Does Not Employ Computer Technicians.

Shawn Pryor is the nephew of Allen Roberts. (Pryor Dep. 28) Pryor admitted he did not apply in October 2001 as alleged in both the Complaint and his EEOC charge. (Pryor Dep. 58)

Pryor did not have manufacturing or labor experience. He worked in the computer field. He applied for a computer technical position at AK Steel on November 19, 2001. (Pryor Dep. Ex. 4; Pryor Dep. 58) AK Steel contracts out its computer work. It does not hire computer technicians. (Morris Dep. 88, 90) Pryor was not qualified for the laborer position. He did not have the required experience. Pryor's application was screened out during the initial screening process. (Morris Dep. 91)

### III.    ARGUMENT

Each of these Plaintiffs' individual claims for discrimination in hiring, under both Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, fail as a matter of law. Plaintiffs are not part of the requested "class" in this case. Their claims are solely claims of disparate treatment, or intentional race discrimination. Claims of disparate treatment discrimination under Title VII and 42 U.S.C. § 1981 are analyzed similarly. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992); *Hughes v. General Motors Corp.*, 212 Fed. Appx. 497, 502 (6th Cir. 2007).

There is no evidence of race discrimination in this case. No one said anything that was racially hostile or offensive or that Plaintiffs believed was discriminatory. (Bert Dep. 65-67; Lewis Dep. 22, 72; Miller Dep. 62-63; Pryor Dep. 38) In fact, Bert, Lewis and Pryor never heard

anything from AK Steel after they allegedly applied. (Doc. # 45, 2d Am. Compl., ¶¶ 54, 72, 135)

Plaintiffs' claims are analyzed under the *McDonnell Douglas* burden shifting framework. Each of their claims fail because they cannot establish a prima facie case of discrimination and they cannot establish that AK Steel's legitimate reasons for its decisions were a pretext for unlawful discrimination. Summary judgment is appropriate as a matter of law.

      A.      <u>Plaintiffs Cannot Establish A Prima Facie Case Of Discrimination.</u>

In order to establish a prima facie case of discrimination in a failure to hire case, each Plaintiff must establish (1) the Plaintiff belongs to a protected racial classification; (2) the Plaintiff applied and was qualified for a job for which AK Steel was seeking applicants; (3) despite the Plaintiff's qualifications, the Plaintiff was rejected; and (4) after the Plaintiff's rejection, the position remained open and AK Steel continued to seek applicants from persons of the Plaintiff's qualifications. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See also Young v. Oakland County*, 176 Fed. Appx. 644, 648 (6th Cir. 2006). Plaintiffs cannot establish the second or fourth prongs of the prima facie case.[3]

AK Steel's minimum qualifications for hire at its Middletown Works included, among other things, a high school degree or GED, two years manufacturing or labor experience, no criminal history, no prior employment by AK Steel (or its predecessor, Armco), the passing of a written test and the passing of a background check. (Morris Dep. 24, 37, 115; Short Dec. ¶ 12)

Plaintiffs Bert, Lewis, Miller and Pryor did not meet AK Steel's pre-established qualifications for employment that were applied to all applicants regardless of race. Vivian Bert was formerly employed by Armco. (Bert Dep. 6) Edward James Lewis did not have a high

---

[3]     Lewis also cannot establish the third prong. AK Steel did not reject Lewis for employment. He did not complete the application process.

school diploma or GED. (Lewis Dep. 11) Michael Miller had a criminal record, eight points on his driving record and a history of license suspensions. (Miller Dep. 6-10; Morris Dep. 104) Shawn Pryor did not have the requisite manufacturing or labor experience. (Morris Dep. 86; Pryor Dep. 25, Ex. 3)

These Plaintiffs cannot establish a prima facie case of discrimination as a matter of law. They were not qualified for the job and therefore cannot establish the second prong of the prima facie case.[4] They similarly cannot establish the fourth prong of a prima facie case because AK Steel did not seek applicants from persons of their qualifications. There is no evidence that AK Steel considered any similarly situated Caucasian applicant who had previously worked at Armco, did not have a high school diploma or GED, had a criminal record, had 8 points on his driving record and a history of license suspensions or had less than 2 years manufacturing or laborer experience.

### B. AK Steel's Legitimate Reasons For Not Hiring Plaintiffs, Along With The More Than 3,300 Caucasians It Did Not Hire, Are Not Pretextual.

Even if Plaintiffs could establish a prima facie case, it is undisputed AK Steel did not receive or consider the alleged applications of Bert, Lewis, Miller and Pryor put at issue by the Second Amended Complaint. This legitimate reason why these individuals were not hired on the alleged applications asserted in this case cannot be discriminatory. *See Anaeme v. Diagnostek, Inc.*, 164 F.3d 1275, 1279-80 (10th Cir. 1999) (defendant's legitimate explanation that it had no record of an application by plaintiff rebutted prima facie case). Lewis, Miller and Pryor have presented no evidence that they even applied at the times alleged in the Complaint.

---

[4] Plaintiffs Lewis, Miller and Pryor cannot establish that they even applied. Their depositions establish they did not submit the applications upon which their claims of discrimination are based. (Lewis Dep. 67; Miller Dep. 102-03; Pryor Dep. 58) Summary judgment is appropriate for this reason alone.

{W1105744.1}                                   9

In addition, even had AK Steel received these alleged applications and even if Plaintiffs could establish a prima facie case with respect to each of their individual claims, Plaintiffs cannot establish that AK Steel's stated reasons for not hiring each of these Plaintiffs were a pretext for illegal race discrimination.  AK Steel received thousands of applications.  Over 3,300 Caucasian applicants during the same time period were not hired. (Baker Report, Table 1.a)  AK Steel did not hire applicants who were previously employed by AK Steel or Armco, who did not have the requisite manufacturing or labor experience, who did not have a high school diploma or GED, who had extremely poor driving records or who lied on their application about a previous conviction. (Morris Dep. 17, 25, 27, 105, 115; 4th Short Dec. ¶ 4)  Applicants who could not be reached due to a disconnected phone were removed from the process. (Morris Dep. 77)  AK Steel treated Plaintiffs the same as other similarly situated applicants.  There is no evidence that AK Steel's reasons for not hiring Plaintiffs were pretextual.

## IV.    CONCLUSION

For each and all of the foregoing reasons, Defendant AK Steel Corporation respectfully requests that this Court grant its Motion for Summary Judgment and dismiss the claims of Plaintiffs Vivian Bert, Edward James Lewis, Michael Miller and Shawn Pryor.

Respectfully submitted,

 /s/ Gregory Parker Rogers
Lawrence J. Barty (0016002)
barty@taftlaw.com
Gregory Parker Rogers (0042323)
rogers@taftlaw.com
Patricia Anderson Pryor (0069545)
pryor@taftlaw.com
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio  45202
(513) 381-2838
(513) 381-0205 (fax)

Trial Attorneys for Defendant
AK Steel Corporation

CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on January 14, 2008 using the Court's CM/ECF system, which will send notice of this filing to Susan Donahue, Robert Childs, Herman N. Johnson, Jr., Wiggins, Childs, Quinn & Pantazis, P.C., The Kress Building, 301 19th Street North, Birmingham, Alabama 35203; Paul H. Tobias, Tobias, Kraus & Torchia, 911 Mercantile Library Building, 414 Walnut Street, Cincinnati, Ohio 45202; and David Sanford, Sanford, Wittels & Heisler, L.L.P., 1666 Connecticut Avenue, N.W., Suite 310, Washington, D.C. 20009.

/s/ Gregory Parker Rogers