UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VIVIAN BERT, et al. | : | Case No. C-1-02-467 |
| | : | |
| Plaintiffs, | : | Judge Beckwith |
| | : | Magistrate Judge Hogan |
| v. | : | |
| | : | **MOTION OF AK STEEL** |
| AK STEEL CORPORATION | : | **CORPORATION FOR SUMMARY** |
| | : | **JUDGMENT ON THE CLAIMS OF** |
| Defendant. | : | **DONALD EDWARDS, JAMES** |
| | : | **GREENWOOD AND THE** |
| | : | **MIDDLETOWN CLASS** |

Pursuant to Federal Rule of Civil Procedure 56, Defendant AK Steel Corporation moves for summary judgment on the claims of named class representatives Donald Edwards and James Greenwood and the Middletown class. It is respectfully submitted that there are no genuine issues of material fact and summary judgment is appropriate as a matter of law. A Memorandum in Support of this Motion is attached.

            Respectfully submitted,

            /s/ Gregory Parker Rogers
            Lawrence J. Barty (0016002)
            Gregory Parker Rogers (0042323))
            Patricia Anderson Pryor (0069545)
            Taft Stettinius & Hollister LLP
            425 Walnut Street, Suite 1800
            Cincinnati, Ohio 45202
            (513) 381-2838
            Trial Attorneys for Defendant
            AK Steel Corporation

{W1174226.1}

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VIVIAN BERT, et al. | : | Case No. C-1-02-467 |
| | : | |
| Plaintiffs, | : | Judge Beckwith |
| | : | Magistrate Judge Hogan |
| v. | : | |
| | : | **MEMORANDUM OF AK STEEL** |
| AK STEEL CORPORATION | : | **CORPORATION IN SUPPORT OF** |
| | : | **ITS MOTION FOR SUMMARY** |
| Defendant. | : | **JUDGMENT ON THE CLAIMS OF** |
| | : | **DONALD EDWARDS, JAMES** |
| | : | **GREENWOOD AND THE** |
| | : | **MIDDLETOWN CLASS** |

## I.    INTRODUCTION

Defendant AK Steel Corporation ("AK Steel" or "the Company") respectfully submits that summary judgment is appropriate on the claims of named Middletown class representatives Donald Edwards and James Greenwood and the Middletown class they assert they represent.

Donald Edwards and James Greenwood assert they represent a class of individuals who applied at AK Steel's Middletown Works and failed the pre-employment test between September 12, 2001 and October 31, 2003. They are proceeding solely on a Title VII disparate impact claim relating to AK Steel's pre-employment test.[1] (Doc. # 81, p. 10)

Because neither Edwards nor Greenwood filed a timely charge with the EEOC relating to this claim, summary judgment is appropriate as a matter of law. Moreover, even if they had, their claim would fail as a matter of law because the challenged test was professionally developed and validated.

---

[1] On June 8, 2006, Edwards and Greenwood relinquished any disparate treatment claim. (Doc. # 81, p. 10)

## II.  STATEMENT OF FACTS

The facts relating to the purported Middletown Class and Donald Edwards and James Greenwood have been addressed previously.[2]  A brief summary follows.

Donald Edwards claims he applied in August, 2001 at Palmer Temps for a job with AK Steel.  He claims he took an examination at Palmer Temps on the same day consisting of seven to fifteen questions.  (Edwards Dep. 53-54)  This is the only time since 1981 that he claims to have taken a test in pursuit of employment with AK Steel.  (Edwards Dep. 61)

AK Steel did not receive an application from Edwards in August, 2001; nor was AK Steel accepting applications from Palmer Temps in August, 2001.  (Short Dec. ¶ 13, attached to Doc. # 73)  Although Edwards claims to have taken a test at Palmer Temps, AK Steel's test was never administered at Palmer Temps.  (Morris Dec. ¶ 5, attached to Doc. # 112; Short Dec. ¶ 13, attached to Doc. # 73; R. Nunlist Dep. 69-70, 94; M. Palmer Nunlist Dep. 21, 69)  Whatever test Edwards might have taken, it is undisputed it was not the test challenged in this case, which is a three-hour exam consisting of 365 questions.  (Morris Dec. ¶ 3, attached to Doc. # 112; Short Dec. ¶ 13, attached to Doc. # 73)

Edwards filed a charge with the EEOC on July 9, 2002.  (Edwards Dep. Ex. 10)

James Greenwood applied in September, 2001 and then took the pre-employment test.  (Greenwood Dep. 16, Ex. 2)  He did not file a charge with the EEOC.  (*Id.* at 20)

## III.  ARGUMENT

### A.  Neither Edwards Nor Greenwood Filed A Timely EEOC Charge.

In order to proceed with a Title VII claim, a plaintiff must first exhaust his administrative remedies by filing a charge with the EEOC within 300 days of the alleged violation.

