UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VIVIAN BERT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. C-1-02-467 |
| | ) | Judge Beckwith |
| AK STEEL CORPORATION, | ) | Magistrate Judge Hogan |
| | ) | |
| Defendant. | ) | |

## OPPOSITION TO DEFENDANT AK STEEL CORPORATION'S MOTIONS FOR SUMMARY JUDGMENT ON THE CLAIMS OF ALLEN ROBERTS

The Plaintiffs, by and through undersigned counsel, oppose AK Steel Corporation's Motion for

Summary Judgment on the Claims of Allen Roberts (Doc. 155) (hereinafter, "M/SJ Roberts"). As reasons

for their opposition, Plaintiffs state as follows:

## I.    PROCEDURAL BACKGROUND

Allen Roberts, along with the other Plaintiffs in this case, filed their original Complaint on June 26,

2002. (Doc. 1). All the plaintiffs except for Roberts asserted class-wide claims of race discrimination in

hiring pursuant to Title VII and § 1981. Roberts, who was an employee at AK Steel at the time, asserted

an associational, third-party claim under both Title VII and § 1981 alleging that AK Steel's racially

discriminatory hiring practices denied him the right to work in a racially integrated work environment. With

permission of this Court, the Plaintiffs filed their Second Amended Complaint (Doc. 45) on January 19,

2005, in which Roberts re-asserted the claims he had made in the original complaint. On January 21,

2005, the Defendant filed its Motion for Summary Judgment on Counts III and IV of the Second Amended

Complaint (Doc. 47) which were the counts alleging Roberts' third-party claims. Defendant argued in 2005 that Roberts' claims were barred based on claim preclusion because of a separate lawsuit Roberts had filed alleging retaliation and disparate treatment under Title VII. *See Roberts v. AK Steel*, Case No. 1:02cv"656 (S.D. Ohio, 2004) (J. Beckwith). Conversely, Plaintiffs argued that Roberts' claims in the Second Amended Complaint involved an entirely different cause of action and an entirely different set of facts from that litigated in the initial lawsuit. This Court agreed with the Plaintiffs and denied Defendant's motion on May 11, 2006. *See* Order (Doc. 80). On January 14, 2008, Defendant filed another Motion for Summary Judgment regarding the Claims of Allen Roberts (Doc. 155) to which Plaintiffs now respond in opposition.

## II.     STATEMENT OF FACTS

Allen Roberts is an African American male. Deposition of Allen Roberts (hereinafter "Roberts Dep.") (Doc. 150) at 76. Roberts began his employment with Armco, the predecessor company to AK Steel, on April 25, 1988. *See* Exh. 1 to Roberts Dep. He initially participated in a 5-year maintenance apprenticeship program and then worked in various departments, including Energy, Mobile Maintenance and Caster/BOF (Basic Oxygen Furnace). *Id.* He was assigned to the Caster/BOF in 1995, and he was in Caster maintenance from about September of 1995 to July of 2001. *Id.* He was a crew chief in this department. Roberts Dep. 61. Roberts was terminated by AK Steel on September 26, 2002. Exh. 1 to Roberts Dep.

## III.    ARGUMENT

Roberts' associational claim has three elements: (1) AK Steel intentionally discriminated against African American applicants in its hiring practices; (2) Robert was injured; and (3) there is a connection

between AK Steel's unlawful hiring practices and Roberts' injury. *See Gray v. Greyhound Lines, East*, 545 F. 2nd 169, 175 n. 16 (D.C. Cir. 1976) (recognizing African American employees' cause of action for injury to their right to an integrated working environment due to defendant's discriminatory hiring practices).

### A.    Roberts Has Standing to Bring His Associational, Third-party Claim in this Lawsuit.

Defendant argues that Roberts does not have standing to bring this action because he has suffered no injury. M/SJ on Roberts at 5. In support of this proposition, however, the Defendant only cites the Court to Roberts' deposition at pages 142-143. The Defendant fails to cite at all to pages 211-213 of Roberts' deposition, where he clarifies and expands upon his previous answer:

Q.    Earlier you said something, you had something to clarify. What was that?

A.    The integrated workplace question that you asked me earlier.

Q.    Mm-hmm.

A.    I don't – you know, when you asked me about whether the type of discrimination that was the size, what was in my prior lawsuit.

