UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| VIVIAN BERT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v.   ) | CASE NO. C-1-02-467 |
| ) | Judge Beckwith |
| AK STEEL CORPORATION, ) | Magistrate Judge Hogan |
| ) | |
| Defendant. ) | |

**OPPOSITION TO MOTION Of AK STEEL CORPORATION FOR SUMMARY JUDGMENT ON THE INDIVIDUAL CLAIMS OF VIVIAN BERT, EDWARD JAMES LEWIS, MICHAEL MILLER AND SHAWN PRYOR**

The Plaintiffs, by and through undersigned counsel, oppose AK Steel Corporation's Motion for Summary Judgment on the Individual Claims of Vivian Bert, Edward James Lewis, Michael Miller and Shawn Pryor (Doc. 156) (hereinafter, "M/SJ Bert, et al."). As a basis for their opposition, Plaintiffs state as follows:

**I.    PROCEDURAL BACKGROUND**

A group of sixteen African Americans who unsuccessfully applied for employment at AK Steel, including the four made the subject of the instant motion for summary judgment, and one employee at the Middletown facility of AK Steel (Allen Roberts), brought a class-action complaint against AK Steel on June 26, 2002, for unlawful discrimination in hiring pursuant to Title VII and § 1981. This Court certified two subclasses in this case on January 19, 2007. Order, Doc. 96. The two subclasses certified were those African Americans who took AK Steel's pre-employment test and failed it –one subclass consisting of applicants at the Middletown Works who took and failed the test in the time period beginning on

September 12, 2001, and the other subclass consisting of applicants at the Ashland, Kentucky, plant who took and failed the test in the time period beginning on August 12, 2001. *Id.* at 12-13. In its Order, this Court indicated that the claims of the class and the claims of the individual plaintiffs which were not part of the class would be severed. *Id.* at 12. The four plaintiffs who are the subject of the instant motion for summary judgment either did not take the test during the relevant time period at the Middletown Works, or did not take the test at all. In other words, the individuals made the subject of Defendant's instant motion for summary judgment are not members of either subclass that has been certified by this court.

## II.   STATEMENT OF FACTS

### Vivian Bert

Vivian Bert, an African American female, testified that she applied four times for the laborer position at AK Steel -- in September or August of 1999, May 23, 2001, September of 2001, April of 2002 and May of 2002. Deposition of Vivian Bert (hereinafter, "Bert Dep.") (Doc.136) at 39 and 61 and Exh. 7. She may have applied more than these times. *Id.* at 54.

Bert had experience in manufacturing and was qualified for the laborer position. Exh. 10 to Bert Dep. She had worked for General Electric for approximately 9 years in shipping and receiving and general engine assembly. *Id.* 12. She was recently hired back at General Electric. *Id.* Ms. Bert also worked for Armco Steel for 2 years. Exh. 10 to Bert Dep. Ms. Bert never heard back from AK Steel regarding any of her applications. *Id.* at 45 and 65.

### Edward James Lewis

Edward James Lewis, an African American male, applied at AK Steel for the laborer position on or about April 30, 2001. Exh. 1 to Deposition of Edward James Lewis, (hereinafter, "Lewis Dep") (Doc.

140). Lewis testified that he submitted three or four applications. Lewis Dep. 24. Lewis had previous laborer experience. Exh. 1 to Lewis Dep.; Lewis Dep. 63-64. He worked in manufacturing at Spears, Tiger Poly, S and K Construction and Graycor for a total of approximately five years. Lewis Dep. 64. Lewis even worked at the AK Steel plant for S and K Construction and for Graycor, two of AK Steel's subcontractors, for several years. *Id.* at 74. He was trained by AK Seel to work in its plant. *Id.*

Lewis testified that he applied approximately three times to AK Steel. *Id.* at 67. Lewis never heard anything back from AK Steel regarding any of his applications. Lewis Dep. 72-73.

