UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VIVIAN BERT, et al. | : | Case No. C-1-02-467 |
| | : | |
| Plaintiffs, | : | Judge Beckwith |
| | : | Magistrate Judge Hogan |
| v. | : | |
| | : | **REPLY MEMORANDUM OF AK** |
| AK STEEL CORPORATION | : | **STEEL CORPORATION IN** |
| | : | **SUPPORT OF ITS MOTION FOR** |
| Defendant. | : | **SUMMARY JUDGMENT ON THE** |
| | : | **CLAIMS OF THE ASHLAND** |
| | : | **PLAINTIFFS AND ASHLAND** |
| | : | **CLASS** |

## I.     INTRODUCTION

Plaintiffs rely on a newly produced expert declaration in an effort to avoid summary judgment on the claims of the Ashland Plaintiffs and the Ashland Class. Even if this revised expert opinion is considered, AK Steel has established that the test was job-related and validated. Because Plaintiffs have offered nothing to rebut this evidence, summary judgment is appropriate as a matter of law.

## II.     ARGUMENT

   A.   Plaintiffs Have Not Established A Disparate Impact With Respect To The Test At Ashland; Plaintiffs' Latest Expert Declaration Should Be Stricken.

AK Steel's Motion for Summary Judgment (Doc. # 158) made clear that Plaintiffs have not established a disparate impact with respect to the test at Ashland during the relevant period.

In response, Plaintiffs produced yet another declaration from their expert, Dr. Bradley. (This is Plaintiffs' fifth attempt to identify a disparate impact through their expert.)  This declaration, produced three months after the close of discovery, and two months after AK Steel

{W1231653.1}

filed its Motion for Summary Judgment, should not be considered. Expert reports were due March 1, 2005. Plaintiffs' production of this new declaration, for the first time in response to summary judgment, is untimely and unfairly prejudicial. Defendant has not had the opportunity to conduct discovery on the expert's conclusions, prepare a rebuttal report or even review the database that Plaintiffs claim their expert created and relied upon.

Even if this untimely report were caused by the timing of Plaintiffs' receipt of information from Resource Associates, which, as discussed below, was caused by Plaintiffs' delay in requesting it, that production, on October 5, 2007, does not explain why Plaintiffs waited an additional five months after receiving the information and two months after motions for summary judgment were filed, before producing this "report" or even indicating that they would be producing a new "report." If Plaintiffs believed that a new expert report was warranted, they should have moved the Court for permission to do so; however, their failure to do so has denied the Defendant an opportunity to be heard on this issue. Instead, they specifically waited to use these new opinions in a "sandbag" response to the motion for summary judgment.

Moreover, Rule 26(a)(2) requires that expert disclosures must include a complete statement of the basis and reasons for the expert's opinion, and the data and other information considered. Dr. Bradley's declaration purports to rely on unauthenticated records produced by Resource Associates, not AK Steel, from which Plaintiffs claim he created a database. (Pl. Opp. p. 6) Plaintiffs have not produced this database. From this database, Dr. Bradley identifies in his declaration the number of purported successful test takers but does not identify the number of overall test takers with which the successful test takers are compared.

Plaintiffs' late production of this latest declaration, and failure to produce the underlying database or provide the complete information upon which Dr. Bradley based his conclusions, is inappropriate and unfairly prejudicial to AK Steel. Plaintiffs cannot establish a disparate impact with this never-before-produced and incomplete expert declaration. Summary judgment is appropriate.

      B.      Plaintiffs' Latest Expert Declaration Is Not Based On A Late Production By AK Steel.

Plaintiffs attempt to justify their indisputably late production of their latest declaration or "report" from their expert by blaming what they claim is a late production by AK Steel. AK Steel did not produce the documents upon which Plaintiffs claim their expert now relies. Plaintiffs obtained the documents from Resource Associates on October 5, 2007. To the extent this production was late in the discovery period, it was only because Plaintiffs made no effort to obtain the documents from Resource Associates until August 28, 2007.

