UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Vivian Bert, et al., | : Case No. 1:02-cv-467 |
| Plaintiffs, | : |
| vs. | : |
| AK Steel Corporation, | : |
| Defendant. | : |

**ORDER**

Before the Court is Defendant's motion for summary judgment on the disparate treatment discrimination claims of four individual Plaintiffs: Vivian Bert, Edward James Lewis, Michael Miller and Shawn Pryor.  (Doc. 156)  Plaintiffs oppose the motion (Doc. 164), and Defendant has replied.  (Doc. 170)

All four Plaintiffs allege they were not hired for entry level laborer positions at AK Steel's Middletown plant because of their race.  None of the four are members of the previously certified class.  They each allege claims under Title VII and 42 U.S.C. §1981.  The general background to this lawsuit is discussed in the Court's previous orders (see Docs. 79 and 44).  Additional facts pertaining to these Plaintiffs' claims are discussed in this order.

**Vivian Bert**: Bert was employed at Armco Steel (AK Steel's predecessor) from 1982 to 1984.  She alleges she applied to work at AK Steel on four different occasions, using the same

application each time.  AK Steel's last record of an application from Bert is May 2001.  (Short Decl. ¶2)  Bert alleges she also applied in April and May 2002, but AK Steel denies receiving those applications.  She answered truthfully that she had worked for Armco.  According to AK Steel, prior employment at either AK Steel or Armco disqualified applicants for laborer positions.

**Edward James Lewis**: Lewis applied for employment in April 2001.  He admits he falsely claimed on his application that he had a high school diploma or a GED.  AK Steel requires one or the other for further consideration of an applicant.  Based on his false statement, however, Lewis passed the initial screen.  AK Steel's hourly hiring representative called him to discuss his application, but his telephone was not in service.  Lewis admitted this fact, and stated that he frequently changed numbers.  AK Steel removed him from its hiring process when it could not reach him.

**Michael Miller**: Miller submitted two applications for employment, in August and September 2001.  On both, Miller stated he had no criminal convictions.  This was not true, as Miller admits he had convictions for theft, felonious assault, and driving with a suspended license.  Based on his false statements, he passed AK Steel's initial screening process, and then passed the pre-employment test.  Miller was called for an interview on October 3, when he learned that AK Steel would do a background

-2-

check as part of its screening process. That check revealed eight points on Miller's driving record, a suspended license, and a citation for driving with a suspended license. AK Steel did not hire Miller. Miller admitted that the August and September 2001 applications were the only ones he ever submitted, despite the allegations in the Second Amended Complaint that he applied in June 2001 and January 2002.

**Shawn Pryor**: Pryor applied for a computer technical position at AK Steel on November 19, 2001. Pryor has education and experience in this field, but none as a laborer or doing industrial work. The entry level labor positions require prior laborer experience. Pryor told AK Steel he was interested in both computer and laborer positions. AK Steel outsources its computer technical work to an independent company. Pryor was screened out of the laborer hiring process due to his lack of prior experience as a laborer.

**DISCUSSION**

1. <u>Standard of Review</u>.

The standards for summary judgment are well established. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party

opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253 (1968)). The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. Guarino v. Brookfield Township Trs., 980 F.2d 399, 404 (6th Cir. 1992); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. den., Superior Roll Forming Co. v. InterRoyal Corp., 494 U.S. 1091 (1990). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold Inc., 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there

is a genuine issue for trial.  Anderson, 477 U.S. at 249.  The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Id. at 250.  "If the evidence is merely colorable, . . . , or is not significantly probative, . . . , the court may grant judgment."  Anderson, 477 U.S. at 249-50 (citations omitted).

Although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citations omitted).

2.    Title VII and Section 1981 Disparate Treatment Claims.

The familiar framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) applies to Plaintiffs' claims alleging disparate treatment without direct evidence of racial discrimination.  That framework requires Plaintiffs to prove that AK Steel treated them less favorably - by failing to hire them or

further consider their applications - because of their race. Plaintiffs must first establish their prima facie case. AK Steel must then articulate a legitimate, nondiscriminatory reason for the failure to hire, and Plaintiffs must then show that reason was pretextual. See Dunlap v. Tennessee Valley Authority, ___ F.3d ___, 2008 U.S. App. LEXIS 5898 (6th Cir., March 21, 2008).

