UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| VIVIAN BERT, et al. | : | Case No. C-1-02-467 |
| | : | |
| Plaintiffs, | : | Judge Beckwith |
| | : | Magistrate Judge Hogan |
| v. | : | |
| | : | **MEMORANDUM OF DEFENDANT** |
| AK STEEL CORPORATION | : | **AK STEEL CORPORATION IN** |
| | : | **OPPOSITION TO PLAINTIFFS'** |
| Defendant. | : | **MOTION FOR LEAVE TO FILE A** |
| | : | **SUPPLEMENTAL RESPONSE TO** |
| | : | **DEFENDANT'S MOTION FOR** |
| | : | **SUMMARY JUDGMENT** |

I.    **INTRODUCTION**

Defendant AK Steel Corporation ("AK Steel" or "the Company") opposes Plaintiffs'

Motion for Leave to File a Supplemental Response to Defendant's Motion for Summary

Judgment on the Claims of the Ashland Plaintiffs and Ashland Class.  In Plaintiffs' proposed

Supplemental Response Plaintiffs produce a new affidavit and a new piece of evidence (a

purported notice of right to sue for Darrell Carter) and argue that they should now be allowed to

use documents that they failed to produce during discovery -- the Ashland Plaintiffs' notices of

right to sue.  They also argue that their production of new opinions from their expert (in the form

of a new declaration), three years after expert reports were due and three months after discovery

closed, is justified as a sanction against AK Steel.  Plaintiffs base this argument on incorrect

allegations, a mischaracterization of the discovery that has occurred in this case, and false

attribution of the actual testimony in this case.

AK Steel respectfully requests that Plaintiffs' motion be denied.

## II.    PLAINTIFFS CANNOT USE A SUPPLEMENTAL RESPONSE TO SUBMIT NEW EVIDENCE WHICH WAS NEVER PRODUCED DURING DISCOVERY.

Plaintiffs wrongly attempt to use the proposed Supplemental Response to submit evidence never produced during discovery.

A notice of right to sue is a necessary prerequisite to bringing a Title VII claim. *See Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1488 (6th Cir. 1989). Throughout this nearly six-year litigation, the current Ashland Plaintiffs never stated they had received a right to sue and never produced the notices of right to sue (which they now claim they have had since September 2002).

AK Steel, which did not receive these purported notices of right to sue until served with Plaintiffs' response to summary judgment and the proposed Supplemental Response, made several attempts during discovery to ascertain whether Plaintiffs had satisfied this necessary prerequisite. On October 29, 2002, one month *after* Plaintiffs allegedly received these notices of right to sue, AK Steel served document requests to each of the Ashland Plaintiffs which requested they produce all documents received from the EEOC. (D. Carter Dep. Ex. 1, request 8; D.D. Carter Dep. Ex. 1, request 8; M. Carter Dep. Ex. 1, request 8; Jackson Dep. Ex. 1, request 8; Oliphant Dep. Ex. 1, request 8) None of the current Ashland Plaintiffs produced a notice of right to sue. When AK Steel later learned that Plaintiffs had not searched for documents to other discovery requests, AK Steel made several written and verbal requests that Plaintiffs search for and produce responsive documents. (Pryor Dec. ¶¶ 2-4) On September 14, 2007, Plaintiffs' counsel confirmed that Ashland Plaintiffs had searched for, or by the following week would have searched for, and produced responsive documents. (Pryor Dec. ¶ 4, Ex. 4) Still no notice of right to sue was produced. AK Steel also asked a number of the Ashland Plaintiffs during their depositions whether they had received a notice of right to sue. None of the

Ashland Plaintiffs claimed to have received one.  (D.D. Carter Dep. 50; M. Carter Dep. 61; Jackson Dep. 93; Oliphant Dep. 41)

AK Steel moved for summary judgment on the Ashland Plaintiffs' claims, in part, because they had failed to satisfy this necessary prerequisite to bringing a Title VII action; they had no notice of right to sue.  (Doc. 158 at 8)  In response, Plaintiffs for the first time submitted notices of right to sue for four of the five Ashland Plaintiffs.  These documents were unauthenticated.  Now in Plaintiffs' proposed Supplemental Response, Plaintiffs (1) seek to authenticate these documents by offering, for the first time, an affidavit from Plaintiffs' counsel admitting that they have always had these documents but offering no explanation for why they were withheld from production during discovery and (2) offer a notice of right to sue for Darrell Carter that not only was not produced during discovery, but was not even submitted in response to AK Steel's motion for summary judgment.  A supplemental response is not the proper vehicle to submit new evidence to the Court in an effort to avoid summary judgment, particularly when that evidence was never produced during discovery.

