```
              UNITED STATES DISTRICT COURT
               SOUTHERN DISTRICT OF OHIO
                    WESTERN DIVISION
```

Vivian Bert, et al.,            :   Case No. 1:02-cv-467
                                :
    Plaintiffs,               :
                                :
vs.                             :
                                :
AK Steel Corporation,           :
                                :
    Defendant.                :

**ORDER**

Before the Court is Defendant's motion for summary judgment on the individual claims of plaintiff Allen Roberts. (Doc. 155) Roberts opposes the motion (Doc. 163), and Defendant has replied. (Doc. 171) Roberts, a former AK Steel employee, alleges that Defendant's discriminatory hiring practices violated his associational right to an integrated workplace, and caused him injury.

Defendant seeks summary judgment, contending that Roberts admitted he did not sustain any actual injury as a result of the alleged discriminatory hiring practices. Defendant also argues that the undisputed evidence establishes that Roberts worked in an integrated workplace during his years of employment with AK Steel.

**FACTUAL BACKGROUND**

This Court addressed Roberts' claims in an order denying Defendant's previous summary judgment motion based on claim

preclusion. (Doc. 80) As discussed in that Order, Roberts worked at AK Steel from 1988 through September 2002, and was an employee at the time this case was filed (June 26, 2002). Roberts filed an EEOC charge on April 7, 1999 alleging that AK Steel's hiring practices are discriminatory; his claim in this case is based upon that EEOC charge. In September 2002, Roberts filed an individual complaint against AK Steel alleging employment discrimination and retaliation under Title VII and state law. (<u>Roberts v. AK Steel</u>, No. 1:02-cv-656 (S.D. Ohio 2002)). He alleged there that AK Steel retaliated against him in a series of disciplinary actions, and eventually terminated him, because of several EEOC complaints, including the "third party" hiring discrimination claim at issue here. He also alleged that AK Steel's decisions to suspend him, to discharge him, and its other adverse employment-related acts, were all motivated by racial discrimination. This Court granted summary judgment to AK Steel in that case.

AK Steel previously sought judgment in this case against Roberts based on the preclusive effect of the Court's judgment in Roberts' prior case. This Court denied that motion, finding that Roberts' "third party" associational claim was not raised or actually litigated in the prior case. (Doc. 80)

In the Second Amended Complaint, Roberts contends that AK Steel utilizes intentionally discriminatory hiring practices, which deprived him and all other AK Steel employees of the benefits of a racially integrated environment. He alleges claims

under Title VII and 42 U.S.C. §1981.  (Doc. 45, ¶¶155-164) Plaintiffs later sought class certification for a proposed class of applicants who failed AK Steel's pre-employment test, and did not seek certification of Roberts' associational claim on behalf of other employees.  Roberts is thus proceeding solely on his individual claims.

## DISCUSSION

1.  <u>Standard of Review</u>.

The standards for summary judgment are well established. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'"  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) (quoting <u>First Nat'l Bank of Arizona v. Cities Serv. Co.</u>, 391 U.S. 253 (1968)).  The Court is not duty bound to search the entire record in an effort to establish a lack of material facts.  <u>Guarino v. Brookfield Township Trs.</u>, 980 F.2d 399, 404 (6th Cir. 1992); <u>InterRoyal Corp. v. Sponseller</u>, 889 F.2d 108, 111 (6th Cir. 1989), <u>cert. den.</u>, <u>Superior Roll Forming Co. v. InterRoyal Corp.</u>, 494 U.S. 1091 (1990).  Rather, the

burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold Inc., 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Id. at 250.  "If the evidence is merely colorable, . . . , or is not significantly probative, . . . , the court may grant judgment." Anderson, 477 U.S. at 249-50 (citations omitted).

Although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979), cert. dismissed, 444

U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citations omitted).

2.  Roberts' Claims.

The law regarding the viability under Title VII and Section 1981 of third-party claims such as Roberts alleges here is not entirely settled.  Relying on Trafficante v. Metropolitan Life Insurance Co., 409 U.S. 205 (1972), which recognized an "associational" claim under the Fair Housing Act, several courts have recognized standing under Title VII to an employee who alleges that his right to work in an environment free of discrimination was violated, even though the employee may not have been directly victimized by that discrimination.  See, e.g., Stewart v. Hannon, 675 F.2d 846 (7th Cir. 1982) [white employee had standing under Title VII to challenge discriminatory acts against black employee]; and Leibovitz v. New York City Transit Authority, 252 F.3d 179 (2nd Cir. 2001), holding that female employee had standing to prosecute hostile environment claims based on treatment of other female employees.  But see, Childress v. City of Richmond, 134 F.3d 1205 (4th Cir. 1998), where an

equally divided en banc Fourth Circuit concluded such employees lacked standing; the concurring opinion distinguished the terms of Title VII from those of the Fair Housing Act upon which Trafficante was based.

In Tetro v. Elliott Popham Pontiac, 173 F.3d 988 (6th Cir. 1999), the Sixth Circuit held that a white employee who was discharged because he had a biracial child had standing to sue under Title VII.  And in Johnson v. University of Cincinnati, 215 F.3d 561, 574 (6th Cir. 2000), the Sixth Circuit held that a Title VII plaintiff "need only allege that he was discriminated against on the basis of his association with a member of a recognized protected class" to have standing to sue.  Based on these authorities, the Court will assume that Roberts has standing to prosecute his associational claim, as a "person claiming to be aggrieved" within the meaning of Title VII.