---

[2]  AK Steel moved to decertify the Middletown class on June 15, 2007 because there is no class representative with a viable claim for race discrimination relating to AK Steel's test.  (Doc. # 112)  This motion is currently pending before the Court.

42 U.S.C. ¶ 2000e-5(e). Greenwood did not file a charge with the EEOC. He cannot proceed with his claim in this case. *Lopez-Flores v. General Motors Corp.*, 1992 WL 146651, * 2 (6th Cir. 1992) (court lacks jurisdiction where plaintiff failed to exhaust administrative remedy).

Edwards did file a charge; however, he filed it on July 9, 2002, more than 300 days after he claims to have taken AK Steel's test. (Edwards Dep. Ex. 10) He cannot proceed with his claim in this case. *Poe v. Memphis Light, Gas and Water Div.*, 1999 WL 1204694, * 2 (6th Cir. 1999) ("A federal court only has jurisdiction to grant relief for 'unlawful employment practices' committed within 300 days prior to the date the discrimination charge is filed with the EEOC.")

Plaintiffs' Title VII disparate impact claims relating to the pre-employment test, the only claims James Greenwood, Donald Edwards or the class they purport to represent have in this case, fail as a matter of law because Plaintiffs failed to timely exhaust their administrative remedies.

B. Even If Plaintiffs Had Filed A Timely EEOC Charge, Their Disparate Impact Claims Fail Because The Test Was Job Related And Professionally Validated.

Even if there were a timely charge before the Court and an adequate representative for the Middletown Class, which there is not, the disparate impact claims of Edwards, Greenwood and the Middletown Class fail because the challenged test was job related and professionally validated. (Gibson Dec. ¶ 8) An employer may lawfully use a job-related test, such as the one used by AK Steel, regardless of whether it has a disparate impact on African Americans. *Williams v. Ford Motor Co.*, 187 F.3d 533, 539 (6th Cir. 1999).

In 1997, AK Steel hired Resource Associates, Inc. to develop a pre-employment test that would accurately predict future performance on the job and assist it in hiring the high-quality employees that its work environment required. (Gibson Dec. ¶ 3)

Resource Associates specializes in assisting employers with selection testing. (*Id. at* ¶ 2) Resource Associates' Executive Vice President, Dr. Lucy Gibson, is a licensed psychologist with a Ph.D. in Industrial Organizational Psychology and almost 20 years experience developing and validating employment selection tests. (*Id. at* ¶ 1)

In order to develop an appropriate test for AK Steel, Dr. Gibson and her staff conducted a job analysis. They conducted interviews with both entry level employees and managers at AK Steel about the responsibilities, aptitudes and behaviors required of employees throughout the plant. They also toured the plant and observed the employees performing their jobs. From this job analysis review, Dr. Gibson determined what knowledge, skills and abilities were important for adequate job performance and selected a compilation of tests that would measure for these required abilities. (*Id. at* ¶ 4)

The test she developed included (1) a pattern series test of abstract reasoning, because the job analysis revealed that employees must think logically in terms of cause and effect so they can properly diagnose production problems with either the product or the production equipment and can exercise good judgment in making decisions that might have a direct effect on their own lives and those of their co-workers, as well as on the product and company profitability; (2) a mechanical reasoning test, because the job analysis revealed that employees must independently troubleshoot mechanical and electrical problems with production machinery, perform maintenance work involving complex interlocking and/or interrelated electronic circuits and tear down, repair and reassemble intricate equipment essential to the production process; (3) a math test for industry, because the job analysis revealed that employees must understand temperature, product measurements and equipment controls all of which are based on numerical scales, use numerically controlled machine tools and use addition, subtraction, division, multiplication and

other mathematical functions in order to acquire the level of knowledge in chemistry, hydraulics and electronics necessary for adequate job performance; (4) a reading for production workers test, because the job analysis revealed that employees must read, study, understand and apply Quality Standard Operating Procedures which detail the requirements and procedures for the different job positions, as well as Job Health and Safety Analyses, which detail proper protection and safety procedures, other written information pertaining to coil characteristics and the order of production and texts pertaining to principles of chemistry, hydraulics and electronics; (5) a 3-D visual spatial reasoning test and a form pattern comprehension test, because employees must attend to the spatial relationship between the employee, the product and the production equipment, conduct manual machine set-ups and take apart and reassemble intricate machinery and production equipment; and (6) an industrial personal style inventory. (Gibson Dec. ¶ 5) The personal style inventory measured an employee's conscientiousness and attention to detail, motivation and work drive, emotional stability (maturity/levelheadedness), openness to experiences (due to the need to work in a variety of positions), extroversion (ability to communicate with and work in a cooperative team environment) and agreeableness (willingness to learn and work under high stress). (Gibson Dec. ¶ 5)