Q.    Mm-hmm.

A.    You know, and then you asked me – you know, what other things about this integrated workplace you are alleging. And I have to – you know, to clarify that, I'm alleging that with the lack of minorities within the plant on the hourly basis, I'm also acknowledging that – saying that without the lack of minority supervisors within the plant –

Q.    Again, when you're talking about "the plant," you're talking about your work area?

A.    I'm talking about – I'm talking about AK Steel, Middletown, Ohio, in my area or the areas that I transferred to, the areas that I worked in –

Q.    Okay.

A.    – okay? And with the lack of minorities that were hourly, lack of supervisor that were salary, I feel like that's – you know, didn't allow me to work in a place that was integrated of racial – free of discrimination because we didn't have a balance. We didn't have – there was no balance of minorities on either side, upper management or – upper management, front line supervisors, you name it.

    So with all that in mind, if there was a balance in my mind, I feel if there was a balance of supervisors, a balance of minorities in the plant, we probably wouldn't be having this conversation today. And I probably

3

> would -- would probably still be working at AK Steel.
>
> Q.    Meaning you wouldn't have gotten terminated?
> A.    I probably wouldn't have.
> Q.    You wouldn't have gotten the discipline that you previously —
> A.    I probably wouldn't have.

Roberts Dep. 211-213. This testimony by Roberts clearly establishes his injury regarding his claimed right to work in an integrated environment. According to Roberts, the lack of African American supervisors and managers and a racially integrated workplace caused him to be disciplined and ultimately terminated. Events would not have occurred if the work force at AK Steel was racially balanced. This is a different claim than was litigated in his individual case where he claimed that racial discrimination itself was the cause of his termination and discipline. Here, Roberts claims that the non-integrated workplace and the imbalance in the hiring of white employees and African American employees created a racial imbalance in the workplace which was emotionally harmful to him. He is only seeking a recovery for these emotional injuries here and not back pay and injuries for his discipline and discharge.

**B.    Roberts Did Not Work in a Racially Integrated Environment at AK Steel.**

Contrary to Defendant's assertion, the evidence here shows that Roberts did not work in a racially integrated environment at AK Steel. Defendant argues that because AK Steel's workforce was 7% African American and the 2000 Census says that there were only 4.9% African Americans in the Middletown, Ohio, workforce, AK Steel's workplace was racially integrated. M/SJ on Roberts at 7. This is an irrelevant comparison, however, as is the assertion that "[r]oughly 15% of those who worked in [Roberts'] maintenance groups," were African American and that Roberts was "one of four crew chiefs in his area, all of whom were African Americans." *Id.* The issue regarding Roberts' claim is whether AK Steel <u>prevented</u> Roberts from working in an integrated workforce by disproportionately failing to hire

4

African Americans. Whether AK Steel prevented Roberts from working in a fully integrated workforce can be proven by any facts tending to show that African Americans were not being properly hired at AK Steel because of their race.

### C.    AK Steel Prevented Roberts from Working in a Racially Integrated Workplace.

Defendant is simply wrong to state that "there is no evidence that anyone was not hired because of their race." *Id* at 8. This Court has already certified a class of African Americans who took and failed AK Steel's screening test. *See* Order (Doc. 96) at 12. Plaintiffs' statistical expert, Dr. Bradley, analyzed the effect of the defendant's qualifying exam process and found that it caused an adverse impact against qualified black applicants. *See* Rebuttal Expert Report Regarding Hiring Into Laborer Positions at the Middletown Works and Ashland Works of AK Steel, Exh. 2 to Plaintiff's Memorandum in Support of Motion for Class Certification (Doc. 71) at 8. Plaintiffs' expert found that fewer African Americans were hired at the Middletown Works than would be expected "with a shortfall of approximately 30 African Americans and a statistically significant difference of -3.85 standard deviations and an adverse impact ratio of 57.6%." *Id.* He also found that qualified black applicants for the laborer position at Middletown did not pass the qualifying exam at the statistically significant level of -6.10 standard deviations and an adverse impact ratio of 64.8%. *Id.* The number of African Americans who would be expected to pass the qualifying exam for the laborer position at Middletown fell short by 56 individuals. *Id.* When Dr. Bradley limited his statistical analysis to the liability period of August 12, 2001, to December 31, 2002, he found a statistical significance of -2.63 standard deviations and an adverse impact ratio of 78.7%. *See* Plaintiff's Reply in Support of Motion for Class Certification (Doc. 75) at 10. When Dr. Bradley limited the statistical analysis to the period of September 9, 2001, to December 31, 2003, he found a statistical significance of