**Michael Miller**

Michael Miller, an African American male, applied to AK Steel on or about August 10, 2001 and on September 7, 2001. Exhs. 2 and 4 of Deposition of Michael E. Miller (hereinafter "Miller Dep.") (Doc. 149). Miller was called to take the pre-employment exam. Miller Dep. at 45. He went to take the pre-employment exam and had an interview with Jessica Hick, who is an HR representative, and with a supervisor in the technical repair department at AK Steel. *Id.* at 102, 104 Miller was interested in either an technical/electronics maintenance job or a production job. *Id.* at 70. He also took a test for the electronics maintenance position. *Id.* At 72. Miller was told he didn't pass the technical test. *Id.* at 74. He was never told if he passed the pre-employment production job exam. *Id.* at 46. Miller was asked to bring a copy of his transcripts to show his educational course work. *Id.* at 48-49. He was not told what classes AK Steel was looking for. *Id.* at 143. Miller had received an Associates Degree from Sinclair State in Electro/Mechanical Engineering. *Id.* at 15 and 120. Miller also attempted to apply to AK Steel in 2002 at an office in Middletown. *Id.* at 103. He received a card saying he had signed up to apply and would be called to fill out an application, but he was never called. *Id.* at 103-104.

**Shawn Pryor**

Shawn Pryor is an African American male. He applied for either a technical position, a professional position, or a laborer position on or around November 19, 2001. Exh.1 to Deposition of Shawn R. Pryor (hereinafter "Pryor Dep.") (Doc.141). Pryor did not receive any notification that his application was received. Pryor Dep. at 38. He called AK Steel in January of 2002 asking about the status of his application. *Id.* He was told that he would get a call back, but he never heard anything. *Id.* at 39. During this phone call he made it clear that he would also work in the laborer position. *Id.* at 42. Pryor holds a Bachelor's degree from Miami University. *Id.* at 8. He received his B.A. in 1999 and was on the Dean's List for three of his semesters. Exh. 2 to Pryor Dep. Pryor also had considerable experience in computer maintenance and installation. *Id.*

Pryor testified that he decided to file a charge of discrimination against AK Steel because, in his experience, not many African Americans were being hired at AK Steel. Pryor Dep. at 53. In the small, black community of Middletown, Ohio, Pryor testified that an African American being hired at AK Steel was something known and celebrated. *Id.* at 52-53.

### III.   ARGUMENT

Under the *McDonnell Douglas* method of proof, the plaintiff's burden of establishing a prima facie case of disparate treatment in an individual hiring case under Title VII as well as § 1981 requires a showing that the plaintiff:

   (1)   belongs to a group protected by the statutes;

   (2)   applied and was qualified for a job for which the employer was seeking applicants;

   (3)   was rejected; and

  (4)  the position remained open and the employer continued to seek similarly qualified applicants.

*See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This formulation was not intended to be rigidly and mechanically applied in all situations, but to merely explain a sensible and orderly way of evaluating the evidence in a particular situation. *See Furnco Constl. Corp. v. Waters,* 438 U.S. 567 (1978). To establish a prima facie case of disparate treatment as a result of a prospective employer's failure to hire, the plaintiff must show that he:

  (1)  applied for an available position;

  (2)  was qualified for the position; and

  (3)  was rejected under circumstances that give rise to an inference of unlawful discrimination.

*See Anema v. Diagnostek, Inc.*, 164 F. 3d 1275 (19th Cir. 1999).

Once a plaintiff makes out a prima facie case of disparate treatment in hiring, it is the Defendant's burden of production to come forth with a legitimate business reason for not hiring the plaintiff. *McDonnell Douglas, supra,* at 820-803. The plaintiff then has the burden of proving that the defendant's legitimate business reason for not hiring him or her is merely a pretext for unlawful discrimination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253-256 (9181).

Consideration of a motion for summary judgment requires that the facts shown are to be judged in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252-255 (1986) and *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150-151 (2000).