      1.      Plaintiffs Did Not Seek The Test Results Until The End Of Discovery.

Plaintiffs, throughout this litigation, have been less than diligent in their discovery efforts. Plaintiffs have been fully aware of the existence of Lucy Gibson and Resource Associates throughout this litigation. (Doc. # 144, Rogers Dec. ¶ 2, Ex. 1) They have known that Dr. Gibson developed and validated AK Steel's test. (*Id.*; Short Dep. 31; Lester Dep. 69) They have known that Resource Associates scored the tests. (Lester Dep. 71) Plaintiffs, nevertheless, waited until the end of discovery, five years after this litigation began, to seek discovery from Resource Associates, at which time they served a subpoena on Resource

Associates. The subpoena specifically requested the "results of the tests," the first time Plaintiffs had made such a request.[1]

After obtaining the documents from Resource Associates, Plaintiffs then waited another five months (and two months after Defendant filed its Motion for Summary Judgment), to produce a new expert declaration eliminating any opportunity for AK Steel to respond. The discovery rules do not allow a party to sit and wait through five years of discovery and then, after discovery closes, try to seek advantage by complaining that they believe documents were not timely produced.

### 2. AK Steel Did Not Have Possession, Custody Or Control Of The Documents Produced By Resource Associates.

AK Steel did not have possession, custody or control of the documents produced by Resource Associates. Plaintiffs have presented no evidence to the contrary. In fact, Plaintiffs never asserted during the discovery period that AK Steel should produce documents controlled by Resource Associates. Now, three months after discovery has ended, Plaintiffs for the first time make the unsupported statement that AK Steel had control of these documents. To the extent they claim that AK Steel should have produced these documents from a third party, Plaintiffs had the burden to establish, not merely state, that AK Steel had control over the documents. *See MGP Ingredients, Inc. v. Mars*, 2007 WL 3353401, *3 (D. Kan. 2007) ("The party moving to compel production of documents is charged with establishing that the party for whom the documents are sought has possession, custody, or control of them."). It did not. Resource Associates is a wholly independent company located in Tennessee. AK Steel does not

---

[1] Plaintiffs' overbroad discovery requests to AK Steel requested the tests themselves and "test scores" for AK Steel's actual workforce (request 15(s)), but they did not specifically ask for test scores or results for applicants. This request was only made to Resource Associates.

own or control Resource Associates. AK Steel was under no obligation to produce records controlled by this third party.

### C. Plaintiffs Do Not Dispute That The Test Is Job Related.

Even if Plaintiffs could rely on this new expert declaration, and even if they could establish a disparate impact, summary judgment is nonetheless appropriate because AK Steel has established that the test is job related. *See* Doc. # 158, p. 12-14. Plaintiffs have not presented any evidence to the contrary. Instead Plaintiffs claim that AK Steel cannot use Dr. Gibson's testimony. There is no basis for excluding Dr. Gibson's testimony.

As discussed in AK Steel's Reply Memorandum in Support of its Objections to the Magistrate Judge's November 28, 2007 Order (Doc. # 159), Dr. Gibson was not specifically employed to provide expert testimony and was not required to create or produce an expert report under the Federal Rules. Her declaration is not an "expert report" and is not required to comport with the requirements of Rule 26(a)(2). *See* Fed. R. Civ. P. 26(a)(2)(B)(expert reports are only required "with respect to a witness who is retained or specially employed to provide expert testimony in the case"). *See also* Fed. R. Civ. P. 26(b)(4), advisory committee notes (1970 Amendment)(requirements do not apply to an "expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit"); *Battle v. Memorial Hosp. of Gulfport*, 228 F.3d 544, 551-52 (5th Cir. 2000); *Cox v. Tennessee Valley Auth.*, 1993 WL 72488, *5 (6th Cir. 1993).

Dr. Gibson has been identified as a witness in this case since February 2003. (Doc. # 144, Rogers Dec. ¶ 2, Ex. 1) Plaintiffs knew that Dr. Gibson developed and validated the test. (*Id.*; Short Dep. 31; Lester Dep. 69) They knew that she was going to testify about its validation. Yet, Plaintiffs chose not to depose Dr. Gibson. They can not now object to her testimony on the

exact subjects about which AK Steel informed Plaintiffs she would testify. *See Cox*, 1993 WL 72488, at *5 (6th Cir. 1993) (expert who had personal knowledge about events that were subject of lawsuit was not excluded where he had been listed as potential witness (but not expert witness) and plaintiffs chose not to take his deposition during discovery); *Silman Custom Painting, Inc. v. Aetna Life & Casualty Co.*, 990 F.2d 1063, 1068-69 (8th Cir. 1993)(expert witness/arson investigator who was not disclosed as an "expert" could nonetheless provide factual and expert opinion testimony where he was identified on witness lists; any prejudice or unfair surprise was attributable to the party's own failure to ascertain the investigator's opinion). Rather than seek her opinions or seek documents from her, Plaintiffs chose to wait until the end of discovery and then claim in response to summary judgment that Dr. Gibson's testimony should be excluded or, alternatively, that they should be provided an opportunity for discovery.