Plaintiffs' prima facie burden is to show they are members of a protected group, they were qualified for the job they applied for, and they were treated differently than comparable applicants outside their protected class. While this burden is not onerous, Plaintiffs must come forward with evidence establishing these elements in order to shift the burden of production to the defendant to show a legitimate, non-discriminatory reason for its actions.

All four Plaintiffs are African-American and satisfy the first prong. AK Steel argues that none of them were qualified for the positions they applied for as entry-level laborer at the Middletown plant. AK Steel's hiring procedure during this time required all applications to be filed with the Ohio Department of Job and Family Services, who forwarded applications to the Middletown HR department. The HR department does an initial screening for five basic requirements: a high school degree or GED, two years prior manufacturing or laborer experience, a valid driver's license, no criminal history (other than non-violent and

non-drug-related minor misdemeanors), and no prior employment with AK Steel or with Armco. Applications not meeting these requirements are not given further consideration. (Doc. 156, Short Declaration ¶12) According to Short, approximately 30% of all applications are "screened out" because they lack these basic requirements.

Vivian Bert worked for Armco in the 1980's. Edward Lewis did not have a high school diploma or a GED, although he falsely claimed he did when he applied in April 2001. His application was not considered further after AK Steel could not reach him because his telephone was not in service. Michael Miller falsely represented that he had no criminal convictions on his 2001 applications, but the background check revealed otherwise. Shawn Pryor did not have prior manufacturing or labor experience. While he was qualified for a computer technician position, AK Steel did not have any such open positions.

Plaintiffs offer several reasons why they believe they were qualified and can satisfy their prima facie burden. Vivian Bert had significant experience in industrial settings; AK Steel never told her that her prior Armco employment disqualified her from consideration. Plaintiffs assert that AK Steel has nothing in writing to substantiate her disqualification. They suggest this "hidden" requirement is a cover for race discrimination.

Edward Lewis had qualifying prior experience, and AK Steel

was interested enough in his application to try to contact him. Plaintiffs argue that AK Steel made no effort to try to find another telephone number for him, or to check his other applications for possible additional contact information. Nor did AK Steel send him a letter. (AK Steel's HR witness was not even certain that she had Lewis' information in her database.) Plaintiffs argue that these "cursory" attempts to reach Lewis are sufficient to raise an inference of unlawful discrimination.

Michael Miller had qualifying prior experience, and was told to bring his school transcripts with him for his interview. (He also had an Associates degree in electro-mechanical engineering.) Yet he was rejected because of his driving record. Plaintiffs note that AK Steel's HR witness (Morris) could not remember the maximum number of points Ohio law allows before license suspension is mandatory, or whether license suspension was a "major" or "minor" offense. Miller was never told that he was rejected because of his driving record, and like Bert's situation, the "bad driving record" requirement was unwritten. Plaintiffs suggest this, too, is enough to satisfy their prima facie burden and to raise a triable issue on AK Steel's reason for rejecting Miller.

Shawn Pryor also was never told why he was not hired. Plaintiffs claim that Phyllis Short (AK Steel's 30(b)(6) witness and Middletown HR Director) admitted that two years experience

was a "preferred" not a "required" qualification.  She also testified that AK Steel had occasionally permitted females and minorities to progress through the interview process without the full two years of experience, in order to benefit affirmative action hiring goals.  This benefit was not given to Pryor.

Plaintiffs' arguments conflate the job qualifications prong of their prima facie case with a defendant's burden of production on legitimate business justification.  Plaintiffs do not seriously dispute that the minimal qualifications articulated by AK Steel do not in fact exist.  They complain they are not "in writing" for applicants to see before they apply.  But there is no requirement that such minimal qualifications be in writing or advertised.  It is AK Steel's prerogative to reject applicants with prior employment with Armco or AK Steel, absent some evidence that this requirement was imposed solely upon minority candidates.  It is also AK Steel's prerogative to screen out individuals who lacked prior experience, and whose background checks revealed poor driving records or criminal convictions.[1]  The Sixth Circuit noted in Wrenn v. Gould, 808 F.2d 493 (6th Cir. 1987), that the employment discrimination laws do ". . . not diminish lawful traditional management prerogatives in choosing among qualified candidates[.]"  This principle would also apply

---

[1] A false representation on a job application, which Lewis and Miller admit making, would also likely result in disqualification.

to management prerogatives in establishing minimal qualifications for these positions.  <u>Wrenn</u> also observed that it is "the employer's motivation, not the applicant's perceptions, or even an objective assessment [] of what qualifications are required for a particular position," that must be the key to the discrimination inquiry.  <u>Id</u>. at 502.