Plaintiffs cite cases in which courts have allowed parties to obtain a notice of right to sue after filing a lawsuit.  Plaintiffs' arguments miss the point.  It is not the late receipt of the notice of right to sue that AK Steel is challenging.  It is their failure to produce them even though AK Steel specifically requested documents received from the EEOC, Plaintiffs said they would produce the requested documents, and these documents were in Plaintiffs' possession before the date the Company requested them.

AK Steel respectfully requests that Plaintiffs' Motion for Leave to File this Supplemental Response and submit new evidence be denied.

III.    **PLAINTIFFS' SUPPLEMENTAL RESPONSE MISCHARACTERIZES THE DISCOVERY IN THIS CASE IN AN EFFORT TO JUSTIFY THEIR OWN UNTIMELY PRODUCTION.**

    A.    **Plaintiffs' Newest Expert Declaration Was Late Due To Plaintiffs' Own Actions.**

On March 5, 2008, Plaintiffs' expert crafted a different declaration that contained new opinions in an attempt to aid the Plaintiffs' efforts to avoid summary judgment. This latest expert "report" was produced three years after the Court imposed deadline for expert reports. (Doc. 57) Plaintiffs claim in their proposed Supplemental Response that their delayed production of Dr. Bradley's most recent declaration was somehow a result of Defendant's alleged "failure to produce requested documents." (Doc. 174, Pl. Supp. Response p. 1) Plaintiffs in fact mischaracterize the discovery history in this case in an effort to justify their own dilatory conduct during discovery.

Plaintiffs requested and received from Resource Associates the test result data at issue nearly two months before the close of discovery. Plaintiffs did not raise until March of 2008 a claim that production was late or that AK Steel should have produced this data earlier. Instead, they waited five months after receiving the documents from Resource Associates to produce their latest expert "report." Even were Plaintiffs correct in their conclusory allegations that AK Steel controlled the documents possessed by Resource Associates, AK Steel was under no obligation to obtain these records from Resource Associates as it is undisputed AK Steel never agreed to produce them because the Company does not believe they were requested. Plaintiffs knew test results existed for Ashland since at least February 16, 2005, but did not request them from the Company at that time or thereafter.

### B.    Plaintiffs Have Misrepresented The Discovery In This Case.

A brief history of this litigation and the changes that it has gone through is appropriate.

From June 26, 2002, when Plaintiffs filed this action, to October 31, 2005, when Plaintiffs filed

their motion to certify a class, this case did not focus on the pre-employment test.  In all three of

Plaintiffs' complaints, Plaintiffs claimed that AK Steel had a discriminatory hiring process that

inhibited African Americans from applying for labor positions with AK Steel and sought to

represent a global class of "all African-American persons who applied and were rejected for

employment, or were deterred or discouraged from applying for employment, with AK Steel at

any time since June 26, 1998, four years prior to the filing of this Complaint, pursuant to 28

U.S.C. § 1658."  (Doc. 1, ¶ 29; Doc. 22, ¶ 29; Doc.  45, ¶ 29)  None of the Complaints seek a

class of unsuccessful test takers -- they request a class of unsuccessful applicants.

### 1.    Plaintiffs Did Not Request Ashland Test Results For Unsuccessful Test Takers.

On October 29, 2002, Plaintiffs served their first request for production of documents

upon Defendant.  If, as Plaintiffs now claim, they made clear that test results were a significant

issue, one would certainly expect one of Plaintiffs' document requests specifically to request test

results for applicants.  While there are a number of broad, general requests, not one of them

specifically asks for test results for applicants.

Federal Rule of Civil Procedure 34 "requires that requests for production identify

documents sought with reasonable precision."  *Western Resources, Inc. v. Union Pacific RR Co.*,

2001 WL 1718368, *3 n. 2 (D. Kan. 2001).  As one court has stated:

> Requests should be reasonably specific, allowing the respondent to
> readily identify what is wanted.  Requests which are worded too
> broadly or are too all inclusive of a general topic function like a
> giant broom, sweeping everything in their path, useful or not. They
> require the respondent either to guess or move through mental
> gymnastics which are unreasonably time-consuming and

> burdensome to determine which of many pieces of paper may
> conceivably contain some detail, either obvious or hidden, within
> the scope of the request.  The court does not find that reasonable
> discovery contemplates that kind of wasteful effort.

*Audiotext Communications, Connections USA v. U.S. Telecom, Inc.*, 1995 WL 18759 *1 (D.