Title VII and Section 1981 claims are generally analyzed under the same standards.  Roberts cites Gray v. Greyhound Lines, East, 545 F.2d 169, 175 n. 16 (D.C. Cir. 1976), to describe the elements of his associational claim.  According to Gray, Roberts must establish (1) intentional discrimination by Defendant against African American applicants; (2) an actual injury Roberts sustained; and (3) a causal link between his injury and the discriminatory practices.

In opposing AK Steel's current summary judgment motion,

Roberts relies on the Class Plaintiffs' expert opinion that the pre-employment test had a disparate impact on African-American applicants. He does not offer any other substantive evidence of intentional discrimination, other than his own subjective impressions and hearsay. Roberts suggests that the expert's opinion establishes intentional discrimination. (See Doc. 163, pp. 5-6) In granting class certification, the Court made no determination about whether the test has an unlawful disparate impact. The Court concluded that the Class Plaintiffs' expert presented a statistical framework that passed muster under Rule 23. The ultimate question of whether the test discriminates against African-American applicants is a disputed question in this case. But assuming that Dr. Bradley's opinion suffices for purposes of overcoming Defendant's summary judgment motion, Roberts must also establish that he suffered an actual injury.

Roberts testified that he knew almost all of the African-American employees at AK Steel, and that the workforce at the plant was approximately 7% African-American. Roberts worked as a crew chief for several years in the caster maintenance group, which had 40 to 55 employees. He was one of four crew chiefs, all of whom were African Americans. He could recall at least seven other African American employees in his department. He was moved to a different, smaller department in mid-2001, where there were at least two other African American employees. Roberts does

not deny this evidence, but asserts that there "should have been more" African Americans hired because the workplace lacked "balance." He does not define what balance he believes would have been sufficient. He repeatedly states that AK Steel's discriminatory policies deprived him of an integrated workplace. This establishes his standing, as discussed above, but does not establish an actual, compensable injury.

Roberts also testified in his deposition that he did not receive adequate training to be a crew chief, and that management treated him badly after he returned from a lengthy suspension in 2001. He states that after he filed his EEOC charges, he was treated with hostility up until the time he was terminated. (Roberts Deposition, pp. 127-138) Roberts was then specifically asked what injuries he suffered as a result of the discriminatory hiring practices directed at other African-American applicants. Other than losing his job (which he believes was in response to his EEOC charges), he did not identify any specific harm because "you know, I was working at the time." (Roberts Deposition, pp. 142-143) He later amplified this answer by stating:

> . . . with the lack of minorities that were hourly, lack of supervisor that were salary [sic], I feel like that's - you know, didn't allow me to work in a place that was integrated of racial - free of discrimination because we didn't have a balance. We didn't have - there was no balance of minorities on either side, upper management or - upper management, front line supervisors, you name it.

>So with all that in mind, if there was a balance in my mind, I feel if there was a balance of supervisors, a balance of minorities in the plant, we probably wouldn't be having this conversation today. And I probably would - would probably still be working at AK Steel.

(Roberts Deposition pp. 211-213)

Roberts does not identify or describe any discrete injury he sustained as a result of the challenged hiring practices. His descriptions of adverse actions taken against him, of lack of training or his termination, are all injuries he alleged in his prior lawsuit were caused by racial animus and retaliation directed at him personally. His attempt to create a causal link between the purported imbalance of minorities in the workforce and his termination is based on sheer speculation.

Roberts also suggests that, absent the discriminatory pre-employment test, there would have been more minority representation in upper management. There is absolutely no evidence in the record concerning upper management recruitment policies and procedures, and Roberts' testimony is pure conjecture. He also believes that a more "balanced" workforce might have avoided his disciplinary problems, and "probably" would have saved him from termination. Roberts cannot rely on this unsupported, speculative connection between a racially "unbalanced" workforce and his termination in 2002, to establish actual injury.

Roberts also argues that the alleged racial imbalance was emotionally harmful to him. Despite his argument that the lack of a racially integrated workplace "caused him to be disciplined and ultimately terminated," he clearly states that he is only seeking recovery for emotional injuries, and not back pay or other damages stemming from his employment or his discharge. (See Doc. 163 p. 4) Emotional distress damages are recoverable under Title VII and Section 1981. But Roberts has not come forward with anything to substantiate any emotional injuries he may have suffered that were caused by Defendant's hiring practices, rather than by his employment-related disputes. He did not testify about any emotional distress he suffered, and does not allude to any adverse effects he endured due to such distress.

Emotional distress damages, as with any other type of personal compensatory damages, must be supported by evidence. In Bach v. First Union National Bank, 149 Fed. Appx. 354, 2005 U.S. App. LEXIS 18197 (6th Cir., August 22, 2005), the Sixth Circuit affirmed a substantial emotional distress damages verdict in a Fair Credit Reporting Act case. The Circuit noted that "An injured person's testimony alone may suffice to establish damages for emotional distress provided that she reasonably and sufficiently explains the circumstances surrounding the injury and does not rely on mere conclusory statements." Id. at 361.

Applying that standard to Roberts' testimony, he does not explain any circumstances relating to AK Steel's hiring practices that he believes caused him any emotional distress.  Without some evidence of an actual injury that is causally linked to the challenged hiring practices, Roberts' claims cannot withstand summary judgment.

## CONCLUSION

For all of the foregoing reasons, the Court grants Defendant's motion for summary judgment against Allen Roberts.  His individual claims are dismissed with prejudice.

SO ORDERED.

DATED: May 7, 2008                         s/Sandra S. Beckwith
                                           Sandra S. Beckwith, Chief Judge
                                           United States District Court