After developing the tests based on the job analyses, and prior to implementing the tests, Dr. Gibson conducted a concurrent validation study. Resource Associates tested on-the-job employees to ensure the test correlated with actual job performance. (Gibson Dec. ¶ 7) Dr. Gibson analyzed and compared the test scores with the actual on-the-job performance ratings for 76 employees. (*Id.*) Dr. Gibson determined that each of the aptitude tests demonstrated significant correlation with at least several of the criterion measures. (*Id.*) Dr. Gibson also analyzed the personality measures and determined that all dimensions were shown as valid

predictors of at least one criterion measure. (*Id.*) Dr. Gibson concluded that each of the aptitude tests was shown to be a valid predictor of job performance and all of the personality measures also validated. (*Id.*)

In 1999, after AK Steel had been using Resource Associates' tests for two years, Dr. Gibson performed a predictive validation analysis. (*Id.* at ¶ 8) Dr. Gibson analyzed 189 applicants' actual pre-employment test scores with their on-the-job performance ratings. (*Id.*) The analysis confirmed the earlier concurrent study, revealing solid empirical evidence that the test scores were good predictors of future job performance. (*Id.*) Validity coefficients ranged from .23 to .36. (*Id.*) There was also a strong pattern of validity coefficients for the personality measures. (*Id.*) Dr. Gibson concluded that the test was valid and that in her professional opinion there were no alternative tests that would be as valid as the ones used that would have less adverse impact. (*Id.*)

Summary judgment is appropriate when an employer shows "by professionally acceptable methods, [that the test is] predictive of or significantly correlated with important elements of work behavior which comprise or are relevant to the job or jobs for which the candidates are being evaluated." *Williams*, 187 F.3d at 539 (quoting *Black Law Enforcement Officers Ass'n v. City of Akron*, 824 F.2d 475, 480 (6th Cir. 1987)).

AK Steel has made this showing. AK Steel hired a professional who went through a rigorous process and analysis, to develop and validate, both predictively and concurrently, the test challenged here. It makes no difference whether the test formerly used at the Middletown Works had a disparate impact; the test was validated years before this lawsuit was filed.

In *Williams*, the Sixth Circuit determined under similar circumstances that summary judgment in favor of the employer was appropriate where the employer utilized a professional

test developer and the court determined that despite the disparate impact on African-American applicants, the test was content valid and had criterion related validity. *Id.* at 542-47. As the case is here, applicants in *Williams* were not hired for a specific position because due to seniority rights the employees had to be able to rotate among numerous job classifications. *Id.* at 536. In *Williams*, human resources and supervisors determined which job activities and job requirements were important to determine what skills to assess by the test. *Id.* at 536-37. Here, Resource Associates involved members of human resources, managers, and employees actually performing the jobs, as well as their own analysis of the jobs being performed, to determine what job activities and requirements were important to determine what skills and abilities to test. (Gibson Dec. ¶ 4) Resource Associates then developed a test that correlated to those important skills, abilities and knowledge. (*Id.* ¶¶ 4-5) The court in *Williams* determined that a test under these circumstances was valid. *Id.* at 544.

The court in *Williams* also determined that the employer had produced evidence of criterion-related validity where the professional test developer analyzed the relationship between employee test scores and their job performance. *Id.* at 547. Here, Resource Associates twice analyzed the relationship between the test scores and job performance and determined that the test sufficiently correlated with performance. (Gibson Dec. ¶¶ 7, 8) Resource Associates' statistical analysis showed a correlation coefficient of .23 to .36. (*Id.* ¶ 8) It is undisputed that a correlation coefficient in this range is statistically significant and sufficient to establish job relatedness. *Williams*, 187 F.3d at 546 (finding .30 correlation coefficient statistically significant).

Even had Edwards or Greenwood filed a timely charge related to the pre-employment test, their claims and those of the class fail as a matter of law because the test is job-related and there is no alternative means to achieve the same legitimate interest that would have less impact.

## IV.    CONCLUSION

For each and all of the foregoing reasons, Defendant AK Steel respectfully requests that this Court grant its Motion for Summary Judgment and dismiss the claims of Donald Edwards and James Greenwood and the Middletown Class they purport to represent.

                Respectfully submitted,

                /s/ Gregory Parker Rogers
                Lawrence J. Barty (0016002)
                Gregory Parker Rogers (0042323))
                Patricia Anderson Pryor (0069545)
                Taft Stettinius & Hollister LLP
                425 Walnut Street, Suite 1800
                Cincinnati, Ohio 45202
                (513) 381-2838
                Trial Attorneys for Defendant
                AK Steel Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed on January 14, 2008 using the Court's CM/ECF system, which will send notice of this filing to Susan Donahue, Robert Childs, Herman N. Johnson, Jr., Wiggins, Childs, Quinn & Pantazis, P.C., The Kress Building, 301 19th Street North, Birmingham, Alabama 35203; Paul H. Tobias, Kraus & Torchia, 911 Mercantile Library Building, 414 Walnut Street, Cincinnati, Ohio 45202; and David Sanford, Sanford, Wittels & Heisler, L.L.P., 2121 K Street, N.W., Suite 700, Washington, D.C. 20037.

/s/ Gregory Parker Rogers