-2.84 standard deviations and an adverse impact ratio of 76.3%. *Id.* at 10-11.

Furthermore, Defendant's statistical expert, Dr. Mary Baker, also found adverse impact against African Americans in the hiring process used by AK Steel for filling Laborer positions. *See* Baker Report Table 1.a and 1.b (Doc. 73-2) which shows more than two standard deviations of difference at the Middletown Works in the expected and actual number of African American hires. *See* discussion of the statistical experts' reports in Plaintiffs' responses to Defendant's motions for summary judgment (Docs. 156 and 157) on the class claims fled contemporaneously with the instant response.

Defendant has not come forward with any proof of the validity of its racially discriminatory pre-employment test. Absent such a showing, the Plaintiffs' proof of racial discrimination must be upheld by the Court. Moreover, since Defendant has the burden of coming forward with a legitimate business reason for a hiring process that employs a test having disparate impact on African American applicants and has failed to do so, an inference of intentional discrimination must be drawn. This proof meets the third prong of the elements for an associational, third-party claim.

**D.      There is a connection between AK Steel's discriminatory hiring practices and Robert's injury.**

Roberts testified that he would not have suffered the injury of being terminated and having had unfair disciplinary action taken against him if AK Steel had provided him with a fully integrated workplace. Roberts Dep. 211-213. AK Steel's racially discriminatory hiring practices have been established by both the Plaintiffs and the Defendant's statistical experts. Had AK Steel been hiring African Americans at the rate statistically expected, there would have been many more African Americans employees at AK Steel over the period of time that Roberts was employed. There may have been more opportunities for African

American employees to gain supervisory and managerial positions where they would have been in a position to respond to Roberts' concerns about race discrimination, or, as Roberts testified, there may have been significantly fewer problems with racial discrimination at the plant. *Id.* It is reasonable to draw the conclusion that AK Steel's discriminatory hiring practices caused Roberts injury.

## CONCLUSION

Roberts' associational claims are due to survive summary judgment. He has suffered an injury in fact due to AK Steel's discriminatory hiring practices.

WHEREFORE, premises considered, Plaintiff Roberts respectfully requests that this Court deny Defendant's Motion for Summary Judgment on the Claims of Allen Roberts.

Respectfully submitted,

<u>s/ *Susan Donahue*</u>
Robert F. Childs, Jr. (*pro hac vice*)
Herman Nathaniel Johnson, Jr. (*pro hac vice)*
Susan Donahue (*pro hac vice*)
WIGGINS, CHILDS, QUINN & PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500
(205) 254-1500 (facsimile)


Paul Henry Tobias (OH bar No. 0032415)
David Donald Kammer
TOBIAS, KRAUS & TORCHIA
414 Walnut Street
Suite 911
Cincinnati, Ohio 45202
(513) 241-8137

7

(513) 241-7863 (facsimile)

David W. Sanford (*pro hac vice*)
SANFORD, WITTELS & HEISLER, L.L.P.
2121 K Street N.W.
Suite 700
Washington, D.C. 20037
(202) 942-9124
(202) 628-8189 (facsimile)

*Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically serve the following:

Mr. Gregory P. Rogers
Mr. Lawrence James Barty
Ms. Patricia Anderson Pryor,
TAFT, STETTINIUS & HOLLISTER, LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957

s/ *Susan Donahue*
OF COUNSEL