  A.  **Vivian Bert's Claims Should Survive Summary Judgment.**

Bert applied for an available position and was qualified for the position by virtue of her past

employment at Armco, the predecessor company to AK Steel, and at General Electric. Jessica Morris, AK Steel's 30(b)(6) witness regarding the legitimate business reason for not hiring Bert, testified that Bert was not hired because she was previously employed by Armco, AK Steel's predecessor. Morris Dep. at 115. According to Morris, AK Steel did not consider the applications of individuals who were previously employed by AK Steel or Armco. *Id.* Moreover, Morris testified that this alleged disqualifying requirement of AK Steel is not in writing. *Id.* at 118. Morris did not know who created that policy or why it was implemented. *Id.* at 116.

Because this disqualifying criteria was not in writing, it was only applied when the applications were screened once they were submitted, and Bert never heard back from AK Steel regarding any of her applications, there is no way that Bert could have known about or have learned that it would be futile for her to apply. Armco did send a letter to Bert telling her that because of her layoff status for the previous two years, her continuous service with Armco was being terminated. Exh. 1 to Bert Dep. AK Steel has provided no documentation of any kind substantiating that Ms. Bert was, indeed, not hired because of her prior work at Armco or that white employees at Armco were also told that they could not be hired by AK Steel if their employment was terminated due to layoff status or any other reason. Bert heard nothing from AK Steel regarding any of her applications and why she was not hired by AK Steel.

The fact that this disqualifying reason was not in writing and that AK Steel would withhold such vital disqualifying information from an applicant who made multiple applications for employment raises a strong inference of pretext. A "hidden" requirement of this sort gives AK Steel all the room it needs to discriminate against hiring African American employees without appearing to be prejudicial. As a former employee, Bert's race was obviously known to AK Steel. In fact, Bert testified that when she worked at

Armco, an incident occurred in which someone made a disparaging comment about her race and her employment status.

> Q. And I'm assuming no one at AK Steel ever said anything that you would feel is discriminatory or offensive?
> A. The only time something was said to me, but it wasn't by an – well, it was by an AK Steel employee, but it was someone on the same level as I was as far as hourly.
> But we were sitting in the lunch area. And I don't know if it was a statement to hurt my feelings or what it was. And the guy made a statement and all he said was, "Well, you know why you were hired?"
> And I said, "Why?" I said, "Yeah, I know why.
> And he said, "Do you really know why?"
> I said, "What do you mean, do I really know why?"
> And he said, "Well, you're a double minority."
> I said, "A double minority" Like that. We were all just sitting in the little break area.
> And he said, "Yeah. You're black and you're female." And he laughed. Maybe it was a joke. I don't know, but that's just the way he put it. And everybody kind of laughed it off. I didn't take any stock in it at the time. I just didn't say anything.

Bert Dep. at 66-67. Under these circumstances, and viewing the evidence in the light most favorable to the Plaintiffs, which must be done here, at a minimum, a question of fact clearly exists as to AK Steel's stated reason for rejecting Ms. Bert's application, and a jury could conceivably hold that her rejection was for impermissible discriminatory reasons. AK Steel's motion for summary judgement on her claim is due to be denied so that a jury can assess and determine if AK Steel's "hidden" criteria for not hiring Ms. Bert was a guise for unlawful discrimination against her.

**B.   Edward James Lewis' Claims Should Survive Summary Judgment.**

Edward James Lewis applied for the laborer position at AK Steel on multiple occasions. He was qualified for the job by virtue of his manufacturing experience at Graycor and S and K Construction, two sub-contractors who did work at the AK Steel plant. In fact, Lewis was trained by AK Steel to work in

its plant. Jessica Morris testified as AK Steel's 30(b)(6) witness that Lewis was not hired because his application was withdrawn after she tried to contact him and his phone number had been disconnected. Morris Dep. at 77. Morris offered no explanation regarding any attempts that she made to find a new telephone number for Lewis once she discovered that his phone number had been disconnected. Morris Dep. 73-83. Nor did she offer an explanation of any other things that she did to find other applications of Lewis so she could check to see if he had other telephone numbers listed or to locate other contact for Lewis. *Id.* Indeed, Morris did not even not know whether Lewis had applied at any other time, stating that if she did not have a copy of other applications, then she would have to say that he hadn't applied other than on or around April 30, 2001. *Id.* at 78-79. However, she testified that she was not "100% certain" that she had input Lewis' information into her Excel database where she kept track of applications to determine this fact. *Id.* at 80.