Even if the physical validation studies that Dr. Gibson created at the time she validated the test are excluded (which as discussed in Defendant's Objections (Doc. # 144), they should not be), there is no basis for limiting Dr. Gibson's independent testimony. The underlying facts surrounding the efforts that Dr. Gibson took to develop and validate the test in question are all within Dr. Gibson's personal knowledge. Plaintiffs could have obtained the information contained in Dr. Gibson's declaration at any time by deposing her. They chose not to. They are not unfairly prejudiced by AK Steel's use of this information now.

Plaintiffs have not rebutted that AK Steel's test is job related. They offer nothing other than an argument that a properly identified witness should not be allowed to testify. For the unrebutted reasons in AK Steel's Motion for Summary Judgment, summary judgment is appropriate, even if Plaintiffs could establish disparate impact, because the test is job related and validated.

D.  Plaintiffs Never Produced The Alleged Notices Of Right To Sue; Their Claims Fail For Failure To Exhaust Their Administrative Remedies.

Plaintiffs had never alleged or established throughout this five-year litigation that any of the current Ashland Plaintiffs had obtained a Notice of Right to Sue. Now in response to AK Steel's Motion for Summary Judgment, they for the first time attach unauthenticated Notices of Right to Sue for four of the five Ashland Plaintiffs. (They did not produce one for Darrell Carter). [2]

Plaintiffs' Second Amended Complaint, filed after these alleged Notices of Right to Sue were received, alleged that Vivian Bert, Thaddeus Freeman, Mary Harris, Ronald Sloan, Shawn Pryor, Michael Miller, Roderique Russell, Donald Edwards, and Edward Lewis had received Notices of Right to Sue, but did not allege that any of the Ashland Plaintiffs had received one. (Doc. # 45, ¶ 8) In discovery, Defendant asked Plaintiffs to produce all documents received from the EEOC. (D. Carter Dep. Ex. 1, request 8; D.D. Carter Dep. Ex. 1, Request 8; M. Carter Dep. Ex. 1, Request 8; Jackson Dep. Ex. 1, Request 8; Oliphant Dep. Ex. 1, Request 8) None of the Plaintiffs produced a Notice of Right to Sue. Defendant asked the Plaintiffs whether they had received a Notice of Right to Sue during their depositions. None of them recalled having received one. (D.D. Carter Dep. 50; M. Carter Dep. 61; Oliphant Dep. 41; Jackson Dep. 93) Now, in response to the Motion for Summary Judgment, Plaintiffs produce unauthenticated documents purporting to be Notices of Right to Sue from the EEOC. AK Steel did not receive

---

[2]  Plaintiffs filed this lawsuit alleging multiple facts which they themselves have testified are not true (*Compare* Doc. # 45, ¶¶ 12, 15, 65, 70, 87-91, 96, 101 *with* Russell Dep. 29, 56; Lewis Dep. 67; D. Carter Dep. 78-79; D.D. Carter Dep. 48-49; M. Carter Dep. 58), and have made representations to AK Steel and the Court to avoid one motion and then change such representations in response to another (*Compare* Doc. # 62 *with* Doc. # 163; *and* Doc. # 79, p. 13 *with* Doc. # 121, p. 11 and Edwards Dep. 24, 55). Nonetheless, they ironically attempt to preclude AK Steel from using a witness who has always been identified but from whom Plaintiffs chose not to seek discovery, while at the same time, presenting evidence never before disclosed for the first time in response to Defendant's Motion for Summary Judgment.

these documents from the EEOC. These unauthenticated documents, produced for the first time in response to a motion for summary judgment, should be stricken. Fed. R. Civ. P. 56(e); *Wells v Xpedx*, 2007 WL 2696566, *3-4 (M.D. Fla. 2007)(right to sue notice stricken because plaintiff failed to authenticate the document in accordance with Rule 56(e)); *see also Millington v. Morrow County Bd. Of Commissioners*, 2007 WL 2908817, *2 (S.D. Ohio 2007) ("To be admissible in summary judgment proceedings, documents must be authenticated by and attached to an affidavit.").