But even assuming that all four Plaintiffs were "qualified" for the positions they sought, Plaintiffs have absolutely no evidence that they were treated differently than similarly-situated Caucasian applicants.  They do not offer any example of an AK Steel applicant who passed through the initial screening process despite having prior Armco employment, or when lacking a high school diploma.  They cite no instance of a Caucasian applicant who could not be reached by telephone - at a number given by that applicant - whom AK Steel attempted to contact by other means.  They cite no one who was hired despite having a driving record similar to Mr. Miller's.  And the only evidence suggesting any exceptions for two years of prior experience is Short's testimony that some minority or female candidates may have been further considered for hiring, so long as they had some prior relevant experience.  This testimony does not establish that AK Steel hired non-protected applicants without any experience.

It is not enough for Plaintiffs to argue that "most"

-10-

applicants who were in fact hired by AK Steel were not African-American. The essence of a disparate treatment claim is that these Plaintiffs were treated disparately from similarly-situated non-minority applicants. See Dunlap v. TVA, supra, slip op. at p. 4: "The disparate treatment doctrine requires a plaintiff to demonstrate that an employer has treated some people less favorably than others **because of their race**. . ." (emphasis added). See also, Young v. Oakland County, 176 Fed. Appx. 644 (6th Cir. April 19, 2006) (unpublished), finding plaintiff failed to establish that the candidate hired for the position he applied for was similarly situated respecting his credentials, and therefore failed to establish his prima facie case. And see Singleton v. Kellogg Co., 890 F.2d 417 (table), 1989 U.S. App. LEXIS 17920 (6th Cir., November 29, 1989), finding plaintiff failed to establish a prima facie case when she failed to establish that she was treated differently than similarly situated white employees.

Moreover, even if the Court could conclude that Plaintiffs have satisfied their prima facie burden (which the Court does not conclude), Plaintiffs have come forward with no evidence that AK Steel's screening qualifications were a pretext for racial discrimination. Plaintiffs state that they applied several times (Bert applied four or more times, according to her deposition; Lewis three times). But this fact alone does not give rise to

any inference that they were rejected because of their race. Under Manzer v. Diamond Shamrock Chemicals Corp., 29 F.3d 1078, 1084 (6th Cir. 1994), pretext can be established by evidence that (1) the proffered reasons had no basis in fact, (2) the reasons did not actually motivate the hiring decision, or (3) the reasons were insufficient to motivate that decision.

The reasons AK Steel gives for rejecting these Plaintiffs are clearly based in fact - all of them admitted the basic facts applicable to each.  Plaintiffs have no evidence that the reasons were insufficient, by offering any example of the same requirements being waived or ignored.  Plaintiffs' arguments are therefore directed to the second Manzer prong, that AK Steel's reasons were not the actual reasons that these four Plaintiffs were rejected.  But Plaintiffs must do more than disagree with AK Steel's reasons, or simply argue they are not truthful.  See, e.g., White v. Columbus Metropolitan Housing Authority, 429 F.3d 232 (6th Cir. 2005), rejecting a female employee's argument that she established a triable issue on pretext.  The plaintiff cited a number of facts surrounding the consideration of her job application, such as the employer's failure to follow its internal procedures, and a comment by a manager that he was determined "to hire a man," all of which the Sixth Circuit held was insufficient: "The most White can show, in viewing the evidence in the light most favorable to her, is that her

application was not given as much attention as she would have liked." Id. at 246.  See also, Macy v. Hopkins County Bd. Of Education, 484 F.3d 357 (6th Cir. 2007), citing White and finding plaintiff failed to establish pretext by challenging the veracity of the employer's explanation.  As noted above, Plaintiffs offer no evidence raising a colorable inference that unlawful racial discrimination, rather than AK Steel's stated reasons, was the reason that these Plaintiffs did not progress through AK Steel's hiring process, and were not hired.

## CONCLUSION

For all of the foregoing reasons, the Court grants Defendant's motion for summary judgment.  (Doc. 156)  The disparate treatment claims of Vivian Bert, Edward Lewis, Michael Miller, and Shawn Pryor are dismissed with prejudice.

SO ORDERED.

DATED: April 9, 2008              s/Sandra S. Beckwith
                                  Sandra S. Beckwith, Chief Judge
                                  United States District Court