Kan. 1995).  *See also Kolenc v. Bellizzi*, 1999 WL 92604, *4 (S.D.N.Y. 1999) ("It is neither fair

nor reasonable for plaintiffs to require the defendants to guess what it is that plaintiffs seek

through any of their discovery requests.").

Plaintiffs cite to six of these document requests which they now claim requested test

results.  Not one of these requests asked for "test results."  AK Steel responded to each of the

general requests by specifically stating the documents which it believed were responsive and

would be produced.  (Pryor Dec. ¶ 5, Ex. 5)  AK Steel did not state that it would provide test

results, as it did not believe they were requested.

Although four of Plaintiffs' document requests mention the word "test," only request 15

references "test scores or grades."  Request 15 sought a laundry list of items for AK Steel's

*current* workforce (not applicants) which included performance appraisal scores or grades and

"test scores or grades."  (Pryor Dec. ¶ 5, Ex. 5)  AK Steel objected to this request in its entirety

because the requests for nearly every piece of paper concerning each of its thousands of current

employees (including from plants other than Ashland and Middletown) were not relevant to the

hiring claims and the overbreadth of the request was oppressing and unduly burdensome.  (*Id.*)

Of the other requests cited by Plaintiffs as allegedly requesting applicant test data, only

Request 12 comes close.  That request is for "All documents which show or tend to show the

applicants who were considered or selected for hire at AK Steel Corporation from January 1,

1995 to present."

AK Steel has seven plants in four states and a headquarters. This request is obviously overbroad, and the Company interposed a proper objection. The Company did respond notwithstanding the objection that it would "produce applicant files for the Middletown Works and the Ashland Works from January 1, 2000 to the present for qualified applicants for entry level bargaining unit positions." This response is directly responsive to the question asked. If the test results for all applicants really were the issue at the time, as Plaintiffs now claim, one would have expected Plaintiffs to have posed a direct request for them. But, they did not.

Plaintiffs did not take issue with AK Steel's interpretation of the requests or ask that AK Steel produce test results -- even after Phyllis Short and Susan Lester both testified that they received results from Resource Associates and Susan Lester testified that she maintained these records for Ashland in a separate file. (Short Dep. 29-31; Lester Dep. 75-76) The specifics about who passed or failed the test were not at issue -- Plaintiffs were seeking at that time to prove that the overall hiring process was discriminatory and that there was a disparate impact with respect to the number of African Americans hired -- not the more limited view that the test was discriminatory.

### 2.      **Plaintiffs Knew That Ashland Test Results Existed.**

On February 16, 2005, Plaintiffs took the depositions of Phyllis Short and Susan Lester. Plaintiffs asked Lester, the Human Resource Manager for Ashland, if she had test results. Susan Lester testified "*yes*". She testified as follows:

> Q.      Do you have written record that would reflect each individual since January of 2000 who passed this test and each individual who flunked this test?
>
> A.      Yes, sir.
>
> Q.      Is that a yes?
>
> A.      Yes.

* * *

> Q.    How would you determine if you wanted to do so now whether each and every individual who has taken the test since January of 2000 to the present passed or failed the test?
>
> A.    I look at the report that Dr. Gibson gave me. You know, I have that to refer to.
>
> Q.    Is that in a particular file?
>
> A.    Yes, sir.
>
> Q.    What's the name of that file?
>
> A.    Test file.
>
> Q.    I'm sorry?
>
> A.    It's just the test file where I keep those reports she sends me.
>
> Q.    So you have one test file that would reflect the results for every individual that has taken this test designed by Dr. Gibson at the Ashland and Middletown -- I'm sorry, at the Ashland plant from January of 2000 to the present.
>
> A.    Yes, sir.

(Lester Dep. 75-76)  Plaintiffs incorrectly state, without any record citation, that AK Steel has repeatedly **declared** that it did not have test results for Ashland.  (Doc. 174 at 5)

Plaintiffs did not ask for this test file from the Company during or after the deposition, nor did they complain that AK Steel should have produced it pursuant to the earlier discovery requests.

### 3.    Plaintiffs' Expert Chose To Opine On The Bottom-Line Hiring Analysis.

In March, 2005, Plaintiffs submitted an expert report which challenged the entire hiring process as discriminatory.  (Doc. 71)  Plaintiffs' expert, Dr. Bradley, did not opine that the test

was at issue, even though he had the Middletown test information at that time. Between March, 2005 and July, 2005, Plaintiffs submitted three expert reports, all of which opined that the entire process was discriminatory.[1]  (Doc. 71)

In the first two reports, Dr. Bradley stated that Ashland did not have complete records about a variety of steps in the hiring process, including the results of the screening process, why applicants did not take the test and phone records for scheduling the interview. (Doc. 71, Bradley Supp. Report at 8-9)  Conspicuously absent from Dr. Bradley's long list of missing items are test results. Dr. Bradley did not state, as he could not based on Lester's testimony, that there were no records based on the test. And at that time Plaintiffs chose to have their expert opine on the overall hiring process rather than the test.