Taken in the light most favorable to Lewis, there is here, at a minimum, a question of fact as to AK Steel's stated reason for not hiring Mr. Lewis. Indeed, Morris made no further attempts to contact Lewis beyond her determination that his phone had been disconnected. There is also no evidence that she tried to locate Mr. Lewis by writing him a letter, for example. *Id.* at 73-83. Neither is there evidence that she ever attempted to identify a correct phone number for Mr. Lewis by contacting telephone directory information. Morris' cursory attempt to reach Lewis gives rise to an inference that race discrimination may have been the reason his application was not pursued. Moreover, as a person who had worked at the AK Steel plant for several years when he was employed by two sub-contractors of AK Steel, Lewis's race would have been readily ascertainable. Further, Morris could not even say for certain whether AK Steel had any record of Lewis applying at other times. *Id.* at 79. She could only say what she would have done

had there been other applications. *Id.* at 79-80. Given this inconclusive testimony regarding Lewis' applications and how the one application AK Steel acknowledges was handled, an inference can be drawn that AK Steel did not hire Lewis based on his race. AK Steel's motion for summary judgment on Lewis' claims is due to be denied for these reasons.

### C. Michael Miller's Claims Should Survive Summary Judgment.

Michael Miller applied to AK Steel on or about August 10, 2001 and on September 7, 2001. He was interviewed by Jessica Hicks (now Jessica Morris), who is an HR representative, and a supervisor in the technical repair department. He was being considered for a position in technical/electronics maintenance. He was also interested in a laborer position. He took both the technical test for the maintenance position and a pre-employment test for the laborer position. He was told that he did not pass the technical test, but he was never told whether he passed the test for the laborer position. He was asked to bring a copy of his transcripts to show his course work, but he was not told what classes they were seeking. Miller had received an Associates degree from Sinclair State in Electro-Mechanical Engineering at the time he applied.

Morris, AK Steel's 30(b)(6) witness regarding the reason Miller was not hired, testified that Miller was not hired for either the maintenance position or the production position because a background check revealed that he had "eight points" on his driver's license. Miller Dep. at 103-107. However, she could not remember the maximum number of points a person could have on his or her license before it was revoked or if the suspension of a driver's license was a major or minor traffic citation. *Id.* at 104, 106-107. Indeed, Morris testified that her supervisor, Phyllis Short, actually made the final determination to disqualify for this reason. *Id.* at 105. Finally, Morris testified that she never informed Miller that his candidacy was

9

rejected because of the points reflected on his driver's report or that the criteria used to screen the applications was not written down (*Id.* at 32 and 108)

When viewing the evidence in the light most favorable to the Plaintiff, there is, at a minimum, a question of fact regarding the Defendant's articulated business reason for not hiring Miller. Without more, the bare statement that Miller had eight points on his driver's license is not an articulated reason. Indeed, Defendant's 30(b)(6) witness regarding the reasons for Miller not being hired could not even explain why this would have disqualified Miller. All she could say was that she did not make the decision not to hire him, that she did not know what the eight points referred to, or why having eight points on a driver's license would be a disqualifying factor. Therefore, it is clear that Miller was not questioned about the points on his driver's license by anyone at AK Steel. Based on the foregoing, the Defendant's motion for summary judgment regarding Miller is due to be denied.

### D.   Shawn Pryor's Claims Should Survive Summary Judgment.

Shawn Pryor applied for a position at AK Steel on November 19, 2001. Exh. 1 to Pryor Dep. Pryor was qualified for a laborer position by virtue of his extensive experience maintaining and installing hardware in computer systems. *Id.* Moreover, he had received a B.A. degree from Miami University in 1999, was listed on the Dean's list for three semesters, and he had experience in servicing and maintaining computer networks, including installing hard drives and other equipment on computers. Exh. 2 to Pryor Dep.