Moreover, in that Plaintiffs filed their EEOC charges at the same time they were filing this lawsuit and the EEOC, according to these newly produced documents, summarily dismissed the charges because of the pending lawsuit, it is apparent that Plaintiffs did not exhaust their administrative remedies -- no investigation occurred or was likely to occur under these circumstances. Plaintiffs essentially thwarted Title VII's underlying Congressional policy to resolve discrimination claims administratively through cooperation and voluntary compliance in an informal, non-coercive manner. Part of the administrative exhaustion requirement is that a claimant cooperate in a good faith attempt to allow the EEOC a reasonable opportunity to reach the merits of his or her charge. *Shikles v. Sprint/United Management Co.*, 426 F.3d 1304, 1311 (10th Cir. 2005). In *Shikles*, the plaintiff's discrimination claim was dismissed because he had failed to cooperate with the EEOC during its investigation of his charge. Although the underlying facts are different from those here, the same reasoning applies. When a plaintiff "effectively prevents the EEOC's investigation and conclusion efforts such that the EEOC proceeding essentially becomes a sham or meaningless proceeding [then] a charging party's non-cooperation will amount to a failure to exhaust administrative remedies." *Id.* Even with the

previously unproduced, unauthenticated Notices of Right to Sue, Plaintiffs' Title VII claims fail as a matter of law for failure to first exhaust their administrative remedies.

      E.      **Plaintiffs Darrell Carter and Timothy Oliphant Have Not Established That They Would Have Been Hired Even If They Would Have Passed The Test.**

Susan Lester testified that she would not have hired Darrell Carter or Timothy Oliphant, regardless of whether they passed the pre-employment test, because of their criminal record and because they falsified documents in the hiring process. Plaintiffs do not dispute that they had a criminal record and that they submitted false information to AK Steel. Instead they try to create an issue of fact by mischaracterizing the testimony.

Plaintiffs falsely state that Lester testified she only disqualified individuals who were convicted of a crime within five to seven years of applying. (Pl. Opp. p. 19) This is a mischaracterization of her testimony. Lester testified that any conviction for any offense other than a traffic citation disqualified an applicant from employment. (Lester Dep. 64) She testified that she thought the background check went back seven years, but the application asked for any conviction without a time limit. (*Id.* at 64, 99; Carter Dep. Ex. 2) Regardless of whether Carter and Oliphant would have been "caught" by the background check, their prior convictions for felonious assault and gross sexual imposition made them unqualified for employment at AK Steel.

Moreover, both of these individuals submitted false information to AK Steel. Individuals who falsified information on the documents submitted for hire were eliminated from consideration. (Lester Dep. 103) In response, Plaintiffs falsely claim that Defendant never ascertained whether Carter erroneously answered the question on the application about prior criminal convictions. (Pl. Opp. p. 19) Carter admitted he had a criminal conviction for felonious

assault, yet on his application he answered "No" in response to the question whether he had ever been convicted of a criminal offense. (D. Carter Dep. Ex. 2) He falsified his application.

Oliphant falsely listed the dates of his prior employment to cover a gap in his employment history. Plaintiffs do not dispute his resume contained false information; they claim only that it was unintentional. For purposes of whether it disqualified him for employment, it did not matter. Contrary to Plaintiffs representations, Lester did not give applicants an opportunity to correct their own "mistakes." If she discovered that false information had been provided, she eliminated them from consideration. (Lester Dep. 103) She testified she sent the applicant a letter providing the background check company's address in case *the background check company* had made a mistake. (Lester Dep. 93, 103) Nowhere does she say she accepted excuses or explanations from an applicant, when the information an applicant provided was in fact false, as it was from both Darrell Carter and Timothy Oliphant.

It is undisputed Plaintiffs Carter and Oliphant would have been disqualified from employment for these reasons regardless of whether they passed the test. Summary judgment is appropriate on their claims for these additional reason.

### III.     CONCLUSION

For each and all of the foregoing reasons, Defendant AK Steel Corporation respectfully requests that its Motion for Summary Judgment be granted and the claims of the Ashland Plaintiffs and Ashland Class be dismissed.

Respectfully submitted,

/s/ Gregory Parker Rogers
Lawrence J. Barty (0016002)
Gregory Parker Rogers (0042323))
Patricia Anderson Pryor (0069545)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
(513) 381-2838
Trial Attorneys for Defendant
AK Steel Corporation

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was electronically filed on March 21, 2008 using the Court's CM/ECF system, which will send notice of this filing to Susan Donahue, Robert Childs, Herman N. Johnson, Jr., Wiggins, Childs, Quinn & Pantazis, P.C., The Kress Building, 301 19th Street North, Birmingham, Alabama  35203; Paul H. Tobias, Tobias, Kraus & Torchia, 911 Mercantile Library Building, 414 Walnut Street, Cincinnati, Ohio 45202; and David Sanford, Sanford, Wittels & Heisler, L.L.P., 2121 K Street, N.W., Suite 700, Washington, D.C.  20037.

/s/ Gregory Parker Rogers