AK Steel's expert, Dr. Baker did not opine on the impact of the test in May of 2005 -- this was not the claim raised by Plaintiffs at that time. She opined that Dr. Bradley improperly included in his overall analysis applicants who were given offers but who then failed the background check or physical exam. (Doc. 73, Baker Report at 9-10)  She agreed with Dr. Bradley that documentation regarding the various stages of the Ashland hiring process were not available, as it was not available for all of these stages. (*Id.* at 2, n.4)  Like Bradley, she did not state that there were no Ashland test results.

> **4.    Plaintiffs Changed The Case From A Bottom-Line Hiring Analysis To A Challenge Of The Test But They Did Not Seek The Ashland Test Results Until August, 2007.**

It was not until Plaintiffs moved to certify the class on October 31, 2005 that they abandoned the claim that the overall hiring process was discriminatory, dropping eight of the named Plaintiffs from the class as a result, and instead newly claimed that only the test was

---

[1]    In his third report, while still focusing his overall conclusion on the overall hiring process, Dr. Bradley for the first time opined that the test also had a disparate impact at Middletown. (Doc. 71, Bradley Rebuttal Report)

discriminatory.  With their reply memorandum, they submitted a new "report" (declaration) from Dr. Bradley in an effort to accomplish this.  (Doc. 75)

Although Plaintiffs knew in February, 2005 that Ashland had test result information and changed the theory of the case in October, 2005 to a theory based solely on the test, Plaintiffs waited until August, 2007 to request the actual test results at Ashland from a non-party witness. The subpoena served on Resource Associates on August 29, 2007 specifically asked for "results of the test."  (Pryor Dec. ¶ 6, Ex. 6)  Plaintiffs knew how to request the results from the Company but had chosen not to do so before.  In response, Resource Associates produced documents that it possessed including the test result summary documents.  Plaintiffs received this information with nearly two months left in the discovery period.

Plaintiffs' Supplemental Response incorrectly blames AK Steel for Plaintiffs' late production of its newest expert opinion and cites cases in which courts have issued sanctions based on a party's repeated failure to produce specifically requested and court ordered documents.  *See e.g. Bratka v. Anheuser-Busch Co.*, 164 F.R.D. 448, 460 (S.D. Ohio 1995) (defendant failed to comply with discovery requests and court's discovery order even when repeatedly warned that production was incomplete; defendant had also previously been sanctioned); *In re Telxon Corp. Securities Litigation*, 2004 WL 3192729 (N.D. Ohio 2004) (party made repeated false assurances to the court and other side that it had produced particular documents; party failed to produce internal guidance materials after being ordered to do so by the court); *In re LTV Steel Co.,* 307 B.R. 37 (N.D. Ohio Bankr. 2004) (party failed to respond to interrogatories or document requests, failed to produce witness for deposition and failed to timely submit trial exhibits in accordance with court's order).

This is not the case here.   Plaintiffs knew in February, 2005 that Ashland had test result information but they did not ask the Company for it at the deposition or thereafter.  Plaintiffs' request to file their Supplemental Response should be denied.


**IV.    <u>CONCLUSION</u>**

For each and all of the foregoing reasons, Defendant AK Steel Corporation respectfully requests that this Court deny Plaintiffs' Motion for Leave to File the Supplemental Response.

Respectfully submitted,

/s/ Gregory Parker Rogers
Lawrence J. Barty (0016002)
Gregory Parker Rogers (0042323))
Patricia Anderson Pryor (0069545)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
(513) 381-2838
Trial Attorneys for Defendant
AK Steel Corporation

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically filed on April 17, 2008 using the Court's CM/ECF system, which will send notice of this filing to Susan Donahue, Robert Childs, Herman N. Johnson, Jr., Wiggins, Childs, Quinn & Pantazis, P.C., The Kress Building, 301 19th Street North, Birmingham, Alabama  35203; Paul H. Tobias, Tobias, Kraus & Torchia, 911 Mercantile Library Building, 414 Walnut Street, Cincinnati, Ohio 45202; and David Sanford, Sanford, Wittels & Heisler, L.L.P., 2121 K Street, N.W., Suite 700, Washington, D.C.  20037.


/s/ Gregory Parker Rogers