Pryor's application and resume indicated that he was seeking a technical or professional position. *Id.* However, when he telephoned AK Steel's employment office and talked to someone there about the status of his application, Pryor told them that he was also interested in a laborer position. *Id.* at 42. Pryor

was told that he would get a call back about it. *Id.* at 38-39, 41. He never heard anything more about his application. *Id.* at 39. He does not know why he was not hired by AK Steel. *Id.* at 49.

Morris, Defendant's 30(b)(6) witness, testified that Pryor was not hired because he lacked prior manufacturing experience. Morris Dep. at 86. However, Phyllis Short, Ms. Morris' supervisor, testified as a 30(b)(6) witness regarding defendant's hiring procedures and testified that prior manufacturing experience was only a preferred qualification, not a minimal qualification. Deposition of Phyllis Short (hereinafter, "Short Dep.") at 72-73, attached hereto as Exh. 1. Short also testified that AK Steel was trying to get more females and minorities into their workforce, and, therefore, if they had female or minority candidates who did not have the two years of manufacturing experience, they would probably move them into the next step in the employment process. *Id.* at 78. However, this was not done for Pryor.

In viewing the testimony in the light most favorable to Pryor, and given Short's testimony that because AK Steel was interested in hiring more females and minorities, they would have relaxed the two years of manufacturing experience for these applicants, and also given the fact that two years of manufacturing experience was not a requirement for the position, but was only a preferred qualification, the fact that Pryor was eliminated from consideration for lack of manufacturing experience here raises an inference of unlawful discrimination. Pryor was highly educated and has worked with highly technical computer equipment. As a minority candidate, Pryor was not given the consideration that Short testified afforded for minority candidates. It is difficult to imagine a candidate better suited to this relaxed qualification than Pryor.

Based on the testimony presented, a jury may find that AK Steel unlawfully discriminated against Pryor when they rejected his application for lack of manufacturing experience. Based on inferences of

racial discrimination that may be drawn from the evidence, the Defendant's motion for summary judgment as to Pryor's claims is due to be denied.

## CONCLUSION

Defendant's summary judgment motions on the claims of Vivian Bert, Edward James Lewis, Michael Miller and Shawn Pryor are due to be denied. Viewing the evidence in the light most favorable to the Plaintiffs, there is, at a minimum, a question of fact here as to whether the Defendant has met its burden to give an articulated business reasons for not hiring Pryor, Miller, Bert and Lewis as well as having its stated business reasons to inferences that the reasons given were merely pretexts for unlawful race discrimination.

WHEREFORE, premises considered, Plaintiffs Vivian Bert, Edward James Lewis, Michael Miller and Shawn Pryor respectfully request that this honorable Court deny Defendant's motion for summary judgment as to their claims.

Respectfully submitted,

s/ *Susan Donahue*
Robert F. Childs, Jr. (*pro hac vice*)
Herman Nathaniel Johnson, Jr. (*pro hac vice*)
Susan Donahue (*pro hac vice*)
WIGGINS, CHILDS, QUINN & PANTAZIS, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 314-0500
(205) 254-1500 (facsimile)


Paul Henry Tobias (OH bar No. 0032415)

David Donald Kammer
TOBIAS, KRAUS & TORCHIA
414 Walnut Street
Suite 911
Cincinnati, Ohio 45202
(513) 241-8137
(513) 241-7863 (facsimile)

David W. Sanford (*pro hac vice*)
SANFORD, WITTELS & HEISLER, L.L.P.
2121 K Street N.W.
Suite 700
Washington, D.C. 20037
(202) 942-9124
(202) 628-8189 (facsimile)

*Attorneys for the Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on March 7, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will automatically serve the following:

Mr. Gregory P. Rogers
Mr. Lawrence James Barty
Ms. Patricia Anderson Pryor,
TAFT, STETTINIUS & HOLLISTER, LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202-3957


s/ *Susan Donahue*
OF COUNSEL